**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CALLEN DEMPSTER, et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 20-95** |
| **LAMORAK INSURANCE CO., et al.** | **SECTION: "G"(1)** |

## ORDER AND REASONS

Before the Court is Plaintiffs Louise Ella Simon Dempster, Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Dempster, Jr., Annette Dempster Glad, and Barnett Dempster's (collectively, "Plaintiffs") "Emergency Motion to Remand."[1] In this litigation, Plaintiffs allege that Decedent Callen L. Dempster ("Decedent") was exposed to asbestos and asbestos-containing products that were designed, manufactured, sold, and/or supplied by a number of Defendant companies while Decedent was employed by Defendant Huntington Ingalls Incorporated (f/k/a Northrop Grumman Shipbuilding, Inc., f/k/a Northrop Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc., and f/k/a Avondale Shipyards, Inc.) ("Avondale").[2] After Avondale removed the suit from state court for a second time under the federal officer removal statute, Plaintiffs filed the pending "Emergency Motion to Remand"[3] and an "Ex Parte Motion for Expedited Hearing and for Emergency Ruling."[4] On January 13, 2020,

---

[1] Rec. Doc. 4.

[2] *See* Rec. Doc. 1-2; Rec. Doc. 1-8. In particular, Plaintiffs bring claims against Lamorak Insurance Company, Huntington Ingalls Inc., Albert Bossier, Jr., J. Melton Garrett, Eagle, Inc., Bayer Cropscience, Inc., Foster-Wheeler LLC, General Electric Co., Hopeman Brothers, Inc., McCarty Corporation, Taylor-Seidenbach, Inc., CBS Corporation, Uniroyal, Inc., International Paper Company, Houston General Insurance Company, Berkshire Hathaway Specialty Insurance Company, Northwest Insurance Company, United Stated Fidelity and Guaranty Company, Fist State Insurance Company, The American Insurance Company, Louisiana Insurance Guaranty Association, and the Traveler's Indemnity Company. Rec Doc. 1-8 at 2–3.

[3] Rec. Doc. 4.

[4] Rec. Doc. 5.

the Court granted the motion to expedite and set the motion to remand for expedited hearing, with oral argument.[5] Having considered the motion, the memoranda in support and in opposition, the arguments presented during oral argument, the record, and the applicable law, the Court denies the motion to remand.

# I. Background

## A.    *Factual Background*

In this litigation, Plaintiffs allege that Decedent was employed by Avondale from 1962 to 1994.[6] During that time, Plaintiffs aver that Decedent was exposed to asbestos and asbestos-containing products in various locations and work sites, resulting in Decedent breathing in asbestos fibers and later developing asbestos-related cancer.[7] Plaintiffs assert strict liability and negligence claims against various Defendants.[8] Specifically, Plaintiffs allege that:

> All asbestos companies had care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of [Decedent] and for which these defendants are liable under Louisiana law. However, with regard to Avondale and its executive officers, they are liable because they failed to properly handle and control the asbestos which was in their care, custody, and control. Petitioners are not alleging that Avondale and its executive officers are liable for the mere use of asbestos; rather, Avondale and its executive officers are liable for the misuse of asbestos, including but not limited to the failure to warn of the hazardous nature and dangers of asbestos and for the failure to take and implement reasonably safe and industrial hygiene measures, failure to train, and failure to adopt safety procedures for the safe installation and removal of asbestos.[9]

---

[5] Rec. Doc. 8.

[6] Rec. Doc. 1-2 at 5.

[7] *Id.*

[8] *Id.* at 7–8.

[9] *Id.*

**B.** *Procedural Background*

Decedent filed a "Petition for Damages" in the Civil District Court for the Parish of Orleans, State of Louisiana, on March 14, 2018.[10] Defendants Huntington Ingalls Incorporated, Albert Bossier, Jr., J. Melton Garret, and Lamorak Insurance Company (the "Avondale Interests") removed the case to the United States District Court for the Eastern District of Louisiana for the first time on June 21, 2018.[11] In the first notice of removal, Avondale Interests alleged that removal was proper because this is an action "for or relating to conduct under color of federal office commenced in a state court against persons acting under one or more federal officers within the meaning of 28 U.S.C. § 1442(a)(1)."[12]

On January 7, 2019, this Court remanded the case to the Civil District Court for the Parish of Orleans.[13] The Court found that Defendants presented no evidence that Decedent came into contact with asbestos aboard a government vessel, and thus, no federal interest was implicated.[14] Alternatively, even accepting Defendants' argument that Decedent came into contact with asbestos aboard a government vessel as true, the Court did not find that the necessary causal nexus existed between Federal Government action and Decedent's claims.[15] This determination was based on the fact that Decedent brought negligence claims, rather than strict liability claims, against Avondale Interests.[16] Defendants did not appeal the January 7, 2019 Order.

---

[10] *Id.* at 2-3

[11] Case No. 18-6158, Rec. Doc. 1 at 2.

[12] *Id.*

[13] Case No. 18-6158, Rec. Doc. 89.

[14] *Id.* at 31.

[15] *Id.*

[16] *Id.* at 36–37.

Decedent passed away on November 24, 2018, and a First Supplemental and Amending Petition for Damages was filed in state court substituting Decedent's heirs as Plaintiffs on January 17, 2019.[17] Trial was scheduled to begin before the state trial court on January 13, 2020. [18] The amended petition does not purport to assert any strict liability claims against Avondale.[19]

On January 9, 2020, Avondale removed the case to the United States District Court for the Eastern District of Louisiana for a second time.[20] In the second notice of removal, Avondale once again alleges that removal is proper because this is an action "for or relating to conduct under color of federal office commenced in a state court against persons acting under one or more federal officers within the meaning of 28 U.S.C. § 1442(a)(1)."[21] In the second notice of removal, Avondale contends that the jury interrogatories, jury charges, and Pre-Trial Order recently filed by Plaintiffs in state court directly contradict Decedent's prior representation in federal court that he was not asserting strict liability claims against Avondale.[22] Following the second removal, the case was randomly allotted to Section "R."

On January 10, 2020, Plaintiffs filed an "Emergency Motion to Remand"[23] and an "Ex Parte Motion for Expedited Hearing and for Emergency Ruling."[24] On January 13, 2020, this Court was first informed of the second removal and accepted transfer of the case pursuant to Local Rule

---

[17] Rec. Doc. 1-8.

[18] Rec. Doc. 1-12.

[19] Rec. Doc. 1-8.

[20] Rec. Doc. 1.

[21] *Id.* at 2.

[22] *Id.* at 4–5.

[23] Rec. Doc. 4.

[24] Rec. Doc. 5.

3.1.1.[25] On January 13, 2020, the Court granted the motion to expedite and set the motion to remand for expedited hearing, with oral argument, on January 17, 2020 at 9:30 AM.[26] On January 15, 2020, Avondale filed an opposition to the motion to remand.[27] On January 17, 2020, Plaintiffs filed a reply memorandum.[28]

## II. Parties' Arguments

### A. *Plaintiffs' Motion to Remand*

In the instant motion, Plaintiffs argue that Avondale has improperly removed this matter to federal court for a second time.[29] Plaintiffs note that the notice of removal was filed on Thursday, January 9, 2020, just one full working day before the state court trial of this matter was scheduled to begin on January 13, 2020.[30] Plaintiffs assert that "Avondale's removal was done solely to obtain a continuance of the trial in state court."[31] Plaintiffs note that Avondale had filed a motion to continue the trial, which was set to be heard on January 10, 2020.[32] According to Plaintiffs, the main argument for the trial continuance was that there was a pending writ before the Louisiana Supreme Court, but on January 8, 2020, the Louisiana Supreme Court denied the writ application eliminating the basis for a continuance.[33] Therefore, Plaintiffs speculate that Avondale removed

---

[25] Rec. Doc. 7.

