UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CALLEN DEMPSTER, et al.                                    CIVIL ACTION

VERSUS                                                     CASE NO. 20-95

LAMORAK INSURANCE CO., et al.                              SECTION: "G"(1)

ORDER AND REASONS

Before the Court is Defendant Hopeman Brothers, Inc. ("Hopeman") and Third-Party Defendant Liberty Mutual Insurance Company's (collectively the "Hopeman Interests") "Motion for Partial Summary Judgment on Unsupported Claims for Financial and Economic Damages."[1] Defendants Foster Wheeler LLC and General Electric Company join this motion.[2] Plaintiffs Louise Ella Simon Dempster, Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Dempster, Jr., Annette Dempster Glad, and Barnett Dempster's (collectively, "Plaintiffs") oppose the motion.[3] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part and denies it in part.

I. Background

A.    Factual Background

In this litigation, Plaintiffs allege that Decedent Callen L. Dempster ("Decedent") was exposed to asbestos and asbestos-containing products that were designed, manufactured, sold, and/or supplied by a number of Defendant companies while Decedent was employed by Defendant

---

[1] Rec. Doc. 30.

[2] Rec. Docs. 83, 101.

[3] Rec. Doc. 95.

1

Huntington Ingalls Incorporated (f/k/a Northrop Grumman Shipbuilding, Inc., f/k/a Northrop Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc., and f/k/a Avondale Shipyards, Inc.) ("Avondale").[4] Plaintiffs allege that Decedent was employed by Avondale from 1962 to 1994.[5] During that time, Plaintiffs aver that Decedent was exposed to asbestos and asbestos-containing products in various locations and work sites, resulting in Decedent breathing in asbestos fibers and later developing asbestos-related cancer.[6] Plaintiffs assert strict liability and negligence claims against various Defendants.[7] Specifically, Plaintiffs allege that:

> All asbestos companies had care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of [Decedent] and for which these defendants are liable under Louisiana law. However, with regard to Avondale and its executive officers, they are liable because they failed to properly handle and control the asbestos which was in their care, custody, and control. Petitioners are not alleging that Avondale and its executive officers are liable for the mere use of asbestos; rather, Avondale and its executive officers are liable for the misuse of asbestos, including but not limited to the failure to warn of the hazardous nature and dangers of asbestos and for the failure to take and implement reasonably safe and industrial hygiene measures, failure to train, and failure to adopt safety procedures for the safe installation and removal of asbestos.[8]

## B.   *Procedural Background*

Decedent filed a "Petition for Damages" in the Civil District Court for the Parish of

---

[4] *See* Rec. Doc. 1-2; Rec. Doc. 1-8. In particular, Plaintiffs bring claims against Lamorak Insurance Company, Huntington Ingalls Inc., Albert Bossier, Jr., J. Melton Garrett, Eagle, Inc., Bayer Cropscience, Inc., Foster-Wheeler LLC, General Electric Co., Hopeman Brothers, Inc., McCarty Corporation, Taylor-Seidenbach, Inc., CBS Corporation, Uniroyal, Inc., International Paper Company, Houston General Insurance Company, Berkshire Hathaway Specialty Insurance Company, Northwest Insurance Company, United Stated Fidelity and Guaranty Company, Fist State Insurance Company, The American Insurance Company, Louisiana Insurance Guaranty Association, and the Traveler's Indemnity Company. Rec. Doc. 1-8 at 2–3.

[5] Rec. Doc. 1-2 at 5.

[6] *Id.*

[7] *Id.* at 7–8.

