## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CALLEN DEMPSTER, et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 20-95** |
| **LAMORAK INSURANCE CO., et al.** | **SECTION: "G"(1)** |

<u>**ORDER AND REASONS**</u>

Before the Court is Defendants Huntington Ingalls Incorporated (f/k/a Northrop Grumman Shipbuilding, Inc., f/k/a Northrop Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc., and f/k/a Avondale Shipyards, Inc.) ("Avondale") and Albert L. Bossier, Jr. ("Bossier") (collectively, the "Avondale Interests") "Motion for Partial Summary Judgment Seeking Dismissal of Plaintiffs' Punitive Damages Claim."[1] Defendants Hopeman Brothers, Inc. and Liberty Mutual Insurance Company as the alleged insurer of Wayne Manufacturing Corp. (collectively, the "Hopeman Interests") join the motion.[2] Defendant Travelers Indemnity Company ("Travelers") also joins the motion.[3] In this litigation, Plaintiffs Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Dempster, Jr., Annette Dempster Glad, and Barnett Dempster's (collectively, "Plaintiffs") allege that Decedent Callen L. Dempster ("Decedent") was exposed to asbestos and asbestos-containing products that were designed, manufactured, sold, and/or supplied by a number of Defendant companies while

---

[1] Rec. Doc. 34.

[2] Rec. Doc. 84.

[3] Rec. Doc. 124. Travelers joins this motion in its capacity as the insurer of alleged Avondale executive officers Henry "Zac" Carter, James O'Donnell, C. Edwin Hartzman, John McQue, Burnette "Frenchy" Bordelon, Ewing Moore, Hettie Dawes-Eaves, John Chantrey, Steven Kennedy, Peter Territo, George Kelmell, Ollie Gatlin, Earl Spooner, Edward Blanchard, James T. Cole, Melton Garrett, Dr. Joseph Mabey and Albert Bossier, Jr.

Decedent was employed by Avondale.[4] In the instant motion, the Avondale Interests argue that Plaintiffs' punitive damages claim should be dismissed because Plaintiffs cannot show that the Avondale Interests either (1) consciously desired that Decedent contract lung cancer or (2) knew that Decedent's lung cancer was substantially certain to occur.[5] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

### A.    *Factual Background*

In this litigation, Plaintiffs allege that Decedent was employed by Avondale from 1962 to 1994.[6] During that time, Plaintiffs aver that Decedent was exposed to asbestos and asbestos-containing products in various locations and work sites, resulting in Decedent breathing in asbestos fibers and later developing asbestos-related cancer.[7] In the Supplemental and Amending Petition for Damages, Plaintiffs asserted a claim for punitive damages under former Louisiana Civil Code article 2315.3.[8] Specifically, Plaintiffs allege that:

> Callen Dempster was exposed to asbestos during the years of 1984 through 1996. His injuries were caused by defendants' wanton and reckless disregard for public safety in the storage, handling, and transportation of asbestos to which Mr.

---

[4] *See* Rec. Doc. 1-2; Rec. Doc. 1-8. On August 6, 2020, Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Louis Dempster, Jr., Annette Ruth Dempster Glad, and Barnett Lynn Dempster were substituted as plaintiffs for Louise Ella Simon Dempster. Rec. Doc. 239. In particular, Plaintiffs bring claims against Lamorak Insurance Company, Huntington Ingalls Inc., Albert Bossier, Jr., J. Melton Garrett, Eagle, Inc., Bayer Cropscience, Inc., Foster-Wheeler LLC, General Electric Co., Hopeman Brothers, Inc., McCarty Corporation, Taylor-Seidenbach, Inc., CBS Corporation, Uniroyal, Inc., International Paper Company, Houston General Insurance Company, Berkshire Hathaway Specialty Insurance Company, Northwest Insurance Company, United Stated Fidelity and Guaranty Company, Fist State Insurance Company, The American Insurance Company, Louisiana Insurance Guaranty Association, and the Traveler's Indemnity Company. Rec. Doc. 1-8 at 2–3.

[5] Rec. Doc. 33-1 at 1–2.

[6] Rec. Doc. 1-2 at 5.

[7] *Id.*

[8] Rec. Doc. 1-8 at 3.

Dempster was exposed and which resulted in his injuries and death. All defendants are liable to petitioner for punitive damages pursuant to Article 2315.3 of the Louisiana Civil Code.[9]

**B.    *Procedural Background***

Decedent filed a "Petition for Damages" in the Civil District Court for the Parish of Orleans, State of Louisiana, on March 14, 2018.[10] Defendants Huntington Ingalls Incorporated, Albert Bossier, Jr., J. Melton Garret, and Lamorak Insurance Company (the "Removing Parties") removed the case to the United States District Court for the Eastern District of Louisiana for the first time on June 21, 2018.[11] In the first notice of removal, the Removing Parties alleged that removal was proper because this is an action "for or relating to conduct under color of federal office commenced in a state court against persons acting under one or more federal officers within the meaning of 28 U.S.C. § 1442(a)(1)."[12]

On January 7, 2019, this Court remanded the case to the Civil District Court for the Parish of Orleans.[13] The Court found that Defendants presented no evidence that Decedent came into contact with asbestos aboard a government vessel, and thus, no federal interest was implicated.[14] Alternatively, even accepting Defendants' argument that Decedent came into contact with asbestos aboard a government vessel as true, the Court did not find that the necessary causal nexus existed between Federal Government action and Decedent's claims.[15] This determination was based on

---

[9] *Id.*

[10] *Id.* at 2–3

[11] Case No. 18-6158, Rec. Doc. 1 at 2.

