## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CALLEN DEMPSTER, et al.**                                    **CIVIL ACTION**

**VERSUS**                                                     **CASE NO. 20-95**

**LAMORAK INSURANCE CO., et al.**                              **SECTION: "G"(1)**

## ORDER AND REASONS

Before the Court is Defendants Huntington Ingalls Incorporated (f/k/a Northrop Grumman Shipbuilding, Inc., f/k/a Northrop Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc., and f/k/a Avondale Shipyards, Inc.) ("Avondale"), Albert L. Bossier, Jr. ("Bossier") and Lamorak Insurance Company's ("Lamorak")[1] (collectively, the "Avondale Interests") "Motion for Partial Summary Judgment to Establish the Settlements of Certain Non-Parties."[2] Defendants Hopeman Brothers, Inc. and Liberty Mutual Insurance Company as alleged insurer of Wayne Manufacturing Corp. (collectively, the "Hopeman Interests"),[3] The McCarty Corporation ("McCarty"),[4] United States Fidelity and Guaranty Company ("USF&G"),[5] Travelers Indemnity Company ("Travelers"),[6] Foster Wheeler, LLC ("Foster Wheeler") and General Electric Company ("General

---

[1] Lamorak brings this motion in its capacity as the insurer of alleged Avondale executive officers Albert L. Bossier, Jr., Henry Zac Carter, James O'Donnell, Edwin Hartzman, John McCue, Burnette "Frenchy" Bordelon, Ewing Moore, Hettie Dawes Eaves, John Chantrey, Steven Kennedy, Peter Territo, George Kelmell, Ollie Gatlin, Earl Spooner, Edward Blanchard, James T. Cole, J. Melton Garrett, and Dr. Joseph Mabey.

[2] Rec. Doc. 36.

[3] Rec. Doc. 85.

[4] Rec. Doc. 98.

[5] Rec. Doc. 125. USF&G joins the motion in its capacity as the alleged insurer of Eagle, Inc.

[6] Rec. Doc. 124. Travelers joins this motion in its capacity as the insurer of alleged Avondale executive officers Henry "Zac" Carter, James O'Donnell, C. Edwin Hartzman, John McQue, Burnette "Frenchy" Bordelon, Ewing Moore, Hettie Dawes-Eaves, John Chantrey, Steven Kennedy, Peter Territo, George Kelmell, Ollie Gatlin, Earl Spooner, Edward Blanchard, James T. Cole, Melton Garrett, Dr. Joseph Mabey and Albert Bossier, Jr.

1

Electric")[7]  join the motion. In this litigation, Plaintiffs Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Dempster, Jr., Annette Dempster Glad, and Barnett Dempster's (collectively, "Plaintiffs") allege that Decedent Callen L. Dempster ("Decedent") was exposed to asbestos and asbestos-containing products that were designed, manufactured, sold, and/or supplied by a number of Defendant companies while Decedent was employed by Avondale.[8] In the instant motion, the Avondale Interests move the Court to issue an Order establishing that Decedent previously settled the claims asserted in this lawsuit with 37 entities.[9] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

### A.    *Factual Background*

In this litigation, Plaintiffs allege that Mr. Dempster was employed by Avondale from 1962 to 1994.[10] During that time, Plaintiffs aver that Mr. Dempster was exposed to asbestos and asbestos-containing products in various locations and work sites, resulting in Mr. Dempster breathing in asbestos fibers and later developing asbestos-related cancer.[11] Plaintiffs assert strict

---

[7] Rec. Doc. 101.

[8] *See* Rec. Doc. 1-2; Rec. Doc. 1-8. On August 6, 2020, Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Louis Dempster, Jr., Annette Ruth Dempster Glad, and Barnett Lynn Dempster were substituted as plaintiffs for Louise Ella Simon Dempster. Rec. Doc. 239. Plaintiffs bring claims against Lamorak Insurance Company, Huntington Ingalls Inc., Albert Bossier, Jr., J. Melton Garrett, Eagle, Inc., Bayer Cropscience, Inc., Foster-Wheeler LLC, General Electric Co., Hopeman Brothers, Inc., McCarty Corporation, Taylor-Seidenbach, Inc., CBS Corporation, Uniroyal, Inc., International Paper Company, Houston General Insurance Company, Berkshire Hathaway Specialty Insurance Company, Northwest Insurance Company, United Stated Fidelity and Guaranty Company, Fist State Insurance Company, The American Insurance Company, Louisiana Insurance Guaranty Association, and the Traveler's Indemnity Company. Rec Doc. 1-8 at 2–3.

[9] Rec. Doc. 36 at 1–2.

[10] Rec. Doc. 1-2 at 5.

[11] *Id.*

liability and negligence claims against various Defendants.[12]

In 1991, Mr. Dempster, along with several thousand other plaintiffs, sued multiple defendants for asbestos-related injuries in *In re Asbestos, Plaintiffs v. Borden, Inc., et al.*, Case No. 91-18397, in the Civil District Court for the Parish of Orleans (the "*Borden* litigation").[13] The record shows that, during the *Borden* litigation, Mr. Dempster was represented by the Wilson Law Firm.[14] That litigation resulted in settlements between Mr. Dempster and various defendants.[15] Many of these settlement agreements were also signed by Mrs. Dempster.[16] When the settlement agreements were entered, Mr. Dempster had been diagnosed with asbestosis but had not yet been diagnosed with lung cancer.[17]

## B.   Procedural Background

Decedent filed a "Petition for Damages" in the Civil District Court for the Parish of Orleans, State of Louisiana, on March 14, 2018.[18] Defendants Huntington Ingalls Incorporated, Albert Bossier, Jr., J. Melton Garret, and Lamorak Insurance Company (the "Removing Parties") removed the case to the United States District Court for the Eastern District of Louisiana for the first time on June 21, 2018.[19] In the first notice of removal, the Removing Parties alleged that removal was proper because this is an action "for or relating to conduct under color of federal

---

[12] *Id.* at 7–8.

[13] Rec. Doc. 36-6.

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at 2–3.

[19] Case No. 18-6158, Rec. Doc. 1 at 2.

office commenced in a state court against persons acting under one or more federal officers within the meaning of 28 U.S.C. § 1442(a)(1)."[20]

On January 7, 2019, this Court remanded the case to the Civil District Court for the Parish of Orleans.[21] The Court found that Defendants presented no evidence that Decedent came into contact with asbestos aboard a government vessel, and thus, no federal interest was implicated.[22] Alternatively, even accepting Defendants' argument that Decedent came into contact with asbestos aboard a government vessel as true, the Court did not find that the necessary causal nexus existed between Federal Government action and Decedent's claims.[23] This determination was based on the fact that Decedent brought negligence claims, rather than strict liability claims, against the Removing Parties.[24] Defendants did not appeal the January 7, 2019 Order.

Decedent passed away on November 24, 2018, and a First Supplemental and Amending Petition for Damages was filed in state court substituting Decedent's heirs as Plaintiffs on January 17, 2019.[25] Trial was scheduled to begin before the state trial court on January 13, 2020. [26] The amended petition does not purport to assert any strict liability claims against Avondale.[27]

On January 9, 2020, Avondale removed the case to the United States District Court for the

---

[20] *Id.*

[21] Case No. 18-6158, Rec. Doc. 89.

[22] *Id.* at 31.

[23] *Id.*

[24] *Id.* at 36–37. The January 7, 2019 Order predated the Fifth Circuit's en banc decision in *Latiolais v. Huntington Ingalls, Inc.*, overruling prior precedent and holding that Avondale was entitled to remove a negligence case filed by a former Navy machinist because of his exposure to asbestos while the Navy's ship was being repaired at the Avondale shipyard under a federal contract. 951 F.3d 286, 289 (5th Cir. 2020).

[25] Rec. Doc. 1-8.

[26] Rec. Doc. 1-12.

[27] Rec. Doc. 1-8.

Eastern District of Louisiana for a second time.[28] In the second notice of removal, Avondale once again alleged that removal is proper because this is an action "for or relating to conduct under color of federal office commenced in a state court against persons acting under one or more federal officers within the meaning of 28 U.S.C. § 1442(a)(1)."[29] In the second notice of removal, Avondale contended that the jury interrogatories, jury charges, and Pre-Trial Order filed by Plaintiffs in state court directly contradicted Decedent's prior representation in federal court that he was not asserting strict liability claims against Avondale.[30] On January 10, 2020, Plaintiffs filed an "Emergency Motion to Remand"[31] and an "Ex Parte Motion for Expedited Hearing and for Emergency Ruling."[32]

On January 28, 2020, the Court denied the motion to remand, finding that this case was properly removed to this Court under the federal officer removal statute.[33] Specifically, the Court found that the notice of removal was timely filed and Plaintiffs' pretrial filings constituted a proper basis for the second removal.[34] Additionally, the Court found that Avondale met the three-part test for federal officer removal, namely, that (1) Avondale is a person within the meaning of the statute, (2) Avondale acted pursuant to a federal officer's directions and a causal nexus exists between its actions under color of federal office and plaintiffs' claims, and (3) Avondale has a colorable federal

---

[28] Rec. Doc. 1.

