UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CALLEN DEMPSTER et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-95** |
| **LAMORAK INSURANCE CO. et al.** | **SECTION: "G"(1)** |

## ORDER AND REASONS

In this litigation, Plaintiffs Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Dempster, Jr., Annette Dempster Glad, and Barnett Dempster's (collectively, "Plaintiffs") allege that Decedent Callen L. Dempster ("Decedent") was exposed to asbestos and asbestos-containing products that were designed, manufactured, sold, and/or supplied by a number of Defendant companies while Decedent was employed by Huntington Ingalls Incorporated ("Avondale").[1] Pending before the Court is Plaintiffs' "*Daubert* Motion to Preclude the Testimony of Robert J. Norrell."[2] Defendants Avondale, Albert L. Bossier, Jr. ("Bossier"), and Lamorak Insurance Company ("Lamorak") (collectively, the

---

[1] *See* Rec. Doc. 1-2; Rec. Doc. 1-8. On August 6, 2020, Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Louis Dempster, Jr., Annette Ruth Dempster Glad, and Barnett Lynn Dempster were substituted as plaintiffs for Louise Ella Simon Dempster. Rec. Doc. 239. Plaintiffs bring claims against Lamorak Insurance Company, Huntington Ingalls Inc., Albert Bossier, Jr., J. Melton Garrett, Eagle, Inc., Bayer Cropscience, Inc., Foster-Wheeler LLC, General Electric Co., Hopeman Brothers, Inc., McCarty Corporation, Taylor-Seidenbach, Inc., CBS Corporation, Uniroyal, Inc., International Paper Company, Houston General Insurance Company, Berkshire Hathaway Specialty Insurance Company, Northwest Insurance Company, United Stated Fidelity and Guaranty Company, Fist State Insurance Company, The American Insurance Company, Louisiana Insurance Guaranty Association, and the Traveler's Indemnity Company. Rec Doc. 1-8 at 2–3.

[2] Rec. Doc. 52.

1

"Avondale Interests") oppose the motion.³ Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion.

## I. Background

In this litigation, Plaintiffs allege that Decedent was employed by Avondale from 1962 to 1994.⁴ During that time, Plaintiffs aver that Decedent was exposed to asbestos and asbestos-containing products in various locations and work sites, resulting in Decedent breathing in asbestos fibers and later developing asbestos-related cancer.⁵ Plaintiffs assert strict liability and negligence claims against various Defendants.⁶

Decedent filed a "Petition for Damages" in the Civil District Court for the Parish of Orleans, State of Louisiana, on March 14, 2018.⁷ Defendants Huntington Ingalls Incorporated, Albert Bossier, Jr., J. Melton Garret, and Lamorak Insurance Company (the "Removing Parties") removed the case to the United States District Court for the Eastern District of Louisiana for the first time on June 21, 2018.⁸ On January 7, 2019, this Court remanded the case to the Civil District Court for the Parish of Orleans.⁹

Decedent passed away on November 24, 2018, and a First Supplemental and Amending Petition for Damages was filed in state court substituting Decedent's heirs as Plaintiffs on January

---

³ Rec. Doc. 149.

⁴ Rec. Doc. 1-2 at 5.

⁵ *Id.*

⁶ *Id.* at 7–8.

⁷ *Id.* at 2–3.

⁸ Case No. 18-6158, Rec. Doc. 1 at 2.

⁹ Case No. 18-6158, Rec. Doc. 89.

17, 2019.[10] Trial was scheduled to begin before the state trial court on January 13, 2020.[11] However, on January 9, 2020, Avondale removed the case to the United States District Court for the Eastern District of Louisiana for a second time.[12] On January 28, 2020, the Court denied the motion to remand, finding that this case was properly removed to this Court under the federal officer removal statute.[13]

On February 25, 2020, Plaintiffs filed the instant motion.[14] On March 17, 2020, the Avondale Interests filed an opposition to the instant motion.[15] On April 6, 2020, Plaintiffs, with leave of Court, filed a reply brief in further support of the motion.[16] On May 5, 2020, the Court continued the May 18, 2020 trial date due to COVID-19.[17]

## II. Parties' Arguments

### A. *Plaintiffs' Arguments in Support of the Motion*

Plaintiffs move the Court to issue an order excluding the testimony of the Avondale Interests' expert, Robert J. Norrell, Ph.D, who has been designated to testify about "public awareness of the health risks associated with smoking."[18] Plaintiffs note that Dr. Norrell has been designated to testify "regarding his analysis of newspaper articles, magazine articles,

---

[10] Rec. Doc. 1-8.

[11] Rec. Doc. 1-12.

