## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CALLEN DEMPSTER et al.**                                              **CIVIL ACTION**

**VERSUS**                                                              **NO. 20-95**

**LAMORAK INSURANCE CO. et al.**                                        **SECTION: "G"(1)**

## ORDER AND REASONS

In this litigation, Plaintiffs Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster

Martinez, Marla Dempster Loupe, Callen Dempster, Jr., Annette Dempster Glad, and Barnett

Dempster's (collectively, "Plaintiffs") allege that Decedent Callen L. Dempster ("Decedent") was

exposed to asbestos and asbestos-containing products that were designed, manufactured, sold,

and/or supplied by a number of Defendant companies while Decedent was employed by

Huntington Ingalls Incorporated ("Avondale").[1] Pending before the Court is Plaintiffs' "*Daubert*

*Motion to Preclude the Testimony of Dr. Dennis Paustenbach Regarding Removal and Scraping*

*of Benjamin Foster 81-27 Adhesive.*"[2] Defendant Bayer CropScience, Inc., as Successor to

Rhone-Poulenc AG Company, f/k/a Amchem Products, Inc., f/k/a Benjamin Foster Company

---

[1] *See* Rec. Doc. 1-2; Rec. Doc. 1-8. On August 6, 2020, Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Louis Dempster, Jr., Annette Ruth Dempster Glad, and Barnett Lynn Dempster were substituted as plaintiffs for Louise Ella Simon Dempster. Rec. Doc. 239. Plaintiffs bring claims against Lamorak Insurance Company, Huntington Ingalls Inc., Albert Bossier, Jr., J. Melton Garrett, Eagle, Inc., Bayer Cropscience, Inc., Foster-Wheeler LLC, General Electric Co., Hopeman Brothers, Inc., McCarty Corporation, Taylor-Seidenbach, Inc., CBS Corporation, Uniroyal, Inc., International Paper Company, Houston General Insurance Company, Berkshire Hathaway Specialty Insurance Company, Northwest Insurance Company, United Stated Fidelity and Guaranty Company, Fist State Insurance Company, The American Insurance Company, Louisiana Insurance Guaranty Association, and the Traveler's Indemnity Company. Rec Doc. 1-8 at 2–3.

[2] Rec. Doc. 53.

1

("Amchem") opposes the motion.[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

In this litigation, Plaintiffs allege that Decedent was employed by Avondale from 1962 to 1994.[4] During that time, Plaintiffs aver that Decedent was exposed to asbestos and asbestos-containing products in various locations and work sites, resulting in Decedent breathing in asbestos fibers and later developing asbestos-related cancer.[5] Plaintiffs assert strict liability and negligence claims against various Defendants.[6]

Decedent filed a "Petition for Damages" in the Civil District Court for the Parish of Orleans, State of Louisiana, on March 14, 2018.[7] Defendants Huntington Ingalls Incorporated, Albert Bossier, Jr., J. Melton Garret, and Lamorak Insurance Company (the "Removing Parties") removed the case to the United States District Court for the Eastern District of Louisiana for the first time on June 21, 2018.[8] On January 7, 2019, this Court remanded the case to the Civil District Court for the Parish of Orleans.[9]

Decedent passed away on November 24, 2018, and a First Supplemental and Amending Petition for Damages was filed in state court substituting Decedent's heirs as Plaintiffs on January

---

[3] Rec. Doc. 159.

[4] Rec. Doc. 1-2 at 5.

[5] *Id.*

[6] *Id.* at 7–8.

[7] *Id.* at 2–3

[8] Case No. 18-6158, Rec. Doc. 1 at 2.

[9] Case No. 18-6158, Rec. Doc. 89.

17, 2019.[10] Trial was scheduled to begin before the state trial court on January 13, 2020.[11] However, on January 9, 2020, Avondale removed the case to the United States District Court for the Eastern District of Louisiana for a second time.[12] On January 28, 2020, the Court denied the motion to remand, finding that this case was properly removed to this Court under the federal officer removal statute.[13]

On February 25, 2020, Plaintiffs filed the instant motion.[14] On March 17, 2020, Amchem filed an opposition to the instant motion.[15] On April 6, 2020, Plaintiffs, with leave of Court, filed a reply brief in further support of the motion.[16] On May 5, 2020, the Court continued the May 18, 2020 trial date due to COVID-19.[17]

## II. Parties' Arguments

### A.   *Plaintiffs' Arguments in Support of the Motion*

Plaintiffs move the Court to issue an order excluding the testimony of Dr. Dennis Paustenbach regarding removal and scraping of Benjamin Foster 81-27 adhesive.[18] Plaintiffs assert that Dr. Paustenbach will testify that one would not expect any substantial release of asbestos fibers from Amchem encapsulated products during their normal and expected

---

[10] Rec. Doc. 1-8.

[11] Rec. Doc. 1-12.

