UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CALLEN DEMPSTER et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-95** |
| **LAMORAK INSURANCE CO. et al.** | **SECTION: "G"(1)** |

### ORDER AND REASONS

In this litigation, Plaintiffs Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Dempster, Jr., Annette Dempster Glad, and Barnett Dempster's (collectively, "Plaintiffs") allege that Decedent Callen L. Dempster ("Decedent") was exposed to asbestos and asbestos-containing products that were designed, manufactured, sold, and/or supplied by a number of Defendant companies while Decedent was employed by Huntington Ingalls Incorporated ("Avondale").[1] Pending before the Court is Plaintiffs' "*Daubert* Motion to Preclude the Testimony of Dr. Gail Stockman."[2] Defendants Bayer CropScience, Inc., as Successor to Rhone-Poulenc AG Company, f/k/a Amchem Products, Inc., f/k/a Benjamin

---

[1] *See* Rec. Doc. 1-2; Rec. Doc. 1-8. On August 6, 2020, Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Louis Dempster, Jr., Annette Ruth Dempster Glad, and Barnett Lynn Dempster were substituted as plaintiffs for Louise Ella Simon Dempster. Rec. Doc. 239. Plaintiffs bring claims against Lamorak Insurance Company, Huntington Ingalls Inc., Albert Bossier, Jr., J. Melton Garrett, Eagle, Inc., Bayer Cropscience, Inc., Foster-Wheeler LLC, General Electric Co., Hopeman Brothers, Inc., McCarty Corporation, Taylor-Seidenbach, Inc., CBS Corporation, Uniroyal, Inc., International Paper Company, Houston General Insurance Company, Berkshire Hathaway Specialty Insurance Company, Northwest Insurance Company, United Stated Fidelity and Guaranty Company, Fist State Insurance Company, The American Insurance Company, Louisiana Insurance Guaranty Association, and the Traveler's Indemnity Company. Rec Doc. 1-8 at 2–3.

[2] Rec. Doc. 56.

1

Foster Company ("Amchem") opposes the motion.³ Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

In this litigation, Plaintiffs allege that Decedent was employed by Avondale from 1962 to 1994.⁴ During that time, Plaintiffs aver that Decedent was exposed to asbestos and asbestos-containing products in various locations and work sites, resulting in Decedent breathing in asbestos fibers and later developing asbestos-related cancer.⁵ Plaintiffs assert strict liability and negligence claims against various Defendants.⁶

Decedent filed a "Petition for Damages" in the Civil District Court for the Parish of Orleans, State of Louisiana, on March 14, 2018.⁷ Defendants Huntington Ingalls Incorporated, Albert Bossier, Jr., J. Melton Garret, and Lamorak Insurance Company (the "Removing Parties") removed the case to the United States District Court for the Eastern District of Louisiana for the first time on June 21, 2018.⁸ On January 7, 2019, this Court remanded the case to the Civil District Court for the Parish of Orleans.⁹

Decedent passed away on November 24, 2018, and a First Supplemental and Amending Petition for Damages was filed in state court substituting Decedent's heirs as Plaintiffs on January

---

³ Rec. Doc. 158.

⁴ Rec. Doc. 1-2 at 5.

⁵ *Id.*

⁶ *Id.* at 7–8.

⁷ *Id.* at 2–3

⁸ Case No. 18-6158, Rec. Doc. 1 at 2.

⁹ Case No. 18-6158, Rec. Doc. 89.

17, 2019.[10] Trial was scheduled to begin before the state trial court on January 13, 2020.[11] However, on January 9, 2020, Avondale removed the case to the United States District Court for the Eastern District of Louisiana for a second time.[12] On January 28, 2020, the Court denied the motion to remand, finding that this case was properly removed to this Court under the federal officer removal statute.[13]

On February 25, 2020, Plaintiffs filed the instant motion in limine.[14] On March 17, 2020, Amchem filed an opposition to the instant motion.[15] On April 6, 2020, Plaintiffs, with leave of Court, filed a reply brief in further support of the motion.[16] On May 5, 2020, the Court continued the May 18, 2020 trial date due to COVID-19.[17]

## II. Parties' Arguments

### A.   *Plaintiffs' Arguments in Support of the Motion*

Plaintiffs move the Court to issue an order excluding the testimony of Amchem's expert Dr. Gail Stockman because Plaintiffs argue her proposed testimony is unreliable.[18] According to Plaintiffs, Dr. Stockman will testify that asbestos did not contribute to Decedent's lung cancer.[19]

---

[10] Rec. Doc. 1-8.

