UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CALLEN DEMPSTER et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-95** |
| **LAMORAK INSURANCE CO. et al.** | **SECTION: "G"(1)** |

## ORDER AND REASONS

In this litigation, Plaintiffs Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Dempster, Jr., Annette Dempster Glad, and Barnett Dempster's (collectively, "Plaintiffs") allege that Decedent Callen L. Dempster ("Decedent") was exposed to asbestos and asbestos-containing products that were designed, manufactured, sold, and/or supplied by a number of Defendant companies while Decedent was employed by Huntington Ingalls Incorporated ("Avondale").[1] Pending before the Court is Defendant Bayer CropScience, Inc., as Successor to Rhone-Poulenc AG Company, f/k/a Amchem Products, Inc., f/k/a Benjamin Foster Company's ("Amchem") "Motion in Limine and *Daubert* Motion to Exclude Certain Testimony of Gerard L. Baril."[2] Defendants Foster Wheeler, LLC and General

---

[1] *See* Rec. Doc. 1-2; Rec. Doc. 1-8. On August 6, 2020, Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Louis Dempster, Jr., Annette Ruth Dempster Glad, and Barnett Lynn Dempster were substituted as plaintiffs for Louise Ella Simon Dempster. Rec. Doc. 239. Plaintiffs bring claims against Lamorak Insurance Company, Huntington Ingalls Inc., Albert Bossier, Jr., J. Melton Garrett, Eagle, Inc., Bayer Cropscience, Inc., Foster-Wheeler LLC, General Electric Co., Hopeman Brothers, Inc., McCarty Corporation, Taylor-Seidenbach, Inc., CBS Corporation, Uniroyal, Inc., International Paper Company, Houston General Insurance Company, Berkshire Hathaway Specialty Insurance Company, Northwest Insurance Company, United Stated Fidelity and Guaranty Company, Fist State Insurance Company, The American Insurance Company, Louisiana Insurance Guaranty Association, and the Traveler's Indemnity Company. Rec Doc. 1-8 at 2–3.

[2] Rec. Doc. 48.

Electric Company join the motion.[3] Plaintiffs oppose the motion.[4] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part and denies it in part.

## I. Background

In this litigation, Plaintiffs allege that Decedent was employed by Avondale from 1962 to 1994.[5] During that time, Plaintiffs aver that Decedent was exposed to asbestos and asbestos-containing products in various locations and work sites, resulting in Decedent breathing in asbestos fibers and later developing asbestos-related cancer.[6] Plaintiffs assert strict liability and negligence claims against various Defendants.[7]

Decedent filed a "Petition for Damages" in the Civil District Court for the Parish of Orleans, State of Louisiana, on March 14, 2018.[8] Defendants Huntington Ingalls Incorporated, Albert Bossier, Jr., J. Melton Garret, and Lamorak Insurance Company (the "Removing Parties") removed the case to the United States District Court for the Eastern District of Louisiana for the first time on June 21, 2018.[9] On January 7, 2019, this Court remanded the case to the Civil District Court for the Parish of Orleans.[10]

Decedent passed away on November 24, 2018, and a First Supplemental and Amending

---

[3] Rec. Doc. 57.

[4] Rec. Doc. 153.

[5] Rec. Doc. 1-2 at 5.

[6] *Id.*

[7] *Id.* at 7–8.

[8] *Id.* at 2–3.

[9] Case No. 18-6158, Rec. Doc. 1 at 2.

[10] Case No. 18-6158, Rec. Doc. 89.

Petition for Damages was filed in state court substituting Decedent's heirs as Plaintiffs on January 17, 2019.[11] Trial was scheduled to begin before the state trial court on January 13, 2020.[12] However, on January 9, 2020, Avondale removed the case to the United States District Court for the Eastern District of Louisiana for a second time.[13] On January 28, 2020, the Court denied the motion to remand, finding that this case was properly removed to this Court under the federal officer removal statute.[14]

On February 25, 2020, Amchem filed the instant motion in limine.[15] Defendants Foster Wheeler, LLC and General Electric Company join the motion.[16] On March 17, 2020, Plaintiffs filed an opposition to the instant motion.[17] On April 6, 2020, Amchem, with leave of Court, filed a reply brief in further support of the motion.[18] On May 5, 2020, the Court continued the May 18, 2020 trial date due to COVID-19.[19]

## II. Parties' Arguments

### A. *Amchem's Arguments in Support of the Motion*

Amchem moves the Court to issue an order excluding Plaintiffs' expert in industrial hygiene, Gerard L. Baril, from testifying as follows: (1) that any exposure to asbestos above

---

[11] Rec. Doc. 1-8.

