**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CALLEN DEMPSTER et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-95** |
| **LAMORAK INSURANCE CO. et al.** | **SECTION: "G"(1)** |

**ORDER AND REASONS**

In this litigation, Plaintiffs Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Dempster, Jr., Annette Dempster Glad, and Barnett Dempster's (collectively, "Plaintiffs") allege that Decedent Callen L. Dempster ("Decedent") was exposed to asbestos and asbestos-containing products that were designed, manufactured, sold, and/or supplied by a number of Defendant companies while Decedent was employed by Huntington Ingalls Incorporated ("Avondale").[1] Pending before the Court is a "Motion to Exclude the Testimony of Stephen Terry Kraus, M.D."[2] filed by Defendant Hopeman Brothers, Inc. ("Hopeman") and Third-Party Defendant Liberty Mutual Insurance Company as the alleged insurer of Wayne Manufacturing Corp. ("Wayne") (collectively, the "Hopeman Interests"). Defendants Foster Wheeler, LLC, General Electric Company, and Bayer CropScience, Inc., as

[1] *See* Rec. Doc. 1-2; Rec. Doc. 1-8. On August 6, 2020, Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Louis Dempster, Jr., Annette Ruth Dempster Glad, and Barnett Lynn Dempster were substituted as plaintiffs for Louise Ella Simon Dempster. Rec. Doc. 239. Plaintiffs bring claims against Lamorak Insurance Company, Huntington Ingalls Inc., Albert Bossier, Jr., J. Melton Garrett, Eagle, Inc., Bayer Cropscience, Inc., Foster-Wheeler LLC, General Electric Co., Hopeman Brothers, Inc., McCarty Corporation, Taylor-Seidenbach, Inc., CBS Corporation, Uniroyal, Inc., International Paper Company, Houston General Insurance Company, Berkshire Hathaway Specialty Insurance Company, Northwest Insurance Company, United Stated Fidelity and Guaranty Company, Fist State Insurance Company, The American Insurance Company, Louisiana Insurance Guaranty Association, and the Traveler's Indemnity Company. Rec Doc. 1-8 at 2–3.

[2] Rec. Doc. 61.

Successor to Rhone-Poulenc AG Company, f/k/a Amchem Products, Inc., f/k/a Benjamin Foster Company ("Amchem") join the motion.[3] Plaintiffs oppose the motion.[4] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

In this litigation, Plaintiffs allege that Decedent was employed by Avondale from 1962 to 1994.[5] During that time, Plaintiffs aver that Decedent was exposed to asbestos and asbestos-containing products in various locations and work sites, resulting in Decedent breathing in asbestos fibers and later developing asbestos-related cancer.[6] Plaintiffs assert strict liability and negligence claims against various Defendants.[7]

Decedent filed a "Petition for Damages" in the Civil District Court for the Parish of Orleans, State of Louisiana, on March 14, 2018.[8] Defendants Huntington Ingalls Incorporated, Albert Bossier, Jr., J. Melton Garret, and Lamorak Insurance Company (the "Removing Parties") removed the case to the United States District Court for the Eastern District of Louisiana for the first time on June 21, 2018.[9] On January 7, 2019, this Court remanded the case to the Civil District Court for the Parish of Orleans.[10]

---

[3] Rec. Doc. 57, Rec. Doc. 122.

[4] Rec. Doc. 156.

[5] Rec. Doc. 1-2 at 5.

[6] *Id.*

[7] *Id.* at 7–8.

[8] *Id.* at 2–3

[9] Case No. 18-6158, Rec. Doc. 1 at 2.

[10] Case No. 18-6158, Rec. Doc. 89.

Decedent passed away on November 24, 2018, and a First Supplemental and Amending Petition for Damages was filed in state court substituting Decedent's heirs as Plaintiffs on January 17, 2019.[11] Trial was scheduled to begin before the state trial court on January 13, 2020.[12] However, on January 9, 2020, Avondale removed the case to the United States District Court for the Eastern District of Louisiana for a second time.[13] On January 28, 2020, the Court denied the motion to remand, finding that this case was properly removed to this Court under the federal officer removal statute.[14]

On February 25, 2020, the Hopeman Interests filed the instant motion.[15] Defendants Foster Wheeler, LLC, General Electric Company, and Amchem join the motion.[16] On March 17, 2020, Plaintiffs filed an opposition to the instant motion.[17] On May 5, 2020, the Court continued the May 18, 2020 trial date due to COVID-19.[18]

## II. Parties' Arguments

### *A. The Hopeman Interests' Arguments in Support of the Motion*

The Hopeman Interests move the Court to issue an order excluding the testimony of Plaintiffs' expert, Dr. Stephen Terry Kraus, for three reasons: (1) the Hopeman Interests assert

---

[11] Rec. Doc. 1-8.

