**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CALLEN DEMPSTER et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-95** |
| **LAMORAK INSURANCE CO. et al.** | **SECTION: "G"(1)** |

**ORDER AND REASONS**

In this litigation, Plaintiffs Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Dempster, Jr., Annette Dempster Glad, and Barnett Dempster's (collectively, "Plaintiffs") allege that Decedent Callen L. Dempster ("Decedent") was exposed to asbestos and asbestos-containing products that were designed, manufactured, sold, and/or supplied by a number of Defendant companies while Decedent was employed by Huntington Ingalls Incorporated ("Avondale").[1] Pending before the Court is a "Motion to Strike Plaintiffs' Expert Gerard L. Baril" filed by Defendant Hopeman Brothers, Inc. ("Hopeman") and Third-Party Defendant Liberty Mutual Insurance Company as alleged insurer of Wayne Manufacturing Corp. ("Wayne") (collectively, the "Hopeman Interests").[2] Defendants Foster

---

[1] *See* Rec. Doc. 1-2; Rec. Doc. 1-8. On August 6, 2020, Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Louis Dempster, Jr., Annette Ruth Dempster Glad, and Barnett Lynn Dempster were substituted as plaintiffs for Louise Ella Simon Dempster. Rec. Doc. 239. Plaintiffs bring claims against Lamorak Insurance Company, Huntington Ingalls Inc., Albert Bossier, Jr., J. Melton Garrett, Eagle, Inc., Bayer Cropscience, Inc., Foster-Wheeler LLC, General Electric Co., Hopeman Brothers, Inc., McCarty Corporation, Taylor-Seidenbach, Inc., CBS Corporation, Uniroyal, Inc., International Paper Company, Houston General Insurance Company, Berkshire Hathaway Specialty Insurance Company, Northwest Insurance Company, United Stated Fidelity and Guaranty Company, Fist State Insurance Company, The American Insurance Company, Louisiana Insurance Guaranty Association, and the Traveler's Indemnity Company. Rec Doc. 1-8 at 2–3.

[2] Rec. Doc. 62.

Wheeler, LLC and General Electric Company join the motion.[3] Plaintiffs oppose the motion in limine.[4] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part and denies it in part.

## I. Background

In this litigation, Plaintiffs allege that Decedent was employed by Avondale from 1962 to 1994.[5] During that time, Plaintiffs aver that Decedent was exposed to asbestos and asbestos-containing products in various locations and work sites, resulting in Decedent breathing in asbestos fibers and later developing asbestos-related cancer.[6] Plaintiffs assert strict liability and negligence claims against various Defendants.[7]

Decedent filed a "Petition for Damages" in the Civil District Court for the Parish of Orleans, State of Louisiana, on March 14, 2018.[8] Defendants Huntington Ingalls Incorporated, Albert Bossier, Jr., J. Melton Garret, and Lamorak Insurance Company (the "Removing Parties") removed the case to the United States District Court for the Eastern District of Louisiana for the first time on June 21, 2018.[9] On January 7, 2019, this Court remanded the case to the Civil District Court for the Parish of Orleans.[10]

Decedent passed away on November 24, 2018, and a First Supplemental and Amending

[3] Rec. Doc. 57.

[4] Rec. Doc. 148.

[5] Rec. Doc. 1-2 at 5.

[6] *Id.*

[7] *Id.* at 7–8.

[8] *Id.* at 2–3

[9] Case No. 18-6158, Rec. Doc. 1 at 2.

[10] Case No. 18-6158, Rec. Doc. 89.