[26] Rec. Doc. 8.

[27] Rec. Docs. 9, 12.

[28] Rec. Docs. 10, 14.

[29] Rec. Doc. 4-1 at 1.

[30] *Id.*

[31] *Id.*

[32] *Id.* at 2.

[33] *Id.*

the case "[k]nowing that a denial of its motion to continue was imminent due to the Louisiana Supreme Court's writ decision."[34]

Plaintiffs argue that "[n]either the facts of this case nor the allegations of plaintiffs' petition have changed" since this Court first remanded the case.[35] Plaintiffs assert that they have not amended the petition to allege a strict liability claim against Avondale.[36] However, even if they had, Plaintiffs contend that such an amendment would not warrant removal because the facts of this case have not changed.[37] Plaintiffs point to this Court's prior finding that there was no evidence that Decedent was even exposed to asbestos on a government vessel.[38] Thus, Plaintiffs assert it would not matter whether they have alleged negligence and/or strict liability because the federal officer removal statute only applies to exposure on government vessels.[39]

Furthermore, Plaintiffs submit that they have not changed their allegations and are not alleging strict liability against the Avondale Interests.[40] Plaintiffs note that Avondale focuses on a Joint Pre-Trial Outline that was submitted to the state court jointly by all parties, wherein the parties stated that one of the issues of fact was whether defendants were strictly liable.[41] Plaintiffs contend that this portion of the Joint Pre-Trial Outline was not aimed at Avondale but at the other

---

[34] *Id.*

[35] *Id.* at 3.

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.* at 3–4.

defendants against whom Plaintiffs have alleged strict liability.[42] Plaintiffs assert that they "are unaware of any law which would even allow a party to expand upon the allegations of his petition through a Joint Pre-Trial Outline."[43]

Next, Plaintiffs note that Avondale focuses on certain proposed jury charges and jury interrogatories Plaintiffs circulated to all parties in this matter.[44] Plaintiffs contend that they inadvertently included a strict liability jury charge.[45] Plaintiffs submit that the inadvertent inclusion of strict liability statements in their proposed jury charges and jury interrogatories do not change the allegations made in the petitions.[46] According to Plaintiffs, "[t]he fact that Avondale relies so heavily upon 'proposed' jury charges and jury interrogatories shows that Avondale's real motive behind the filing of this second motion to remand is to obtain a trial continuance."[47]

Plaintiffs further note that they conceded in the last motion to remand that the claims against Avondale Interests involve negligence, not strict liability.[48] Plaintiffs assert that such a concession binds them in this and future litigation.[49] Therefore, Plaintiffs contend that this matter must be remanded to state court because the Joint Pre-Trial Outline, proposed jury charges, and proposed jury interrogatories do not affect this Court's prior ruling that removal was not proper.[50]

---

[42] *Id.* at 4.

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.* at 5 (citing *Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 714–17 (5th Cir. 2015)).

[50] *Id.*

Finally, Plaintiffs submit that the federal officer removal arguments have already been addressed by the Court on the facts as they exist in this case, but out of an abundance of caution, Plaintiffs adopt all arguments made in the first motion to remand and subsequent reply briefs.[51]

## B.   *Avondale's Opposition to the Motion to Remand*

In the opposition memorandum, Avondale asserts that this case was properly removed to this Court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).[52] First, Avondale argues that the removal is procedurally proper because: (1) the notice of removal was timely filed and (2) Plaintiffs' pretrial filings properly form a basis for removal.[53] Next, Avondale contends that the three-part inquiry for federal officer removal is met because: (1) it is a "person" within the meaning of the statute; (2) it acted pursuant to a federal officer's directions, and a causal nexus exists between its actions under color of federal office and Plaintiffs' strict liability claims; and (3) it has three colorable federal defense to Plaintiffs' claims.[54] Accordingly, Avondale argues that the Court should deny the Motion to Remand.

### 1.   Avondale Asserts the Removal was Procedurally Proper

#### a.   Timeliness of Removal

Avondale asserts that it timely removed this case to federal court on January 9, 2020 within 30 days of the filing of Plaintiffs' Pre-Trial Order, jury interrogatories, and jury charges.[55] Avondale contends that these pleadings were the first "other paper" from which Avondale could ascertain that this case had become subject to removal based on Plaintiffs' intention to pursue strict

---

[51] *Id.*

[52] Rec. Doc. 12.

[53] *Id.* at 15–18.

[54] *Id.* at 19–35.

[55] *Id.* at 16.

liability claims against Avondale.[56]

### b. Avondale Argues Pretrial Filings Properly Form the Basis for Removal

Avondale contends that the pretrial filings can properly form the basis for removal pursuant to 28 U.S.C. § 1446(b)(3), which recognizes that the receipt of "other paper" may form the basis of a removal.[57] In support, Avondale cites district court cases holding that pretrial filings constitute "other paper" upon which a defendant may base a removal.[58] According to Avondale, "[d]isallowing removal on the basis of Plaintiffs 'other paper' that clearly inserts strict liability claims into this case would sanction Plaintiffs' scheme to circumvent Avondale's removal rights."[59]

Additionally, Avondale notes that Plaintiffs admit that the jury interrogatories, jury charges, and Pre-Trial Order inject strict liability claims against Avondale, although Plaintiffs argue the inclusion was inadvertent.[60] Avondale asserts that the inclusion of the strict liability claims was not inadvertent, "as those claims are made repeatedly and in exacting detail."[61] Furthermore, even if the inclusion was inadvertent, Avondale contends that the assertion of strict liability claims against Avondale can establish subject matter jurisdiction.[62]

Finally, Avondale contends that past litigation tactics of Plaintiffs' counsel show that the

---

[56] *Id.*

[57] *Id.* at 17.

[58] *Id.* (citing *Laber v. United Steel*, 126 F.Supp.3d 934 (N.D. Ohio Aug. 27, 2015); *Parker v. County of Oxford*, 224 F.Supp.2d 292, 294 (D. Me. Oct. 9, 2002); *Janis v. Workhorse Custom Chassis, LLC*, 2012 WL 2597935, at **2–6 (N.D. Ill. Jul. 5, 2012); *Hurst v. Nissan North America, Inc.*, 2013 WL 65466 (W.D. Mo. Jan. 4, 2013); *Leboeuf v. Texaco*, 9 F. Supp. 2d 661, 664–65 (E.D. La. 1998)).

[59] *Id.* at 17–18.

[60] *Id.* at 18.

[61] *Id.*

[62] *Id.* (citing *Pitre v. Huntington Ingalls, Inc.*, No. CV 17-7029, 2017 WL 6033032 (E.D. La. Dec. 6, 2017)).

inclusion of strict liability claims was intentional. In support, Avondale cites a prior case involving Plaintiffs' counsel, where counsel stated that the plaintiff had not plead strict liability claims while the case was pending in federal court, but after remand argued for the inclusion of strict liability claims before the state court.[63] For these reasons, Avondale asserts that the second removal was procedurally proper.