[8] *Id.*

Orleans, State of Louisiana, on March 14, 2018.[9] Defendants Huntington Ingalls Incorporated, Albert Bossier, Jr., J. Melton Garret, and Lamorak Insurance Company (the "Avondale Interests") removed the case to the United States District Court for the Eastern District of Louisiana for the first time on June 21, 2018.[10] In the first notice of removal, Avondale Interests alleged that removal was proper because this is an action "for or relating to conduct under color of federal office commenced in a state court against persons acting under one or more federal officers within the meaning of 28 U.S.C. § 1442(a)(1)."[11]

On January 7, 2019, this Court remanded the case to the Civil District Court for the Parish of Orleans.[12] The Court found that Defendants presented no evidence that Decedent came into contact with asbestos aboard a government vessel, and thus, no federal interest was implicated.[13] Alternatively, even accepting Defendants' argument that Decedent came into contact with asbestos aboard a government vessel as true, the Court did not find that the necessary causal nexus existed between Federal Government action and Decedent's claims.[14] This determination was based on the fact that Decedent brought negligence claims, rather than strict liability claims, against Avondale Interests.[15] Defendants did not appeal the January 7, 2019 Order.

Decedent passed away on November 24, 2018, and a First Supplemental and Amending

---

[9] *Id*. at 2–3

[10] Case No. 18-6158, Rec. Doc. 1 at 2.

[11] *Id*.

[12] Case No. 18-6158, Rec. Doc. 89.

[13] *Id*. at 31.

[14] *Id*.

[15] *Id*. at 36–37. The January 7, 2019 Order predated the Fifth Circuit's en banc decision in *Latiolais v. Huntington Ingalls, Inc.*, overruling prior precedent and holding that Avondale was entitled to remove a negligence case filed by a former Navy machinist because of his exposure to asbestos while the Navy's ship was being repaired at the Avondale shipyard under a federal contract. 951 F.3d 286, 289 (5th Cir. 2020).

Petition for Damages was filed in state court substituting Decedent's heirs as Plaintiffs on January 17, 2019.[16] Trial was scheduled to begin before the state trial court on January 13, 2020. [17] The amended petition does not purport to assert any strict liability claims against Avondale.[18]

On January 9, 2020, Avondale removed the case to the United States District Court for the Eastern District of Louisiana for a second time.[19] In the second notice of removal, Avondale once again alleged that removal is proper because this is an action "for or relating to conduct under color of federal office commenced in a state court against persons acting under one or more federal officers within the meaning of 28 U.S.C. § 1442(a)(1)."[20] In the second notice of removal, Avondale contended that the jury interrogatories, jury charges, and Pre-Trial Order filed by Plaintiffs in state court directly contradicted Decedent's prior representation in federal court that he was not asserting strict liability claims against Avondale.[21] On January 10, 2020, Plaintiffs filed an "Emergency Motion to Remand"[22] and an "Ex Parte Motion for Expedited Hearing and for Emergency Ruling."[23]

On January 28, 2020, the Court denied the motion to remand, finding that this case was properly removed to this Court under the federal officer removal statute.[24] Specifically, the Court

---

[16] Rec. Doc. 1-8.

[17] Rec. Doc. 1-12.

[18] Rec. Doc. 1-8.

[19] Rec. Doc. 1.

[20] *Id.* at 2.

[21] *Id.* at 4–5.

[22] Rec. Doc. 4.

[23] Rec. Doc. 5.

[24] Rec. Doc. 17.

found that the notice of removal was timely filed and Plaintiffs' pretrial filings constituted a proper basis for the second removal.[25] Additionally, the Court found that Avondale met the three-part test for federal officer removal, namely, that (1) Avondale is a person within the meaning of the statute, (2) Avondale acted pursuant to a federal officer's directions and a causal nexus exists between its actions under color of federal office and plaintiffs' claims, and (3) Avondale has a colorable federal defense to Plaintiffs' claims under the government contractor immunity defense.[26]

On February 18, 2020, the Hopeman Interests filed the instant "Motion for Partial Summary Judgment on Plaintiffs' Intentional Tort, Fraud and Concealment Claims."[27] Defendants Foster Wheeler LLC and General Electric Company join this motion.[28] On March 3, 2020, Plaintiffs filed an opposition to the instant motion.[29]

## II. Parties' Arguments

### A.   *The Hopeman Interests' Argument in Support of the Motion*

In the instant motion, the Hopeman Interests argue that certain categories of damages should be dismissed because "[d]iscovery has been completed and no evidence has been presented to support various items of financial and economic damages asserted by Plaintiffs."[30] The Hopeman Interests seek complete dismissal of the following categories of damages: (1) loss of

---

[25] *Id*. at 20–22.