[12] *Id.*

[13] Case No. 18-6158, Rec. Doc. 89.

[14] *Id.* at 31.

[15] *Id.*

3

the fact that Decedent brought negligence claims, rather than strict liability claims, against the Removing Parties.[16] Defendants did not appeal the January 7, 2019 Order.

Decedent passed away on November 24, 2018, and a First Supplemental and Amending Petition for Damages was filed in state court substituting Decedent's heirs as Plaintiffs on January 17, 2019.[17] Trial was scheduled to begin before the state trial court on January 13, 2020.[18] The amended petition does not purport to assert any strict liability claims against Avondale.[19]

On January 9, 2020, Avondale removed the case to the United States District Court for the Eastern District of Louisiana for a second time.[20] In the second notice of removal, Avondale once again alleged that removal is proper because this is an action "for or relating to conduct under color of federal office commenced in a state court against persons acting under one or more federal officers within the meaning of 28 U.S.C. § 1442(a)(1)."[21] In the second notice of removal, Avondale contended that the jury interrogatories, jury charges, and Pre-Trial Order filed by Plaintiffs in state court directly contradicted Decedent's prior representation in federal court that he was not asserting strict liability claims against Avondale.[22] On January 10, 2020, Plaintiffs filed an "Emergency Motion to Remand"[23] and an "Ex Parte Motion for Expedited Hearing and for

---

[16] *Id.* at 36–37. The January 7, 2019 Order predated the Fifth Circuit's en banc decision in *Latiolais v. Huntington Ingalls, Inc.*, overruling prior precedent and holding that Avondale was entitled to remove a negligence case filed by a former Navy machinist because of his exposure to asbestos while the Navy's ship was being repaired at the Avondale shipyard under a federal contract. 951 F.3d 286, 289 (5th Cir. 2020).

[17] Rec. Doc. 1-8.

[18] Rec. Doc. 1-12.

[19] Rec. Doc. 1-8.

[20] Rec. Doc. 1.

[21] *Id.* at 2.

[22] *Id.* at 4–5.

[23] Rec. Doc. 4.

4

Emergency Ruling."[24]

On January 28, 2020, the Court denied the motion to remand, finding that this case was properly removed to this Court under the federal officer removal statute.[25] Specifically, the Court found that the notice of removal was timely filed and Plaintiffs' pretrial filings constituted a proper basis for the second removal.[26] Additionally, the Court found that Avondale met the three-part test for federal officer removal, namely, that (1) Avondale is a person within the meaning of the statute, (2) Avondale acted pursuant to a federal officer's directions and a causal nexus exists between its actions under color of federal office and plaintiffs' claims, and (3) Avondale has a colorable federal defense to Plaintiffs' claims under the government contractor immunity defense.[27]

On February 18, 2020, the Avondale Interests filed the instant "Motion for Partial Summary Judgment Seeking Dismissal of Plaintiffs' Punitive Damages Claim."[28] On February 28, 2020, the Hopeman Interests joined the motion.[29] On March 3, 2020, Plaintiffs filed an opposition to the instant motion.[30] The Avondale Interests, with leave of Court, filed a reply brief in further

---

[24] Rec. Doc. 5.

[25] Rec. Doc. 17.

[26] *Id*. at 20–22.

[27] *Id*. at 23–36. The January 28, 2020 Order also predated the Fifth Circuit's en banc decision in *Latiolais*. In *Latiolais*, the Fifth Circuit held that "to remove under section 1442(a), a defendant must show (1) it has asserted a colorable federal defense, (2) it is a "person" within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions." 951 F.3d at 296. The Fifth Circuit overruled prior caselaw applying the "causal nexus" requirement to Section 1442(a) as amended in 2011. *Id.*

[28] Rec. Doc. 34.

[29] Rec. Doc. 84.