[29] *Id.* at 2.

[30] *Id.* at 4–5.

[31] Rec. Doc. 4.

[32] Rec. Doc. 5.

[33] Rec. Doc. 17.

[34] *Id*. at 20–22.

defense to Plaintiffs' claims under the government contractor immunity defense.[35]

On February 18, 2020, the Avondale Interests filed the instant "Motion for Partial Summary Judgment to Establish the Settlements of Certain Non-Parties."[36] On February 28, 2020, the Hopeman Interests joined the motion.[37] On March 3, 2020, Plaintiffs filed an opposition to the instant motion.[38] Foster Wheeler and General Electric joined the motion on March 5, 2020.[39] On March 5, 2020, McCarty also joined the motion.[40] On March 16, 2020, USF&G joined the motion.[41] The Avondale Interests, with leave of Court, filed a reply brief in further support of the motion on March 16, 2020.[42]

## II. Parties' Arguments

### A.   *The Avondale Interests' Argument in Support of the Motion*

In the instant motion, the Avondale Interests argue that Decedent previously settled the claims asserted in this lawsuit with the following 37 entities: Amchem Products, Inc.; Gasket Holdings, Inc. (f/k/a Flexitallic, Inc.); GAF Corporation; Ferodo America, Inc.; Armstrong World Industries, Inc.; The Asbestos Claims Management Corporation (formerly known as National

---

[35] *Id*. at 23–36. The January 28, 2020 Order also predated the Fifth Circuit's en banc decision in *Latiolais*. In *Latiolais*, the Fifth Circuit held that "to remove under section 1442(a), a defendant must show (1) it has asserted a colorable federal defense, (2) it is a "person" within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions."  951 F.3d at 296. The Fifth Circuit overruled prior caselaw applying the "causal nexus" requirement to Section 1442(a) as amended in 2011. *Id.*

[36] Rec. Doc. 36.

[37] Rec. Doc. 85.

[38] Rec. Doc. 93.

[39] Rec. Doc. 101.

[40] Rec. Doc. 98.

[41] Rec. Doc. 125.

[42] Rec. Doc. 129.

Gypsum Company); NGC Asbestos Disease and Property Damage Settlement Trust; CertainTeed Corporation; C.E. Thurston & Sons, Inc.; Dana Corporation; I.U. North America, Inc.; Maremont Corporation; National Service Industries, Inc.; NORSOC, Corp.; Pfizer Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T&N, PLC; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company; A.P. Green Industries, Inc.; A.W. Chesterton Company; Champion International (as predecessor of U.S. Plywood Corporation); CBS Corporation (f/k/a Westinghouse Electric Corporation); Fibreboard Corporation; Fibreboard Paper Products Corporation; Fibreboard Products Incorporated; Paraffine Companies, Incorporated; Plant Rubber & Asbestos Works; Pabco Products Incorporated; Pabco Insulation Corporation; General Electric Company; Metropolitan Life Insurance Company; Babock and Wilcox; Combustion Engineering, Inc.; Minnesota Mining and Manufacturing Company (3M); and Travelers (collectively, the "Entities").[43] Further, the Avondale Interests move that each of the Entities be listed on the jury verdict form, so that the jury can determine their relative fault after viewing the evidence at trial.[44]

The Avondale Interests acknowledge that the state trial court denied this motion before the case was removed to federal court.[45] However, since that ruling, the Avondale Interests contend that the Louisiana Supreme Court issued its opinion in *Gistarve Joseph, Sr., et al v. Huntington Ingalls Incorporated* in which the court rejected the rationale that a release must expressly refer to the specific disease at issue in order to be effective.[46]

---

[43] Rec. Doc. 36 at 1–2.

[44] *Id.*

[45] Rec. Doc. 36-5 at 2.

[46] *Id.*

The Avondale Interests also acknowledge that the terms of the settlements and releases varied, but they assert that in many of the agreements Decedent clearly released the Entities from any and all future claims for asbestos-related illnesses, including malignancies, such as lung cancer.[47] Because Louisiana law requires that Plaintiffs' recovery against non-settling defendants is reduced by the settling tortfeasors' virile shares, if the non-settling defendants can prove that the settling tortfeasors were at fault, the Avondale Interests seek a ruling that the settlements with the Entities included the same injuries that are at issue in this case.[48]

According to the Avondale Interests, eight of the settlement agreements signed by Decedent expressly released future cancer or malignancy claims.[49] Because lung cancer is a type of cancer, the Avondale Interests assert that those eight releases unequivocally include future lung cancer claims.[50] Furthermore, because Decedent was represented by counsel, the Avondale Interests contend that Decedent is presumed to understand what he signed, and Decedent's self-serving assertion that he did not understand the release would not be sufficient to overcome this presumption.[51] Therefore, the Avondale Interests assert they are entitled to summary judgment recognizing that the following are settled entities whose fault will be determined by the jury at the trial of this matter: Amchem Products, Inc.; Gasket Holdings, Inc. (f/k/a Flexitallic, Inc.); GAF Corporation; Ferodo America, Inc.; Armstrong World Industries, Inc.; The Asbestos Claims Management Corporation (formerly known as National Gypsum Company); NGC Asbestos

---

[47] *Id*. at 3.

[48] *Id*.

[49] *Id*. at 8–11.

[50] *Id*. at 11.

[51] *Id*.

Disease and Property Damage Settlement Trust; CertainTeed Corporation; C.E. Thurston & Sons, Inc.; Dana Corporation; I.U. North America, Inc.; Maremont Corporation; National Service Industries, Inc.; NORSOC, Corp.; Pfizer Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T&N, PLC; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); United States Gypsum Company; A.P. Green Industries, Inc.; A. W. Chesterton Company; CBS Corporation (f/k/a Westinghouse Electric Corporation); Champion International (as predecessor of U.S. Plywood Corporation); Fibreboard Corporation; Fibreboard Paper Products Corporation; Fibreboard Products Incorporated; Paraffine Companies, Incorporated; Plant Rubber & Asbestos Works; Pabco Products Incorporated; Pabco Insulation Corporation; General Electric Company; and Metropolitan Life Insurance Company.[52]

Next, the Avondale Interests assert that four of the settlement agreements signed by Decedent expressly released any and all future claims related to asbestos exposure and asbestos-related diseases.[53] The Avondale Interests note that Decedent was represented by attorneys with "substantial experience in the field of asbestos claims," and Decedent was counseled on the consequences of releasing future asbestos claims.[54] The Avondale Interests also note that Decedent reserved his right to assert future asbestos claims in other settlement agreements not addressed in the instant motion.[55] Accordingly, the Avondale Interests contend that Decedent's releases, including any and all future claims relating to asbestos exposure or asbestos-related diseases,

---

[52] *Id*. at 11–12.

[53] *Id*. at 12.

[54] *Id*. at 13.

[55] *Id*.

should be interpreted to include the asbestos related lung cancer claimed in this lawsuit.[56] Therefore, the Avondale Interests argue they are entitled to summary judgment recognizing that Babcock and Wilcox, Combustion Engineering Inc., Minnesota Mining and Manufacturing Company (3M), and Travelers are settled entities whose fault will be determined by the jury at the trial of this matter.[57]

### B.   *Plaintiffs' Argument in Opposition to the Motion*

In the opposition memorandum, Plaintiffs first argue that the Avondale Interests' request that entities be listed on the jury verdict form is premature.[58] Even if Decedent released lung cancer claims with one of the non-parties, which Plaintiffs dispute, Plaintiffs assert that the entity would not go on the jury verdict form if there is no evidence submitted during trial as to a particular entity.[59]

Next, Plaintiffs argue that this motion was already denied by the state court trial judge.[60] Plaintiffs contend that the Court should only reconsider motions sparingly, where, for example, there exists newly discovered evidence or a change in the law.[61] Because those conditions do not exist here, Plaintiffs argue that the motion should be denied on that basis alone.[62] Additionally, Plaintiffs argue that the Louisiana Supreme Court's decision in *Joseph* did not change the law.[63]

---

[56] *Id.*

[57] *Id.* at 13–14.