[12] Rec. Doc. 1.

[13] Rec. Doc. 17.

[14] Rec. Doc. 52.

[15] Rec. Doc. 149.

[16] Rec. Doc. 200.

[17] Rec. Doc. 225.

[18] Rec. Doc. 52-1 at 1.

3

publications, television programs, movies, and other media coverage of the risks of smoking disseminated throughout the United States; to laws limiting and to public information available to plaintiff regarding the health risks associated with smoking."[19]

Plaintiffs contend that Dr. Norrell is not qualified to offer opinions regarding the general public's awareness of the health hazards of cigarette smoking.[20] Plaintiffs note that Dr. Norrell is a history professor at the University of Tennessee, with no education in the area of addiction to tobacco.[21] Plaintiffs contend that Dr. Norrell's involvement with the issue of smoking and its effect on health came about at the request of lawyers for litigation purposes, and he admitted that he had not done any research on the issue prior to being hired for litigation purposes in 1994.[22]

Second, Plaintiffs assert that Dr. Norrell's opinions are not reliable.[23] According to Plaintiffs, Dr. Norrell has never published his opinions in peer review literature, and he has not set forth any methodology regarding these opinions.[24] Plaintiffs contend Dr. Norrell's only experience with the issue of smoking and its effect on health is his litigation research and he has no education, training, and experience in the area of medical health, toxicology, industrial hygiene, or toxicology.[25] Accordingly, Plaintiffs submit that Dr. Norrell's testimony should be precluded.[26]

---

[19] *Id*.

[20] *Id*. at 2.

[21] *Id*.

[22] *Id*. at 3.

[23] *Id*.

[24] *Id*. at 5.

[25] *Id*. at 6.

[26] *Id*.

B.   *The Avondale Interests' Arguments in Opposition to the Motion*

The Avondale Interests argue that the motion should be denied because Plaintiffs have not shown any valid basis to exclude Dr. Norrell.[27] The Avondale Interests assert that Dr. Norrell is qualified to offer testimony as an expert historian, his anticipated opinions on historic public awareness on the health hazards of smoking are reliable and relevant, and other courts have accepted his testimony on the same topics.[28]

The Avondale Interests contend that Decedent's medical records show that he was a former smoker.[29] Because smoking is a known cause of lung cancer, the Avondale Interests contend that smoking history is relevant as a possible cause of Decedent's cancer.[30] Additionally, the Avondale Interests assert that Decedent's knowledge of health hazards associated with smoking, including lung cancer, is relevant to the question of his own negligence and assumption of risk.[31]

According to the Avondale Interests, Dr. Norrell is a professor in the Department of History at the University of Tennessee in Knoxville.[32] The Avondale Interests contend that Dr. Norrell has studied historic information and awareness of the risks of smoking for more than 20 years.[33] The Avondale Interests assert that sources of such information include print and broadcast media, educational materials, religious and church publications, public laws, polling data, and

---

[27] Rec. Doc. 149 at 1.

[28] *Id*.

[29] *Id*. at 1–2.

[30] *Id*. at 2.

[31] *Id*.

[32] *Id*.

[33] *Id*. at 6–7.

5

other publicly-available materials.[34] Therefore, the Avondale Interests assert that Dr. Norrell is qualified by his education, training, and experience as historian to provide expert opinions in this case.[35]

The Avondale Interests note that Dr. Norrell is not being offered to opine on exposure to any substance, toxicity of any substance, trends in disease associated with any substance, or the state of knowledge in the medical community.[36] Rather, the Avondale Interests assert that Dr. Norrell is being offered as an expert in history, specifically on historic information and public awareness of risks associated with smoking, which they contend is directly relevant in a case involving the development of lung cancer.[37] The Avondale Interests assert that Dr. Norrell's ability to identify and synthesize voluminous historical information "is precisely the type of expertise that courts acknowledge historians possess," and his analysis requires "specialized knowledge, and is appropriate for expert testimony."[38]

Finally, the Avondale Interests assert that Dr. Norrell's methodology is reliable as his opinions are based on the following: (1) case-specific materials such as Decedent's deposition, medical references to Decedent's smoking history, and other depositions taken in this matter; (2) general reference materials regarding smoking and its associated hazards from Louisiana newspapers, articles from national magazines, national and local television programs, popular movies, Louisiana state and local laws related to tobacco and smoking in public, educational

---

[34] *Id*. at 2.

[35] *Id*. at 7.

[36] *Id*.

[37] *Id*.