[12] Rec. Doc. 1.

[13] Rec. Doc. 17.

[14] Rec. Doc. 53.

[15] Rec. Doc. 159.

[16] Rec. Doc. 198.

[17] Rec. Doc. 225.

[18] Rec. Doc. 53-1 at 1.

3

application, use, and removal.[19] Plaintiffs submit that Dr. Paustenbach should be precluded from offering opinions regarding the removal and scraping of Benjamin Foster 81-27 adhesive because he did not test these activities, which were the activities Decedent testified exposed him to asbestos.[20]

Plaintiffs contend that any opinion by Dr. Paustenbach that Decedent's exposure to asbestos from Benjamin Foster 81-27 adhesive did not contribute to his development of mesothelioma should be excluded.[21] Plaintiffs contend that Dr. Paustenbach failed to test the very activities which would have resulted in exposure to asbestos.[22] Accordingly, Plaintiffs assert that Dr. Paustenbach should be precluded from offering testimony regarding removal and scraping activities in connection with Benjamin Foster 81-27 adhesive.[23]

## B.   *Amchem's Arguments in Opposition to the Motion*

Amchem asserts that Dr. Paustenbach is a board-certified toxicologist and certified industrial hygienist with over 40 years of experience in occupational health, risk assessment, and toxicology.[24] Amchem asserts that Dr. Paustenbach's opinions concerning the release of asbestos fibers from Benjamin Foster 81-27 adhesive have been peer-reviewed and published.[25] According to Amchem, Dr. Paustenbach performed a series of exposure tests involving both the application, manipulation, and cleanup of historical Benjamin Foster 81-27 adhesive and other Benjamin

---

[19] *Id.* at 2.

[20] *Id.*

[21] *Id.* at 4.

[22] *Id.*

[23] *Id.* at 5.

[24] Rec. Doc. 159 at 1.

[25] *Id.* at 3.

Foster products.[26] Amchem asserts that these tests encompassed a variety of activities including application, cutting, sawing, sweeping, and various clean up scenarios to simulate possible occupational exposure to the products.[27] Amchem asserts that Dr. Paustenbach performed a total of nine spill cleanup tests on Benjamin Foster 81-27 adhesive, including the types of cleanup Decedent allegedly performed.[28] Although Dr. Paustenbach's tests did not specifically involve removal from clothing, Amchem contends that the tests still provide a scientifically-valid comparison for any such exposures, and any asbestos fiber released from scraping clothing with dried Benjamin Foster 81-27 adhesive would be qualitatively similar to the scraping removal tests Dr. Paustenbach performed.[29]

Amchem concludes that Plaintiffs have not raised a viable challenge to either Dr. Paustenbach's qualifications or his methodology.[30] Rather, Amchem asserts that Plaintiffs' objections are to the application of Dr. Paustenbach's methodology to the facts of this case.[31] Amchem contends that such an argument is inappropriate under the *Daubert* standard and should instead be raised in cross-examination.[32]

### C.    *Plaintiffs' Arguments in Further Support of the Motion*

In reply, Plaintiffs assert that they are only moving to exclude testimony regarding the

---

[26] *Id*. at 4.

[27] *Id*.

[28] *Id*. at 5.

[29] *Id*. at 5–6.

[30] *Id*. at 6.

[31] *Id*.

[32] *Id*.

removal and scraping of Benjamin Foster 81-27 adhesive.[33] Plaintiffs note that Decedent specifically identified using Benjamin Foster 81-27 adhesive, stating that he had to scrape it off of his clothing.[34] According to Plaintiffs, Dr. Paustenbach did not do testing on Benjamin Foster 81-27 adhesive for sanding, removal, or sweep cleaning.[35] Plaintiffs contend that Dr. Paustenbach made a litigation decision not to test those activities that would result in higher exposures.[36] Therefore, Plaintiffs argue that Dr. Paustenbach's proposed testimony regarding removal and scraping of Benjamin Foster 81-27 adhesive should be excluded.[37]

### III. Legal Standard

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[38] Rule 702, which governs the admissibility of expert witness testimony, provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education," may testify when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[39] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony [must be] based on sufficient facts or data,

(2) the testimony [must be] the product of reliable principles and methods, and

---

[33] Rec. Doc. 198 at 2.

[34] *Id*.

[35] *Id*.

[36] *Id*. at 3.

[37] *Id*. at 4.

[38] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[39] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

(3) the expert [must reliably apply] the principles and methods to the facts of the case.[40]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable."[41] The court's gatekeeping function thus involves a two-part inquiry into reliability and relevance. First, the court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[42] The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid.[43] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[44]

In *Daubert*, the Supreme Court identified a number of factors that are useful in analyzing reliability of an expert's testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community.[45] In *Kumho Tire Co. v. Carmichael*, the Supreme Court emphasized that the test of reliability is "flexible" and that *Daubert*'s list of specific factors does not necessarily nor exclusively apply to every expert in every case.[46] The

---

[40] Fed. R. Evid. 702.