[11] Rec. Doc. 1-12.

[12] Rec. Doc. 1.

[13] Rec. Doc. 17.

[14] Rec. Doc. 56.

[15] Rec. Doc. 158.

[16] Rec. Doc. 210.

[17] Rec. Doc. 225.

[18] Rec. Doc. 56-1 at 1–2.

[19] *Id.* at 2.

Plaintiffs contend that Dr. Stockman did not review critical medical evidence including CT scans and x-rays, which allegedly confirm that Decedent had asbestos-related bilateral pleural plaques and interstitial fibrosis.[20] Plaintiffs assert that other medical professionals, including at least one expert retained by Defendants, considered this information to inform their opinions that asbestos contributed to Decedent's lung cancer.[21] Plaintiffs note that Dr. Stockman disagrees with these experts, but Dr. Stockman was unable to identify any substance other than asbestos that causes both bilateral calcified pleural plaques and interstitial fibrosis, both of which Decedent had.[22]

Second, Plaintiffs assert that Dr. Stockman should be precluded from testifying that "regardless of the amount one smoked or how long ago the person quit smoking, if one develops lung cancer, smoking is the cause of the lung cancer regardless of the amount of asbestos to which the person was exposed."[23] According to Plaintiffs, Dr. Stockman could not cite any literature which supports the fact that one who had "less than a ten (10) pack year history of smoking and quit more than thirty (30) years ago" would be at an increased risk of lung cancer.[24] Plaintiffs contend Dr. Stockman's testimony in this regard is unsupported by the scientific and medical literature and constitutes unsupported speculation.[25] Accordingly, Plaintiffs submit that Dr. Stockman's testimony should be precluded.[26]

---

[20] *Id.* at 2–3.

[21] *Id.* at 3.

[22] *Id.*

[23] *Id.*

[24] *Id.* at 5.

[25] *Id.*

[26] *Id.*

B.  *Amchem's Arguments in Opposition to the Motion*

In opposition, Amchem asserts that Dr. Stockman is an expert pulmonologist with over 38 years of experience in pulmonary medicine, internal medicine and critical care medicine.[27] Amchem asserts that Decedent's medical records reveal a 15-year smoking history.[28] As a result, Amchem contends that Dr. Stockman opined that Decedent had a primary squamous cell carcinoma which was caused by his cigarette smoking.[29]

Amchem argues that Plaintiffs have not raised a viable challenge to either Dr. Stockman's qualifications or her methodology in formulating medical causation opinions in this case.[30] Rather, Amchem asserts that Plaintiffs' objections are to Dr. Stockman's expert opinions based on published, peer reviewed medical literature as related to the facts of this case.[31] Amchem asserts that these arguments are inappropriate under the *Daubert* standard and should instead be raised on cross-examination.[32]

Amchem argues that Dr. Stockman is eminently qualified to offer her expert opinion as to the cause of Decedent's lung cancer, which is based on her review of Decedent's medical records, radiology, CT scans, and numerous articles in the medical and scientific literature.[33] According to Amchem, Plaintiffs mistakenly argue that Dr. Stockman did not review Decedent's

---

[27] Rec. Doc. 158 at 1.

[28] *Id*. at 2.

[29] *Id*.

[30] *Id*.

[31] *Id*.

[32] *Id*.

[33] *Id*.

CT scans and radiology films.[34] In fact, Amchem asserts that Dr. Stockman reviewed Decedent's CT scans and radiology films, including: (1) a CT spine scan dated March 25, 2016; (2) a chest x-ray dated September 30, 2013; (3) a chest PA x-ray dated March 25, 2015; (4) a CT scan of the thorax with contrast dated November 22, 2017; (5) a PET-CT scan dated December 26, 2017; (6) a chest PA x-ray dated August 15, 2018; and (7) a PET-CT scan dated July 10, 2018.[35] According to Amchem, Dr. Stockman agreed that Decedent had bilateral calcified pleural plaques.[36] However, Amchem notes that Dr. Stockman opined that pleural plaques alone are not sufficient to attribute a lung cancer to asbestos exposure because "there are other things that cause calcified pleural plaques."[37]

Amchem asserts that Dr. Stockman is of the opinion "that in order to attribute lung cancer to asbestos exposure, a diagnosis of either asbestosis, or a lung fiber burden consistent with the development of asbestosis, is required."[38] According to Amchem, Dr. Stockman testified that the diffuse interstitial fibrosis seen on Decedent's CT scan is not indicative of asbestosis since "asbestosis starts in the lung basis, and it's very unusual to find fibrotic changes above the level of the main parenchyma with asbestosis."[39] Additionally, Amchem notes that Dr. Stockman found that Decedent was diagnosed with chronic obstructive pulmonary disease, likely caused by his cigarette smoking history, which is a risk factor for squamous cell carcinoma.[40] Amchem

---

[34] *Id*. at 4.