[12] Rec. Doc. 1-12.

[13] Rec. Doc. 1.

[14] Rec. Doc. 17.

[15] Rec. Doc. 48.

[16] Rec. Doc. 57.

[17] Rec. Doc. 153.

[18] Rec. Doc. 214.

[19] Rec. Doc. 225.

background is a significant contributing factor to Decedent's disease and (2) to certain opinions or calculations relating to asbestos exposure attributable to Amchem that rely on studies performed by one of Plaintiffs' other expert, Dr. James Millette.[20]

First, Amchem asserts that in his deposition Mr. Baril advocated the theory that any asbestos exposure above background constitutes a significant contributing factor to Decedent's disease.[21] According to Amchem, such testimony is unreliable under the *Daubert* standards, as it cannot be tested, has not been published in peer-reviewed works, and has no known error rate.[22] Accordingly, Amchem asserts that any testimony regarding an "any exposure above background" theory should be excluded.[23] Alternatively, Amchem contends that the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.[24]

Second, Amchem notes that Mr. Baril relied on a series of tests performed in 2002 and 2003 by Dr. James Millette.[25] Amchem adopts the arguments raised in its motion to exclude evidence of the tests performed by Dr. Millette.[26] For the same reasons, Amchem asserts that any testimony or opinions based on those tests should also be excluded.[27]

---

[20] Rec. Doc. 48 at 1–2.

[21] Rec. Doc. 48-1 at 4.

[22] *Id*. at 4–5.

[23] *Id*. at 6.

[24] *Id*.

[25] *Id*.

[26] *Id*. at 2.

[27] *Id*.

B.  *Plaintiffs' Arguments in Opposition to the Motion*

In response, Plaintiffs contend that Mr. Baril is eminently qualified to testify as an expert in this matter.[28] Plaintiffs note that Mr. Baril has over 35 years of experience as an industrial hygienist.[29] Additionally, Plaintiffs assert that Mr. Baril is familiar with the various asbestos workplace standards that existed since the 1940s as well as the scientific literature regarding asbestos.[30] Therefore, Plaintiffs argue that Mr. Baril is qualified to testify as a certified industrial hygienist and environmental health expert regarding the release of asbestos fibers from asbestos products.[31]

Second, Plaintiffs contend that Mr. Baril's methodology is acceptable under *Daubert*.[32] Plaintiffs assert that Mr. Baril has not opined that every exposure or every exposure above background is causative, as Amchem suggests.[33] Plaintiffs assert that Mr. Baril compared Decedent's exposures from Benjamin Foster's 81-27 to the current and historical occupational health standards for asbestos.[34] Plaintiffs note that Mr. Baril reviewed various depositions in this matter, including the depositions of Decedent, Luther Dempster, Michael Comardelle, Jerry Savoie, Frenchie Bordelon, Lee Tregre, O'Neil Duronslet, and Joseph Brazan.[35] Plaintiffs also note that Mr. Baril reviewed scientific literature and testing indicating the levels of exposure to

---

[28] Rec. Doc. 153 at 2.

[29] *Id*.

[30] *Id*. at 3.

[31] *Id*.

[32] *Id*.

[33] *Id*. at 4.

[34] *Id*.

[35] *Id*.

5

asbestos.[36] Plaintiffs assert that this methodology has been approved by numerous courts, including the Fifth Circuit.[37]

Although Plaintiffs contend that Mr. Baril's opinion regarding Decedent's exposures to Benjamin Foster's asbestos products are not based on an "any exposure above background" theory, Plaintiffs state that there may be discussion at trial by industrial hygiene and medical experts regarding background exposures that exist in the ambient environment.[38] In fact, Plaintiffs point out that Amchem's expert, Dr. Gail Stockman, opined that Decedent would not have been exposed to asbestos above background.[39] Plaintiffs contend that their experts should be able to present expert opinions that counter those of this opinion.[40] Plaintiffs assert that Mr. Baril will opine that the exposures to Benjamin Foster's 81-27 from the activities described by Decedent were not merely above background exposures but were exposures above the current and historical permissible exposure levels.[41]

Finally, Plaintiffs argue that Mr. Baril properly relied on Dr. Millette's studies.[42] Plaintiffs adopt the arguments set forth in their opposition to the motion to exclude Dr. Millette's testimony.[43]

---

[36] *Id*. at 6.

[37] *Id*. (citing *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 671 (5th Cir. 1999)).

[38] *Id*. at 11.

[39] *Id*.