[12] Rec. Doc. 1-12.

[13] Rec. Doc. 1.

[14] Rec. Doc. 17.

[15] Rec. Doc. 61.

[16] Rec. Doc. 57, Rec. Doc. 122.

[17] Rec. Doc. 156.

[18] Rec. Doc. 225.

that Dr. Kraus never reviewed documents specific to Hopeman;[19] (2) the Hopeman Interests argue that Dr. Kraus has no scientific, technical, or other special knowledge that will help the trier of fact understand the evidence or determine a fact in issue;[20] and (3) the Hopeman Interests argue that Dr. Kraus' opinions as to the cause of Decedent's lung cancer are not based on any scientific data or a reliable methodology.[21]

First, the Hopeman Interests assert that Dr. Kraus never reviewed documents specific to Hopeman.[22] Nevertheless, the Hopeman Interests anticipate that Dr. Kraus will opine that Decedent suffered occupational exposure to asbestos at Avondale while Hopeman employees were installing wallboard and that exposure was a substantial contributing factor to Decedent's contraction of lung cancer.[23] The Hopeman Interests contend that pursuant to Fifth Circuit precedent "[s]cientific knowledge of the harmful level of exposure to a [substance], plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case."[24] The Hopeman Interests assert that "Dr. Kraus has no idea what, if any exposure, [Decedent] sustained as a result of Hopeman operations at Avondale."[25] Therefore, the Hopeman Interests contend that "Dr. Kraus should be excluded from offering any causation opinions related to [Decedent's] asbestos exposure as he acted as a

---

[19] Rec. Doc. 61-1 at 4–6.

[20] *Id*. at 6–7.

[21] *Id*. at 7–8.

[22] *Id*. at 4.

[23] *Id*. at 4–5.

[24] *Id*. at 5 (quoting *Allen v. Pennsylvania Engineering Corp.*, 102 F.3d 194 (5th Cir. 1996)).

[25] *Id*.

counselor of treatment and nothing more."[26]

Second, the Hopeman Interests argue that Dr. Kraus has no scientific, technical, or other special knowledge that will help the trier of fact understand the evidence or determine a fact in issue.[27] The Hopeman Interests assert that Dr. Kraus is a retired radiation oncologist who is qualified to treat and/or advise patients as to radiation therapy.[28] The Hopeman Interests contend that Dr. Kraus is not qualified to offer opinions as to the cause of Decedent's lung cancer.[29]

Finally, the Hopeman Interests argue that Dr. Kraus' opinions as to the cause of Decedent's lung cancer are not based on any scientific data or a reliable methodology.[30] The Hopeman Interests assert that Dr. Kraus has not provided any quantitative or qualitative assessment of Decedent's alleged exposure to asbestos via Hopeman operations, such as air monitoring, or calculated Decedent's cumulative dose.[31] Moreover, the Hopeman Interests assert that Dr. Kraus fails to provide any testimony regarding the proximity, frequency or duration of alleged exposure to asbestos.[32] Consequently, the Hopeman Interests assert that Dr. Kraus's opinions are unreliable and should be excluded.[33]

### *B. Plaintiffs' Arguments in Opposition to the Motion*

In opposition, Plaintiffs assert that numerous courts have denied similar *Daubert* motions

---

[26] *Id*. at 6.

[27] *Id*.

[28] *Id*.

[29] *Id*. at 7.

[30] *Id*.

[31] *Id*. at 8 (citing *Vedros v. Northrop Grumman Shipbuilding, Inc.*, 119 F. Supp. 3d 556, 565 (E.D. La. 2015)).

[32] *Id*.