Petition for Damages was filed in state court substituting Decedent's heirs as Plaintiffs on January 17, 2019.[11] Trial was scheduled to begin before the state trial court on January 13, 2020.[12] However, on January 9, 2020, Avondale removed the case to the United States District Court for the Eastern District of Louisiana for a second time.[13] On January 28, 2020, the Court denied the motion to remand, finding that this case was properly removed to this Court under the federal officer removal statute.[14]

On February 25, 2020, the Hopeman Interests filed the instant motion in limine.[15] Defendants Foster Wheeler, LLC and General Electric Company join the motion.[16] On March 17, 2020, Plaintiffs filed an opposition to the instant motion.[17] On May 5, 2020, the Court continued the May 18, 2020 trial date due to COVID-19.[18]

## II. Parties' Arguments

### *A. The Hopeman Interests' Arguments in Support of the Motion*

The Hopeman Interests move the Court to issue an order excluding the testimony of Plaintiffs' expert in industrial hygiene, Gerard L. Baril.[19] The Hopeman Interests argue that Mr.

---

[11] Rec. Doc. 1-8.

[12] Rec. Doc. 1-12.

[13] Rec. Doc. 1.

[14] Rec. Doc. 17.

[15] Rec. Doc. 62.

[16] Rec. Doc. 57.

[17] Rec. Doc. 148.

[18] Rec. Doc. 225.

[19] Rec. Doc. 62 at 1.

Baril's testimony should be excluded for two reasons.[20] Additionally, the Hopeman Interests contend that testimony regarding the Longo/Hatfield Micarta Study, upon which Mr. Baril allegedly relied, should be excluded for three additional reasons.[21]

**1. Objections to Mr. Baril's Proposed Testimony**

The Hopeman Interests argue that Mr. Baril's testimony should be excluded for two reasons: (1) Mr. Baril has no opinion as to whether the Hopeman Interests were a substantial or significant contributing factor in causing Decedent's lung cancer; and (2) Mr. Baril's opinion is solely based upon others' studies involving the cutting of wallboards but Mr. Baril does not know if the boards used in the studies were the same as the boards used by Hopeman at Avondale.[22]

First, the Hopeman Interests assert that to prevail in an asbestos case "a plaintiff must show by a preponderance of the evidence that he had significant exposure to the product complained of to the extent that is was a substantial factor in bringing about his injury."[23] The Hopeman Interests contend that an expert opinion regarding causation cannot be based on a theory that "every exposure" or "every exposure above background" contributed to the injury.[24] According to the Hopeman Interests, Mr. Baril offers no opinion whether Decedent's exposure to Hopeman's activities at Avondale was a "substantial contributing factor" in causing Decedent's lung cancer.[25] Moreover, the Hopeman Interests assert that Mr. Baril does not rely upon any

---

[20] Rec. Doc. 62-1 at 4–7.

[21] *Id*. at 7–14.

[22] *Id*. at 4–7.

[23] *Id*. at 4–5.

[24] *Id*. at 4.

[25] *Id*. at 5.

exposure assessments, dose reconstruction or exposure models to support his opinions.[26] Accordingly, the Hopeman Interests contend that Mr. Baril's testimony should be excluded because "he does nothing more than add duplicative testimony that Hopeman operations could be a contributing factor to [Decedent's] lung cancer."[27]

Second, the Hopeman Interests argue that Mr. Baril's opinions are based on unsupported and irrelevant studies by Hayes, Hatfield, Millette and Carter concerning the cutting of Micarta and/or Marinite wallboard.[28] However, the Hopeman Interests contend that Mr. Baril previously testified that he did not know whether this type of board was used by Hopeman at Avondale.[29]

**2. Objections to the Longo/Hatfield Micarta Study**

Additionally, the Hopeman Interests contend that Mr. Baril bases his opinions on various work practice studies performed by Material Analytic Service, Inc. ("MAS"), including a Longo/Hatfield Micarta Study.[30] The Hopeman Interests argue that this Court should prohibit Plaintiffs "from mentioning, referencing, or introducing any workplace simulation videos relating to these studies or testimony based on them for at least three reasons."[31]

First, the Hopeman Interests the Longo/Hatifield Micarta Study is experimental evidence that does not depict work practices substantially similar to Decedent's alleged exposure.[32] The Hopeman Interests assert that the study was performed in a small chamber without ventilation,

[26] *Id*. at 5–6.