### 2. Avondale Contends the Three-Part Test for Federal Officer Removal is Met

#### a. *Avondale is a Person*

Avondale contends it is undisputed that Avondale is a "person" under the federal officer removal statute.[64] Therefore, Avondale asserts the first element is satisfied.[65]

#### b. *"Acting Under" Color of Federal Office and Causal Nexus Requirement*

Next, Avondale contends that the second element is satisfied because it acted pursuant to a federal officer's directions, and a causal nexus exists between its actions under color of federal office and Plaintiffs' strict liability claims.[66]

##### i. Acting Under Color of Federal Office

Avondale argues that Decedent's alleged asbestos exposures aboard the Lykes vessels implicate a federal interest necessary to form the basis of a federal officer removal because the Lykes vessels were partially financed by the government and were to be used in time of war.[67] According to Avondale, the Lykes vessels that Decedent worked aboard were built according to

---

[63] *Id.* at 19–21.

[64] *Id.* at 25.

[65] *Id.*

[66] *Id.* at 15–20.

[67] Rec. Doc. 1 at 3; Rec. Doc. 12 at 12.

certain specifications so they could be utilized in a time of war.[68] Importantly, Avondale contends that one of these specifications "required the use of some asbestos-containing materials."[69] Therefore, Avondale argues that it was acting under federal control when it built the Lykes vessels because it "was building ships used to help conduct a war and in the absence of its contract with Avondale, the government itself would have had to build those vessels."[70]

### ii.     "Causal Nexus" Requirement

Avondale asserts that it is undisputed that strict liability claims against Avondale are sufficient to satisfy the causal nexus requirement.[71] Avondale contends that because Decedent alleges exposure between 1962 to 1994, before Louisiana abolished strict liability, pre-1996 Louisiana law governs.[72]  Avondale argues that under the former version of Article 2317 of the Louisiana Civil Code, strict liability claims rest on the mere use of asbestos.[73] Here, Avondale contends, use at the shipyard was pursuant to government directions via contract specifications.[74] As such, Avondale argues that this case is materially indistinguishable from *Savoie v. Huntington Ingalls, Inc.*, where the Fifth Circuit held that the plaintiffs' former Article 2317 strict liability claim satisfied the requirements for federal officer removal.[75]

Additionally, Avondale argues that Plaintiffs make strict products liability claims against

---

[68] Rec. Doc. 12 at 13–14.

[69] *Id.* at 14 (citing Rec. Doc. 12-1).

[70] *Id.* at 25–27.

[71] *Id.* at 22.

[72] *Id.*

[73] *Id.*

[74] *Id.*

[75] *Id.* (citing *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457 (5th Cir. 2016)).

Avondale under Louisiana's unreasonably dangerous per se doctrine, which is also a form of strict liability.[76] Avondale contends that Plaintiffs seek to hold Avondale liable as a professional vendor, which subjects Avondale to strict products liability.[77] In support of their claims, Avondale notes that Plaintiffs designated testimony from Decedent indicating that Avondale fabricated or manufactured asbestos blankets.[78] Avondale asserts that this was a strategic decision by Plaintiffs because Avondale has raised a contributory negligence defense which would bar recovery on Plaintiffs' negligence claims.[79] Thus, Avondale asserts that Plaintiffs have evidenced a clear and strategic effort to hold Avondale liable for the "mere use" of asbestos.[80]

### c. Colorable Federal Defenses

Finally, Avondale argues that it has asserted three colorable federal defenses to Plaintiffs' claims.[81] First, Avondale contends that Plaintiffs' claims are barred by the derivative sovereign immunity defense.[82] Second, Avondale asserts that Plaintiffs' claims are barred under the government contractor immunity defense.[83] Third, Avondale avers that the Longshore Harbor Workers' Compensation Act ("LHWCA") preempts Plaintiffs' state law claims.[84] Therefore, Avondale asserts that the motion to remand should be denied as jurisdiction properly rests with

---

[76] *Id.* at 22–23 (citing *Halphen v. Johns-Manville Sales Corp.*, 484 So. 2d 110, 113–14 (La. 1986))

[77] *Id.* at 24.

[78] *Id.*

[79] *Id.*

[80] *Id.* at 25.

[81] *Id.* at 27–45.

[82] *Id.* at 28–32.

[83] *Id.* at 32–36.

[84] *Id.* at 36–45.

this Court.[85]

### i. Derivative Sovereign Immunity

Avondale argues that Plaintiffs' claims are barred by the derivative sovereign immunity defense established in *Yearsley* and its progeny.[86] Avondale first argues that MARAD, the federal agency in this case, had the authority to enter into the contract with Avondale and that therefore, this authority was validly conferred by an act of Congress.[87] Avondale next contends that it complied with the terms of the contract, which in part, required the use of asbestos containing materials.[88] In sum, Avondale argues that Plaintiffs have not controverted the *Yearsley* defense.[89]

### ii. Government Contractor Immunity

Next, Avondale argues that Plaintiffs' claims are barred under the government contractor immunity defense.[90] To prevail under this defense, Avondale argues it must show "(1) that the government approved reasonably precise specifications for the construction of the ships; (2) that the ships conformed to those specifications; and (3) that the contractor warned the government of any hazards presented by the asbestos-containing components the government required that were known to the contractor but unknown to the government."[91] With regard to the first factor, Avondale contends that contracts executed between Avondale and the United States government established the terms by which Avondale was to construct the vessels upon which Decedent

---

[85] *Id.* at 45.

[86] *Id.* at 28–32.

[87] *Id.* at 29–30.

[88] *Id.* at 30–31.

[89] *Id.* at 31–32.

[90] *Id.* at 32–36.

[91] *Id.* at 32 (citing *Boyle v. United Technologies Corp.*, 487 U.S. 500, 511 (1988)).

worked.[92] With regard to the second factor, Avondale argues that it complied with the reasonably precise specifications the government imposed in the shipbuilding operation.[93] With regard to the third factor, Avondale contends that it submitted affidavits of maritime historians who attest that Avondale had less knowledge and information about the hazards of asbestos than the United States government.[94] Therefore, Avondale contends that Plaintiffs' claims are barred under the government contractor immunity defense.[95]

### iii. Preemption by the LHWCA

Finally, Avondale argues that one or more of Plaintiffs' claims are preempted or barred by the LHWCA.[96] Avondale asserts that Decedent worked on the Lykes vessels while they were in the water, and therefore he is covered by the LHWCA.[97] Avondale argues that the applicable law is determined at the time the disease manifests itself, and here Decedent was not diagnosed with lung cancer until 2017.[98] Under the current version of the LHWCA, Avondale contends, Plaintiffs' state law tort action against Avondale, Decedent's employer, is barred.[99]

### C. *Plaintiffs' Arguments in Further Support of the Motion to Remand*

In reply, Plaintiffs argue that (1) removal is untimely; (2) even if Plaintiffs alleged strict liability, this Court has already ruled that Decedent was not exposed to asbestos on a government

---

[92] *Id.* at 32–33.

[93] *Id.* at 34.

[94] *Id.* at 35.

[95] *Id.* at 36.

[96] *Id.*

[97] *Id.* at 44.

[98] *Id.* at 38.