[26] *Id*. at 23–36. The January 28, 2020 Order also predated the Fifth Circuit's en banc decision in *Latiolais*. In *Latiolais*, the Fifth Circuit held that "to remove under section 1442(a), a defendant must show (1) it has asserted a colorable federal defense, (2) it is a "person" within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions." 951 F.3d at 296. The Fifth Circuit overruled prior caselaw applying the "causal nexus" requirement to Section 1442(a) as amended in 2011. *Id*.

[27] Rec. Doc. 31.

[28] Rec. Docs. 83, 101.

[29] Rec. Doc. 95.

[30] Rec. Doc. 30-2 at 1.

income and expenses related to the injuries and death of Decedent; (2) increased costs of insurance and/or loss of fringe benefits; (3) pre-death loss of consortium; and (4) income lost by surviving family members.[31]

The Hopeman Interests acknowledge that this motion was originally filed while the case was pending in state court.[32] The Hopeman Interests acknowledge that the state court judge denied a motion filed by the Avondale Interests, which contained one similar issue—whether income loss by a surviving family member in a wrongful death suit is recognizable under Louisiana law.[33] However, the Hopeman Brothers note that the state court did not rule on their motion before the case was removed to federal court.[34]

First, the Hopeman Interests contend that Plaintiffs have not set forth any factual or evidentiary basis for Decedent's alleged lost income and/or earning capacity.[35] According to the Hopeman Interests, Plaintiffs' economic expert, Shael Wolfson, PhD, testified during his deposition that he did not expect to reach any opinions in this matter as it relates to lost income and/or loss of earning capacity.[36] Therefore, the Hopeman Interests assert that summary judgment on these issues should be granted.[37]

Second, the Hopeman Interests assert that Plaintiffs have failed to provide any evidence that Decedent sustained damages in the form of increased cost of insurance and/or loss of fringe

---

[31] *Id.* at 2.

[32] *Id.* at 1–2.

[33] *Id.* at 1.

[34] *Id.* at 1–2.

[35] *Id.* at 4.

[36] *Id.*

[37] *Id.* at 5.

benefits.[38] Therefore, the Hopeman Interests argue that they are entitled to summary judgment on these issues.[39]

Third, the Hopeman Interests contend that "it is unclear whether Plaintiffs' claim for loss of consortium is sought on behalf of Mr. Dempster (as part of the survival action) or his wife and children (as part of the wrongful death action)."[40] To the extent Plaintiffs intend to seek loss of consortium damages as a component of the survival action, the Hopeman Interests argue such damages are not available under Louisiana law "[b]ecause loss of consortium is not an injury to the person who bore the direct impact of the defendant's negligence but to another person whose relationship to the primary victim is diminished as a consequence."[41] Moreover, the Hopeman Interests allege that pre-death loss of consortium damages are also unavailable as part of Plaintiffs' wrongful death action because the exposures to asbestos occurred before Louisiana Civil Code article 2315 was amended in 1982.[42] Therefore, to the extent Plaintiffs are seeking pre-death loss of consortium damages, the Hopeman Interests assert they are entitled to summary judgment on this issue.[43]

Fourth, the Hopeman Interests argue that Louisiana law does not provide for recovery of income loss by a surviving family member in a wrongful death suit.[44] The Hopeman Interests contend that Plaintiffs have not set forth any evidence of lost income, and even if such evidence

---

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.* at 6 (quoting *Ferrell v. Fireman's Fund Ins. Co.*, 696 So. 2d 569, 574 (La. 1997)).

[42] *Id.* (citing *Landry v. Avondale Industries, Inc.*, No. 03-CC-019 (La. 12/03/03); 864 So. 2d 117).