[30] Rec. Doc. 92.

support of the motion on March 16, 2020.[31] On March 16, 2020, Travelers joined the motion.[32]

## II. Parties' Arguments

### A.     *The Avondale Interests' Argument in Support of the Motion*

In the instant motion, the Avondale Interests argue that Plaintiffs' punitive damages claim should be dismissed because Plaintiffs cannot show that the Avondale Interests either (1) consciously desired that Decedent contract lung cancer or (2) knew that Decedent's lung cancer was substantially certain to occur.[33]

The Avondale Interests contend that Louisiana Civil Code article 2315.3 was in effect from September 4, 1984 through April 16, 1996.[34]  The Avondale Interests assert that under Louisiana Supreme Court precedent, Plaintiffs can only seek punitive damages from the Avondale Interests if they can prove the Avondale Interests committed an intentional tort during the time that Article 2315.3 was in effect.[35]

According to the Avondale Interests, to prevail on an intentional tort claim, a plaintiff must show either: (1) that the defendant consciously desired the result or (2) that the defendant knew that the result was substantially certain to follow from its conduct.[36] The Avondale Interests contend that Plaintiffs have no evidence to satisfy either prong.[37] Regarding the first prong, the Avondale Interests argues that there is no evidence that the Avondale Interests consciously desired

---

[31] Rec. Doc. 127.

[32] Rec. Doc. 124..

[33] Rec. Doc. 34-1 at 1–2.

[34] *Id.* at 5.

[35] *Id.* at 6–7 (citing *Adams v. J.E. Merit Const., Inc.*, 97-2005 (La. 5/19/98), 712 So.2d 88, 89).

[36] *Id.* at 7–8 (citing *Landry v. Uniroyal Chemical Co., Inc.*, 653 So.2d 1199, 1202-03 (La. App. 1 Cir. 1995)).

[37] *Id.* at 8.

6

for Decedent to contract lung cancer and die.[38] The Avondale Interests contend that the Louisiana Supreme Court has previously identified allegations which do not qualify as intentional tort allegations, including the failure to provide a safe working environment.[39] The Avondale Interests argues that Plaintiffs' allegations fall within these previously identified categories that were deemed insufficient to constitute an intentional tort claim.[40] Additionally, during the relevant time period for punitive damages, the Avondale Interests assert that they promulgated and enforced policies designed to protect Avondale employees from exposure to asbestos, negating any inference that the Avondale Interests intended his injury.[41]

Regarding the second prong, the Avondale Interests contend that Plaintiffs cannot show that Avondale knew that Decedent's lung cancer was substantially certain to follow from their conduct.[42] The Avondale Interests contend that Plaintiffs cannot show that Decedent's contraction of lung cancer was the inevitable result of his exposure to asbestos, particularly considering Decedent's history of smoking.[43] Therefore, the Avondale Interests argues that Plaintiffs do not meet the "substantial certainty" prong of the intentional tort standard.[44]

**B.      *Plaintiffs' Argument in Opposition to the Motion***

In the opposition memorandum, Plaintiffs argue that the motion should be denied.[45] First,

---

[38] *Id*. at 8–9.

[39] *Id*. at 9–10.

[40] *Id*. at 10.

[41] *Id*. at 16.

[42] *Id*.

[43] *Id*. at 16–17.

[44] *Id*. at 17.

[45] Rec. Doc. 92 at 1.

Plaintiffs argue that this motion was already denied by the state court trial judge.[46] Plaintiffs contend that the Court should only reconsider motions sparingly, where, for example, there exists newly discovered evidence or a change in the law.[47] Because those conditions do not exist here, Plaintiffs argue that the motion should be denied on that basis alone.[48]

Next, Plaintiffs argue that a motion for summary judgment is inappropriate where the case turns on intent or knowledge, because those determinations are inherently a question of fact which turns on credibility.[49] Plaintiffs contend that Louisiana Civil Code article 2315.4 applies to the exposures to asbestos Decedent suffered between September 1, 1984 and the end of his employment with Avondale in 1994.[50] In order to be awarded punitive damages, Plaintiffs argue that they must show: (1) that the defendants proceeded in disregard of a high and excessive degree of danger known to them or that would have been apparent to reasonable people in their positions; (2) that the danger created by the defendants' conduct threatened public safety; (3) that the defendants' conduct occurred in the storage, handling or transportation of hazardous or toxic substances; and 4) that the plaintiffs' injuries were caused by the defendants' wanton or reckless conduct.[51] Plaintiffs assert that they have evidence supporting each of the elements.[52]

First, Plaintiffs contend that the Avondale Interests exposed Decedent to asbestos in

---

[46] *Id*. at 2.

[47] *Id*.

[48] *Id*.

[49] *Id*. at 3–4 (citing *Pacific Ins. Co., Ltd. v. Louisiana Auto Dealers Ass'n*, 273 F.3d 392 (5th Cir. 2001); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 n. 3 (5th Cir. 1993); *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257 (5th Cir. 1991)).

[50] *Id*. at 4–5.

[51] *Id*. at 7–8 (citing *Adams v. Marathon Oil Co.*, 96-693 (La. 5 Cir. 1/15/97), 688 So. 2d 75, 79).