[58] Rec. Doc. 93 at 1.

[59] *Id.* at 1–2.

[60] *Id.* at 2.

[61] *Id.* at 3.

[62] *Id.*

[63] *Id.*

Plaintiffs contend that for res judicata to apply, the intent of the parties to the compromise must be clear, unambiguous and unequivocal.[64] Plaintiffs argue that the Louisiana Supreme Court previously held that "if the release instrument leaves any doubt as to whether a particular future action is covered by the compromise, it should be construed not to cover such future action."[65]

Plaintiffs contend that the releases purportedly signed by Decedent leave significant doubt as to whether Decedent had any understanding at all that there was any risk of contracting future cancer and whether an attorney ever explained any of the settlements to him.[66] Plaintiffs assert that the settlements Decedent received for his asbestosis claim were of nuisance value.[67] Therefore, Plaintiffs contend that the circumstances and events surrounding the releases leaves significant doubt as to whether the parties intended to release future asbestos-related malignancy claims.[68] While the motion does not appear to seek preclusion of the wrongful death claims of Decedent's children, out of an abundance of caution, Plaintiffs state the such claims would not be precluded because Decedent's children were not parties to the settlements.[69]

Next, Plaintiffs assert that the settlement documents are inadmissible as unauthentic and hearsay.[70] Plaintiffs cite the deposition of Bradley Hiatt, of Wilson & Hiatt Law Office, P.A. (formerly the Wilson Law Firm), who testified that he never personally handled the settlement

---

[64] *Id.*

[65] *Id.* at 4 (citing *Brown v. Drillers*, 630 So. 2d 741, 753 (La. 1994)).

[66] *Id.* at 6–7.

[67] *Id.* at 7.

[68] *Id.*

[69] *Id.* at 8.

[70] *Id.*

documents that were produced and could not identify any of the signatures on the documents.[71] Plaintiffs also argue that the deposition testimony of Mr. Hiatt creates an issue of fact as to whether any release gave up lung cancer claims because Mr. Hiatt confirmed that the agreements typically included Master Agreements which provided for comeback rights.[72] According to Plaintiffs, Louisiana law supports the denial of a motion for summary judgment where extrinsic evidence shows that there was no intent to release lung cancer claims.[73]

Plaintiffs submit that it is clear neither Mr. Dempster nor Mrs. Dempster ever intended to release any future lung cancer claim because: (1) Mr. Dempster only had an asbestosis claim at the time of the *Borden* litigation, (2) Mr. Dempster and Mrs. Dempster were never compensated for any lung cancer claim, and (3) Mr. Dempster and Mrs. Dempster were never represented with regard to any lung cancer claim.[74] Nevertheless, Plaintiffs address some of the settlement agreements referenced in the Avondale Interests' motion with specificity.[75] As to the Fibreboard Release, Plaintiffs contend that there was a Master Agreement wherein future cancer claims were reserved.[76] As to the Center for Claims Resolution ("CCR") release, Plaintiffs assert that many of those companies defaulted on the agreement,[77] and Plaintiffs argue that there was a Master Agreement wherein a plaintiff who was compensated for a non-malignancy claim would not

---

[71] *Id.* (citing Rec. Doc. 93-11).

[72] *Id.* at 11 (citing Rec. Doc. 93-11).

[73] *Id.* at 11–12 (citing *Maggio v. Parker*, 17-1112 (La. 6/27/18), 250 So. 3d 874, 879–80).

[74] *Id.* at 12.

[75] *Id.*

[76] *Id.* at 13 (citing Rec. Doc. 93-17).

[77] *Id.* at 16 (citing Rec. Doc. 93-11).

release a future lung cancer claim.[78] Furthermore, Plaintiffs argue that the Avondale Interests have not presented any evidence to show which entities, if any, ever paid any amount to the Dempsters.[79] As for the purported settlements with A.P. Green, A.W. Chesterton, and Travelers, Plaintiffs contend that Mr. Hiatt testified that those entities never paid any settlement funds to the Dempsters.[80]

Regarding the settlements with Combustion Engineering, Babcock and Wilcox, 3M, and Champion International Corporation, Plaintiffs contend that those releases should not be read to include lung cancer because the releases do not contain the word "cancer" at all.[81] Plaintiffs assert that the same argument applies to the release entered with Metropolitan Life Insurance Company.[82] Additionally, Plaintiffs note that there is no indication in the release as to what entity Metropolitan Life Insurance Company provided insurance coverage for.[83]

Next, Plaintiffs argue that the Avondale Interests failed to meet their burden of proving that Decedent was ever compensated for entering any of the purported releases of a lung cancer claim.[84] Finally, Plaintiffs contend that any purported compromise of a lung cancer claim must be signed by both parties.[85] According to Plaintiffs, any purported release documents that defendants

---

[78] *Id.* at 16–17.

[79] *Id.* at 18–19.

[80] *Id.* at 19 (citing Rec. Doc. 93-11).

[81] *Id.* at 20, 22.

[82] *Id.* at 21.

[83] *Id.* at 22.

[84] *Id.* at 23.

[85] *Id.* at 24.

may produce to support their motion are unenforceable without the signatures of both parties.[86]

## C.  *The Avondale Interests' Argument in Further Support of the Motion*

In further support of the instant motion, the Avondale Interests assert that Plaintiffs' objections to the settlement documents are without merit.[87] The Avondale Interests contend that most of the releases are self-authenticating under Federal Rule of Evidence 902(8) because they were notarized.[88] Of the three releases that were not notarized, the Avondale Interests contends that two of the releases are considered ancient documents under Federal Rule of Evidence 901 and were properly authenticated because they are: 1) over 20 years old, 2) in a condition that creates no suspicion about authenticity, 3) and in a place where they would likely be if authentic.[89]

Next, the Avondale Interests argue that the Louisiana Supreme Court's recent decision in *Joseph* provides greater support for the Avondale Interests' argument that the releases at issue are broad enough to include lung cancer.[90] The Avondale Interests contend that the *Joseph* court expressly rejected the notion that releases must specifically identify each and every disease or manifestation of injury resulting from a tort to be effective.[91] Instead, according to the Avondale Interests, the Louisiana Supreme Court determined that the settlement in that case did not attempt to resolve claims resulting from a specific disease, but rather resolved all claims arising from the alleged occupational exposure to asbestos.[92] Contrary to Plaintiffs' argument in this case, the

---

[86] *Id.* at 25.

[87] Rec. Doc. 129 at 1.

[88] *Id.* at 1–2.

[89] *Id.* at 2.

[90] *Id.* at 3.

[91] *Id.*

[92] *Id.* at 3–4.

14

Avondale Interests assert that the intent expressed in the releases, is the intent to release any claims arising from exposure to asbestos occurring before the release was executed.[93] If the release clearly and unambiguously releases claims related to exposure to asbestos occurring before the releases were executed, then the Avondale Interests argue the release should be interpreted to include any new claims and/or diseases arising from the same alleged pre-release exposures, unless new claims or diseases were expressly reserved or excluded.[94] Moreover, the Avondale Interests assert that the *Joseph* court expressly rejected the argument advanced by Plaintiffs that, for the releases to extend to lung cancer, that words "lung cancer" must be expressly included.[95]

Next, the Avondale Interests contend that proof of payment is not required.[96]  According to the Avondale Interests, another judge in the Eastern District of Louisiana held that the compromises could be enforceable without proof of compensation if the releases contained language such as "for sums paid," for "cash in hand paid," for amounts "the receipt . . . of which are hereby acknowledged," or for amounts "this day received."[97] The Avondale interests assert that five of the releases at issue here contain similar language.[98] The Avondale Interests also assert that signatures of both parties on the release document is not required for the document to be enforceable.[99] According to the Avondale Interests, in the same case, the district judge held that because the releases showed on their faces that the plaintiff received consideration in exchange for

---

[93] *Id*. at 4.

[94] *Id*.

[95] *Id*.

[96] *Id*. at 6.

[97] *Id*. (citing *Savoie v. Huntington Ingalls*, 2019 WL 2423234 (E.D. La. 6/10/19)).

[98] *Id*. at 6–7.