[38] *Id*.

materials, religious and church publications, and polling data; and (3) decades of experience studying public awareness of smoking and its associated hazards.[39] The Avondale Interests argue that Dr. Norrell formed his opinions after extensively researching historic information available to the public, then analyzed the significance of those materials to Louisiana residents like Decedent.[40] According to the Avondale Interests, the method of historical analysis Dr. Norrell employed is also employed by other historians, has been accepted by courts, and satisfies the *Daubert* analysis.[41] The Avondale Interests assert that the fact that Dr. Norrell has not published his research on smoking awareness does not negate the reliability of his methodology or his opinions.[42]

### C. *Plaintiffs' Arguments in Further Support of the Motion*

In reply, Plaintiffs assert that Dr. Norrell's testimony is irrelevant.[43] Plaintiffs contend that Dr. Norrell will attempt to testify generally regarding when information about the hazards of smoking may have been available to the public, but Plaintiffs note that he cannot offer any testimony regarding when Decedent became aware of the hazards of smoking.[44] Additionally, Plaintiffs assert that any alleged contributory negligence of Decedent is not relevant to Plaintiff's strict liability claims.[45]

Next, Plaintiffs assert that the Avondale Interests have not shown that Dr. Norrell's

---

[39] *Id*. at 8.

[40] *Id*. at 9.

[41] *Id*.

[42] *Id*.

[43] Rec. Doc. 200 at 2.

[44] *Id*.

[45] *Id*. at 2–3.

7

testimony is reliable.[46] Plaintiffs note that the Avondale Interests did not come forward with any testimony, affidavit, or declaration setting forth how Dr. Norrell reached his opinions specific to this case or what methods he used in reaching his opinions.[47] For this reason, Plaintiffs contend this case is distinguishable from the cases the Avondale Interests cite where a historian offered expert opinion testimony.[48] Therefore, Plaintiffs argue that Dr. Norrell's proposed testimony should be excluded.[49]

### III. Legal Standard

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[50] Rule 702, which governs the admissibility of expert witness testimony, provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education," may testify when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[51] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony [must be] based on sufficient facts or data,

(2) the testimony [must be] the product of reliable principles and methods, and

(3) the expert [must reliably apply] the principles and methods to the facts of the case.[52]

---

[46] *Id*. at 3.

[47] *Id*.

[48] *Id*. at 4–5.

[49] *Id*. at 6.

[50] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[51] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[52] Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable."[53] The court's gatekeeping function thus involves a two-part inquiry into reliability and relevance. First, the court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[54] The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid.[55] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[56]

In *Daubert*, the Supreme Court identified a number of factors that are useful in analyzing reliability of an expert's testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community.[57] In *Kumho Tire Co. v. Carmichael*, the Supreme Court emphasized that the test of reliability is "flexible" and that *Daubert*'s list of specific factors does not necessarily nor exclusively apply to every expert in every case.[58] The

---

[53] *Daubert*, 509 U.S. at 597; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[54] *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

[55] *See Daubert*, 509 U.S. at 592–93.

[56] *See id.* at 590.

[57] *See id.* at 592–94.

[58] *Kumho Tire*, 526 U.S. at 142; *see also Seatrax*, 200 F.3d at 372 (explaining that reliability is a fact-specific inquiry and application of *Daubert* factors depends on "nature of the issue at hand, the witness's particular expertise and the subject of the testimony").

overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[59] The court must also determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence—in other words, whether it is relevant.[60]

A court's role as a gatekeeper does not replace the traditional adversary system,[61] and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[62] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[63] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[64]

## IV. Analysis

In the instant motion, Plaintiffs seek to exclude Dr. Norrell's proposed testimony for two reasons: (1) Dr. Norrell is not qualified to testify regarding the general public's awareness of the health hazards of cigarette smoking; and (2) Dr. Norrell's proposed testimony is not based on a reliable methodology. The Court addresses each argument in turn.

---

[59] *Kumho Tire*, 526 U.S. at 152.

[60] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[61] *See Daubert*, 509 U.S. at 596.

[62] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[63] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[64] *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir.1996) (internal citations and quotation marks omitted).