[41] *Daubert*, 509 U.S. at 597; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[42] *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

[43] *See Daubert*, 509 U.S. at 592–93.

[44] *See id.* at 590.

[45] *See id.* at 592–94.

[46] *Kumho Tire*, 526 U.S. at 141; *see also Seatrax*, 200 F.3d at 372 (explaining that reliability is a fact-

overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[47] The court must also determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence—in other words, whether it is relevant.[48]

A court's role as a gatekeeper does not replace the traditional adversary system,[49] and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[50] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[51] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[52]

## IV. Analysis

Plaintiffs move the Court to issue an order excluding the testimony of Dr. Dennis Paustenbach regarding removal and scraping of Benjamin Foster 81-27 adhesive.[53] Plaintiffs

---

specific inquiry and application of *Daubert* factors depends on "nature of the issue at hand, the witness's particular expertise and the subject of the testimony").

[47] *Kumho Tire*, 526 U.S. at 152.

[48] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[49] *See Daubert*, 509 U.S. at 596.

[50] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[51] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[52] *United States v. 14.38 Acres of Land* 80 F.3d 1074, 1077 (5th Cir.1996) (internal citations and quotation marks omitted).

[53] Rec. Doc. 53-1 at 1.

8

submit that Dr. Paustenbach should be precluded from offering opinions regarding the removal and scraping of Benjamin Foster 81-27 adhesive because he did not test these activities, which were the activities Decedent testified exposed him to asbestos.[54]

In response, Amchem asserts that, although Dr. Paustenbach's tests did not specifically involve removal from clothing, the tests still provide a scientifically-valid comparison for any such exposures, and any asbestos fiber release from scraping clothing with dried Benjamin Foster 81-27 adhesive would be qualitatively similar to the scraping removal tests Dr. Paustenbach performed.[55] Amchem argues that Plaintiffs have not raised a viable challenge to either Dr. Paustenbach's qualifications or his methodology.[56] Amchem asserts that Plaintiffs' objections to the application of Dr. Paustenbach's methodology to the facts of this case should be raised in cross-examination.[57]

Plaintiffs do not dispute that Dr. Paustenbach—a board-certified toxicologist and certified industrial hygienist with over 40 years of experience in occupational health, risk assessment, and toxicology—is qualified to testify as an expert witness on these topics. Plaintiffs also do not contest the methodology or reliability of the testing performed by Dr. Paustenbach. Instead, Plaintiffs argue that Dr. Paustenbach's testimony should be limited because he did not test the removal or scraping of Benjamin Foster 81-27 adhesive.

With regard to the testing performed on Benjamin Foster 91-27 adhesive, Dr. Paustenbach attests that he performed the following tests:

30 to 45 spills were spoon deposited on aluminum panels from a height of 3 feet

---

[54] *Id*. at 2.

[55] Rec. Doc. 159 at 5–6.

[56] *Id*. at 6.

[57] *Id*.

for each test replicate. The deposits were allowed to dry at ambient temperature and removed at intervals of 2 hours, 4 hours, and 8 hours after depositing to simulate clean-up at the end of a shift at various stages of drying. To remove the material, the deposited product was scraped off the aluminum using a beveled scraper or a 1.5-in. putty knife. Any loose material was then removed with a wet cotton cloth. The test panels were then wiped with a dry cotton cloth. Personal and area samples were collected and analyzed using standard OSHA/NIOSH protocols. Three replicates of the testing were performed for each time interval—making a total of nine spill cleanup tests.[58]

This statement shows that Dr. Paustenbach did perform scraping and removal tests on Benjamin Foster 81-27 adhesive. Plaintiffs contend that testimony regarding scraping and removal should be excluded because Dr. Paustenbach did not perform testing of the exact exposure that Decedent allegedly encountered—exposure caused by scaping and removing the substance from clothing. However, Dr. Paustenbach's testing provides a scientifically-valid comparison for the jury to evaluate. To the extent that Plaintiffs contend the testing differs from or is less extreme than the exposure Decedent experienced, this issue may be raised on cross-examination. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[59] Accordingly,

---

[58] Rec. Doc. 159-2 at 10.

[59] *14.38 Acres of Land*, 80 F.3d at 1077 (internal citations and quotation marks omitted).

**IT IS HEREBY ORDERED** that Plaintiffs' "*Daubert* Motion to Preclude the Testimony of Dr. Dennis Paustenbach Regarding Removal and Scraping of Benjamin Foster 81-27 Adhesive"[60] is **DENIED.**

**NEW ORLEANS, LOUISIANA,** this _____ day of September, 2020.

11th

*Nannette Jolivette Brown*
_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[60] Rec. Doc. 53.

11