[35] *Id*.

[36] *Id*.

[37] *Id*.

[38] *Id*.

[39] *Id*. at 5.

[40] *Id*.

asserts that Dr. Stockman's opinion that Decedent's squamous cell carcinoma was caused by his smoking history is based on her review of Decedent's medical records, his radiology films and scans, his deposition testimony, the medical and scientific literature, Dr. Stockman's education, and over forty-year experience in pulmonology medicine.[41]

Finally, Amchem asserts that Dr. Stockman cited various texts in the medical literature in forming her opinion that cigarette smoking caused Decedent's lung cancer.[42] Amchem contends that Dr. Stockman's opinions regarding the risk of lung cancer, even after quitting smoking, are well documented and supported by the literature.[43] Accordingly, Amchem argues that Plaintiffs' motion must be denied because it merely challenges the conclusions with which Plaintiffs do not agree, rather than Dr. Stockman's qualifications or methodology.[44]

### C.     *Plaintiffs' Arguments in Further Support of the Motion*

In reply, Plaintiffs assert that Amchem's argument that Dr. Stockman reviewed CT scans and radiological materials is contradicted by Dr. Stockman's deposition testimony.[45] Specifically, Plaintiffs note that Dr. Stockman testified that she was unable to open the November 22, 2017 CT scan results on her computer.[46] Additionally, although Amchem claims that Dr. Stockman's opinions regarding the risk of former smokers for developing lung cancer are supported by various medical articles, Plaintiffs assert that Dr. Stockman could not cite to any literature to

---

[41] *Id.* at 6.

[42] *Id.*

[43] *Id.* at 7.

[44] *Id.*

[45] Rec. Doc. 210 at 1.

[46] *Id.* at 1–2.

support an opinion that an individual who had less than a ten year history of smoking and quit more than thirty years ago would be at an increased risk of lung cancer.[47] Plaintiffs claim that Dr. Stockman's testimony in this regard is unsupported by the scientific and medical literature and constitutes unsupported speculation.[48]

### III. Legal Standard

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[49] Rule 702, which governs the admissibility of expert witness testimony, provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education," may testify when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[50] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony [must be] based on sufficient facts or data,

(2) the testimony [must be] the product of reliable principles and methods, and

(3) the expert [must reliably apply] the principles and methods to the facts of the case.[51]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable."[52] The court's gatekeeping function thus involves a

---

[47] *Id*. at 3.

[48] *Id*.

[49] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[50] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[51] Fed. R. Evid. 702.

[52] *Daubert*, 509 U.S. at 597; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

two-part inquiry into reliability and relevance. First, the court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[53] The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid.[54] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[55]

In *Daubert*, the Supreme Court identified a number of factors that are useful in analyzing reliability of an expert's testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community.[56] In *Kumho Tire Co. v. Carmichael*, the Supreme Court emphasized that the test of reliability is "flexible" and that *Daubert*'s list of specific factors does not necessarily nor exclusively apply to every expert in every case.[57] The overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[58] The court must also determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will

---

[53] *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

[54] *See Daubert*, 509 U.S. at 592–93.

[55] *See id.* at 590.

[56] *See id.* at 592–94.

[57] *Kumho Tire*, 526 U.S. at 142; *see also Seatrax*, 200 F.3d at 372 (explaining that reliability is a fact-specific inquiry and application of *Daubert* factors depends on "nature of the issue at hand, the witness's particular expertise and the subject of the testimony").

[58] *Kumho Tire*, 526 U.S. at 152.

thereby assist the trier of fact to understand the evidence—in other words, whether it is relevant.[59]

A court's role as a gatekeeper does not replace the traditional adversary system,[60] and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[61] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[62] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[63]

## IV. Analysis

Plaintiffs move the Court to issue an order excluding the testimony of Amchem's expert, Dr. Gail Stockman, because Plaintiffs argue her proposed testimony is unreliable.[64] Plaintiffs specifically object to two of the opinions reached by Dr. Stockman. The Court addresses each of these objections in turn.

First, Plaintiffs argue that Dr. Stockman proposed testimony that asbestos did not contribute to Decedent's lung cancer is unreliable because Dr. Stockman did not review critical medical evidence including Decedent's CT scans and x-rays.[65] In response, Amchem argues that

---

[59] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[60] *See Daubert*, 509 U.S. at 596.