[40] *Id*.

[41] *Id*.

[42] *Id*. at 14.

[43] *Id*. at 15.

C.     *Amchem's Arguments in Further Support of the Motion*

In reply, Amchem argues that although Mr. Baril may be qualified as an industrial hygienist, he has no experience testing fiber release from mastics or adhesives.[44] Furthermore, Amchem asserts that Mr. Baril failed to consider the only peer-reviewed, published study on Benjamin Foster 81-27.[45] Instead, Amchem contends that Mr. Baril based his opinion "solely on the non-peer reviewed, non-published litigation paper of Dr. James Millette."[46] Accordingly, Amchem contends that Mr. Baril is not qualified to offer expert testimony regarding exposure to adhesives and/or mastics, including Benjamin Foster products.[47]

Additionally, Amchem asserts that Mr. Baril's opinions regarding exposure to Benjamin Foster 81-27 is unreliable because it relies solely on the studies performed by Dr. Millette.[48] Although Mr. Baril reviewed Dr. Dennis Paustenbach's study regarding Benjamin Foster 81-27, Amchem contends he failed to consider the study in arriving at his opinions and incorrectly stated that "Dr. Paustenbach's study did not involve any attempt to remove dried fibrous adhesive, with respect to the 81-27."[49]

Finally, Amchem argues that Mr. Baril's testimony advocating for an "any exposure above background" theory is not reliable.[50] Amchem contends that during his deposition Mr. Baril testified that "any exposure above background, to asbestos, is significant and can lead to the

---

[44] Rec. Doc. 214 at 4.

[45] *Id*.

[46] *Id*.

[47] *Id*.

[48] *Id*. at 5.

[49] *Id*. at 6.

[50] *Id*. at 8.

development of mesothelioma and/or lung cancer."[51] Amchem argues that this theory is unreliable and must be excluded.[52]

### III. Legal Standard

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[53] Rule 702, which governs the admissibility of expert witness testimony, provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education," may testify when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[54] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony [must be] based on sufficient facts or data,

(2) the testimony [must be] the product of reliable principles and methods, and

(3) the expert [must reliably apply] the principles and methods to the facts of the case.[55]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable."[56] The court's gatekeeping function thus involves a two-part inquiry into reliability and relevance. First, the court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of

---

[51] *Id*.

[52] *Id*. at 9.

[53] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[54] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[55] Fed. R. Evid. 702.

[56] *Daubert*, 509 U.S. at 597; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

establishing its reliability by a preponderance of the evidence.[57] The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid.[58] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[59]

In *Daubert*, the Supreme Court identified a number of factors that are useful in analyzing reliability of an expert's testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community.[60] In *Kumho Tire Co. v. Carmichael*, the Supreme Court emphasized that the test of reliability is "flexible" and that *Daubert*'s list of specific factors does not necessarily nor exclusively apply to every expert in every case.[61] The overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[62] The court must also determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence—in other words, whether it is relevant.[63]

---

[57] *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

[58] *See Daubert*, 509 U.S. at 592–93.

[59] *See id.* at 590.

[60] *See id.* at 592–94.

[61] *Kumho Tire*, 526 U.S. at 142; *see also Seatrax*, 200 F.3d at 372 (explaining that reliability is a fact-specific inquiry and application of *Daubert* factors depends on "nature of the issue at hand, the witness's particular expertise and the subject of the testimony").

[62] *Kumho Tire*, 526 U.S. at 152.

[63] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

9

A court's role as a gatekeeper does not replace the traditional adversary system,[64] and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[65] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[66] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[67]

## IV. Analysis

Amchem moves the Court to issue an order excluding Plaintiffs' expert in industrial hygiene, Gerard L. Baril, from testifying as follows: (1) that any exposure to asbestos above background is a significant contributing factor to Decedent's disease and (2) to certain opinions or calculations relating to asbestos exposure attributable to Amchem that rely on studies performed by one of Plaintiffs' other expert, Dr. James Millette.[68]

First, Amchem asserts that in his deposition, Mr. Baril advocated the theory that any asbestos exposure above background constitutes a significant contributing factor to Decedent's disease.[69] According to Amchem, such testimony is unreliable under the *Daubert* standards, as it

---

[64] *See Daubert*, 509 U.S. at 596.

[65] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[66] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[67] *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir.1996) (internal citations and quotation marks omitted).

[68] Rec. Doc. 48 at 1–2.