[33] *Id*.

attacking the proposed expert testimony of Dr. Kraus.[34] Plaintiffs urge this Court to do the same.[35]

First, Plaintiffs contend that Dr. Kraus is eminently qualified to testify as an expert in this matter.[36] Plaintiffs note that the Hopeman Interests did not cite any authority to support their argument that only a pathologist or epidemiologist is qualified to testify regarding cancer causation.[37] Plaintiffs assert that Dr. Kraus has dedicated his life to the study and treatment of cancer.[38] Therefore, Plaintiffs argue that Dr. Kraus is qualified to provide testimony regarding the cause of Decedent's cancer.[39]

Second, Plaintiffs assert that a dose calculation is not required.[40] Plaintiffs contend that numerous courts have rejected such an argument.[41] Plaintiffs argue courts within the State of Louisiana have repeatedly found that in proving exposure plaintiffs are not required to present evidence of the specific levels or concentrations of asbestos to which they were exposed.[42]

Third, Plaintiffs contend that Dr. Kraus spoke to Decedent about his exposure to asbestos from Hopeman.[43] Plaintiffs point out that Dr. Kraus reviewed Decedent's medical records and Decedent's deposition testimony, along with scientific literature regarding asbestos and asbestos-

---

[34] Rec. Doc. 156 at 3–4.

[35] *Id*. at 4.

[36] *Id*.

[37] *Id*.

[38] *Id*. at 5.

[39] *Id*. at 6.

[40] *Id*.

[41] *Id*.

[42] *Id*. at 6–7.

[43] *Id*. at 7.

related diseases in shipyards and industrial sites.[44] Plaintiffs assert that Dr. Kraus also referenced studies, which documented the high levels of exposure from the cutting of wallboard.[45] Plaintiffs argue that the literature established that the exposures sustained by Decedent were well above the historical and current permissible exposure limits.[46] Plaintiffs assert that this methodology has been approved by the Fifth Circuit.[47]

Finally, Plaintiffs contend that Dr. Kraus's opinions have a sufficient factual basis.[48] Plaintiffs point to Decedent's deposition, which Dr. Kraus reviewed, wherein Decedent testified that he worked alongside Hopeman employees while they were cutting the boards and he inhaled the dust that was produced.[49] Accordingly, Plaintiffs argue that the motion should be denied.[50]

## III. Legal Standard

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[51] Rule 702, which governs the admissibility of expert witness testimony, provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education," may testify when "scientific, technical or other specialized knowledge will assist

---

[44] *Id*. at 8.

[45] *Id*. at 9.

[46] *Id*. at 10.

[47] *Id*. at 11 (citing *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661 (5th Cir. 1999)).

[48] *Id*. at 12.

[49] *Id*. at 13–14.

[50] *Id*. at 15.

[51] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

the trier of fact to understand the evidence or to determine a fact in issue."[52] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony [must be] based on sufficient facts or data,

(2) the testimony [must be] the product of reliable principles and methods, and

(3) the expert [must reliably apply] the principles and methods to the facts of the case.[53]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable."[54] The court's gatekeeping function thus involves a two-part inquiry into reliability and relevance. First, the court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[55] The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid.[56] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[57]

In *Daubert*, the Supreme Court identified a number of factors that are useful in analyzing reliability of an expert's testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4)

[52] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[53] Fed. R. Evid. 702.

[54] *Daubert*, 509 U.S. at 597; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[55] *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

[56] *See Daubert*, 509 U.S. at 592–93.

[57] *See id.* at 590.

whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community.[58] In *Kumho Tire Co. v. Carmichael*, the Supreme Court emphasized that the test of reliability is "flexible" and that *Daubert*'s list of specific factors does not necessarily nor exclusively apply to every expert in every case.[59] The overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[60] The court must also determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence—in other words, whether it is relevant.[61]

A court's role as a gatekeeper does not replace the traditional adversary system,[62] and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[63] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[64] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[65]

---

[58] *See id.* at 592–94.

[59] *Kumho Tire*, 526 U.S. at 142; *see also Seatrax*, 200 F.3d at 372 (explaining that reliability is a fact-specific inquiry and application of *Daubert* factors depends on "nature of the issue at hand, the witness's particular expertise and the subject of the testimony").

[60] *Kumho Tire*, 526 U.S. at 152.

[61] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[62] *See Daubert*, 509 U.S. at 596.

[63] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[64] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[65] *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir.1996) (internal citations and quotation

## IV. Analysis

The Hopeman Interests move the Court to issue an order excluding the testimony of Plaintiffs' expert, Dr. Stephen Terry Kraus, for three reasons: (1) the Hopeman Interests assert that Dr. Kraus never reviewed documents specific to Hopeman;[66] (2) the Hopeman Interests argue that Dr. Kraus has no scientific, technical, or other special knowledge that will help the trier of fact understand the evidence or determine a fact in issue;[67] and (3) the Hopeman Interests argue that Dr. Kraus' opinions as to the cause of Decedent's lung cancer are not based on any scientific data or a reliable methodology.[68] Because there is significant overlap between the Hopeman Interests' first and third arguments, the Court begins with the Hopeman Interests' argument that the Dr. Kraus is not qualified to offer expert opinion testimony on causation.