[27] *Id*. at 6.

[28] *Id*.

[29] *Id*.

[30] *Id*. at 7.

[31] *Id*.

[32] *Id*. at 8.

yielding higher levels of exposure that those typical of field operations.[33] The Hopeman Interests contend that field studies were available, but Plaintiffs did not provide those studies to Mr. Baril.[34] Accordingly, the Hopeman Interests argue that testimony regarding the Hatfield/Longo Micarta Study should be excluded because it is not "substantially similar" to the facts of the case.[35]

Second, the Hopeman Interests argue that the Longo/Hatfield Micarta Study lacks scientific reliability.[36] Specifically, the Hopeman Interests assert that the "indirect preparation technique" used in the Longo/Hatfield Micarta Study to prepare the air filters before their analysis by transmission electron microscopy ("TEM") lacks scientific validity.[37] The Hopeman Interests contend that there is nothing endorsing the use of the indirect preparation technique in circumstances similar to those presented here.[38] Accordingly, the Hopeman Interests argue that Mr. Baril's opinions based on the Longo/Hatfield Micarta Study should be excluded because the study is based on unreliable methodologies and techniques.[39]

Third, the Hopeman Interests assert that any videotape of the Longo/Hatfield Micarta Study should be excluded because any potential probative value is substantially outweighed by the probability that their admission will necessitate undue consumption of time, create a substantial danger of unfair prejudice, confuse the issues and mislead the jury.[40]

---

[33] *Id*.

[34] *Id*. at 9.

[35] *Id*. at 10.

[36] *Id*.

[37] *Id*. at 10–12.

[38] *Id*.

[39] *Id*.

[40] *Id*. at 12–13.

### ***B. Plaintiffs' Arguments in Opposition to the Motion***

In response, Plaintiffs note that the motion "is somewhat confusing."[41] Plaintiffs point out that the Hopeman Interests do not cite an opinion of Mr. Baril that they seek to preclude.[42] Instead, Plaintiffs assert that the Hopeman Interests "fill their motion with arguments and exhibits that have absolutely nothing to do with Gerard Baril, his methodology, or with the materials upon which he relies."[43] Nevertheless, Plaintiffs contend that the motion in limine should be denied.[44]

First, Plaintiffs contend that Mr. Baril is eminently qualified to testify as an expert in this matter.[45] Plaintiffs note that Mr. Baril has over 35 years of experience as an industrial hygienist and a Master's Degree in Environmental Health from Hunter College.[46] Therefore, Plaintiffs argue that Mr. Baril is qualified to testify as a certified industrial hygienist and environmental health expert regarding the release of asbestos fibers from asbestos products.[47]

Second, Plaintiffs contend that Mr. Baril's opinions are reliable under *Daubert*.[48] Plaintiffs note that Mr. Baril reviewed various depositions in this matter, including the depositions of Decedent, Burnette Bordelon, O'Neil Duronslet, Lee Tregre, Luther Dempster, Joseph Brazan, Michael Comardelle, and Jerry Savoie.[49] Plaintiffs also note that Mr. Baril reviewed the Avondale

---

[41] Rec. Doc. 148 at 1.

[42] *Id*.

[43] *Id*. at 1–2.

[44] *Id*. at 1.

[45] *Id*. at 8.

[46] *Id*.

[47] *Id*. at 9.

[48] *Id*. at 10.

[49] *Id*.

personnel file of Decedent and scientific literature regarding exposures during the cutting and handling of asbestos wall panels and/or wallboards.[50] Plaintiffs contend that Mr. Baril compared the levels of exposure Decedent sustained from Hopeman's activities to both the occupational health standards as well as the published, scientific literature.[51] Plaintiffs note that Mr. Baril cited five studies that examined sawing of asbestos wall panels, the very issue that exists in this case with regard to Hopeman Brothers.[52] Additionally, Plaintiffs assert that Mr. Baril confirmed that he was familiar with the fact that Hopeman cut panels made up of Marinite and Micarta.[53] Plaintiffs assert that this methodology has been approved by the numerous courts, including the Fifth Circuit.[54]