[99] *Id.* at 36.

vessel; (3) Plaintiffs have not alleged strict liability against Avondale; (4) no federal interest is implicated with regard to exposure on non-government vessels; (5) Avondale does not have a colorable federal defense in this case.[100]

First, Plaintiffs argue that removal is untimely.[101] Plaintiffs contend that Avondale based its removal on Decedent's exposure to asbestos aboard the Lykes vessels, which Decedent testified about on April 23, 2018.[102] Therefore, Plaintiffs assert "any argument regarding Lykes vessels implicating a federal interest would be untimely."[103]

Second, Plaintiffs contend that even if Plaintiffs have alleged strict liability against Avondale, this Court has already ruled that Decedent was not exposed to asbestos on a government vessel.[104] Plaintiffs argue that the issue of whether Decedent came in contact with asbestos aboard a government vessel was already decided the first time this matter was removed.[105] Plaintiffs assert that this Court already determined that Decedent did not come into contact with asbestos aboard a government vessel, and that therefore, no federal interest is implicated.[106] Plaintiffs argue that if Avondale disagreed with this Court's prior holding, it should have appealed the decision to remand.[107]

---

[100] Rec. Doc. 14.

[101] *Id.* at 1.

[102] *Id.*

[103] *Id.*

[104] *Id.* at 2–4.

[105] *Id.* at 2.

[106] *Id.* at 2–3 (citing *Dempster v. Lamorak Ins. Co.*, 2019 U.S. Dist. LEXIS 2118, *12 (E.D. La. 2019)).

[107] *Id.* at 3–4.

Third, Plaintiffs contend that they have not alleged strict liability against Avondale.[108] Plaintiffs argue that while the proposed jury charges and jury interrogatories include strict liability references, those claims are against other parties, not Avondale.[109] Plaintiffs assert that in the Fifth Circuit, the information supporting removal must be unequivocally clear and certain and that here, the documents relied upon by Avondale supporting removal are not clear.[110] Plaintiffs argue that the proposed interrogatories, proposed jury charges and Joint Pre-Trial Outline do not alter the allegations set forth in the petition, which Plaintiffs argue do not assert strict liability claims.[111]

Fourth, Plaintiffs assert that no federal interest is implicated with regard to exposure on non-government vessels.[112] Plaintiffs contend that this Court previously held that no federal interest is implicated and that therefore, *res judicata* applies.[113] Plaintiffs argue that there is no evidence indicating that Decedent was exposed to asbestos aboard any government vessel.[114] Plaintiffs contend that Decedent was only exposed to asbestos aboard Lykes vessels, which Plaintiffs contend are not government vessels.[115] Furthermore, Plaintiffs contend that the Lykes Brothers chose to build the vessels as part of the CDS program in order to save money, and that such a discretionary decision pertaining to a commercial vessel does not warrant federal officer

---

[108] *Id.* at 4.

[109] *Id.*

[110] *Id.* at 5 (citing *Morgan v. Huntington Ingalls*, 879 F.3d 602 608-609 (5th Cir. 2018).

[111] *Id.* at 5–6.

[112] *Id.* at 9.

[113] *Id.*

[114] *Id.*

[115] *Id.* at 9–10.

removal because no federal interests is implicated.[116]

Fifth and lastly, Plaintiffs argue that Avondale does not have a colorable federal defense in this case.[117] Plaintiffs first contend that Avondale's arguments regarding derivative sovereign immunity and government contractor defense are inapplicable because the challenged conduct at issue here is the failure to warn, train in the proper use of asbestos, and adopt procedures for safe handling.[118] Finally, Plaintiffs argue that their state law claims are not preempted by the LHWCA because a plaintiff may pursue state tort remedies if there is concurrent jurisdiction.[119]

### III. Legal Standard

Pursuant to 28 U.S.C. § 1442(a)(1), a civil action commenced in state court against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office" may be removed to federal court. The purpose of the federal officer removal statute is to protect the Federal Government from undue state interference of its lawful activities.[120] Before Section 1442(a)(1) was amended in 2011, a person acting under a federal officer could only remove a case to federal court if the state lawsuit was "for any act under color of such office;" after the 2011 amendment, Section 1442 allows removal of a state suit "for *or relating to* any act under color of such office."[121] According to the Fifth Circuit, "[t]he plain

---

[116] *Id.* at 10–11.

[117] *Id.* at 11–17.

[118] *Id.* at 11–12.

[119] *Id.* at 15.

[120] *See Mesa v. California*, 489 U.S. 121, 126 (1989); *Bartel v. Alcoa Steamship Co.*, 64 F. Supp. 3d 843, 852–53 (M.D. La. 2014), *aff'd sub nom. Bartel v. Alcoa S.S. Co.*, 805 F.3d 169 (5th Cir. 2015); *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC*, 809 F. Supp. 2d 524, 529 (E.D. La. 2011) (Vance, J.).

[121] 28 U.S.C. § 1442(a)(1) (emphasis added); *Zeringue v. Crane Co.*, 846 F.3d 785, 793 (5th Cir. 2017) (discussing the 2011 amendment).

meaning of the added language broadens the scope of the statute as the ordinary meaning of [the phrase 'relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'"[122]

Unlike the general removal statute, which must be strictly construed in favor of remand, the federal officer removal statute's language must be liberally interpreted.[123] Nonetheless, its "broad language is not limitless."[124] It is the removing party's burden to establish the existence of federal jurisdiction over the controversy.[125] An order remanding a case to state court that was removed pursuant to the federal officer removal statue is appealable under 28 U.S.C. § 1447(d) and is reviewed *de novo* by the Fifth Circuit, "without a thumb on the remand side of the scale."[126]

The Fifth Circuit has adopted a three-part inquiry to determine whether a government contractor qualifies as a "person acting under [a federal] officer" who is sued "in an official or individual capacity, for or relating to any act under color of such office."[127] The contractor must prove that: (1) it is a "person" within the meaning of the statute; (2) it acted pursuant to a federal officer's directions, and a causal nexus exists between its actions under color of federal office and the plaintiff's claims; and (3) it has a colorable federal defense to the plaintiff's claims.[128]

---

[122] *Zeringue*, 846 F.3d at 793 (quotation marks omitted).

[123] *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998) ("Furthermore, this right is not to be frustrated by a grudgingly narrow interpretation of the removal statute."); *Bartel*, 64 F. Supp. 3d at 852–53; *St. Bernard Port, Harbor & Terminal Dist.*, 809 F. Supp. 2d at 529.

[124] *Watson*, 551 U.S. at 147; *Winters*, 149 F.3d at 397.

[125] *Winters*, 149 F.3d at 397; *St. Bernard Port, Harbor & Terminal Dist.*, 809 F. Supp. 2d at 530.

[126] *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 460 (5th Cir. 2016).

[127] *Id* at 461; *St. Bernard Port, Harbor & Terminal Dist.*, 809 F. Supp. 2d at 529.

[128] *Winters*, 149 F.3d at 397; *Savoie*, 817 F.3d at 461-62; *St. Bernard Port, Harbor & Terminal Dist.*, 809 F. Supp. 2d at 529.

## IV. Analysis

On January 7, 2019, this Court remanded the case to the Civil District Court for the Parish of Orleans.[129] The Court found that Defendants presented no evidence that Decedent came into contact with asbestos aboard a government vessel, and thus, no federal interest was implicated.[130] Alternatively, even accepting Defendants' argument that Decedent came into contact with asbestos aboard a government vessel as true, the Court did not find that the necessary causal nexus existed between Federal Government action and Decedent's claims.[131] This determination was based on the fact that Decedent brought negligence claims, rather than strict liability claims, against Avondale Interests.[132] Defendants did not appeal the January 7, 2019 Order.