[43] *Id.*

[44] *Id.* (citing *Morgan v. Cenac*, 634 So. 2d 60, 64 (La. App. 4 Cir. 1994)).

had been proffered, the Hopeman Interests contend it would be irrelevant.[45]

## B.     *Plaintiffs' Argument in Opposition to the Motion*

In the opposition memorandum, Plaintiffs first clarify that they are not pursuing recovery of damages for increased costs of insurance or for loss of fringe benefits against the Hopeman Interests, Foster Wheeler or General Electric Company.[46]

With regard to recovery of lost income and loss of earnings capacity of Decedent, Plaintiffs assert that the state court denied an identical motion for partial summary judgment filed by the Hopeman Interests' co-defendants in state court.[47] Similarly, with regard to recovery of lost income for the surviving family members, Plaintiffs contend that the state court denied an identical motion for partial summary judgment filed by the Hopeman Interests' co-defendants in state court.[48]

Next, Plaintiffs contend that they are entitled to recover damages for Decedent's loss of income and expenses related to the injuries and death of Decedent.[49] Plaintiffs assert that Decedent testified during his perpetuation deposition about the profound impact his lung cancer had on his abilities, including hindering his ability to hunt, fish, and garden.[50] Even though Decedent was not employed at the time he developed lung cancer, Plaintiffs contend that he is entitled to an award for loss, impairment, or diminution of his ability to earn money under Louisiana law.[51]

---

[45] *Id*. at 8.

[46] Rec. Doc. 95 at 2.

[47] *Id*.

[48] *Id*.

[49] *Id*. at 3.

[50] *Id*. at 3–4.

[51] *Id*. at 4–5 (citing *Folse v. Fakouri*, 371 So. 2d 1120, 1123 (La. 1979); *Hobgood v. Aucoin*, 574 So. 2d 344

Furthermore, Plaintiffs assert that loss of earning capacity can be established by Plaintiffs' testimony alone, and an expert is not required to establish loss of income and earnings capacity.[52] Therefore, Plaintiffs contend that they will present competent evidence at trial regarding Decedent's loss of income and loss of earning capacity through the testimony of Decedent himself and his family members.[53]

Next, Plaintiffs acknowledge that they cannot recover for pre-death loss of consortium claims pertaining to the surviving plaintiffs because that cause of action was created by the 1982 amendment to Article 2315, and the amendment is not retroactive.[54] However, Plaintiffs assert that they can recover for the pre-death loss of consortium damages that constitute an element of Decedent's own damages, which Plaintiffs assert have always been an element of general damages under Louisiana law.[55] Therefore, Plaintiffs contend that they should also be allowed to present evidence of Decedent's own loss of consortium, which constitutes a part of his own "loss of enjoyment" or hedonic damages in this case.[56]

Finally, Plaintiffs contend that they can recover damages for their own loss of income and expenses.[57] According to Plaintiffs, if the defendants' actions caused Decedent to develop lung cancer, which in turn caused Plaintiffs a loss of income while caring for Decedent, then the

---

(La. 1990)).

[52] *Id*. at 6 (citing *Green v. Superior Oil Company*, 441 So. 2d 54 (La. App. 3 Cir. 1983); *Veazey v. State Farm Mutual Automobile Insurance*, 587 So. 2d 5 (La. App. 3 Cir. 1991).

[53] *Id*.

[54] *Id*. at 6–7.

[55] *Id*.

[56] *Id*. at 8.

[57] *Id*. at 12.

defendants are obliged to compensate Plaintiffs for that loss of income.[58] Plaintiffs assert that loss of income and loss of earning capacity can be established by Plaintiffs' testimony alone, and Plaintiffs will offer testimony at trial regarding how they assumed the role of Decedent's caretakers after he developed lung cancer.[59] Furthermore, Plaintiffs note that their economic expert, Dr. Shael Wolfson, actually calculated the cost of the around-the-clock care provided to Decedent.[60] Therefore, Plaintiffs assert that they will present competent evidence regarding their own loss of income and expenses at trial.[61]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[62] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[63] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[64] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party,"

---

[58] *Id.* at 13.

[59] *Id.* at 14.

[60] *Id.* at 19.