[52] *Id*. at 8.

disregard of a high and excessive degree of danger known to the Avondale Interests.[53] Avondale and its executive officers were aware of the dangers of asbestos between 1984 and 1996 when Louisiana Civil Code Article 2315.3 was effective, but the Avondale Interests nevertheless failed to take precautions that would have protected Decedent from exposure.[54] Plaintiffs note that the Avondale Interests admit they were aware of the dangers of asbestos during the relevant period, but the Avondale Interests claim they had strict policies in place to mitigate those risks.[55] Plaintiffs assert that this argument is unavailing because the Avondale Interests disregarded and failed to implement these policies.[56] Plaintiffs argue that Danny Joyce, Avondale's corporate representative and industrial hygiene expert, confirmed that Avondale had knowledge of government regulations regarding asbestos as early as the 1940s.[57] Plaintiffs argue that Ollie Gatlin, a former Avondale executive, stated that he knew that asbestos was a health hazard in 1960.[58]

Plaintiffs contend that Avondale executive officers were substantially certain that disease would occur.[59] Plaintiffs argue that Burnette Bordelon, the superintendent for insulation at Avondale, disregarded the health hazards of asbestos and therefore, failed to take the precautions necessary to protect workers from exposure to asbestos.[60] Plaintiffs assert that the Avondale Interests claim that they developed and followed protocols for the safe storage, handling, and

---

[53] *Id*. at 14.

[54] *Id*.

[55] *Id*. at 15.

[56] *Id*.

[57] *Id*. (citing Rec. Docs 92-15).

[58] *Id*. at 16 (citing Rec. Doc. 92-17).

[59] *Id*. at 17.

[60] *Id*. (citing Rec. Docs. 92-17, 92-21, 21-22).

disposal of asbestos during the punitive window is directly contradicted by the testimony of various Avondale employees.[61] Accordingly, Plaintiffs contend that they have shown that there is an issue of material fact in dispute regarding whether the Avondale Interests exposed Decedent to asbestos in disregard of a high and excessive degree of danger known to the Avondale Interests.[62]

Second, Plaintiffs assert that there is an issue of material fact in dispute regarding whether the Avondale Interests' failure to take precautions to prevent exposure to asbestos created a danger that threatened public safety.[63] Despite having known for decades that exposure to asbestos could cause serious medical conditions, including fatal lung diseases, Plaintiffs contend the Avondale Interests failed to take the precautions necessary to protect workers.[64]

Third, Plaintiffs argue that the Avondale Interests' failure to take precautions to protect Decedent from exposure to asbestos occurred in the storage, handling, or transportation of a hazardous substance.[65] Finally, Plaintiffs assert that Decedent's injuries were caused by the Avondale Interests' wanton and reckless conduct.[66] According to Plaintiffs, industrial hygiene expert, Gerard Baril, has testified that Decedent was exposed to asbestos from his work at Avondale, and Avondale did not implement control measures to segregate different crafts, or provide respiratory protection in the 1980s.[67] Because the evidence establishes that Decedent's exposure to asbestos from his work at Avondale caused his asbestos-related lung cancer, Plaintiffs

---

[61] *Id*. at 18–19 (citing Rec. Doc. 92-13, 92-14, 92-3).

[62] *Id*. at 20.

[63] *Id*. at 20–21.

[64] *Id*. at 21.

[65] *Id*. at 22.

[66] *Id*. at 24.

[67] *Id*. at 25 (citing Rec. Doc. 92-4).

assert that the injuries were caused by the Avondale Interests' wanton and reckless conduct in regards to asbestos.[68] For these reasons, Plaintiffs contend summary judgment must be denied.[69]

**C.    The Avondale Interests' Argument in Further Support of the Motion**

In further support of the instant motion, the Avondale Interests again argue that there is no evidence they acted with the requisite intent to cause Decedent to develop lung cancer during the punitive damage window (1984–1996).[70] According to the Avondale Interests, Plaintiffs' citations to excerpted testimony of various witnesses are grossly overstated.[71] The Avondale Interests assert that the very fact that Avondale implemented an asbestos safety program in the 1980s undermines Plaintiffs' contention that the Avondale Interests intended to cause Decedent to develop lung cancer as a consequence of his employment.[72] Taking all the evidence at face value, the Avondale Interests assert that there is nothing to suggest that the Avondale Interests have intentionally committed "an act of unreasonable character . . . with a conscious indifference to consequences amounting almost to a willingness that harm to the public safety would follow" as is required for the imposition of punitive damages under repealed Article 2315.3.[73]

### III. Legal Standard

**A.    Legal Standard for Summary Judgment**

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[68] *Id.*

[69] *Id.* at 26.

[70] Rec. Doc. 127 at 1.

[71] *Id.* at 2.

[72] *Id.*

[73] *Id.* at 4 (citing *Landry*, 653 So. 2d at 1204–05),

as a matter of law."[74] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[75] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[76] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[77] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[78]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[79] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[80] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[81] The

---

[74] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[75] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[76] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[77] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

[78] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[79] *Celotex*, 477 U.S. at 323.