[99] *Id*. at 7.

the release, they were valid despite not being signed by the released party.[100]

The Avondale Interests dispute Plaintiffs' contention that many of the entities identified in the CCR agreement should not be considered released because many of the entities were allegedly bankrupt or insolvent.[101] The Avondale Interests note that Louisiana Civil Code article 2302 permits one to pay the debt of another.[102] The Avondale Interests contend that Decedent expressly released the entities listed in the CCR agreement and received consideration for those releases.[103] Therefore, the Avondale Interests argue that the identity of who may actually have funded the CCR agreement is immaterial.[104] Additionally, even if the identity of the actual payor was material, the Avondale Interests contend that the evidence proffered by Plaintiffs does not support their argument because Plaintiffs rely on deposition testimony showing that many of the members of the CCR defaulted around September 2002, two years after Decedent signed the release.[105]

For these reasons, the Avondale Interests assert that this Court should enter an order establishing that Decedent settled the claims Plaintiffs have asserted in this lawsuit with the Entities.[106] Further, the Avondale Interests pray that the Entities be listed on the jury verdict form so that the jury can determine their fault based on the evidence at trial.[107]

---

[100] *Id.* (citing *Savoie*, 2019 WL 2423234).

[101] *Id.* at 8.

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] *Id.*

[106] *Id.* at 9.

[107] *Id.*

### III. Legal Standard

*A.*   ***Legal Standard on a Motion for Summary Judgment***

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[108] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[109] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[110] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[111] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[112]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[113] Thereafter, the nonmoving party

---

[108] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[109] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[110] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[111] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

[112] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[113] *Celotex*, 477 U.S. at 323.

should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[114] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[115] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[116] Rather, a factual dispute precludes a grant of summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[117] Further, a court "resolve[s] factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[118] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[119] Ultimately, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[120]

---

[114] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[115] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

[116] *Little*, 37 F.3d at 1075.

[117] *Anderson*, 477 U.S. at 248.

[118] *Little*, 37 F.3d at 1075.

[119] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir. 1987).

[120] *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993).

### B.    Legal Standard for Reconsideration

Although the Fifth Circuit has noted that the Federal Rules "do not recognize a 'motion for reconsideration' *in haec verba*,"[121] it has consistently recognized that such a motion may challenge a judgment or order under Federal Rules of Civil Procedure 54(b), 59(e), or 60(b).[122]  Federal Rule of Civil Procedure 59(e) also allows courts to alter or amend judgments after entry. The Court has "considerable discretion" in deciding whether to grant a motion for reconsideration, but must "strike the proper balance between two competing imperatives: (1) finality and (2) the need to render just decisions on the basis of all the facts."[123] This Court's discretion is further bounded by the Fifth Circuit's instruction that reconsideration is "an extraordinary remedy that should be used sparingly,"[124] with relief being warranted only when the basis for relief is "clearly establish[ed]."[125] Courts in the Eastern District of Louisiana have generally considered four factors in deciding motions for reconsideration under the Rule 59(e) standard:

   (1)    the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;

   (2)    the movant presents newly discovered or previously unavailable evidence;

   (3)    the motion is necessary in order to prevent manifest injustice; or

   (4)    the motion is justified by an intervening change in controlling law.[126]

---

[121] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990).

[122] *Id.* (Rules 59 and 60); *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *3–4 (E.D. La. Apr. 5, 2010) (Rule 54).

[123] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

[124] *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

[125] *Schiller v. Physicians Res. Grp, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003); *Castrillo v. Am. Home Mortgage Servicing, Inc.*, No. 09-4369 R, 2010 WL 1424398, at *3 (E.D. La. Apr. 5, 2010) (Vance, J.).

[126] *See, e.g.*, *Castrillo*, 2010 WL 1424398, at *4  (citations omitted).

A motion for reconsideration, "'[is] not the proper vehicle for rehashing evidence, legal theories, or arguments . . . .'"[127] Instead, such motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[128] "It is well settled that motions for reconsideration should not be used . . . to re-urge matters that have already been advanced by a party."[129] When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted.[130]

## IV. Analysis

### A.   *Whether the Avondale Interests are Entitled to Reconsideration*

The Avondale Interests request reconsideration of the state court's order denying the Avondale Interests' motion for partial summary judgment.[131] The Avondale Interests argue that the Louisiana Supreme Court's decision in *Joseph* clarified the law regarding the interpretation of releases.[132]

The Court must first determine the proper procedure to follow in resolving a motion for reconsideration of a state court's order denying a motion for summary before the case was removed

---

[127] *Id.* (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004)).

[128] *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (citation and internal quotation marks omitted).

[129] *Helena Labs. Corp. v. Alpha Sci. Corp.*, 483 F. Supp. 2d 538, 539 (E.D. Tex. 2007) (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

[130] *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 481 (M.D. La. 2002). *See also Mata v. Schoch*, 337 B.R. 138, 145 (S.D. Tex. 2005) (refusing reconsideration where no new evidence was presented); *FDIC v. Cage*, 810 F. Supp. 745, 747 (S.D. Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

[131] Rec. Doc. 36. The motion for summary judgment at issue was already denied by Judge Sidney Cates, IV prior to the second removal of this case to federal court. Rec. Doc. 93-23.

[132] Rec. Doc. 36-5 at 1.

to federal court. Namely, the Court must determine what degree of deference is owed to an interlocutory state court order once a case has been removed to federal court. After removal of an action to federal district court, "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the [federal] district court."[133]  The Fifth Circuit addressed this issue in *Nissho–Iwai American Corp. v. Kline*.[134] There, a Texas state court granted a plaintiff's motion to strike a defendant's defenses and counterclaims before the case was removed to federal court.[135] In addressing the issue of deference, the Fifth Circuit concluded that where "the state court's ruling is purely interlocutory, it remains subject to reconsideration just as it had been prior to removal."[136] The Fifth Circuit reasoned that "judicial economy is served by eliminating the need for duplicative proceedings in federal court."[137] However, the Fifth Circuit held that federal procedure rather than state procedure governs the manner in which the state court decision is to be enforced.[138] "In sum, whenever a case is removed, interlocutory state court orders are transformed by operation of 28 U.S.C. § 1450 into orders of the federal district court to which the action is removed. The district court is thereupon free to treat the order as it would any such interlocutory order it might itself have entered."[139]

The Fifth Circuit addressed the specific issue of a state court deciding a motion for

---

[133] 28 U.S.C. § 1450.

[134] 845 F.2d 1300 (5th Cir. 1988).

[135] *Id.*

[136] *Id.* at 1303 (citing *General Investment Co. v. Lake Shore & Michigan Southern Ry.*, 260 U.S. 261, 267, (1922)).

[137] *Id.*

[138] *Id.*

[139] *Id.* at 1304.

summary judgment and a subsequent removal to federal court in *Resolution Trust Corp. v. Northpark Joint Venture*.[140] There, the Fifth Circuit held that a "prior state court order in essence is federalized when the action is removed to federal court, although the order 'remains subject to reconsideration just as it had been prior to removal.'"[141] In other words, the Federal Rules of Civil Procedure govern the enforcement of a prior state court ruling in a case removed to federal court.[142] Therefore, where the prior state court order was decided on summary judgment, the federal court must ensure that the order is consistent with the requirements of Federal Rule of Civil Procedure 56.[143] "If the federal court declines to reconsider the state court summary judgment, then the federal court certifies that the order is indeed consistent with Rule 56(c)."[144] "The standard of review is the same as if the federal court itself had entered the order. . ."[145]

The Fifth Circuit's opinions in *Nissho–Iwai American Corp.* and *Resolution Trust Corp.* show that (1) when a case is removed from state court, all orders of the state court remain in full force and effect and (2) once removed, federal procedure governs the manner of enforcement of the state court order.[146] When this case was removed to federal court, the state court had denied Avondale's motion for summary judgment.[147] Here, as in *Nissho–Iwai American Corp.* and *Resolution Trust Corp.*, the order entered by the state court is an interlocutory order.[148] The Fifth

---

[140] 958 F.2d 1313 (5th Cir. 1992).

[141] *Id.* at 1316 (quoting *Nissho–Iwai American Corp.*, 845 F.2d at 1303).

[142] *Id.*

[143] *Id.*

[144] *Id.*

[145] *Id.*

[146] *Nissho–Iwai American Corp.*, 845 F.2d at 1303; *Resolution Trust Corp.,* 958 F.2d at 1316.

[147] Rec. Doc. 91-4.

[148] Under Louisiana law, a denial of summary judgment is an interlocutory order that is not final or appealable

Circuit instructs federal district courts to treat interlocutory state court orders as orders of the federal district court to which the action is removed. The district court may treat the state court order as it would any interlocutory order it might itself have entered. Specifically, when the state court order is on summary judgment, the federal district court may decline to reconsider the state court's order if the federal court certifies that the order is indeed consistent with Federal Rule of Civil Procedure 56(c).