*A.     Qualifications*

Plaintiffs contend that Dr. Norrell is not qualified to offer opinions regarding the general public's awareness of the health hazards of cigarette smoking.[65] Plaintiffs note that Dr. Norrell is a history professor at the University of Tennessee, with no education in the area of addiction to tobacco.[66] Plaintiffs contend that Dr. Norrell's involvement with the issue of smoking and its effect on health came about at the request of lawyers for litigation purposes, and he admitted that he had not done any research on the issue prior to being hired for litigation in 1994.[67] In response, the Avondale Interests contend that Dr. Norrell has studied historic information and awareness of the risks of smoking for more than 20 years.[68] The Avondale Interests note that Dr. Norrell is not being offered to opine on exposure to any substance, toxicity of any substance, trends in disease associated with any substance, or the state of knowledge in the medical community.[69] Rather, the Avondale Interests assert that Dr. Norrell is being offered as an expert in history, specifically on historic information and public awareness of risks associated with smoking, which they contend is directly relevant in a case involving development of lung cancer.[70]

Robert J. Norrell, Ph.D. is a history professor at the University of Tennessee.[71] He obtained his doctorate from the University of Virginia in 1983.[72] He has published numerous

---

[65] Rec. Doc. 52-1 at 2.

[66] *Id*.

[67] *Id*. at 3.

[68] Rec. Doc. 149 at 6–7.

[69] *Id*. at 7.

[70] *Id*.

[71] Rec. Doc. 149-3 at 1.

[72] *Id*.

books on the American South race relations, and the Civil Rights movement.[73] He has also published numerous scholarly articles and presented at numerous conferences and public lectures.[74] Dr. Norrell has experience teaching numerous history classes including: World History; U.S. Survey, Pre- and Post-1865; Southern History; African-American History; Recent U.S. History; Comparative Race Relations; and Race and Ethnicity in the U.S.[75]

The Avondale Interests have designated Dr. Norrell as an "expert witness concerning public awareness of the health risks associated with smoking."[76] According to the Avondale Interests, "Dr. Norrell may testify regarding his analysis of newspaper articles, magazine articles, publications, television programs, movies, and other media coverage of the risks of smoking disseminated throughout the United States; to laws limiting and prohibiting smoking in Louisiana and throughout the United States; and to the public information available to plaintiff regarding the health risks associated with smoking."[77] Although it does not appear that Dr. Norrell has ever published any work on public awareness of the health risks associated with smoking, the Avondale Interests have shown that Dr. Norrell is extremely qualified to testify as an expert in history.

As the Fifth Circuit noted in *United States v. Wen Chyu Liu*, "an expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight."[78] In that case,

---

[73] *Id*. at 1–2.

[74] *Id*. at 2–5.

[75] *Id*. at 6.

[76] Rec. Doc. 149-1 at 9.

[77] *Id*.

[78] *United States v. Wen Chyu Liu*, 716 F.3d 159, 168–69 (5th Cir. 2013) (quoting *Wheeler v. John Deere*

the Fifth Circuit held that the district court abused its discretion when it excluded the testimony of an expert with extensive experience working in chemical plants and 50 years of engineering experience in a variety of high-level positions, finding that he had worked with polymers that had "many similarities" and "a lot of commonality" with the manufacturing process at issue in the case, even though he lacked experience with the specific substance at issue.[79]

As discussed above, Dr. Norrell has extensive experience as a history professor, researcher, and published author. Thus, he is qualified to testify as to historic information and the historical evolution of the public's awareness of risks associated with smoking. Therefore, the Court declines to exclude Dr. Norrell's testimony on the ground that he is not qualified as an expert.

### B.     *Reliability*

Plaintiffs assert that Dr. Norrell's opinions are not reliable.[80] According to Plaintiffs, Dr. Norrell has never published his opinions in peer review literature, and he has not set forth any methodology regarding these opinions.[81] In opposition, the Avondale Interests assert that Dr. Norrell's methodology is reliable as his opinions are based on the following: (1) case-specific materials such as Decedent's deposition, medical references to Decedent's smoking history, and other depositions taken in this matter; (2) general reference materials regarding smoking and its associated hazards from Louisiana newspapers, articles from national magazines, national and local television programs, popular movies, Louisiana state and local laws related to tobacco and

---

*Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991)).

[79] *Id.* at 169.

[80] Rec. Doc. 149 at 5.

[81] *Id.*

smoking in public, educational materials, religious and church publications, and polling data; and (3) decades of experience studying public awareness of smoking and its associated hazards.[82] In reply, Plaintiffs assert that the Avondale Interests have not shown that Dr. Norrell's testimony is reliable.[83] Plaintiffs note that the Avondale Interests did not come forward with any testimony, affidavit, or declaration setting forth how Dr. Norrell reached his opinions specific to this case or what methods he used in reaching his opinions.[84]

This case is in a unique procedural posture. All discovery in this matter occurred while the case was pending in state court, and expert reports were not disclosed because the state court judge did not require expert reports.[85] Accordingly, there is no expert report in the record for the Court to examine the methodology employed by Dr. Norrell. Additionally, it does not appear that Dr. Norrell was deposed by the attorneys in this case. In opposition to the instant motion, the Avondale Interests do not present an affidavit or declaration setting forth the opinion of Dr. Norrell or the methodology he employed in reaching an opinion. Instead, the only documents the Avondale Interests present to the Court to analyze Dr. Norrell's methodology are: (1) Dr. Norrell's curriculum vitae;[86] (2) a list of cases where Dr. Norrell has previously testified as an expert;[87] and (3) a 71-page list of sources upon which Dr. Norrell relied.[88]

As noted above, when expert testimony is challenged under *Daubert*, the burden of proof

---

[82] Rec. Doc. 149 at 8.