[61] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[62] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[63] *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir.1996) (internal citations and quotation marks omitted).

[64] Rec. Doc. 56-1 at 1–2.

[65] *Id.* at 2–3.

Dr. Stockman's opinion is based on her review of Decedent's medical records, radiology, CT scans, and numerous articles in the medical and scientific literature.[66]

In forming her expert opinion, Dr. Stockman reviewed many of Decedent's CT scans and radiology films, including: (1) a CT spine scan dated March 25, 2016; (2) a chest x-ray dated September 30, 2013; (3) a chest PA x-ray dated March 25, 2015; (4) a CT scan of the thorax with contrast dated November 22, 2017; (5) a PET-CT scan dated December 26, 2017; (6) a chest PA x-ray dated August 15, 2018; and (7) a PET-CT scan dated July 10, 2018.[67] Dr. Stockman's notes indicate that she was "unable to open" the results of a November 22, 2017 CT chest scan.[68] During her deposition, Dr. Stockman confirmed that she was unable to open that document on her computer.[69] During her deposition, Dr. Stockman also testified that she did not review a July 20, 2017 x-ray.[70] Plaintiffs have not shown how Dr. Stockman's failure to consider the results of these two diagnostic tests renders her entire opinion unreliable. Dr. Stockman considered the results of seven diagnostic tests performed on Decedent between 2013 and 2018. To the extent that Dr. Stockman failed to consider the results of other diagnostic tests, Plaintiffs may raise this issue on cross-examination.

Second, Plaintiffs assert that Dr. Stockman's opinion that "regardless of the amount one smoked or how long ago the person quit smoking, if one develops lung cancer, smoking is the cause of the lung cancer regardless of the amount of asbestos to which the person was exposed"

---

[66] Rec. Doc. 158 at 2.

[67] *See* Rec. Doc. 158-5, Rec. Doc. 158-6 at 7–8.

[68] Rec. Doc. 158-6 at 7–8.

[69] Rec. Doc. 158-2 at 31.

[70] *Id.*

is unsupported by scientific and medical literature.[71] In response, Amchem asserts that Dr. Stockman cited various medical literature in forming her opinion that cigarette smoking caused Decedent's lung cancer.[72]

During her deposition, Dr. Stockman testified, as follows:

> I encourage people never to smoke because I don't think that anybody can tell you as an individual how many years or how many cigarettes you can smoke without putting you at an increased risk. I can tell you that the medical literature is very clear that when you stop smoking, your risk of lung cancer no longer exponentially increases as it would if you continued to smoke, but it primarily levels off. It may go down just a little bit, but it mainly levels off until you hit your 70s, at which point the effects of aging kick in and the risk of lung cancer again begins to exponentially increase, even if you have stopped smoking 30 or 40 or 50 years ago.[73]

Dr. Stockman cited with various medical articles to support this opinion, including: (an article by J. Peto in the *British Journal of Cancer* titled "That Lung Cancer Incidence Falls in Ex-Smokers: Misconceptions" and an article by Michael T. Halpern published in the *Journal of the National Cancer Institution* titled "Patterns of Absolute Risk of Lung Cancer Mortality in Former Smokers."[74]

Plaintiffs' counsel then posed a specific hypothetical to Dr. Stockman:

> Q. Can you cite me to a single article that says that one who has less than a 10-pack-year history of smoking, having quit more than 30 years before a diagnosis of lung cancer, that you can attribute smoking to the lung cancer? Can you cite me to a single article?
>
> A. No, I can't cite an article that would be written about that.[75]

---

[71] Rec. Doc. 56-1 at 4–5.

[72] Rec. Doc. 158 at 6.

[73] Rec. Doc. 158-2 at 22.

[74] *Id. See also* Rec. Doc. 158-10, Rec. Doc. 158-11.

[75] Rec. Doc. 158-2 at 42.

Plaintiffs have not shown that Dr. Stockman's opinion is unreliable based solely on her inability to cite an article that would support this specific hypothetical. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[76] Plaintiffs can raise this issue on cross-examination. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' "*Daubert* Motion to Preclude the Testimony of Dr. Gail Stockman"[77] is **DENIED.**

**NEW ORLEANS, LOUISIANA,** this   11th  day of September, 2020.

_____
**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[76] *14.38 Acres of Land*, 80 F.3d at 1077 (internal citations and quotation marks omitted).

[77] Rec. Doc. 56.