[69] Rec. Doc. 48-1 at 4.

cannot be tested, has not been published in peer-reviewed works, and has no known error rate.[70] In response Plaintiffs do not dispute that the "any exposure above background" theory is unreliable.[71] Instead, Plaintiffs contend that Mr. Barial's opinion regarding Decedent's exposures to Benjamin Foster's asbestos products are not based on an "any exposure above background" theory.[72]

The "every exposure" or "every exposure above background" theory "represents the viewpoint that, because science has failed to establish that any specific dosage of asbestos causes injury, every exposure to asbestos should be considered a cause of injury."[73] Numerous courts have excluded expert testimony based on this theory finding that the theory is unreliable as it is not supported by sufficient facts or data.[74] Plaintiffs do not argue that this theory of liability is reliable.[75] Instead, Plaintiffs contend that Mr. Baril's opinion is not based on this theory. However, during his deposition, Mr. Baril testified that "[a]ny exposure above background level is considered significant with respect to development of disease."[76] Mr. Baril also testified that "every exposure to asbestos above background significantly contributes to development of a

---

[70] *Id*. at 4–5.

[71] Rec. Doc. 153 at 11.

[72] *Id*.

[73] *Yates v. Ford Motor Co.*, 113 F.Supp.3d 841, 848 (E.D. N.C. 2015).

[74] *See Bell v. Foster Wheeler Energy Corp.*, No. 15-6394, 2016 WL 5847124 (E.D. La. Oct. 6, 2016); *Vedros v. Northrop Grumman Shipbuilding, Inc.*, 119 F.Supp.3d 556, 563 (E.D. La. 2015); *Comardelle v. Pa. Gen. Ins. Co.*, 76 F.Supp.3d 628, 633–35 (E.D. La. 2015); *Yates*, 113 F.Supp.3d at 848; *Krik v. Crane Co.*, 76 F.Supp.3d 747, 749–50 (N.D. Ill. 2014); *Sclafani v. Air & Liquid Sys. Corp.*, No. 12-3013, 2013 WL 2477077, at *5 (C.D. Cal. May 9, 2013); *Smith v. Ford Motor Co.*, 08-630, 2013 WL 214378, at *2 (D. Utah Jan. 18, 2013); *Henricksen v. ConocoPhillips Co.*, 605 F.Supp.2d 1142, 1166 (E.D. Wash. 2009).

[75] *See* Rec. Doc. 153.

[76] Rec. Doc. 48-2 at 9.

disease."[77] Therefore, to the extent Mr. Baril is advocating for an "every exposure" or "every exposure above background" theory of causation, such testimony is excluded.

Plaintiffs point out that evidence of background levels of asbestos may be relevant. For example, Plaintiffs point out that Amchem's expert, Dr. Gail Stockman, opined that Decedent would not have been exposed to asbestos above background.[78] Plaintiffs contend that their experts should be able to present expert opinions that counter those of this opinion.[79] Amchem does not seek to exclude all evidence regarding background levels of asbestos. Amchem moved the Court to exclude testimony by Mr. Baril "that any exposure to asbestos above background is a significant contributing factor to [Decedent's] disease."[80] Exposures to asbestos above background level are clearly relevant to this case. However, Mr. Baril may not advance the untested theory that any exposure to asbestos above background significantly contributed to Decedent's disease. Therefore, Plaintiffs' concern is unfounded.

To the extent Amchem argues that Mr. Baril's testimony is unreliable because it relies on the studies performed by Dr. Millette, the Court finds this argument unavailing. As set forth in the Court's Order and Reasons denying Amchem's motion to exclude the testimony of Dr. Millette, the studies performed by Dr. Millette were based on reliable methodologies.[81] Accordingly, Mr. Baril's proposed testimony is not rendered unreliable solely because he relied on the studies.

---

[77] *Id*. at 15.

[78] Rec. Doc. 153 at 11.

[79] *Id*.

[80] Rec. Doc. 48 at 1.

[81] Rec. Doc. 248.

To the extent Amchem argues that Mr. Baril should have considered the study performed by Dr. Paustenbach, Amchem can raise this issue on cross-examination. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[82]

Accordingly,

**IT IS HEREBY ORDERED** that Amchem's "Motion in Limine and *Daubert* Motion to Exclude Certain Testimony of Gerard L. Baril"[83] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent it seeks to exclude testimony that any exposure to asbestos above background significantly contributed to Decedent's disease. The motion is **DENIED** in all other respects.

**NEW ORLEANS, LOUISIANA,** this 15th day of September, 2020.

_____
**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[82] *14.38 Acres of Land*, 80 F.3d at 1077 (internal citations and quotation marks omitted).

[83] Rec. Doc. 48.