### *A. Whether Dr. Kraus has Scientific, Technical, or Other Special Knowledge to Render Causation Opinions*

The Hopeman Interests argue that Dr. Kraus has no scientific, technical, or other special knowledge that will help the trier of fact understand the evidence or determine a fact in issue.[69] The Hopeman Interests assert that Dr. Kraus is a retired radiation oncologist who is qualified to treat and/or advise patients as to radiation therapy.[70] The Hopeman Interests contend that Dr.

marks omitted).

[66] Rec. Doc. 61-1 at 4–6.

[67] *Id*. at 6–7.

[68] *Id*. at 7–8.

[69] Rec. Doc. 61-1 at 6.

[70] *Id*.

Kraus is not qualified to offer opinions as to the cause of Decedent's lung cancer.[71] In response, Plaintiffs contend that Dr. Kraus is eminently qualified to testify as an expert in this matter.[72] Plaintiffs assert that Dr. Kraus has dedicated his life to the study and treatment of cancer.[73]

Dr. Kraus is a medical doctor who received his medical degree from the University of Cincinnati College of Medicine in 1970.[74] He is board certified in radiation oncology, and he has treated patients with mesothelioma and other forms of cancer since 1982.[75] Dr. Kraus previously testified that part of his treatment of cancer patients has included discussing with patients the causes of their cancers.[76]

As the Fifth Circuit noted in *United States v. Wen Chyu Liu*, "an expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight."[77] In that case, the Fifth Circuit held that the district court abused its discretion when it excluded the testimony of an expert with extensive experience working in chemical plants and 50 years of engineering experience in a variety of high-level positions, finding that he had worked with polymers that had "many similarities" and "a lot of commonality" with the manufacturing process at issue in the case, even though he lacked experience with the specific substance at issue.[78]

---

[71] *Id*. at 7.

[72] Rec. Doc. 156-9 at at 4.

[73] *Id*. at 5.

[74] Rec. Doc. 156-9 at 2.

[75] Rec. Doc. 156-10 at 4.

[76] Rec. Doc. 156-12 at 2.

[77] *United States v. Wen Chyu Liu*, 716 F.3d 159, 168–69 (5th Cir. 2013) (quoting *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991)).

[78] *Id.* at 169.

As discussed above, Dr. Kraus has extensive experience as a radiation oncologist. Thus, he is qualified to provide expert opinion testimony on the cause of Decedent's cancer. Therefore, the Court declines to exclude Dr. Kraus's testimony on the ground that he is not qualified as an expert.

### ***B. Whether Dr. Kraus's Proposed Testimony is Based on Sufficient Facts and Data and a Reliable Methodology***

The Hopeman Interests assert that Dr. Kraus never reviewed documents specific to Hopeman.[79] Additionally, the Hopeman Interests argue that Dr. Kraus' opinions as to the cause of Decedent's lung cancer are not based on any scientific data or a reliable methodology.[80] The Hopeman Interests assert that Dr. Kraus has not provided any quantitative or qualitative assessment of Decedent's alleged exposure to asbestos via Hopeman operations, such as air monitoring, or calculated Decedent's cumulative dose.[81]

In response, Plaintiffs assert that a dose calculation is not required.[82] Plaintiffs point out that Dr. Kraus reviewed Decedent's medical records and Decedent's deposition testimony, along with scientific literature regarding asbestos and asbestos-related diseases in shipyards and industrial sites.[83] Plaintiffs assert that Dr. Kraus also referenced studies, which documented the high levels of exposure from the cutting of wallboard.[84] Plaintiffs argue that the literature shows that the exposures sustained by Decedent were well above the historical and currently permissible

[79] Rec. Doc. 61-1 at 4–6.

[80] *Id*. at 7.

[81] *Id*. at 8 (citing *Vedros v. Northrop Grumman Shipbuilding, Inc.*, 119 F. Supp. 3d 556, 565 (E.D. La. 2015)).

[82] Rec. Doc. 156 at 6–7.

[83] *Id*. at 8.