Third, Plaintiffs contend that a dose calculation is not required and would be impossible in this case because a proper dose calculation would have required air monitoring on Decedent while he was employed at Avondale.[55] Plaintiffs assert that Mr. Baril has not opined that every exposure or every exposure above background is causative, as the Hopeman Interests suggest.[56]

Finally, Plaintiffs submit that the tests upon which Mr. Baril relies are highly representative of the conditions described by Decedent.[57] Alternatively, Plaintiffs contend that any dissimilarities between testing conditions and actual conditions affect the weight of the

---

[50] *Id*.

[51] *Id*. at 10–11.

[52] *Id*. at 14.

[53] *Id*. at 15.

[54] *Id*. at 16–18 (citing *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 671 (5th Cir. 1999)).

[55] *Id*. at 19–20.

[56] *Id*. at 20.

[57] *Id*. at 21.

evidence rather than its admissibility.[58] Plaintiffs argue that the Longo/Hatfield Micarta Study, one of six studies regarding the cutting of wallboard upon which Mr. Baril relied, does not lack reliability.[59] Plaintiffs assert that Mr. Baril relied on the PCM fiber counting method employed in the study, not the TEM method.[60] Alternatively, Plaintiffs submit that the TEM method is not flawed and has been used by the Environmental Protection Agency.[61] Finally, Plaintiffs state that they do not intend to offer the videotape of the Longo/Hatfield Micarta Study at trial.[62] Accordingly, Plaintiffs argue that the motion should be denied.[63]

## III. Legal Standard

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[64] Rule 702, which governs the admissibility of expert witness testimony, provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education," may testify when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[65] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony [must be] based on sufficient facts or data,

---

[58] *Id*. at 21–22.

[59] *Id*. at 23.

[60] *Id*.

[61] *Id*. at 23.

[62] *Id*. at 25.

[63] *Id*.

[64] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[65] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

(2) the testimony [must be] the product of reliable principles and methods, and

(3) the expert [must reliably apply] the principles and methods to the facts of the case.[66]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable."[67] The court's gatekeeping function thus involves a two-part inquiry into reliability and relevance. First, the court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[68] The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid.[69] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[70]

In *Daubert*, the Supreme Court identified a number of factors that are useful in analyzing reliability of an expert's testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community.[71] In *Kumho Tire Co. v. Carmichael*, the Supreme Court emphasized that the test of reliability is "flexible" and that *Daubert*'s list of

---

[66] Fed. R. Evid. 702.

[67] *Daubert*, 509 U.S. at 597; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[68] *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

[69] *See Daubert*, 509 U.S. at 592–93.

[70] *See id.* at 590.

[71] *See id.* at 592–94.

specific factors does not necessarily nor exclusively apply to every expert in every case.[72] The overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[73] The court must also determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence—in other words, whether it is relevant.[74]

A court's role as a gatekeeper does not replace the traditional adversary system,[75] and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[76] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[77] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[78]

## IV. Analysis

The Hopeman Interests move the Court to issue an order excluding the testimony of

---

[72] *Kumho Tire*, 526 U.S. at 142; *see also Seatrax*, 200 F.3d at 372 (explaining that reliability is a fact-specific inquiry and application of *Daubert* factors depends on "nature of the issue at hand, the witness's particular expertise and the subject of the testimony").

[73] *Kumho Tire*, 526 U.S. at 152.

[74] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[75] *See Daubert*, 509 U.S. at 596.

[76] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[77] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[78] *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir.1996) (internal citations and quotation marks omitted).

Plaintiffs' expert in industrial hygiene, Gerard L. Baril.[79] The Hopeman Interests argue that Mr. Baril's testimony should be excluded for two reasons.[80] Additionally, the Hopeman Interests contend that testimony regarding the Longo/Hatfield Micarta Study, upon which Mr. Baril allegedly relied, should be excluded for three additional reasons.[81] The Court addresses each of these issues in turn.