In the second notice of removal, Avondale once again alleges that removal is proper because this is an action "for or relating to conduct under color of federal office commenced in a state court against persons acting under one or more federal officers within the meaning of 28 U.S.C. § 1442(a)(1)."[133] In the second notice of removal, Avondale contends that the jury interrogatories, jury charges, and Pre-Trial Order recent filings by Plaintiffs in state court directly contradict Decedent's prior representation in federal court that he was not asserting strict liability claims against Avondale.[134] Before deciding whether the three-part test for federal officer removal is met, the Court must consider the procedural issues raised: (1) whether the notice of removal was timely filed and (2) whether Plaintiffs' pretrial filings were a proper basis for this second removal.

---

[129] Case No. 18-6158, Rec. Doc. 89.

[130] *Id.* at 31.

[131] *Id.*

[132] *Id.* at 36–37.

[133] Rec. Doc. 1 at 2.

[134] *Id.* at 4–5.

*A.*     *Procedural Issues*

     1.      **Timeliness of Removal**

Avondale asserts that it timely removed this case to federal court on January 9, 2020 within 30 days of the filing of Plaintiffs' Pre-Trial Order, jury interrogatories, and jury charges.[135] Avondale contends that these pleadings were the first "other paper" from which Avondale could ascertain that this case had become subject to removal based on Plaintiffs' intention to pursue strict liability claims against Avondale.[136] In response, Plaintiffs argue that the removal was untimely.[137] Plaintiffs contend that Avondale based its removal on Decedent's exposure to asbestos aboard Lykes vessels, which Decedent testified about on April 23, 2018.[138] Therefore, Plaintiffs assert "any argument regarding Lykes vessels implicating a federal interest would be untimely."[139]

28 U.S.C. § 1446(b) governs the time limitations for removal of a case to federal court.[140] Generally, a notice of removal must be filed within 30 days of the defendant receiving a copy of the initial pleading.[141] Yet, if the case is not originally removable, but it later becomes removable, a party may file a notice of removal within 30 days after the defendant receives "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained" that the

---

[135] Rec. Doc. 12 at 16.

[136] *Id.*

[137] Rec. Doc. 14 at 1.

[138] *Id.*

[139] *Id.*

[140] 28 U.S.C. § 1446(c) provides that for removal based on diversity of citizenship, a case may not be removed pursuant to 28 U.S.C. § 1446(b)(3) more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action. Here, removal is not based on diversity, and therefore the 1-year time limitation does not apply.

[141] 28 U.S.C. § 1446(b)(1).

case is removable.[142] "The information supporting removal in a copy of an amended pleading, motion, order or other paper . . . must be unequivocally clear and certain to start the time limit running."[143]

Here, the jury interrogatories, jury charges, and Pre-Trial Order evidence an intent to hold Avondale liable under a theory of strict liability contrary to Decedent's representations when the case was first removed. These pretrial filings were the first "other paper" from which Avondale could ascertain that this case had become removable, because that was the first instance in which Plaintiffs indicated they would pursue strict liability claims against Avondale. Plaintiffs filed the proposed jury interrogatories, jury charges, and Pre-Trial Order on January 3, 2020.[144] Avondale removed on January 9, 2020, only six days later.[145] Accordingly, the removal was timely.

### 2. The Second Removal

Plaintiffs argue that the issue of whether Decedent came into contact with asbestos aboard a government vessel was already judicially determined by this Court the first time this matter was removed and that therefore, *res judicata* applies.[146] Plaintiffs contend that this Court previously found that Decedent did not come into contact with asbestos aboard a government vessel, and that therefore, no federal interest is implicated.[147] Plaintiffs argue that if Avondale disagreed with this Court's prior holding, it should have appealed the decision to remand.[148]

---

[142] *Id.* § 1446(b)(3).

[143] *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 608–09 (5th Cir. 2018) (citations and quotations omitted).

[144] Rec. Docs. 1-10, 1-11, 1-12.

[145] Rec. Doc. 1.

[146] Rec. Doc. 14 at 2, 9.

[147] *Id.* at 2–3 (citing *Dempster v. Lamorak Ins. Co.*, 2019 U.S. Dist. LEXIS 2118, *12 (E.D. La. 2019)).

[148] *Id.* at 3–4.

The mere fact that a case was previously removed and remanded does not automatically preclude a subsequent removal. "The Fifth Circuit recognizes a defendant's right to seek subsequent removals after remand."[149] "[A] defendant is precluded only from seeking a second removal *on the same ground*," meaning by referring to the same pleading or event that formed the basis of the initial removal.[150] Nevertheless, a defendant may file a second notice of removal when subsequent pleadings or events reveal a new and different basis for removal.[151]

In the first notice of removal, Avondale Interests alleged that the matter became removable upon receipt of the affidavit of Leroy Rome ("Mr. Rome") stating that Avondale insulators were exposed to asbestos aboard Navy Destroyer Escorts.[152] In the second notice of removal, Avondale contends that the matter became removable upon receipt of the jury interrogatories, jury charges, and Pre-Trial Order recently filed by Plaintiffs in state court, which Avondale contends contradict Decedent's prior representation in federal court that he was not asserting strict liability claims against Avondale.[153] The jury interrogatories, jury charges, and Pre-Trial Order, which formed the basis of the second removal, are clearly different from the Rome Affidavit, which formed the basis of the first removal. Therefore, Avondale is not precluded from removing the case for a second time because the second removal is based on different grounds.[154]

---

[149] S.*W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 492 (5th Cir. 1996) (citing *Browning v. Navarro*, 743 F.2d 1069, 1079–80 n. 29 (5th Cir. 1984)).

[150] *Id.* (emphasis in original).

[151] *Id.* at 492–93.

[152] Case No. 18-6158, Rec. Doc. 1 at 4.

[153] Rec. Doc. 1 at 4–5.

[154] S.*W.S. Erectors, Inc.*, 72 F.3d at 492.

*B.*     *Whether the Three-Part Test for Federal Officer Removal is Met*

As noted above, the Fifth Circuit has adopted a three-part inquiry to determine whether a government contractor qualifies as a "person acting under [a federal] officer" who is sued "in an official or individual capacity for any act under color of such office."[155] The contractor must prove that: (1) it is a "person" within the meaning of the statute; (2) it acted pursuant to a federal officer's directions, and a causal nexus exists between its actions under color of federal office and the plaintiff's claims; and (3) it has a colorable federal defense to the plaintiff's claims.[156] The removing defendant must satisfy all three prongs to support removal; if any one prong is lacking, remand to state court is justified.[157] Accordingly, the Court will address each prong in turn.

**1.      Whether Avondale is a Person Within the Meaning of the Statute**

With regard to the first factor, the parties do not dispute that Avondale, as a corporation, qualifies as a "person" within the meaning of Section 1442. Both the Supreme Court and the Fifth Circuit have recognized that the removal statute applies to both private persons and corporate entities "'who lawfully assist' the federal officer 'in the performance of his official duty.'"[158] Therefore, the Court finds that Avondale has sufficiently shown that the corporation is a "person" within the meaning of the federal officer removal statute.

**2.      Whether Avondale Acted Pursuant to a Federal Officer's Directions, and Whether a Causal Nexus Exists Between its Actions Under Color of Federal Office and Plaintiffs' Claims**

With regard to the second factor, Section 1442 requires a government contractor seeking

---

[155] *Id.*; *St. Bernard Port, Harbor & Terminal Dist.*, 809 F. Supp. 2d at 529.

[156] *Winters*, 149 F.3d at 397; *Savoie*, 817 F.3d at 461-62; *St. Bernard Port, Harbor & Terminal Dist.*, 809 F. Supp. 2d at 530.

[157] *Legendre v. Huntington Ingalls, Inc.,* 885 F.3d 398, 400 (5th Cir. 2018).