[61] *Id.* Plaintiffs then point to evidence to support other categories of damages not referenced in the motion for summary judgment or the memorandum in support of the motion. *Id.* at 19–25. Accordingly, the Court does not discuss those categories of damages in this Order and Reasons.

[62] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[63] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[64] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[65] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[66]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[67] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[68] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[69] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[70] Rather, a factual dispute precludes a grant of summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[71] Further, a court "resolve[s] factual controversies in favor of the nonmoving party, but only when there is an actual

---

[65] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[66] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[67] *Celotex*, 477 U.S. at 323.

[68] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[69] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

[70] *Little*, 37 F.3d at 1075.

[71] *Anderson*, 477 U.S. at 248.

controversy, that is, when both parties have submitted evidence of contradictory facts."[72] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[73] Ultimately, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[74]

## IV. Analysis

The Hopeman Interests seek complete dismissal of the following categories of damages: (1) loss of income and expenses related to the injuries and death of Decedent; (2) increased costs of insurance and/or loss of fringe benefits; (3) pre-death loss of consortium; and (4) income lost by surviving family members.[75] The Court addresses each of these issues in turn.[76]

### A.   *Loss of Income and Expenses Related to the Injuries and Death of Decedent*

First, the Hopeman Interests contend that Plaintiffs have not set forth any factual or evidentiary basis for Decedent's alleged lost income and/or earning capacity.[77] According to the Hopeman Interests, Plaintiffs' economic expert, Shael Wolfson, PhD, testified during his deposition that he did not expect to reach any opinions in this matter as it relates to lost income and/or loss of earning capacity.[78] In opposition, Plaintiffs contend that they are entitled to recover

---

[72] *Little*, 37 F.3d at 1075.

[73] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[74] *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993).

[75] Rec. Doc. 30-2 at 2.

[76] The motion for summary judgment at issue was filed while the case was pending in state court, but the state court judge did not rule on the motion before the case was removed to this Court. Accordingly, the Court does not apply reconsideration standards to the instant motion.

[77] Rec. Doc. 30-2 at 4.

[78] *Id.*

damages for Decedent's loss of income and expenses related to the injuries and death of Decedent.[79] Even though Decedent was not employed at the time he developed lung cancer, Plaintiffs contend that he is entitled to an award for loss, impairment, or diminution of his ability to earn money under Louisiana law.[80] Furthermore, Plaintiffs assert that loss of earning capacity can be established by Plaintiffs' testimony alone, and an expert is not required to establish loss of income and earnings capacity.[81]

Louisiana Civil Code article 2315(A) provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Under Louisiana law there is a distinction between loss of future earnings (wages) and loss of future earning capacity.[82] As the Louisiana Supreme Court has explained:

> Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily.[83]

Furthermore, loss of earning capacity can be established by a plaintiff's testimony alone, and an expert is not required to establish loss of income and earnings capacity.[84]

---

[79] Rec. Doc. 95 at 3.

[80] *Id*. at 4–5.

[81] *Id*. at 6.

[82] *See Folse v. Fakouri*, 371 So. 2d 1120, 1123–24 (La. 1979). *See also Hobgood v. Aucoin*, 574 So. 2d 344 (La. 1990)).

[83] *Id*.

[84] *Green v. Superior Oil Company*, 441 So. 2d 54, 56 (La. App. 3 Cir. 1983) (citing *Bize v. Boyer*, 402 So. 2d 110 (La. App. 3 Cir. 1981), affirmed, 408 So. 2d 1309 (La. 1982). *See also Finnie v. Vallee*, 620 So. 2d 897, 901 (La. App. 4 Cir.), writ denied, 625 So. 2d 1040 (La. 1993) ("While the plaintiff at all time has the burden of persuasion by the preponderance of the evidence regarding his earning capacity before and after the accident, proof need only be that which would reasonably establish the claim. Expert testimony of an economist might best prove this type of loss. However, the plaintiff's own testimony, if credible and truthful, may suffice in proving his claim.").