[80] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[81] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[82] Rather, a factual dispute precludes a grant of summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[83] Further, a court "resolve[s] factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[84] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[85] Ultimately, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[86]

## B.    *Legal Standard for Reconsideration*

Although the Fifth Circuit has noted that the Federal Rules "do not recognize a 'motion for reconsideration' *in haec verba*,"[87] it has consistently recognized that such a motion may challenge a judgment or order under Federal Rules of Civil Procedure 54(b), 59(e), or 60(b).[88] Federal Rule of Civil Procedure 59(e) also allows courts to alter or amend its judgments after entry. The Court

---

242, 248–49 (1996)).

[82] *Little*, 37 F.3d at 1075.

[83] *Anderson*, 477 U.S. at 248.

[84] *Little*, 37 F.3d at 1075.

[85] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[86] *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993).

[87] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990).

[88] *Id*. (Rules 59 and 60); *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *3–4 (E.D. La. Apr. 5, 2010) (Rule 54).

has "considerable discretion" in deciding whether to grant a motion for reconsideration, but must "strike the proper balance between two competing imperatives: (1) finality and (2) the need to render just decisions on the basis of all the facts."[89] This Court's discretion is further bounded by the Fifth Circuit's instruction that reconsideration is "an extraordinary remedy that should be used sparingly,"[90] with relief being warranted only when the basis for relief is "clearly establish[ed]."[91] Courts in the Eastern District of Louisiana have generally considered four factors in deciding motions for reconsideration under the Rule 59(e) standard:

> (1)      the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;

> (2)      the movant presents newly discovered or previously unavailable evidence;

> (3)      the motion is necessary in order to prevent manifest injustice; or

> (4)      the motion is justified by an intervening change in controlling law.[92]

A motion for reconsideration, "'[is] not the proper vehicle for rehashing evidence, legal theories, or arguments . . . .'"[93] Instead, such motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[94] "It is well settled that motions for reconsideration should not be used . . .  to re-urge matters that have already been advanced by a party."[95] When there exists no independent reason for reconsideration

---

[89] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

[90] *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

[91] *Schiller v. Physicians Res. Grp, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003); *Castrillo v. Am. Home Mortgage Servicing, Inc.*, No. 09-4369 R, 2010 WL 1424398, at *3 (E.D. La. Apr. 5, 2010) (Vance, J.).

[92] *See, e.g.*, *Castrillo*, 2010 WL 1424398, at *4  (citations omitted).

[93] *Id.* (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004)).

[94] *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (citation and internal quotation marks omitted).

[95] *Helena Labs. Corp. v. Alpha Sci. Corp.*, 483 F. Supp. 2d 538, 539 (E.D. Tex. 2007) (citing *Browning v.*

other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted.[96]

## IV. Analysis

### A.   *Whether the Avondale Interests are Entitled to Reconsideration*

The Avondale Interests request reconsideration of the state court's order denying the Avondale Interests' motion for partial summary judgment.[97] The Avondale Interests have not presented any newly discovered or previously unavailable evidence, nor do the Avondale Interests identify a change of law that would warrant granting the motion.[98] In its reply memorandum, the Avondale Interests contend that reconsideration principles are not applicable here, but cite no authority in support of that conclusion.[99] In the alternative, the Avondale Interests argue that if reconsideration principles are applicable, this motion is necessary to correct a manifest error of law because the state court did not consider the Orders of other district judges in the United States District Court for the Eastern District of Louisiana on this issue.[100]

The Court must first determine the proper procedure to follow in resolving a motion for reconsideration of a state court's order denying a motion for summary before the case was removed to federal court. Namely, the Court must determine what degree of deference is owed to an

---

*Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

[96] *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 481 (M.D. La. 2002). *See also Mata v. Schoch*, 337 B.R. 138, 145 (S.D. Tex. 2005) (refusing reconsideration where no new evidence was presented); *FDIC v. Cage*, 810 F. Supp. 745, 747 (S.D. Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

[97] Rec. Doc. 34-1. The motion for summary judgment at issue was already denied by Judge Sidney Cates, IV prior to the second removal of this case to federal court. Rec. Doc. 92-23.

[98] *Id*.

[99] Rec. Doc. 133 at 6.

[100] *Id*. at 6, n.26.

interlocutory state court order once a case has been removed to federal court. After removal of an action to federal district court, "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the [federal] district court."[101]  The Fifth Circuit addressed this issue in *Nissho–Iwai American Corp. v. Kline*.[102] There, a Texas state court granted a plaintiff's motion to strike a defendant's defenses and counterclaims before the case was removed to federal court.[103] In addressing the issue of deference, the Fifth Circuit concluded that where "the state court's ruling is purely interlocutory, it remains subject to reconsideration just as it had been prior to removal."[104] The Fifth Circuit reasoned that "judicial economy is served by eliminating the need for duplicative proceedings in federal court."[105] However, the Fifth Circuit held that federal procedure rather than state procedure governs the manner in which the state court decision is to be enforced.[106] "In sum, whenever a case is removed, interlocutory state court orders are transformed by operation of 28 U.S.C. § 1450 into orders of the federal district court to which the action is removed. The district court is thereupon free to treat the order as it would any such interlocutory order it might itself have entered."[107]

The Fifth Circuit addressed the specific issue of a state court deciding a motion for summary judgment and a subsequent removal to federal court in *Resolution Trust Corp. v.*

---

[101] 28 U.S.C. § 1450.