Here, the Avondale Interests have not shown any substantial reasons warranting reconsideration of the state court's ruling. The Louisiana Supreme Court's decision in *Joseph* did not dramatically alter the legal landscape, but rather, clarified the state of the law as it pertains to the preclusive effect of releases that do not expressly identify a particular injury.[149] The Louisiana Supreme Court had previously stated in *Brown v. Drillers* that its holding "permits defendants to conclusively compromise potential wrongful death claims, provided the intent to do so is unequivocally reflected, *while not necessarily by express mention of such claims*, in the language employed in the release instrument."[150] In fact, the Louisiana Supreme Court expressly acknowledged that its decision in *Joseph* was in fidelity to its prior decision in *Brown*.[151] As such, *Joseph* did not dramatically alter the legal landscape, but rather, clarified the state of the law as it pertains to the preclusive effect of releases which do not expressly identify a particular injury.[152]

---

unless there is a showing of irreparable injury. *See Jones v. Next Generation Homes, LLC*, 2011-0407 (La. App. 4 Cir. 10/5/11), 76 So. 3d 1238, writ denied, 2011-2401 (La. 11/23/11), 76 So. 3d 433; La. C.C.P. art. 2083.

[149] *Joseph*, 2020 WL 499939, at *7. ("In effect, plaintiffs argue that for a release to 'unequivocally reflect' an intent to resolve a claim for future disease or injury, it must expressly identify that disease or injury. Such is not the law.").

[150] *Brown*, 630 So. 2d at 757.

[151] *Joseph*, 2020 WL 499939, at *7. ("Indeed, the very decision on which plaintiffs' rely, *Brown*, itself acknowledges there is no necessity for direct reference to a particular injury, as long as the intent of the parties is clear.").

[152] *Id*. ("In effect, plaintiffs argue that for a release to 'unequivocally reflect' an intent to resolve a claim for

Furthermore, for the reasons that follow, even if the Court were considering this motion for the first time under the summary judgment standard rather than the reconsideration standard, there are genuine issues of material fact in dispute precluding summary judgment.

**B.      Objection to the Authenticity of the Release Documents**

Before reaching the merits of the motion for summary judgment, the Court must address an evidentiary issue raised by Plaintiffs. Plaintiffs assert that the releases are inadmissible because they have not been authenticated.[153] Federal Rule of Evidence 901(a) generally requires the proponent to "produce evidence sufficient to support a finding that the items is what the proponent claims it is." On January 7, 2020, Bradley Hiatt, an attorney with the firm that represented Decedent in the *Borden* case, was deposed by the attorneys in this case.[154] Mr. Hiatt testified that he never personally handled the settlement documents that were produced and could not identify any of the signatures on the documents.[155] Nevertheless, nine of the twelve releases addressed in the instant motion are self-authenticating under Federal Rule of Evidence 902(8) because the releases were notarized.[156]

Three of the releases were not notarized—the A.W. Chesterton Company release, the Champion International release, and the Travelers release.[157] The A.W. Chester Company release and the Champion International release are considered ancient documents under Federal Rule of

---

future disease or injury, it must expressly identify that disease or injury. Such is not the law.").

[153] Rec. Doc. 93 at 8.

[154] Rec. Doc. 36-7.

[155] *Id.* at 68–69.

[156] *See* Fed. R. Evid. 902(8) ("The following items of evidence are self-authenticating . . . A document accompanied by a certificate of acknowledgment that is lawfully executed by a notary public or another officer who is authorized to take acknowledgments."). *See also* Rec. Doc. 36-6.

[157] *See* Rec. Doc. 36-6.

Evidence 901(b)(8). Pursuant to Rule 901(b)(8), an ancient document is considered authentic if: "(A) is in a condition that creates no suspicion about its authenticity; (B) was in a place where, if authentic, it would likely be; and (C) is at least 20 years old when offered."[158] The A.W. Chesterton Company release is dated April 10, 1997,[159] and the Champion International release is dated June 24, 1996.[160] Mr. Hiatt appeared for a deposition in this matter in his capacity as records custodian of the Wilson Law Firm,[161] and he testified that he had no reason to doubt the authenticity of the signatures on the documents that were maintained in the regular course of business.[162] Mr. Hiatt also testified that he requested the physical file for Callen Dempster from their archival storage, personally reviewed it and the electronic files, along with any firm settlement file, which were scanned electronically before being stored in a storage facility.[163] Accordingly, the Avondale Interests have produced sufficient evidence to support a finding that the releases are authentic.

With respect to the Travelers release, the Avondale Interests do not present any argument as to the authenticity of the document. The Travelers release is not notarized, and it is not an ancient document because it is dated April 15, 2001.[164] Accordingly, the Avondale Interests have not met their burden of showing that the Travelers release is authentic. Alternatively, for the reasons discussed below, the Avondale Interests are not entitled to summary judgment with respect to the Travelers release.

---

[158] *See* Fed. R. Evid. 901(b)(8).

[159] Rec. Doc. 36-6 at 11.

[160] *Id.* at 18. An affidavit attached to the Champion release is notarized. *Id.* at 19.

[161] Rec. Doc. 36-7 at 10–11.

[162] *Id.* at 104.

[163] *Id.* at 68.

[164] Rec. Doc. 36-6 at 41.

### C.    *Louisiana Law Regarding Release of Future Claims*

In 1991, Mr. Dempster, along with several thousand other plaintiffs, sued multiple defendants for asbestos-related injuries in *In re Asbestos, Plaintiffs v. Borden, Inc., et al.*, Case No. 91-18397, in the Civil District Court for the Parish of Orleans.[165] The record shows that, during the *Borden* litigation, Mr. Dempster was represented by the Wilson Law Firm.[166] That litigation resulted in settlements between Mr. Dempster and various defendants.[167] Many of these settlement agreements were also signed by Mrs. Dempster. [168] When the settlement agreements were entered, Mr. Dempster had been diagnosed with asbestosis but had not yet been diagnosed with lung cancer.[169] The core issue presented in the instant motion is whether Decedent released a future claim for lung cancer when he executed these releases.

Under Louisiana law, "[a] compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship."[170] As a contract, a compromise must be interpreted according to "the common intent of the parties."[171] The general rules of construction applicable to contracts, and therefore, compromises, dictate that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of

---

[165] Rec. Doc. 36-6.

[166] *Id.*

[167] *Id.*

[168] *Id.*

[169] *Id.*

[170] La. C.C. art. 3071.

[171] La. C.C. art. 2045; *Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94), 630 So. 2d 741, 748.

the parties' intent."[172] "[T]he meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the instrument."[173]

"Louisiana courts have crafted a jurisprudential exception to the extrinsic evidence rule for compromise agreements."[174] When a dispute arises as to the scope of a compromise agreement, "extrinsic evidence can be considered to determine exactly what differences the parties intended to settle."[175] "[A] general release will not necessarily bar recovery for those aspects of a claim not intended by the parties to be covered by the release."[176] Intent is determined by reading the compromise instrument "in light of the surrounding circumstances at the time of execution of the agreement."[177] When a party produces "substantiating evidence of mistaken intent," a court may look beyond the four corners of the instrument to ascertain intent.[178]

"The parties to a release instrument are therefore 'permitted to raise a factual issue as to whether unequivocal language in the instrument was intended to be unequivocal.'"[179] Absent such evidence, however, courts "have not hesitated to confine their analysis to the four corners of the instrument."[180] Louisiana courts have limited the application of the extrinsic evidence exception

---

[172] La. C.C. art. 2046.

[173] *Brown*, 630 So. 2d at 748.

[174] *Maggio v. Parker*, 2017-1112 (La. 6/27/18), 250 So. 3d 874, 879 (citing *Brown.*, 630 So. 2d 749).

[175] *Brown*, 630 So. 2d at 749.

[176] *Id.* at 749.

[177] *Id.* at 748.

[178] *Id.* at 749.

[179] *Maggio*, 250 So. 3d at 879 (citing *Brown.*, 630 So. 2d 749).