[83] Rec. Doc. 200 at 3.

[84] *Id*.

[85] Rec. Doc. 40-1 at 2.

[86] Rec. Doc. 149-1.

[87] Rec. Doc. 149-2.

[88] Rec. Doc. 149-4.

rests with the party seeking to present the testimony.[89] "To meet this burden, a party cannot simply rely on its expert's assurances that he has utilized generally accepted [] methodology."[90] Rather, some objective, independent validation of the expert's methodology is required.[91]

Here, the Avondale Interests contend that Dr. Norrell employed appropriate methodologies that are commonly used by historians. Although it is a general rule that "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration,"[92] the Fifth Circuit has held that it is insufficient for an expert to base his or her opinion on education and experience alone.[93] The Court recognizes that the test of reliability is "flexible" and that *Daubert*'s list of specific factors does not necessarily nor exclusively apply to every expert in every case.[94] In fact, in *Kovaly v. Wal-Mart Stores Texas, L.L.C.*, the Fifth Circuit acknowledged that, in considering the reliability of some professionals, such as pharmacists, certain *Daubert* factors will not readily apply, and courts "must consider other factors when determining admissibility, such as whether the expert has enough education and relevant experience to reach a reliable opinion."[95] Even in *Kovaly*, however, the Fifth Circuit noted that the expert had a "sufficiently

---

[89] *Moore*, 151 F.3d at 276.

[90] *Dearman v. Transocean Offshore Deepwater Drilling, Inc.*, No. 11-750, 2012 WL 441167, at *5 (E.D. La. Feb. 10, 2012) (Fallon, J.).

[91] *Moore*, 151 F.3d at 276.

[92] *14.38 Acres of Land*, 80 F.3d at 1077.

[93] *Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013).

[94] *Kumho Tire*, 526 U.S. at 142; *see also Seatrax*, 200 F.3d at 372 (explaining that reliability is a fact-specific inquiry and application of *Daubert* factors depends on "nature of the issue at hand, the witness's particular expertise and the subject of the testimony").

[95] 627 F. App'x 288, 291 (5th Cir. 2015) (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002)).

reliable basis" to come to his conclusions because he "specifically analyzed how . . . various regulations overlap and how the history of the regulations led to the codification of particular exceptions but not others. He explained that his opinion was based not only on the regulations but also on their history, accepted practice, and pharmacist training."[96]

The Avondale Interests present a substantial, 71-page list of sources upon which Dr. Norrell supposedly relied.[97] However, the Avondale Interests have not presented any information for the Court to assess the methodology employed by Dr. Norrell. The Court cannot assume or guess what methods Dr. Norrell used in assessing this information. Additionally, the Avondale Interests have not even presented the Court with evidence setting forth the opinions they expect Dr. Norrell to provide. Therefore, the Court concludes that the Avondale Interests have not met their burden of establishing that the opinions of Dr. Norrell are reliable under Federal Rule of Evidence 702 and the Supreme Court's holding in *Daubert*.

Additionally, the proposed testimony of Dr. Norrell is of limited probative value in this case. Although Decedent's knowledge of health hazards associated with smoking is relevant to this case, Dr. Norrell has no personal knowledge regarding whether Decedent was aware of the health hazards associated with smoking. Instead, Dr. Norrell would only be able to testify generally to societal perceptions of the health hazards associated with smoking. At trial, the Avondale Interests will be able to question fact witnesses about Decedent's knowledge of the health hazards associated with smoking. Accordingly, the Court finds that the limited probative value of Dr. Norrell's proposed testimony is substantially outweighed by a danger of confusing the issues, misleading the jury, and wasting time pursuant to Federal Rule of Evidence 403.

---

[96] *Id.*

[97] Rec. Doc. 149-4.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' "*Daubert* Motion to Preclude the Testimony of Robert J. Norrell"[98] is **GRANTED**. The proposed expert testimony of Robert J. Norrell, Ph.D. is excluded.

**NEW ORLEANS, LOUISIANA,** this  11th   day of September, 2020.

_____
**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[98] Rec. Doc. 52.