[84] *Id*. at 9.

exposure limits.[85]

Pursuant to Federal Rule of Evidence 702, an expert's testimony must be based on sufficient facts or data. Federal Rule of Evidence 703 "requires that the facts on which the expert relies must be reasonably relied on by other experts in the field."[86] The Fifth Circuit has recognized that "[s]cientific knowledge of the harmful level of exposure to a [substance], plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case."[87] However, the law does not require plaintiffs to show the precise level of the toxin to which they were exposed.[88]

In *Curtis v. M&S Petroleum, Inc.*, a case dealing with benzene exposure, the Fifth Circuit found that the district court abused its discretion in excluding proposed testimony of an expert witness, Dr. Frank Stevens.[89] The Fifth Circuit found that the district court abused its discretion in excluding proposed testimony of an expert witness, Dr. Frank Stevens.[90] In reaching his opinion, Dr. Stevens relied on several scientific studies, the plaintiffs' testimony regarding their symptoms and the work conditions, and the design of the refinery.[91] The Fifth Circuit reasoned that "the law does not require Plaintiff to show the precise level of benzene exposure to which they were exposed."[92] "Because Dr. Stevens's causation opinion was based on scientific

---

[85] *Id*. at 10.

[86] *Allen*, 102 F.3d at 198.

[87] *Id*. at 199.

[88] *Curtis*, 174 F.3d at 671 .

[89] *Id.* at 671–72 .

[90] *Id.* at 672.

[91] *Id.* at 669–72.

[92] *Id.* at 671.

knowledge that would assist the trier of fact as required by Rule 702," the Fifth Circuit concluded that his testimony was admissible.[93]

Here, the evidence presented by Plaintiffs establishes that Decedent told Dr. Kraus about his alleged exposure to asbestos by Hopeman. In his consult note, Dr. Kraus documents the following discussion with Decedent:

> He worked with Hopeman Brothers' employees. We worked side-by-side with them and they worked side-by-side with us." The Hopeman Brothers' employees cut and fit asbestos board. The boards had a Formica-like surface on one side and rough asbestos board on the other side. They used a Skil saw to cut the boards. When the asbestos boards were cut "stuff was flying all over the place. 90% of what we used was asbestos."[94]

Dr. Kraus reviewed Decedent's deposition testimony and Decedent's medical records, including the x-rays and scans performed on Decedent before his death.[95] Dr. Kraus also reviewed scientific literature regarding asbestos and asbestos-related diseases in shipyards and industrial sites.[96] During his deposition, Dr. Kraus testified that he utilized this information to perform a qualitative assessment of Decedent's occupational exposure to asbestos.[97] In an affidavit, Dr. Kraus states:

> The scientific literature indicates that [Decedent's] exposures from working next to Hopeman Brothers employees cutting asbestos boards would have greatly exceeded the current and historical exposure limits. Although [Decedent's] exposures exceed the current and historical exposure limits, it is recognized in the scientific literature that exposures below the limits are significant in causing lung cancer.[98]

---

[93] *Id.* at 672.

[94] Rec. Doc. 156-13 at 6.

[95] Rec. Doc. 15-10 at 2; Rec. Doc. 156-23 at 2.

[96] Rec. Doc. 156-10 at 8–9.

[97] *Id.* at 17–18.

[98] Rec. Doc. 156-23 at 4.

Dr. Kraus referenced published literature by Harries et al. and Fontaine et al., which documented the levels of asbestos exposure from the cutting of wallboard.[99]

The above evidence demonstrates that Dr. Kraus' proposed testimony is based on sufficient facts and data, and it is the product of reliable principles and methods. The Hopeman Interests assert that Dr. Kraus' testimony should be excluded because he has not provided any quantitative or qualitative assessment of Decedent's alleged exposure to asbestos via Hopeman operations, such as air monitoring, or calculated Decedent's cumulative dose.[100] The law does not require plaintiffs to show the precise level of asbestos to which Decedent was exposed.[101] Dr. Kraus's proposed testimony is based on scientific knowledge of the harmful level of exposure to asbestos and evidence indicating that Decedent was exposed to such harmful levels.[102] Moreover, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[103] The Hopeman Interests can raise this issue on cross-examination. Accordingly,

---

[99] Rec. Doc. 156-10 at 17–18.

[100] Rec. Doc. 61-1 at 8.

[101] *Curtis*, 174 F.3d at 671 .

[102] *Allen*, 102 F.3d at 199.

[103] *14.38 Acres of Land*, 80 F.3d at 1077 (internal citations and quotation marks omitted).

**IT IS HEREBY ORDERED** that the Hopeman Interests' "Motion to Exclude the Testimony of Stephen Terry Kraus, M.D."[104] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this 15th day of September, 2020.

Nannette Jolivette Brown

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

[104] Rec. Doc. 61.