**1. Objections to Mr. Baril's Proposed Testimony**

The Hopeman Interests argue that Mr. Baril's testimony should be excluded for two reasons: (1) Mr. Baril has no opinion as to whether the Hopeman Interests were a substantial or significant contributing factor in causing Decedent's lung cancer; and (2) Mr. Baril's opinion is solely based upon others' studies involving the cutting of wallboards but Mr. Baril does not know if the boards used in the studies were the same as the boards used by Hopeman at Avondale.[82]

The Hopeman Interests argument that Mr. Baril does not know if the boards used in the study were the same as the boards used by Hopeman at Avondale is clearly unfounded. The Hopeman Interests base this argument on deposition testimony Mr. Baril gave in 2011 in an unrelated case.[83] The Hayes, Hatfield, Millette and Carter studies upon which Mr. Baril relies concern the cutting of Micarta and/or Marinite wallboard. The Hopeman Interests do not dispute that this was the type of board used at Avondale. When Mr. Baril was deposed in *this* case, he confirmed that he was familiar with the fact that Hopeman cut asbestos boards made from

[79] Rec. Doc. 62 at 1.

[80] Rec. Doc. 62-1 at 4–7.

[81] *Id*. at 7–14.

[82] *Id*. at 4–7.

[83] *Id*. at 6, n.20.

Marinite and Micarta.[84] Accordingly, this argument is without merit.

The Hopeman Interests also assert Mr. Baril offers no opinion whether Decedent's exposure to Hopeman's activities at Avondale was a "substantial contributing factor" in causing Decedent's lung cancer.[85] Moreover, the Hopeman Interests assert that Mr. Baril does not rely upon any exposure assessments, dose reconstruction or exposure models to support his opinions.[86] Accordingly, the Hopeman Interests contend that Mr. Baril's testimony should be excluded because "he does nothing more than add duplicative testimony that Hopeman operations could be a contributing factor to [Decedent's] lung cancer."[87]

In response, Plaintiffs contend that Mr. Baril's opinions are reliable under *Daubert*.[88] Plaintiffs note that Mr. Baril reviewed various depositions in this matter, the Avondale personnel file of Decedent and scientific literature regarding exposures during the cutting and handling of asbestos wall panels and/or wallboards.[89] Plaintiffs note that Mr. Baril cited five studies that examined sawing of asbestos wall panels, the very issue that exists in this case with regard to Hopeman Brothers.[90]

Pursuant to Federal Rule of Evidence 702, an expert's testimony must be based on sufficient facts or data. Federal Rule of Evidence 703 "requires that the facts on which the expert

---

[84] Rec. Doc. 148-1 at 6.

[85] Rec. Doc. 62-1 at 5.

[86] *Id*. at 5–6.

[87] *Id*. at 6.

[88] Rec. Doc. 148 at 10.

[89] *Id*.

[90] *Id*. at 14.

relies must be reasonably relied on by other experts in the field."[91] The Fifth Circuit has recognized that "[s]cientific knowledge of the harmful level of exposure to a [substance], plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case."[92] However, the law does not require plaintiffs to show the precise level of the toxin to which they were exposed.[93]

In *Curtis v. M&S Petroleum, Inc.*, a case dealing with benzene exposure, the Fifth Circuit found that the district court abused its discretion in excluding proposed testimony of an expert witness, Dr. Frank Stevens.[94] In reaching his opinion, Dr. Stevens relied on several scientific studies, the plaintiffs' testimony regarding their symptoms and the work conditions, and the design of the refinery.[95] The Fifth Circuit reasoned that "the law does not require Plaintiff to show the precise level of benzene exposure to which they were exposed."[96] "Because Dr. Stevens's causation opinion was based on scientific knowledge that would assist the trier of fact as required by Rule 702," the Fifth Circuit concluded that his testimony was admissible.[97]

Here, Mr. Baril reviewed Decedent's deposition testimony and the deposition testimony of other former Avondale employees including Burnette Bordelon, Jerry Savoie, Luther Dempster, and Michael Comardelle.[98] During his deposition, Mr. Baril testified that he "reviewed

---

[91] *Allen*, 102 F.3d at 198.