[158] *Savoie*, 817 F.3d at 461 (quoting *Watson*, 551 U.S. at 151 (quoting *Davis v. South Carolina*, 107 U.S. 597, 600 (1883))).

removal to establish that it (1) "acted pursuant to a federal officer's directions," which is sometimes phrased as "acting under" federal direction, and, (2) "that a causal nexus exists between the defendants' actions under color of federal office and the plaintiff's claims."[159]

### a. *Whether Avondale Acted Pursuant to a Federal Officer's Directions*

To determine whether a contractor is "acting under" federal direction in the context of federal contractor immunity, the Supreme Court has asked whether the contractor "is helping the Government to produce an item that it needs . . . [or is] perform[ing] a job that, in the absence of a contract with a private firm, the Government itself would have had to perform."[160] The Supreme Court has held that the term "acting under" is broad and must be "liberally construed,"[161] and must "refer to . . . a relationship that involves 'acting in a certain capacity, considered in relation to one holding a superior position or office.'"[162] This relationship "typically involves 'subjection, guidance, or control,'"[163] but, at a minimum, it "must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior."[164] Importantly, "[d]irect oversight of the specific acts that give rise to a plaintiff's complaint is not required to satisfy this part of § 1442."[165]

Plaintiffs argue that the issue of whether Decedent came in contact with asbestos aboard a government vessel was already judicially determined by this Court the first time this matter was

---

[159] *Winters*, 149 F.3d at 398.

[160] *Watson*, 551 U.S. at 153–54.

[161] *Id*. at 147.

[162] *Id*. at 151 (quoting 18 Oxford English Dictionary 948 (2d ed. 1989)).

[163] *Id*. (quoting Webster's New International Dictionary 2765 (2d ed. 1953)).

[164] *Id*. at 152.

[165] *Zeringue*, 846 F.3d at 792.

removed and that therefore, *res judicata* applies.[166] In the first notice of removal, regarding the "acting under" factor, Avondale Interests argued that Decedent was exposed to asbestos while working on Navy Destroyer Escorts, which were constructed by Avondale pursuant to a contract with the United States government.[167] In support of this argument, Avondale Interests presented an affidavit of Mr. Rome, who swore that "he and other insulators were 'exposed to asbestos by working with or around asbestos-containing materials while working on [Navy Destroyer Escorts] vessels,' that he knew that [Decedent] worked on the same [Navy Destroyer Escorts] that he did because '[Rome] would leave instructions for the night crew, which included [Decedent],' and that the duties of Avondale insulators included work with asbestos-containing products."[168] In the Remand Order, this Court concluded that Mr. Rome's testimony was insufficient to show that Decedent came into contact with asbestos aboard a government vessel because Mr. Rome, as a member of the night crew, confirmed that he never personally saw Decedent, a member of the day crew, working aboard government vessels, working in a boiler room, or exposed to asbestos.[169] Therefore, the Court held that Avondale Interests had not shown that a federal interest was implicated.[170]

In the second removal, regarding the "acting under" factor, Avondale now argues that Decedent's alleged asbestos exposure aboard Lykes vessels implicate a federal interest necessary to form the basis of a federal officer removal because Lykes vessels were partially financed by the

---

[166] Rec. Doc. 10-3 at 2, 9.

[167] Case No. 18-6158, Rec. Doc. 1 at 4.

[168] *Id.*

[169] *Dempster v. Lamorak Ins. Co.*, 2019 U.S. Dist. LEXIS 2118, *29 (E.D. La. 2019).

[170] *Id.*

government and were to be used in time of war.[171]

According to the affidavit of Christopher Herfel ("Mr. Herfel"), a maritime historian, the Lykes vessels were constructed under the provisions of Title V of the Merchant Marine Act of 1936, known as the Construction Differential Subsidy ("CDS") program.[172] Mr. Herfel states that the CDS program permitted the U.S. Maritime Administration ("MARAD") to pay for over half of the cost of new merchant ships to defray the cost of building the ships in U.S. commercial shipyards.[173] Mr. Herfel attests that ship plans and specifications were reviewed by both MARAD and the U.S. Navy, and the ship construction specifications all required the use of at least some asbestos-containing materials.[174] Additionally, Mr. Herfel states that the Navy required all ships receiving CDS funding to include Specific "National Defense Features" to ensure that the ships could be used as Naval Auxiliaries in time of war.[175] According to Mr. Herfel, the CDS payments were made directly to Avondale, and Avondale was obligated to build the vessels in strict accordance with the ship plans and specifications.[176]

In building these vessels, Avondale was "helping the Government to produce an item that it needs . . . [or was] perform[ing] a job that, in the absence of a contract with a private firm, the Government itself would have had to perform."[177] The Government needs vessels that can be used in a time of war. The CDS program allowed ship owners to obtain favorable financing from the

---

[171] Rec. Doc. 1 at 3; Rec. Doc. 12 at 12.

[172] Rec. Doc. 12-1 at 5.

[173] *Id.*

[174] *Id.*

[175] *Id.*

[176] *Id.*

[177] *Watson*, 551 U.S. at 153–54.

U.S. Maritime Administration, which paid a portion of the cost of building merchant ships.[178] In exchange, the government required that the ships be built according to certain specifications, so that they could be used in a time of war.[179] In *Wilde*, the Fifth Circuit found the mere fact that "the federal government would have had to build those ships had [the defendant] not done so" sufficient to satisfy the "acting under" requirement.[180] Here, the evidence presented establishes that had the Lykes vessels that Decedent worked on not been built, the government would have had to build similar vessels to be used as Naval Auxiliaries in a time of war. Therefore, the Court finds that the facts in the record are sufficient to establish that Avondale was "acting under" federal direction.

### 2. Whether a Causal Nexus Exists Between its Actions Under Color of Federal Office and the Plaintiff's Claims

In *Bartel v. Alcoa S.S. Company*, the Fifth Circuit explained that it is "necessary *but not sufficient* for a defendant to show it 'acted pursuant to a federal officer's directions,'" as the removing party must also show that a causal nexus exists.[181] In other words, there must be a causal nexus between the defendant's conduct and the government requirements.[182] Importantly, "mere federal involvement does not satisfy the causal nexus requirement; instead, the defendant must show that its actions taken pursuant to the government's direction or control caused the plaintiff's specific injuries."[183]

In *Bartel*, the Fifth Circuit instructed that, when considering whether a causal nexus exists

---

[178] Rec. Doc. 12-1 at 5.

[179] *Id.*

[180] *Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 713 (5th Cir. 2015) (per curiam).

[181] *Bartel*, 805 F.3d at 172 (emphasis added) (quoting *Winters*, 149 F.3d at 398).

[182] *Id.*

[183] *Savoie*, 817 F.3d at 462.

for removal, it is "important to understand the nature of the plaintiffs' allegations . . . [for] failure to warn, failure to train, and failure to adopt procedures for the safe installation and removal of asbestos."[184] Thus, the *Bartel* court opined that the proper approach for such negligence claims is to consider whether the Federal Government exercised control over safety requirements such that a failure to warn was caused by the Federal Government's instructions.[185] Because the defendants "[could] do no better than to show that the Federal Government owned the vessels in question" and did not produce evidence that the Federal Government issued orders relating to safety procedures or asbestos, the Fifth Circuit held that remand was proper.[186]

A year later in *Savoie v. Huntington Ingalls, Inc.*, the Fifth Circuit again held that, "with respect to the [plaintiff's] negligence claims, we agree with the district court that the federal government's mandate of asbestos insulation did not cause the shipyard to engage in the challenged conduct."[187] In other words, the Fifth Circuit concluded that negligence claims for failing to warn of the dangers of asbestos or to take safety precautions against asbestos exposure "did not challenge actions taken under color of federal authority even though the government was responsible for the existence of the asbestos."[188] The Fifth Circuit noted that the shipyard failed to demonstrate that its government contracts "prevented it from taking any of these protective measures identified by Plaintiffs," as an affidavit stating that the Navy inspected and oversaw the

---

[184] *Bartel*, 805 F.3d at 173.