Plaintiffs point to Decedent's perpetuation deposition testimony to show the impact his lung cancer had on his ability to perform certain tasks.[85] This evidence may be considered by the jury in determining whether Decedent suffered a loss of earning capacity. Accordingly, there are disputed issues of material fact precluding summary judgment on this issue.

**B.     *Increased Costs of Insurance or Loss of Fringe Benefits***

The Hopeman Interests assert that Plaintiffs have failed to provide any evidence that Decedent sustained damages in the form of increased cost of insurance and/or loss of fringe benefits.[86] In the opposition memorandum, Plaintiffs clarify that they are not pursuing recovery of damages for increased costs of insurance or for loss of fringe benefits against the Hopeman Interests, Foster Wheeler or General Electric Company.[87] Accordingly, the Court grants the motion for summary judgment to the extent it seeks dismissal of Plaintiffs' request for recovery of damages for increased costs of insurance or for loss of fringe benefits.

**C.     *Pre-Death Loss of Consortium***

To the extent Plaintiffs intend to seek loss of consortium damages as a component of the survival action, the Hopeman Interests argue such damages are not available under Louisiana law "[b]ecause loss of consortium is not an injury to the person who bore the direct impact of the defendant's negligence but to another person whose relationship to the primary victim is diminished as a consequence."[88] Moreover, the Hopeman Interests allege that pre-death loss of consortium damages are also unavailable as part of Plaintiffs' wrongful death action because the

---

[85] Rec. Doc. 95-5 at 4.

[86] Rec. Doc. 30-2 at 5.

[87] Rec. Doc. 95 at 2.

[88] Rec. Doc. 30-2 at 6 (quoting *Ferrell v. Fireman's Fund Ins. Co.*, 696 So. 2d 569, 574 (La. 1997)).

exposures to asbestos occurred before Louisiana Civil Code article 2315 was amended in 1982.[89] In response, Plaintiffs acknowledge that they cannot recover for pre-death loss of consortium claims pertaining to the surviving plaintiffs because that cause of action was created by the 1982 amendment to Article 2315, and the amendment is not retroactive.[90] However, Plaintiffs assert that they can recover for the pre-death loss of consortium damages that constitute an element of Decedent's own damages, which Plaintiffs assert have always been an element of general damages under Louisiana law.[91]

Louisiana Civil Code article 2315 provides in pertinent part:

A.   Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

B.   Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person. . . .

Plaintiffs do not dispute that they cannot recover for pre-death loss of consortium claims pertaining to the surviving plaintiffs because that cause of action was created by the 1982 amendment to Article 2315, and the amendment is not retroactive.[92] Therefore, summary judgment is granted on this issue.

Plaintiffs contend that they should be able to recover for Decedent's pre-death loss of consortium as part of their survival action. In *McGee v. A C And S, Inc.*, the Louisiana Supreme

---

[89] *Id.*

[90] Rec. Doc. 95 at 6–7.

[91] *Id.*

[92] *See Landry v. Avondale Industries, Inc.*, No. 03-019 (La. 12/03/03); 864 So. 2d 117, 124. ("[B]ecause the amendment to La.C.C. art. 2315 created a cause of action for loss of consortium, the application of that article to the facts of this case would be an impermissible retroactive application of the law because it would go back to the past to evaluate the conditions of the legality of the defendants' conduct, which occurred before the 1982 amendment.").

Court explained the distinction between damages for loss of enjoyment of life and loss of consortium.[93] As the Louisiana Supreme Court explained, a tort victim may "be compensated for the damage sustained as a result of the delict, including those for loss of enjoyment of life, if proven."[94] "Loss of enjoyment of life, sometimes known as hedonic damages, refers to the detrimental alterations of a person's life or lifestyle or a person's inability to participate in the activities or pleasures of life that were formerly enjoyed."[95] Damages for loss of enjoyment of life are considered "general damages because it involves the quality of a person's life, which is inherently speculative and cannot be measured definitively in terms of money."[96]

However, the Louisiana Supreme Court clarified that "although a separate award for loss of enjoyment of life may be recoverable by the primary tort victim for the loss of enjoyment of life sustained during the victim's lifetime, it is not recoverable by the primary tort victim's family members who are eligible to recover for loss of consortium, service and society" under Louisiana Civil Code article 2315(B).[97] "Loss of consortium is a harm to relational interest which occurs when the other party to the relationship suffers physical harm (invasion of an interest or personality)."[98] "A family member's detrimental alteration in lifestyle, i.e. loss of enjoyment of life, results from the diminished relationship with the primary tort victim and therefore is already

---

[93] *McGee v. A C And S, Inc.*, 05-1035 (La. 7/10/06); 933 So. 2d 770.