[102] 845 F.2d 1300 (5th Cir. 1988).

[103] *Id*.

[104] *Id*. at 1303 (citing *General Investment Co. v. Lake Shore & Michigan Southern Ry.*, 260 U.S. 261, 267, (1922)).

[105] *Id*.

[106] *Id*.

[107] *Id*. at 1304.

*Northpark Joint Venture*.[108] There, the Fifth Circuit held that a "prior state court order in essence is federalized when the action is removed to federal court, although the order 'remains subject to reconsideration just as it had been prior to removal.'"[109] In other words, the Federal Rules of Civil Procedure govern the enforcement of a prior state court ruling in a case removed to federal court.[110] Therefore, where the prior state court order was decided on summary judgment, the federal court must ensure that the order is consistent with the requirements of Federal Rule of Civil Procedure 56.[111] "If the federal court declines to reconsider the state court summary judgment, then the federal court certifies that the order is indeed consistent with Rule 56(c)."[112] "The standard of review is the same as if the federal court itself had entered the order. . ."[113]

The Fifth Circuit's opinions in *Nissho–Iwai American Corp.* and *Resolution Trust Corp.* show that (1) when a case is removed from state court, all orders of the state court remain in full force and effect and (2) once removed, federal procedure governs the manner of enforcement of the state court order.[114] When this case was removed to federal court, the state court had denied Avondale's motion for summary judgment.[115] Here, as in *Nissho–Iwai American Corp.* and *Resolution Trust Corp.*, the order entered by the state court is an interlocutory order.[116] The Fifth

---

[108] 958 F.2d 1313 (5th Cir. 1992).

[109] *Id.* at 1316 (quoting *Nissho–Iwai American Corp.*, 845 F.2d at 1303).

[110] *Id.*

[111] *Id.*

[112] *Id.*

[113] *Id.*

[114] *Nissho–Iwai American Corp.*, 845 F.2d at 1303; *Resolution Trust Corp.,* 958 F.2d at 1316.

[115] Rec. Doc. 91-4.

[116] Under Louisiana law, a denial of summary judgment is an interlocutory order that is not final or appealable unless there is a showing of irreparable injury. *See Jones v. Next Generation Homes, LLC*, 2011-0407 (La. App. 4 Cir.

Circuit instructs federal district courts to treat interlocutory state court orders as orders of the federal district court to which the action is removed. The district court may treat the state court order as it would any interlocutory order it might itself have entered. Specifically, when the state court order is on summary judgment, the federal district court may decline to reconsider the state court's order if the federal court certifies that the order is indeed consistent with Federal Rule of Civil Procedure 56(c).

Here, the Avondale Interests have not shown any substantial reasons warranting reconsideration of the state court's ruling. Furthermore, for the reasons that follow, even if the Court were considering this motion for the first time under the summary judgment standard rather than the reconsideration standard, there are genuine issues of material fact in dispute precluding summary judgment.

**B.**   ***Whether the Avondale Interests are Entitled to Summary Judgment on Plaintiffs' Request for Punitive Damages***

Plaintiffs' request for punitive damages is governed by Louisiana law. Under Louisiana law, punitive damages are prohibited unless authorized by law.[117] Further, even when a statute permits punitive damages, courts must strictly construe the statute.[118]

Louisiana Civil Code article 2315.3 was enacted on September 4, 1984 and repealed on April 16, 1996.[119] Article 2315.3 provided:

> In addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances.

---

10/5/11), 76 So. 3d 1238, writ denied, 2011-2401 (La. 11/23/11), 76 So. 3d 433; La. C.C.P. art. 2083.

[117] *Ross v. Conoco, Inc.*, 2002-0299 (La. 10/15/02), 828 So.2d 546, 555.

[118] *Id.*

[119] *Anderson v. Avondale Indus., Inc.*, 2000-2799 (La. 10/16/01), 798 So. 2d 93, 96.

To recover punitive damages under this statute, a plaintiff must prove:

> (1) that the defendant's conduct was wanton and reckless by proving that "the defendant proceeded in disregard of a high and excessive degree of danger, either known to him or apparent to a reasonable person in his position, or that the defendant engaged in "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent;" (2) that the danger created by the defendant's wanton or reckless conduct threatened or endangered public safety; (3) that the defendant's wanton or reckless conduct occurred in the storage, handling or transportation of hazardous or toxic substances; and (4) that the plaintiff's injury was caused by the defendant's wanton or reckless conduct.[120]