[180] *Brown.*, 630 So. 2d 750.

to cases where evidence is presented establishing either "(1) that the releasor was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim."[181] "A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express."[182] In applying this rule of construction specific to compromises, "courts are guided by the general principle 'that the contract must be construed as a whole and in light of attending events and circumstances.'"[183]

Under Louisiana law, parties may compromise to settle any dispute they may have in the present or in the future, including claims that have not yet arisen.[184] The Louisiana Supreme Court held, in *Daigle v. Clemco Indus.*, that "a compromise or contractual clause is not null because it excludes or limits liability in advance except when a party to the contract relinquishes future rights of action arising from his or her physical injury or from the intentional or gross fault of another party."[185] While Louisiana law does not prohibit parties from settling potential future claims that may arise from a past breach of duty, "releases of future actions are narrowly construed to assure that the parties fully understand the rights released and the resulting consequences. As a result, if the release instrument leaves any doubt as to whether a particular future action is covered by the compromise, it should be construed not to cover such future action."[186]

---

[181] *Maggio*, 250 So. 3d at 879 (citing *Brown.*, 630 So. 2d 749).

[182] La. C.C. art. 3076.

[183] *Brown*, 630 So.2d at 748 (quoting *Succession of Teddlie*, 385 So.2d 902, 904 (La. App. 2 Cir. 1980)).

[184] *Joseph*, 2020 WL 499939, at *6.

[185] 613 So.2d 619, 622-23 (La. 1993)

[186] *Id*. at 754.

As the party arguing that the releases have preclusive effect, the Avondale Interests bear the burden of establishing the requisites for a valid compromise, including the parties' intent to settle the differences in this action.[187] To meet that burden, the Avondale Interests rely on the language of the releases, which the Avondale Interests argue unambiguously include claims for lung cancer and wrongful death.[188]

Several prior decisions by Louisiana state courts analyzing the preclusive effects of asbestos related releases provide useful guidance to the Court's analysis of the releases at issue in this case. In *Breaux v. Mine Safety Appliances Co.*, the plaintiff sued the defendant for allegedly causing his asbestosis.[189] The parties agreed to settle the case for $500, and the plaintiff executed a release instrument, which provided that the plaintiff released the defendant from liability for "any and all claims . . . or disabilities of any nature whatsoever, including but not restricted to asbestosis, silicosis and/or pneumonoconiosis, past, present or future, and any and all other claims, past, present or future arising out of . . . occupational diseases contracted while employed at or by [defendant]."[190] The plaintiff later developed mesothelioma and sued the same defendant. The Louisiana Fifth Circuit Court of Appeal held that the release did not bar the plaintiff's mesothelioma claim because the $500 settlement was a mere nuisance settlement:

> Although the agreement refers to "disabilities of any nature", "past, present or future," "arising out of or in any manner whatsoever connected with or resulting from, either directly or indirectly, injury sustained or occupational diseases contracted while employed at or by [the defendant]," it is not logical to expect that plaintiff intended to release defendant for the future manifestation of this type of cancer for $500. This is a terrible disease. If the agreement intended to include mesothelioma, defendant would surely have included it in the listed diseases. As

---

[187] *Brown*, 630 So. 2d at 747.

[188] Rec. Doc. 36-5 at 9–10.

[189] 98-133 (La. App. 5 Cir. 8/25/98), 717 So. 2d 1255.

[190] *Id*. at 1257.

plaintiff argues, this settlement was a nuisance settlement. Thus, we find that the language of the agreement does not include the contraction of this type of cancer which would not manifest for many years, nor did plaintiff intend to include it in the settlement. Plaintiff signed the agreement expressly because he did not have any of the asbestos related diseases at that time.[191]

In *Hymel v. Eagle, Inc.*, the plaintiff was diagnosed with asbestosis and later, executed a release in exchange for $15,000, which provided "[i]t is further understood and agreed that the aforementioned provisions are intended to release and forever discharge the released parties from any and all liability on account of or in any way growing out of occupational diseases or conditions attributable to exposure to asbestos . . . including . . . any future or consequential condition or injury, including but not limited to death, mesothelioma, cancer, shortness of breath, fear of cancer or increased risk of cancer. . ."[192] The plaintiff developed mesothelioma and sued the same defendant. The Louisiana Fourth Circuit Court of Appeal determined that the prior release "clearly and unambiguously compromised any prospective claims that the plaintiff might have for mesothelioma or cancer."[193] The court distinguished the holding *Breaux* by noting the following differences between the two cases:

> (1) the settlement specifically covered both mesothelioma and cancer by name, (2) the plaintiff had an asbestos related disease at the time he signed the settlement (asbestosis); (3) it was for a sum thirty time[s] greater than the settlement in *Breaux* and, therefore, cannot be characterized as a "nuisance settlement"; and (4) there is no indication in *Breaux* that the plaintiff had the potential to recover additional sums from other defendants as there is in the instant case.[194]

The court further noted that:

> Where a settlement and release refer expressly to the claim sought to be released by the party seeking to enforce the settlement, that alone is sufficient to shift the

---

[191] *Id.*

[192] 2008-1287 (La. App. 4 Cir. 3/18/09), 7 So. 3d 1249, 1252.

[193] *Id.* at 1258.

[194] *Id.* at 1254

burden to the party seeking to oppose the enforcement of the settlement and release to prove that there was no meeting of the minds or that there was fraud or ill practices. It is not sufficient to raise the issue to merely make the self-serving allegation that there was no meeting of the minds. A party represented by counsel may not defeat a written settlement and release that is unambiguous on its face by merely alleging that he did not understand it. Otherwise, no settlement would be enforceable without more litigation which defeats the whole public policy favoring settlements. Signatures on documents are not mere ornaments. . . . There is little incentive to settle if a party to the settlement agreement may later seek to void it based merely on his self-serving statements, without more, and in the absence of any evidence of fraud or ill practices, that he misunderstood what he signed or that he did not intend to sign what he signed.[195]

In *Joseph*, the plaintiff Gistarve Joseph ("Mr. Joseph") filed suit against Avondale Industries, its executive officers, and their insurers for occupational exposure to toxic substances, including asbestos.[196] In 1985, Mr. Joseph settled his claims against Avondale and its executive officers by executing a release which released Avondale, its executive officers, and their insurers "from any and all liability, claims, demands, liens, remedies, debts, rights, actions and causes of action of whatever kind or nature which he now has or may hereafter acquire for any damages whatsoever, . . . directly or indirectly sustained or suffered by Claimant on account of, or in any way growing out of occupational lung diseases of any and every kind and description, . . . and any and all other personal injury claims arising out of Claimant's employment at Avondale. . . ."[197] In 2016, Mr. Joseph filed a lawsuit against Huntington Ingalls Inc. (formerly Avondale and referred to herein as "Avondale") and its executive officers, alleging that he contracted mesothelioma.[198] Avondale filed an exception of res judicata, arguing that the release barred the plaintiffs' survival

---

[195] *Id*. at 1257–58 (citations omitted).

[196] *Joseph v. Huntington Ingalls Incorporated*, 2018-2061 La. 1/29/20, 2020 WL 499939, at *1 (La. 2020).

[197] *Id.* at *2.

[198] *Id*.

action, and the state district court denied the exception.[199]

On appeal, the Louisiana Supreme Court reversed the state district court, and sustained the exception of res judicata.[200] After reviewing the law relevant to compromises, the Louisiana Supreme Court determined "that the intent of the parties thereto is clear, unambiguous, and unequivocal" and that "[t]he plain language of the Release reflects that [Mr. Joseph] intended to release his present and future claims for 'occupational lung disease of any and every kind and description' and 'any and all other personal injury claims arising out of [his] employment at Avondale.'"[201] The court found that mesothelioma is a disease of the lungs which qualifies as an "occupational lung disease," due to how commonly the disease develops due to exposure to asbestos in the workplace.[202] The court noted that while Mr. Joseph had not been diagnosed with mesothelioma when he executed the release, the language of the release reflected his understanding that his future was uncertain.[203] The court held that the fact that Mr. Joseph was later diagnosed with mesothelioma after signing the release did not entitle the plaintiff to rescind the agreement.[204]

---

[199] *Id.*

[200] *Id.*

[201] *Id.* at *7–8.

[202] *Id.* at *8.

[203] *Id.* (Specifically, the court found the following language from the release pertinent: "Claimant specifically warrants that he has discussed his physical and mental condition with several physicians of his own choice and that he is fully aware of his medical condition and understands that the alleged injuries, illnesses, and/or diseases, and their results and consequences, and the damages allegedly sustained by him, whether mental or physical, may be permanent and progressive and that recovery therefrom may be uncertain and indefinite; and Claimant understands and agrees that in executing this Settlement Agreement and in giving this receipt and final complete discharge and release, he has had the benefit of advice and counsel of his own attorney and is relying wholly upon his own judgment, belief and knowledge as to the nature, extent and duration of said alleged injuries and damages, information obtained from physicians, and the advice of his own attorney, and he acknowledges that he has not been influenced in any manner in executing this Settlement Agreement and giving this release and indemnity agreement by any representations or statements whosoever made by the persons or parties hereby released, or by anyone representing them or any of them.").