[92] *Id*. at 199.

[93] *Curtis*, 174 F.3d at 671 .

[94] *Id.* at 671–72 .

[95] *Id.* at 669–72.

[96] *Id.* at 671.

[97] *Id.* at 672.

[98] Rec. Doc. 148-1 at 4.

the literature to identify various types of asbestos-related activities and the exposure level produced by those activities."[99] He summarized those materials in a document titled "Asbestos Activities and Exposure Levels."[100] Mr. Baril referenced the following studies that documented the levels of asbestos exposure from the cutting of wallboard: (1) Gobbel Hays, et al.; (2) Hatfield/Longo, et al.; (3) Cross, et al.; (4) Mount, et al.; (5) Millette, et al.; and (6) Harries, et al.[101]

The above evidence demonstrates that Mr. Baril's proposed testimony is based on sufficient facts and data, and it is the product of reliable principles and methods. Nevertheless, the Hopeman Interests assert that Mr. Baril's testimony should be excluded because he has not provided any quantitative or qualitative assessment of Decedent's alleged exposure to asbestos via Hopeman operations, such as air monitoring, or calculated Decedent's cumulative dose.[102] The law does not require Plaintiffs to show the precise level of asbestos to which Decedent was exposed.[103] Mr. Baril's proposed testimony is based on scientific knowledge of the harmful level of exposure to asbestos and evidence indicating that Decedent was exposed to such harmful levels.[104] Moreover, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[105] The Hopeman Interests can raise this issue on cross-

---

[99] *Id*. at 5.

[100] *Id*. at 9.

[101] Rec. Doc. 148-1 at 20–21.

[102] Rec. Doc. 62-1 at 5.

[103] *Curtis*, 174 F.3d at 671 .

[104] *Allen*, 102 F.3d at 199.

[105] *14.38 Acres of Land*, 80 F.3d at 1077 (internal citations and quotation marks omitted).

examination.

The Hopeman Interests also argue that an expert opinion regarding causation cannot be based on a theory that "every exposure" or "every exposure above background" contributed to the injury.[106] In response Plaintiffs do not dispute that the "any exposure above background" theory is unreliable.[107] Instead, Plaintiffs contend that Mr. Barial's opinion regarding Decedent's exposures to the Hopeman Interests' asbestos products are not based on an "any exposure above background" theory.[108]

The "every exposure" or "every exposure above background" theory "represents the viewpoint that, because science has failed to establish that any specific dosage of asbestos causes injury, every exposure to asbestos should be considered a cause of injury."[109] Numerous courts have excluded expert testimony based on this theory finding that the theory is unreliable as it is not supported by sufficient facts or data.[110] Plaintiffs do not argue that this theory of liability is reliable.[111] Instead, Plaintiffs contend that Mr. Baril's opinion is not based on this theory. However, during his deposition, Mr. Baril testified that "[a]ny exposure above background level

---

[106] Rec. Doc. 62-1 at 4.

[107] Rec. Doc. 148 at 20–21.

[108] *Id*.

[109] *Yates v. Ford Motor Co.*, 113 F.Supp.3d 841, 848 (E.D. N.C. 2015).

[110] *See Bell v. Foster Wheeler Energy Corp.*, No. 15-6394, 2016 WL 5847124 (E.D. La. Oct. 6, 2016); *Vedros v. Northrop Grumman Shipbuilding, Inc.*, 119 F.Supp.3d 556, 563 (E.D. La. 2015); *Comardelle v. Pa. Gen. Ins. Co.*, 76 F.Supp.3d 628, 633–35 (E.D. La. 2015); *Yates*, 113 F.Supp.3d at 848; *Krik v. Crane Co.*, 76 F.Supp.3d 747, 749–50 (N.D. Ill. 2014); *Sclafani v. Air & Liquid Sys. Corp.*, No. 12-3013, 2013 WL 2477077, at *5 (C.D. Cal. May 9, 2013); *Smith v. Ford Motor Co.*, 08-630, 2013 WL 214378, at *2 (D. Utah Jan. 18, 2013); *Henricksen v. ConocoPhillips Co.*, 605 F.Supp.2d 1142, 1166 (E.D. Wash. 2009).