[185] *Id.* (citing *Lalonde v. Delta Field Erection*, No. 96-3244, 1998 WL 34301466, at *1 (M.D. La. Aug. 6, 1998)).

[186] *Id.* at 174.

[187] *Savoie,* 817 F.3d at 462.

[188] *Id.*

vessels for safety was insufficient to trigger Section 1442(a)(1) jurisdiction.[189] The Fifth Circuit further pointed out that the other evidence presented made clear that the government had no control over the shipyard's safety procedures or safety department.[190] In sum, the Fifth Circuit concluded that because the plaintiff's negligence claims "challenge[d] discretionary acts of the shipyard free of federal interference" and "the government's directions to the shipyard via the contract specifications did not cause the alleged negligence," removal on those grounds was not proper.[191] The Fifth Circuit further determined, however, that the plaintiff's strict liability claims against the shipyard, which were premised on the "mere use of asbestos" and "do not turn on discretionary decisions made by the shipyard," supported federal officer removal.[192]

A line of similar asbestos cases before the Fifth Circuit culminated in *Legendre v. Huntington Ingalls, Inc.*, wherein the court again affirmed a district court order remanding an asbestos case to state court.[193] The plaintiffs in *Legendre* alleged that Huntington Ingalls failed to warn them of the risks of asbestos exposure and failed to implement proper safety procedures for handling asbestos.[194] Referencing earlier cases, the Fifth Circuit explained that strict liability claims that "rest[ ] on the mere use of asbestos" support removal because they are "causally linked to the [government's] requirement that its ships contain asbestos."[195] But negligently "failing to warn, train, and adopt safety procedures regarding asbestos" does not support removal because it

---

[189] *Id.* at 463.

[190] *Id.*

[191] *Id.*

[192] *Id.* at 465.

[193] *Legendre*, 885 F.3d at 398.

[194] *Id*. at 399.

[195] *Id.* at 401 (quoting *Savoie*, 817 F.3d at 465–66).

is "private conduct that implicate[s] no federal interest."[196]

Simply put, the causal nexus prong is established when a plaintiff seeks to recover on a theory of strict liability but is absent when the theory of recovery is restricted to negligence for failure to warn, train, and adopt safety procedures regarding asbestos. In the January 7, 2019 Order remanding this case for the first time, this Court found that the necessary causal nexus did not exist between Federal Government action and Decedent's claims.[197] This determination was based on the fact that Decedent brought negligence claims, rather than strict liability claims, against Avondale Interests.[198]

In the second notice of removal, Avondale contends that the jury interrogatories, jury charges, and Pre-Trial Order filings by Plaintiffs in state court directly contradict Decedent's prior representation in federal court that he was not asserting strict liability claims against Avondale.[199] In the instant motion to remand, Plaintiffs submit that they have not changed their allegations and are not alleging strict liability against the Avondale Interests.[200] Plaintiffs contend that they have not raised strict liability in either the petition or the amended petition, and to the extent they inadvertently included strict liability in the pretrial filings such inclusions do not change the allegations made in the petitions.[201]

In response, Avondale contends that the pretrial filings can properly form the basis for removal pursuant to 28 U.S.C. § 1446(b)(3), which recognizes that the receipt of "other paper"

---

[196] *Id.* at 402 (quoting *Zeringue*, 846 F.3d at 794).

[197] Case No. 18-6158, Rec. Doc. 89 at 31.

[198] *Id.* at 36–37.

[199] Rec. Doc. 1 at 4–5.

[200] Rec. Doc. 4-1 at 3.

[201] *Id.* at 3–4.

may form the basis of a removal.[202] In support, Avondale cites *Leboeuf v. Texaco*.[203] In *Leboeuf*, a district court in the Eastern District of Louisiana found that although neither the original petition nor the first supplemental and amended petition contained any reference to federal claims so as to place the defendant on notice for removal purposes, the plaintiffs' answer to an interrogatory, stating that one of the common legal and factual issues to be determined by the class action was the defendant's liability under the Federal Oil Pollution Act, raised an issue of federal law sufficient to trigger the thirty-day period for removal.[204]

In the Joint Pre-Trial Outline, Plaintiffs listed the issue of "[w]hether defendants are strictly liable" as a question of fact and law to be determined at trial.[205] The parties do not dispute that Plaintiffs bring strict liability claims against some of the defendants, and the Joint Pre-Trial Outline does not specifically reference a strict liability claim against Avondale. However, in the proposed jury interrogatories, Plaintiffs do include a question which would ask the jury to decide if the asbestos in the care, custody, or control of Avondale was "unreasonably dangerous per se" and a question which would ask the jury to decide whether asbestos in the care, custody, or control of Avondale was "unreasonably dangerous in composition."[206] In *Savoie v. Huntington Ingalls, Inc.*, the Fifth Circuit held that the plaintiff's claim that "'[a]ll defendants had care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of Mr. Savoie and for which these defendants are strictly

---

[202] Rec. Doc. 12 at 16–17. Avondale contends that Plaintiffs' Pre-Trial Order, jury interrogatories, and jury charges constitute "other paper" from which Avondale could ascertain that this case had become subject to removal based on Plaintiffs' intention to pursue strict liability claims against Avondale.

[203] *Leboeuf*, 9 F. Supp. 2d at 661.

[204] *Id.* at 664–65.

[205] Rec. Doc. 1-12 at 25.

[206] Rec. Doc. 1-10 at 5–6.

liable under Louisiana law'—are based on the mere use of asbestos on the ships and therefore fit the strict liability label," supported federal officer removal.[207]

Here, the proposed jury interrogatories demonstrate an intent to hold Avondale liable under a theory of strict liability contrary to Decedent's representations when the case was first removed. The Fifth Circuit has "previously recognized that strict liability claims support federal officer removal when the government obligates the defendant to use the allegedly defective product that causes the plaintiff's harm."[208] Avondale has presented evidence to show that the government required the use of some asbestos containing material in vessels constructed with CDS funds,[209] and Plaintiffs claim that Decedent was allegedly exposed to asbestos while working on those same vessels. Pursuant to the CDS program, Avondale was obligated to build the vessels in strict accordance with the ship plans and specifications, which included a requirement that Avondale use some asbestos containing material.[210] This is enough to show a causal nexus between the Plaintiffs' strict liability claims and Avondale's actions under the color of federal authority. Therefore, the Court finds that a causal nexus exists between its actions under color of federal office and the plaintiffs' claims.

Finally, Plaintiffs argue they are not bringing a strict liability claim, as no such claim is raised in either the petition or the amended petition. Louisiana Code of Civil Procedure article 1154 provides:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to

---

[207] *Savoie*, 817 F.3d at 463–64.

[208] *Id.* at 465.

[209] Rec. Doc. 12-1 at 5.