[94] *Id*. at 774.

[95] *Id*. at 773 (citing *Day v. Ouachita Parish Sch. Bd.*, 35,831, p. 8 (La. App. 2 Cir. 8/8/02); 823 So. 2d 1039, 1044).

[96] *Id*. at 774.

[97] *Id*. at 779.

[98] *Id*. (citing *Ferrell v. Fireman's Fund Ins. Co.*, 96-3028, p. 8 (La.7/1/97); 696 So. 2d 569, 574).

compensated with an award for loss of consortium."[99] "Allowing family members to recover for both their loss of consortium and their loss of enjoyment of life would be duplicative and would not be authorized" by Article 2315(B).[100]

Conversely, a primary tort victim cannot recover damages for loss of consortium because the primary tort victim is entitled to recover damages for loss of enjoyment of life.[101] In *Brock v. Singleton*, the Louisiana Fifth Circuit Court of Appeal considered this issue.[102] There, the jury awarded damages to the primary tort victim for loss of consortium and loss of enjoyment of life.[103] The primary tort victim argued that "he proved interference with the sexual, social, and services aspect of his relationship with his spouse, and that such damages, although usually awarded as an undesignated part of general damages, were simply noted separately in this case."[104] Although a jury may award damages for such impacts on the primary tort victim as general damages, the Louisiana Fifth Circuit found that it was error to list loss of consortium as a separate item of damages for the primary tort victim, and reversed that portion of the judgment.[105]

At trial, Plaintiffs may present evidence of the impact Decedent's lung cancer had on his life, including any detrimental alterations of Decedent's life or lifestyle or Decedent's inability to participate in the activities or pleasures of life that were formerly enjoyed. However, any such

---

[99] *Id.*

[100] *Id.*

[101] *See Brock v. Singleton*, 10-550 (La. App. 5 Cir. 3/29/11); 65 So. 3d 649, writ denied, 2011-1216 (La. 9/23/11); 69 So. 3d 1160.

[102] *Id.*

[103] *Id.* at 656.

[104] *Id.* at 657.

[105] *Id.*

damages that Decedent incurred are recoverable as general damages or damages for loss of enjoyment of life, not damages for loss of consortium. Accordingly, because there are no material facts in dispute, the Hopeman Interests are entitled to judgment as a matter of law dismissing Plaintiffs' request for recovery of pre-death loss of consortium damages.

**D.      Loss of Income by Surviving Family Members**

Finally, the Hopeman Interests argue that Louisiana law does not provide for recovery of income loss by a surviving family member in a wrongful death suit.[106] The Hopeman Interests contend that Plaintiffs have not set forth any evidence of lost income, and even if such evidence had been proffered, the Hopeman Interests contend it would be irrelevant.[107] In response, Plaintiffs contend that they can recover damages for their own loss of income and expenses.[108] According to Plaintiffs, if the defendants' actions caused Decedent to develop lung cancer, which in turn caused Plaintiffs a loss of income while caring for Decedent, then the defendants are obliged to compensate Plaintiffs for that loss of income.[109]

The Hopeman Interests cite *Morgan v. Cenac* to support their argument.[110] In *Morgan v. Cenac*, the plaintiffs argued that "when one spouse becomes incapacitated and the other spouse terminates his employment to care for the injured spouse, the tortfeasor is liable for the lost wages caused by this employment termination."[111] The plaintiffs asserted that this lost income was

---

[106] Rec. Doc. 30-2 at 7.

[107] *Id*. at 8.