In *Adams v. J.E. Merit Construction, Inc.*, the Louisiana Supreme Court considered the applicability of Article 2315.3 to claims by employees against their employers.[121] There, the Louisiana Supreme Court held that the plaintiffs' punitive damages claims were barred by the Louisiana Workers' Compensation Act exclusive remedy provision.[122] However, the court recognized that a plaintiff could seek punitive damages if an intentional tort was proven because the exclusive remedy provision would no longer apply.[123] Following *Adams*, Louisiana appellate courts have found that an employee-plaintiff may seek punitive damages under Article 2315.3 only if the plaintiff can prove an intentional tort as well as the other elements of the Article 2315.3 claim.[124]

To prove that a defendant committed an intentional tort under Louisiana law, a plaintiff must show that a defendant either "'(1) consciously desires the physical result of his act, whatever

---

[120] *Bonnette v. Conoco, Inc.*, 2001-2767 (La. 1/28/03), 837 So. 2d 1219, 1237 (quoting *Billiot v. B.P. Oil Co.*, 93-1118, pp. 16–17 (La.9/29/94), 645 So. 2d 604, 613).

[121] *Adams v. J.E. Merit Const., Inc.*, 97-2005 (La. 5/19/98), 712 So.2d 88, 89.

[122] *Id.*

[123] *Id.* at 94, n.5.

[124] *See Abney v. Exxon Corp.*, 98-0911 (La. App. 1 Cir. 9/24/99), 755 So.2d 283, 291.

the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result.'"[125] "Thus, intent has reference to the consequences of an act rather than to the act itself."[126] Therefore, Plaintiffs must prove that the Avondale Interests either consciously desired that Decedent would contract lung cancer, or knew that result was "substantially certain to follow from [their] conduct."[127] Plaintiffs do not address the first prong, but instead argue that Avondale and its executive officers knew of the hazards of asbestos and were substantially certain that disease would occur.[128]

Substantial certainty "requires more than a reasonable probability that an injury will occur."[129] To satisfy the criterion of "substantial certainty," Plaintiffs must prove that Decedent's contracting lung cancer was "inevitable or incapable of failing."[130] "[M]ere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct."[131] The "belie[f] that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of intentional tort, but instead falls within the range of negligent acts . . ."[132] To prove a claim for intentional tort, Plaintiffs would have to show that the Avondale Interests' "conduct [went] beyond knowingly permitting a hazardous work condition to exist,

---

[125] *Reeves v. Structural Pres. Sys.*, 98-1795 (La. 3/12/99), 731 So. 2d 208) (quoting *Bazley v. Tortorich*, 397 So. 2d 475, 481 (La. 1981).

[126] *Bazley v. Tortorich*, 397 So. 2d 475, 481 (La. 1981).

[127] *Zimko v. Am. Cyanamid*, 2003–0658 (La. App. 4 Cir. 6/8/05); 905 So. 2d 465, 475, cert. denied, 2005–2102 (La.3/17/06), 925 So. 2d 538 (internal citations omitted).

[128] Rec. Doc. 91 at 8.

[129] *Reeves*, 731 So. 2d at 213 (internal citations omitted).

[130] *Id.* (internal citations omitted).

[131] *Id*. (internal citations omitted).

[132] *Id*. at 214.

ordering an employee to perform an extremely dangerous job, or willfully failing to furnish a safe place to work . . ."[133]

Generally, summary judgment is disfavored when issues of intent or state of mind are involved because those determinations are inherently a question of fact which turns on credibility.[134] However, a court is not precluded from granting summary judgment where elusive concepts such as motive or intent are at issue.[135] But the Fifth Circuit has cautioned that "the court must be vigilant to draw *every* reasonable inference from the evidence in the record in a light most flattering to the nonmoving party."[136] For example, summary judgment may still be appropriate when intent or state of mind is at issue if the non-moving party merely rests on conclusory allegations or unsupported speculation.[137] As will be explained below, this is not such a case.

Here, there are questions of fact in dispute regarding whether the Avondale Interests knew that it was substantially certain that Decedent would contract lung cancer. Plaintiffs have presented evidence to show that Avondale and its executive officers knew of the hazards of asbestos. For example, Plaintiffs present the deposition of Danny Joyce, Avondale's corporate representative and industrial hygiene expert, who confirmed that Avondale had knowledge of government regulations of asbestos as early as the 1940s.[138] Plaintiffs submit the deposition of Ollie Gatlin, a

---

[133] *Zimko*, 905 So. 2d at 477 (internal citations omitted).

[134] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265-66 (5th Cir. 1991) ("When state of mind is an essential element of the nonmoving party's claim, it is less fashionable to grant summary judgment because a party's state of mind is inherently a question of fact which turns on credibility.").

[135] *Id*. at 1266 ("This is not to say that the court can never enter summary judgment when intent or state of mind is at issue, only that the court must recognize that undermining the moving party's professed state of mind is not a simple task. Therefore, the court must be vigilant to draw *every* reasonable inference from the evidence in the record in a light most flattering to the nonmoving party.").

[136] *Id*.

[137] *Id*.