[204] *Id.* (citing *Hymel v. Eagle, Inc.*, 08-1287, p. 10 (La. App. 4 Cir 3/18/09), 7 So. 3d 1249, 1256 ("The subsequent discovery by a claimant that an injury was more serious than initially believed does not entitle the claimant

This was based on the rationale that "[i]t is not the province of the court to relieve a party of a bad bargain, no matter how harsh."[205]

Additionally, the court noted that the release was executed with the advice and in the presence of Mr. Joseph's attorneys, who had extensive experience in asbestos litigation.[206] The court further noted that the plaintiffs did not allege error, fraud, duress, or undue influence in the creation or execution of the release.[207]

In *Joseph*, the plaintiffs argued that the release was unenforceable if interpreted to encompass injuries that manifested after the release was executed because such a result would violate Louisiana Civil Code article 2004.[208] However, the court explained that "Article 2004 applies to prohibit settlements for injuries arising out of *future tortious conduct*, but does not prohibit settlement of past and future damages arising out of *tortious conduct that has already occurred*."[209] In *Joseph*, the court concluded that the injury to Mr. Joseph occurred during his employment at Avondale from 1969 to 1982, before the release was signed.[210] Therefore, the court

---

to rescind the settlement and release agreement.")).

[205] *Id*. (citing *Hymel*, 08-1287 at 5, 7 So. 3d at 1253).

[206] *Id*.

[207] *Id*. (citing La. C.C. art. 3082 ("A compromise may be rescinded for error, fraud, and other grounds for the annulment of contracts. Nevertheless, a compromise cannot be rescinded on grounds of error of law or lesion.")).

[208] *Id*.at *8-9.

[209] *Id*. at *9 (emphasis original) (citing *Hymel*, 08-1287 at 9, 7 So.3d at 1255 ("It is obvious that the purpose of this article is to express the principle that it is against public policy to permit a party to obtain a license for the commission of future bad acts, i.e., if a party, in effect, were to receive in advance forgiveness for the commission of a future bad act, then it would act as an invitation, as it were, to commit the bad act. Society does not wish parties to do acts that cause injury to each other. Therefore, it is against public policy to enforce contracts that would allow parties to [do] so.... However, where the bad act has already been committed the public policy is not the same. It is then too late to prevent the bad act. It is then time for another public policy to govern, the policy that favors settlement and compromise.")).

[210] *Id*.

found that "[g]iven the clear and unambiguous recitals in the Release . . . considered in light of the attending events and circumstances (including but not limited to the fact that the amount of the settlement was not a nominal sum, Mr. Joseph had the advice and counsel of his own physicians and of experienced attorneys, and he expressly reserved his rights against seven other defendants, permitting him additional avenues of recovery)" plaintiffs' survival claims based on Mr. Joseph's contraction of mesothelioma fell squarely within the terms of the release.[211] Because the other necessary elements of res judicata were deemed satisfied, the court held that the release was entitled to preclusive effect.[212]

With this background in mind, the Court turns to the Avondale Interests' argument that Decedent's prior settlements released the Entities from the claims asserted in this case.[213]

**C.** *Whether the Avondale Interests are Entitled to Summary Judgment Finding that Decedent's Prior Settlements Released the Entities from the Claims Asserted in this Case*

Twelve releases are at issue in the instant motion: (1) the Center for Claims Resolution ("CCR") Release;[214] (2) the A.P. Green Industries, Inc. Release;[215] (3) A. W. Chesterton Company

---

[211] *Id.*

[212] *Id.* at *10.

[213] Rec. Doc. 36.

[214] *Id.* at 2–5. The CCR Release applied to Mr. Dempster's claims against Amchem Products, Inc.; Gasket Holdings, Inc. (f/k/a Flexitallic, Inc.); GAF Corporation; Ferodo America, Inc.; Armstrong World Industries, Inc.; The Asbestos Claims Management Corporation (formerly known as National Gypsum Company); NGC Asbestos Disease and Property Damage Settlement Trust; CertainTeed Corporation; C.E. Thurston & Sons, Inc.; Dana Corporation; I.U. North America, Inc.; Maremont Corporation; National Service Industries, Inc.; NORSOC, Corp.; Pfizer Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T&N, PLC; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); and United States Gypsum Company.

[215] *Id.* at 6–10.

Release;[216] (4) the CBS Corporation Release;[217] (5) the Champion International Release;[218] (6) the Fibreboard Corporation Release;[219] (7) the General Electric Company Release;[220] (8) the Metropolitan Life Insurance Company Release;[221] (9) the Minnesota Mining and Manufacturing Company ("3M") Release;[222] (10) the Babock and Wilcox Release;[223] (11) the Combustion Engineering, Inc. Release;[224] and (12) the Travelers Release.[225] The core issue presented in the instant motion is whether Mr. Dempster released a future claim for lung cancer when he executed those releases.

The Court is "guided by the general principle 'that the contract must be construed as a whole and in light of attending events and circumstances.'"[226] Furthermore, the Court recognizes that "[e]ven when valid, releases of future actions are narrowly construed to assure that the parties fully understand the rights released and the resulting consequences. As a result, if the release instrument leaves any doubt as to whether a particular future action is covered by the compromise,

---

[216] *Id.* at 11.

[217] *Id.* at 12–15.

[218] *Id.* at 16–19.

[219] *Id.* at 20–24. The Fibreboard Corporation Release applied to Mr. Dempster's claims against Fibreboard Corporation; Fibreboard Paper Products Corporation; Fibreboard Products Incorporated; Paraffine Companies, Incorporated; Plant Rubber & Asbestos Works; Pabco Products Incorporated; and Pabco Insulation Corporation.

[220] *Id.* at 25–26.

[221] *Id.* at 27–30.

[222] *Id.* at 31–34.

[223] *Id.* at 35–36.

[224] *Id.* at 37–38.

[225] *Id.* at 39–41.

[226] *Brown*, 630 So. 2d at 748 (quoting *Succession of Teddlie*, 385 So.2d 902, 904 (La. App. 2 Cir. 1980)).

it should be construed not to cover such future action."[227]

 Five of the releases do not mention a future claim for lung cancer. The Babcock and Wilcox Release states that Decedent was releasing all asbestos-related claims that he "may now or may hereafter have," including claims for "bodily injury, loss of consortium, loss of service, wrongful death, pain and suffering of whatever nature, medical expenses or any other expenses, lost wages of any other type of claim or demand."[228] The Combustion Engineering Release states that Decedent was releasing any claims for "mental pain, suffering and anguish, loss of income, society, services, or consortium, wrongful death . . . or any other loss or injury loss or injury . . . resulting from the exposure" to any products of Combustion Engineering.[229] The 3M Release provides that Decedent was releasing any claim for "subsequently manifested future disease process related to alleged exposure to or injury from asbestos or silica, including any presently diagnosed or subsequently manifested injury. . . ."[230] The Travelers Release released "any and all claims, actions causes of actions . . . [Decedent] may have arising from or relating to, in whole or in part, exposure to asbestos, including but not limited to, claims for . . . personal injuries, bodily injury, illness, [or] wrongful death."[231]

 The Court finds that the Babcock and Wilcox Release, the Combustion Engineering Release, the 3M Release, the Travelers Release, and the General Electric Release do not clearly and unambiguously release Plaintiffs' future claim for lung cancer. While *Joseph* makes clear that

---

[227] *Id.* at 754.

[228] Rec. Doc. 36-6 at 35.

[229] *Id.* at 37–38.

[230] *Id.* at 32.

[231] *Id.* at 39.

a release of a future action need not explicitly mention a specific injury to come within the terms of the release, the intent of the parties must still be clear.[232] Unlike *Joseph*, the Court cannot conclude that the "intent of the parties thereto is clear, unambiguous, and unequivocal. . ."[233] In *Joseph*, the Louisiana Supreme Court found that the intent of the parties was clear, at least in part, because "that intent is expressly set forth in the Release."[234] The release provided:

> It is specifically understood and agreed that the aforementioned provisions are intended to release the parties hereto only from liability on account of or in any way growing out of occupational lung diseases of any and every kind and description, hearing loss or impairment, workmen[s'] compensation and any and all other personal injury claims arising out of Claimant's employment at Avondale . . .[235]

Based on this language, the court concluded "[t]he plain language of the Release reflects that Mr. Joseph intended to release his present and future claims for "occupational lung disease of any and every kind and description" and "any and all other personal injury claims arising out of [his] employment at Avondale."[236] The court reasoned that these recitations reflected Mr. Joseph's understanding that his future was indefinite and uncertain.[237] The Louisiana Supreme Court

---

[232] *Joseph*, 2020 WL 499939, at *7 ("there is no necessity for direct reference to a particular injury, as long as the intent of the parties is clear.") (citing *Brown*, 630 So.2d at 757 ("[O]ur holding here, together with our holding in *Daigle*, permits defendants to conclusively compromise potential wrongful death claims, provided the intent to do so is unequivocally reflected, *while not necessarily by express mention of such claims*, in the language employed in the release instrument.") (emphasis added.)