[111] *See* Rec. Doc. 148 at 20–21.

is considered significant with respect to development of disease."[112] Mr. Baril also testified that "every exposure to asbestos above background significantly contributes to development of a disease."[113] Therefore, to the extent Mr. Baril is advocating for an "every exposure" or "every exposure above background" theory of causation, such testimony is excluded.

**2. Objections to the Longo/Hatfield Micarta Study**

The Hopeman Interests contend that any evidence or testimony based on the Longo/Hatfield Micarta Study should be excluded for three reasons.[114] The Court addresses each of these arguments in turn.

First, the Hopeman Interests the Longo/Hatifield Micarta Study is experimental evidence that does not depict work practices substantially similar to Decedent's alleged exposure.[115] The Hopeman Interests contend that field studies were available, but Plaintiffs did not provide those studies to Mr. Baril.[116] In response, Plaintiffs submit that the tests upon which Mr. Baril relies are highly representative of the conditions described by Decedent.[117] Alternatively, Plaintiffs contend that any dissimilarities between testing conditions and actual conditions affect the weight of the evidence rather than its admissibility.[118] As discussed above, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its

---

[112] Rec. Doc. 48-2 at 9.

[113] *Id*. at 15.

[114] Rec. Doc. 62-1 at 7.

[115] *Id*. at 8.

[116] *Id*. at 9.

[117] Rec. Doc. 148 at 21.

[118] *Id*. at 21–22.

admissibility and should be left for the jury's consideration."[119] Similarly, dissimilarities between testing conditions and actual conditions affect the weight of the evidence rather than its admissibility.[120] The Hopeman Interests may pursue this issue on cross-examination.

Second, the Hopeman Interests assert that the "indirect preparation technique" used in the Longo/Hatfield Micarta Study to prepare the air filters before their analysis by transmission electron microscopy ("TEM") lacks scientific validity.[121] The Hopeman Interests contend that there is nothing endorsing the use of the indirect preparation technique in circumstances similar to those presented here.[122] In response, Plaintiffs assert that Mr. Baril relied on the PCM fiber counting method employed in the study, not the TEM method.[123] Accordingly, this issue appears to be moot.

Third, the Hopeman Interests assert that any videotape of the Longo/Hatfield Micarta Study should be excluded.[124] In response, Plaintiffs state that the do not intend to offer the videotape of the Longo/Hatfield Micarta Study at trial.[125] Therefore, this issue also appears to be moot.

Accordingly,

---

[119] *14.38 Acres of Land*, 80 F.3d at 1077 (internal citations and quotation marks omitted).

[120] *Lipson v. On Marine Services Co., LLC*, 2013 WL 6536923, *2 (W.D. Wa. 2013) (citing *Champeau v. Fruehauf Corp.*, 814 F.2d 1271, 1278 (8th Cir. 1987)).

[121] Rec. Doc. 68-1 at 10–12.

[122] *Id.*

[123] Rec. Doc. 148 at 23.

[124] Rec. Doc. 62-1 at 12–13.

[125] Rec. Doc. 148 at 25.

**IT IS HEREBY ORDERED** that the Hopeman Interests' "Motion to Strike Plaintiffs' Expert Gerard L. Baril"[126] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent it seeks to exclude testimony that any exposure to asbestos above background significantly contributed to Decedent's disease. The motion is **DENIED** in all other respects.

**NEW ORLEANS, LOUISIANA,** this 21st day of September, 2020.

Nannette Jolivette Brown

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

[126] Rec. Doc. 62.