[210] *Id.*

conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Pursuant to Article 1154, a Louisiana state trial court has "broad discretion" to allow enlargement of the pleadings to conform to the evidence.[211] "So long as the facts constituting the claim or defense are alleged or proved, the party may be granted any relief to which he is entitled under the fact-pleadings and evidence."[212] Therefore, the fact that strict liability was not raised in the petitions would not in itself bar Plaintiffs from pursuing a strict liability claim in state court, and the pretrial filings Plaintiffs submitted to the state trial court show their intent to pursue strict liability claims against Avondale.

## C.     *Whether Avondale has Asserted a Colorable Federal Defense to Plaintiffs' Claims*

The third and final factor Avondale must prove is that it has a colorable federal defense to the plaintiff's claims.[213] The Federal Officer Removal Statute "permits a federal *defense*, which is generally statutorily impotent to establish subject matter jurisdiction, to serve as the federal question that endues the court with jurisdiction."[214] To succeed at the removal stage "defendants need not prove the asserted defense, but need only articulate its 'colorable' applicability to the

---

[211] *Brantley v. Kaler*, 43,418 (La. App. 2 Cir. 6/4/08), 986 So. 2d 188, 191

[212] *Greemon v. City of Bossier City*, 2010-2828 (La. 7/1/11), 65 So. 3d 1263, 1268 (quoting *Cox v. W.M. Heroman & Co., Inc.*, 298 So. 2d 848, 855 (La. 1974), *overruled on other grounds by A. Copeland Enterprises, Inc. v. Slidell Memorial Hosp.*, 94–2011, p. 9 (La.6/30/95), 657 So.2d 1292, 1299.

[213] *Winters*, 149 F.3d at 400; *Savoie*, 817 F.3d at 460; *St. Bernard Port, Harbor & Terminal Dist.*, 809 F. Supp. 2d at 529.

[214] *Zeringue*, 846 F.3d at 789 (internal citations omitted) (emphasis original).

plaintiff's claims."[215] While the Fifth Circuit has noted that the definition of "colorable" in the context of the Federal Officer Removal Statute remains undefined, the Fifth Circuit has clarified that a "non-colorable federal defense is a defense that is immaterial and made solely for the purpose of obtaining jurisdiction or that is wholly insubstantial and frivolous."[216]

Avondale raises three federal defenses to Plaintiffs' claims: derivative sovereign immunity, federal contractor immunity, and preemption by the LHWCA.[217] In response, Plaintiffs argue that these three defenses are not colorable.[218]

In *Boyle*, the Supreme Court explained that the government contractor immunity defense "provides immunity to contractors for conduct that complies with the specifications of a federal contract."[219] To establish a "colorable federal defense" using the government contractor immunity defense, a defendant must satisfy a three-part test: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."[220]

Regarding the first factor, the contractor must show that the federal government approved "reasonably precise specifications."[221] Here, a shipbuilder such as Avondale must show that the federal government approved reasonably precise specifications for the construction of the vessels

---

[215] *Winters*, 149 F.3d at 400.

[216] *Zeringue*, 846 F.3d at 790.

[217] Rec Doc. 1 at 10–11.

[218] Rec. Doc. 14 at 11.

[219] *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 375 (5th Cir. 2016) (citing *Boyle*, 487 U.S. at 500).

[220] *Boyle*, 487 U.S. at 512.

[221] *Id.*

in question.[222] In similar cases, the Fifth Circuit has held that a shipbuilding contractor satisfies this factor when the terms of the contract with the government mandated that the shipbuilding contractor build ships using asbestos-containing material.[223] Here, Avondale presented evidence to show that it built ships according to contracts with the federal government that required the use of at least some asbestos containing material.[224] Accordingly, Avondale has made a colorable showing that it could satisfy the first factor of *Boyle*.

With regard to the second factor, the contractor must show that the equipment conformed to the above-mentioned specifications.[225] Here, Avondale submitted affidavits and deposition testimony to show that it complied with the government's contract specifications requiring the use of asbestos-containing material.[226] In his affidavit, Danny Joyce, an industrial hygienist, states that inspectors for MARAD oversaw the construction of MARAD vessels, and these inspectors would determine whether the supplies used in the construction of the MARAD vessels were in compliance with the plans and specifications.[227] Similar evidence was deemed sufficient by the Fifth Circuit to satisfy this factor.[228] Accordingly, Avondale has made a colorable showing that it could satisfy the second factor of *Boyle*.

With regard to the third factor, the contractor must show that it warned the government

---

[222] *Rivera v. Huntington Ingalls, Inc.*, No. 18-6795, 2018 WL 4579826, at *3 (E.D. La. Sept. 25, 2018).

[223] *Zeringue*, 846 F.3d at 791–92; *Winters*, 149 F.3d at 400–01 (finding that the "'government contractor defense requires only that the government approve reasonably precise specifications' and that this factor was met where [the] government supplied the relevant specifications.").

[224] Rec. Doc. 12-1 at 5.

[225] *Boyle*, 487 U.S. at 512.

[226] Rec. Docs. 12-16 at 2, 3; 12-15 at 17; Rec. Doc. 12-2

[227] Rec. Doc. 12-2 at 2.

[228] *Zeringue*, 846 F.3d at 792.

about the dangers in the use of the equipment if those dangers were known to it but not to the government.[229] Avondale submitted the affidavit of Christopher Herfel, a maritime historian, and the affidavit of Danny Joyce, an industrial hygienist, to show that Avondale had no more information or knowledge than the government did about the dangers of asbestos at the time Avondale used asbestos-containing materials in its shipbuilding work.[230] Accordingly, Avondale has made a colorable showing that it could satisfy the third factor of *Boyle*.

To succeed at the removal stage, Avondale need only articulate a colorable defense, which is not "wholly insubstantial and frivolous."[231] Having made a colorable showing that it could satisfy the three Boyle factors, the Court finds that Avondale has stated a colorable defense of federal contractor immunity to Plaintiffs' strict liability claims. Accordingly, because the Court finds a colorable federal contractor immunity defense under *Boyle*, it need not reach Avondale's argument that it also has a colorable federal defense under the Longshore and Harbor Workers' Compensation Act and derivative sovereign immunity.

## V. Conclusion

In short, this case was properly removed to this Court under the federal officer removal statute. The notice of removal was timely filed and Plaintiffs' pretrial filings constitute a proper basis for the second removal. Additionally, Avondale met the three-part test for federal officer removal. Namely, (1) Avondale is a person within the meaning of the statute, (2) Avondale acted

---

[229] *Boyle*, 487 U.S. at 512.

[230] Rec. Docs. 12-1 at 8–9; 12-2 at 2–3 (concluding that "Avondale did not have any information regarding the hazards of asbestos that was not known by the Federal Government . . . .").

[231] *Zeringue*, 846 F. 3d at 790 (internal citation omitted). Plaintiffs does not dispute the merits of Avondale's government contractor defense, but rather argue that government contractor immunity does not apply to their negligence claims for failure to warn, train in the proper use of asbestos, and adopt procedures for safe handling. Rec. Doc. 14 at 11. However, the instant removal is based on Plaintiffs' strict liability claims. Therefore, this argument is of no moment to the instant analysis.

pursuant to a federal officer's directions and a causal nexus exists between its actions under color of federal office and plaintiffs' claims and (3) Avondale has a colorable federal defense to Plaintiffs' claims under the government contractor immunity defense.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' "Emergency Motion to Remand"[232] is **DENIED**.

**IT IS FURTHER ORDERED** that the parties must contact the Court's case manager by January 31, 2020 to conduct a scheduling conference and set a trial date.

**NEW ORLEANS, LOUISIANA,** this __28th__ day of January, 2020.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[232] Rec. Doc. 4.