[108] Rec. Doc. 95 at 12.

[109] *Id*. at 13.

[110] 634 So. 2d 60 (La. App. 4 Cir. 1994).

[111] *Id*. at 62.

recognizable as a portion of a loss of consortium claim or, alternatively, as general damages.[112] The Louisiana Fourth Circuit Court of Appeal held that the primary tort victim was entitled to recover the cost of care and other services that were required as a result of her injuries, and the spouse of the primary tort victim was entitled to recover for the loss of his wife's services and support to the community.[113] However, the appellate court determined that the plaintiffs could not recover for a loss of the spouse's earning capacity or early retirement.[114]

In *Keeth v. State Through Department of Public Safety & Transportation*, the Louisiana Second Circuit Court of Appeal held that "[o]ne may recover loss of earnings for attending to an injured spouse."[115] The appellate court found that the plaintiff clearly proved through the testimony of the spouse's supervisor that she took five sick days and a four-month leave of absence in order to care for her seriously injured husband.[116] Accordingly, the appellate court concluded that the trial court erred in awarding $3,200.00 for the spouse's loss of wages, when she showed a loss of $4,692.25.[117]

Here, Plaintiffs plan to offer testimony at trial regarding their assumption of the role of Decedent's caretakers after he developed lung cancer.[118] Furthermore, Plaintiffs assert that their economic expert, Dr. Shael Wolfson, calculated the cost of the around-the-clock care provided to

---

[112] *Id.*

[113] *Id.* at 63.

[114] 618 So. 2d 1154, 1163 (La. App. 2 Cir. 1993) (internal citations omitted).

[115] *Id.*

[116] *Id.*

[117] *Id.*

[118] Rec. Doc. 95 at 14.

Decedent.[119] Plaintiffs plan to present this evidence to show their own loss of income and expenses at trial.[120] As part of this case, Plaintiffs bring a survival action, wherein they seek to recover damages incurred by Decedent before his death. Under Louisiana law, a survival action "comes into existence simultaneously with the existence of the tort and is transmitted to beneficiaries upon the victim's death and permits recovery only for the damages suffered by the victim from the time of injury to the moment of death."[121] "It is in the nature of a succession right."[122] Plaintiffs may recover any damages suffered by Decedent, including the cost of around-the-clock care provided to Decedent if that care was attributable to Decedent's injuries. This case is distinguishable from *Morgan* because Plaintiffs are not seeking to recover loss of future earning capacity of the surviving plaintiffs or damages incurred as a result of an early retirement of any surviving plaintiff. As in *Keeth*, Plaintiffs here are seeking to recover loss of earnings while attending to the care of Decedent. Accordingly, the Court finds that the Hopeman Interests are not entitled to summary judgment on this issue.

## V. Conclusion

For the reasons discussed above, the Court grants the motion for summary judgment to the extent it seeks dismissal of Plaintiffs' request for recovery of damages for increased costs of insurance, damages for loss of fringe benefits, and damages for pre-death loss of consortium. The motion is denied in all other respects.

---

[119] *Id.* at 19.

[120] *Id.* Plaintiffs then point to evidence to support other categories of damages not referenced in the motion for summary judgment or the memorandum in support of the motion. *Id.* at 19–25. Accordingly, the Court does not discuss those categories of damages in this Order and Reasons.

[121] *McGee v. A C And S, Inc.*, No. 05-1035 (La. 7/10/06); 933 So. 2d 770, 780 (quoting *Taylor v. Giddens*, 618 So.2d 834, 840 (La. 1993)).

[122] *Id.*

Accordingly,

**IT IS HEREBY ORDERED** that "Motion for Partial Summary Judgment on Unsupported Claims for Financial and Economic Damages"[123] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent it seeks dismissal of Plaintiffs' request for recovery of damages for increased costs of insurance, damages for loss of fringe benefits, and damages for pre-death loss of consortium. The motion is **DENIED** in all other respects.

**NEW ORLEANS, LOUISIANA,** this  26th  day of June, 2020.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[123] Rec. Doc. 30.