[138] Rec. Docs 92-15.

former Avondale executive, who stated that he knew that asbestos was a health hazard in 1960.[139] Plaintiffs attach the deposition of Edward Blanchard, Superintendent of the Production Department, who confirmed that he would have to approve a request from the safety department to stop production for a safety reason.[140]

Plaintiffs present deposition testimony regarding comments made by Burnette "Frenchy" Bordelon, who was the superintendent for insulation at Avondale.[141] Mr. Bordelon told others that asbestos was not a health hazard, despite the fact that Mr. Bordelon was personally aware of the health hazards of asbestos as he had discussed them with Ollie Gatlin and had been present at meetings where the health hazards of asbestos were discussed.[142] Mr. Bordelon testified during his deposition taken in 1983 that asbestos was "not a health problem, as far as I am concerned."[143]

Plaintiffs also present prior deposition and trial testimony of Ralph Usea, who worked at Avondale between 1965 and 1998, as an insulator on both new construction and repair jobs.[144] From the 1980s until 1990, Mr. Usea testified that he performed repair and tear-out work, removing asbestos-containing insulation from ships that had been built years before.[145] Mr. Usea recalled that during this repair work, specifically from 1985 through 1990, workers worked side by side

---

[139] Rec. Doc. 92-17.

[140] Rec. Doc. 92-21.

[141] Rec. Doc. 92-22. The Court notes that Mr. Bordelon was deposed in September 1983, one year before the applicable punitive damages window began. However, the testimony of Mr. Bordelon supports Plaintiffs' argument that there is a disputed issue of material fact regarding whether the safety measures implemented by Avondale in the 1980s were carried out.

[142] Rec. Docs. 92-17, 92-21.

[143] Rec. Doc. 92-22.

[144] Rec. Docs. 92-13, 92-14.

[145] *Id.*

and above and below each other.[146] Mr. Usea also recalled that he would have to work under and between piping in order to do his insulation work.[147] Mr. Usea testified that employees began to wear paper suits in the late 1980s, but that these suits would leave the employee's face, hands, and shoes exposed.[148] He recalled that it was a common occurrence for these paper suits to rip, exposing the work clothes underneath to the dust.[149] Plaintiffs also present the deposition testimony of Luther Dempster, another Avondale employee, who testified that even after Avondale started to  give workers protective clothing, Avondale failed to properly train the employees.[150]

During the applicable punitive damages window, the Avondale Interests argue asbestos-containing materials were not being installed during new ship construction, and the only work involving asbestos was the removal of old insulation from ships in for repair.[151] The Avondale Interests present evidence to show that during this period only specially-trained workers could enter asbestos work areas; those areas were sealed and marked with warning signs; and workers wore disposable coveralls, gloves, and respirators.[152] According to the Avondale Interests, the very fact that Avondale implemented such a program undermines Plaintiffs' contention that the Avondale Interests intended to cause Decedent to develop lung cancer as a consequence of his employment.[153] Although the evidence presented establishes that safety measures were

---

[146] *Id.*

[147] *Id.*

[148] *Id.*

[149] *Id.*

[150] Rec. Doc. 92-19.

[151] Rec. Doc. 127 at 2.

[152] *Id.*; Rec. Doc. 34-1 at 11–16.

[153] Rec. Doc. 127 at 2.

implemented in the 1980s, Plaintiffs have presented evidence suggesting that supervisory officials did not follow the safety measures and did not properly train the employees.

Based on the evidence presented by Plaintiffs, the Court finds that Avondale and its executives knew of the hazards of asbestos. As to the criterion of "substantial certainty," the Court finds that genuine issues of material fact remain as to whether it was substantially certain that Decedent would contract lung cancer; therefore, summary judgment is denied. In particular, the Fifth Circuit has repeatedly held that summary judgment is generally disfavored when issues of intent or state of mind are involved because those determinations are inherently a question of fact which turns on credibility.[154] Here, the Court cannot determine at the summary judgment stage whether the Avondale Interests were substantially certain that Decedent would contract lung cancer based on Avondale's conduct. This is not a case in which the non-moving party merely rests on conclusory allegations or unsupported speculation. Because genuine issues of material fact remain, this matter cannot be resolved on summary judgment.

## V. Conclusion

For the reasons discussed above, the Avondale Interests' motion for summary judgment is denied. The Avondale Interests have not shown any substantial reasons warranting reconsideration of the state court's ruling. Furthermore, even if the Court were considering this motion for the first time under the summary judgment standard rather than the reconsideration standard, there are genuine issues of material fact regarding whether the Avondale Interests knew that it was substantially certain that Decedent would contract lung cancer.

Accordingly,

---

[154] *International Shortstop, Inc.*, 939 F.2d at 1265-66 ("When state of mind is an essential element of the nonmoving party's claim, it is less fashionable to grant summary judgment because a party's state of mind is inherently a question of fact which turns on credibility.").

**IT IS HEREBY ORDERED** that the Avondale Interests' "Motion for Partial Summary Judgment Seeking Dismissal of Plaintiffs' Punitive Damages Claim"[155] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this ___26th___ day of August, 2020.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[155] Rec. Doc. 34.