[233] *Id*. at *7–8.

[234] *Id*. at *7.

[235] *Id*.

[236] *Id*. at *8.

[237] *Id*. (finding that the following language in the release reflected Mr. Joseph's understanding that his future was uncertain: "Claimant specifically warrants that he has discussed his physical and mental condition with several physicians of his own choice and that he is fully aware of his medical condition and understands that the alleged injuries, illnesses, and/or diseases, and their results and consequences, and the damages allegedly sustained by him, whether mental or physical, may be permanent and progressive and that recovery therefrom may be uncertain and indefinite; and Claimant understands and agrees that in executing this Settlement Agreement and in giving this receipt and final complete discharge and release, he has had the benefit of advice and counsel of his own attorney and is relying wholly upon his own judgment, belief and knowledge as to the nature, extent and duration of said alleged injuries and damages, information obtained from physicians, and the advice of his own attorney, and he acknowledges that he has not been influenced in any manner in executing this Settlement Agreement and giving this release and

reasoned that, because mesothelioma is a disease of the lungs, commonly associated with exposure to asbestos in the workplace, a claim for mesothelioma was within the scope of "occupational lung disease."[238] Here, the Babcock and Wilcox Release, the Combustion Engineering Release, the 3M Release, and the Travelers Release state that they apply to future claims for injuries generally, and the General Electric Release releases future actions for malignancies generally. The lack of specificity leaves doubt as to whether the parties intended to release a claim for lung cancer specifically. Accordingly, the Court cannot conclude that the plain language of the Babcock and Wilcox Release, the Combustion Engineering Release, the 3M Release, the Travelers Release, or the General Electric Release reflect Mr. Dempster's intent to release a future claim for lung cancer.[239]

However, seven of the releases at issue—the CCR Release,[240] the A.P. Green Industries Release,[241] the A.W. Chesterton Company Release,[242] the CBS Corporation Release,[243] the

---

indemnity agreement by any representations or statements whosoever made by the persons or parties hereby released, or by anyone representing them or any of them.").

[238] *Id*.

[239] *Id*. at *7–8. Additionally, for the reasons that follow, the attending events and circumstances leave doubt as to whether Mr. Dempster intended to release a future claim for lung cancer.

[240] The CCR Release states that it applies to "any and all rights, claims, demands, and causes of action of whatever kind or nature which we now have, or may have in the future for future injuries, . . . pain and suffering, . . . cancer" including "wrongful death due to any asbestos related disease or condition, whether malignant or not." Rec. Doc. 36-6 at 2.

[241] The A.P. Green Industries Release states that it applies to all then-existing and future asbestos related "personal injuries . . . disability, pain and suffering, mental anguish, cancer" including claims for "loss of consortium . . . wrongful death." Rec. Doc. 36-6 at 6.

[242] The A.W. Chesterton Company Release states that it applies to all asbestos-related claims, "whether presently existing or arising in the future, with respect to any and all diseases or injuries presently existing or hereafter arising (including any asbestos related cancer) . . . and any wrongful death actions . . . and/or any survival actions." Rec. Doc. 36-6 at 11.

[243] The CBS Corporation Release states that it includes claims or all diseases which is defined in the release to specifically include lung cancer, and includes "loss of consortium or companionship or love and affection or services or society or support." Rec. Doc. 36-6 at 12–15.

Champion International Release,[244] the Fibreboard Corporation Release,[245] and the Metropolitan Life Insurance Company Release[246]—expressly state that any claim for cancer was released. Because the releases refer expressly to a claim for lung cancer, the burden shifts to Plaintiffs to prove that there was no meeting of the minds or that there was fraud or ill practices."[247]

The releases were entered while Decedent was being represented by the Wilson Law Firm for non-malignant asbestosis. Bradley Hiatt, the corporate representative of the Wilson Law Firm, testified that Master Settlement Agreements often accompanied these types of settlements.[248] Mr. Hiatt testified that these Master Settlement Agreements oftentimes contained comeback rights if a non-malignant claimant were to develop a malignancy in the future.[249] During his deposition, Mr. Dempster testified that the Wilson Law Firm never represented him for cancer.[250] Mr. Dempster stated that the law firm handled everything through the mail, and nothing was explained to him.[251] Mr. Dempster testified that he did not even know that a lawsuit had been filed on his behalf by the

---

[244] The Champion International Release states that it was expressly acknowledged that, "[w]e understand that the injured person now may be suffering from or, in the future, may suffer from asbestos-related diseases or injuries (such as cancer) . . . It is our intention and agreement that any claims against Champion, of any kind or character whatsoever, which we might have for, and/or arising out of or related to, any such asbestos-related diseases…are the subject of this Release and are hereby released." Rec. Doc. 36-6 at 16.

[245] The Fibreboard Corporation Release states that Mr. Dempster was releasing "all Claims based on any past, present or future cancer or malignancy" including, survival and wrongful death. Mr. Dempster further acknowledged he understood "that people exposed to asbestos may be subject to an increased risk of contracting cancer…, including but not limited to lung cancer." Rec. Doc. 36-6 at 20.

[246] The Metropolitan Life Insurance Company Release includes a release of "all asbestos-related claims which Plaintiffs may have at any time in the future and it acknowledges future claims may include "cancer or mesothelioma." Including, "loss of consortium and any and all damages under all applicable wrongful death and/or survival statutes. . . ." Rec. Doc. 36-6 at 27.

[247] *Hymel*, 7 So. 3d at 1257.

[248] Rec. Doc. 93-11 at 5.

[249] *Id.* at 6–7.

[250] Rec. Doc. 93-12 at 3.

[251] *Id.*

Wilson Law Firm.[252]

The testimony of Mr. Hiatt and Mr. Dempster create an issue of fact as to whether the parties intended to release a future lung cancer claim. Mr. Hiatt confirmed that the agreements typically included Master Agreements, which provided for comeback rights. When a dispute arises as to the scope of a compromise agreement, "extrinsic evidence can be considered to determine exactly what differences the parties intended to settle."[253] "[A] general release will not necessarily bar recovery for those aspects of a claim not intended by the parties to be covered by the release."[254] Intent is determined by reading the compromise instrument "in light of the surrounding circumstances at the time of execution of the agreement."[255] When a party produces "substantiating evidence of mistaken intent," a court may look beyond the four corners of the instrument to ascertain intent.[256] Accordingly, because there are genuine issues of material fact in dispute, the Court finds that summary judgment is not appropriate on this issue.[257]

## V. Conclusion

For the reasons discussed above, the Avondale Interests have not shown that reconsideration of the state court's ruling is warranted. Alternatively, even if the Court were to

---

[252] *Id.*

[253] *Brown*, 630 So. 2d at 749.

[254] *Id.*

[255] *Id.* at 748.

[256] *Id.* at 749.

[257] It is unclear whether the Avondale Interests seek summary judgment on the wrongful death claims of Decedent's children. While the releases at issue were signed by Mr. and Mrs. Dempster, they were not signed by any of their children. A tort victim may not compromise his beneficiaries' potential wrongful death action. *Brown*, 630 So.2d at 751. Therefore, Mr. Dempster lacked the power to compromise his children's wrongful death action. Accordingly, the Court finds that the releases does not release the wrongful death claim of Plaintiffs Marla Dempster Loupe, Tanna Faye Dempster, Steven Louis Dempster, Mary Janet Lynne Dempster Martinez, Callen Dempster, Jr., Annette Ruth Dempster Glad, and Barnett Lynn Dempster.

reconsider the ruling, the Court finds that there are genuine issues of material fact in dispute precluding summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that the Avondale Interests' "Motion for Partial Summary Judgment to Establish the Settlements of Certain Non-Parties"[258] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this ___26th___ day of August, 2020.

_Nannette Jolivette Brown_
_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[258] Rec. Doc. 36.