**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

CALLEN DEMPSTER et al.                                    CIVIL ACTION

VERSUS                                                             NO. 20-95

LAMORAK INSURANCE CO. et al.                     SECTION: "G"(1)

<u>ORDER AND REASONS</u>

In this litigation, Plaintiffs Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster

Martinez, Marla Dempster Loupe, Callen Dempster, Jr., Annette Dempster Glad, and Barnett

Dempster's (collectively, "Plaintiffs") allege that Decedent Callen L. Dempster ("Decedent") was

exposed to asbestos and asbestos-containing products that were designed, manufactured, sold,

and/or supplied by a number of Defendant companies while Decedent was employed by

Huntington Ingalls Incorporated ("Avondale").[1] Pending before the Court is an Omnibus Motion

in Limine[2] filed by Defendant Hopeman Brothers, Inc. ("Hopeman") and Third-Party Defendant

Liberty Mutual Insurance Company as the alleged insurer of Wayne Manufacturing Corp.

("Wayne") (collectively, the "Hopeman Interests"). Defendants Foster Wheeler, LLC and

---

[1] *See* Rec. Doc. 1-2; Rec. Doc. 1-8. On August 6, 2020, Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Louis Dempster, Jr., Annette Ruth Dempster Glad, and Barnett Lynn Dempster were substituted as plaintiffs for Louise Ella Simon Dempster. Rec. Doc. 239. Plaintiffs bring claims against Lamorak Insurance Company, Huntington Ingalls Inc., Albert Bossier, Jr., J. Melton Garrett, Eagle, Inc., Bayer Cropscience, Inc., Foster-Wheeler LLC, General Electric Co., Hopeman Brothers, Inc., McCarty Corporation, Taylor-Seidenbach, Inc., CBS Corporation, Uniroyal, Inc., International Paper Company, Houston General Insurance Company, Berkshire Hathaway Specialty Insurance Company, Northwest Insurance Company, United Stated Fidelity and Guaranty Company, Fist State Insurance Company, The American Insurance Company, Louisiana Insurance Guaranty Association, and the Traveler's Indemnity Company. Rec Doc. 1-8 at 2–3.

[2] Rec. Doc. 60.

1

General Electric Company join the motion.[3] Plaintiffs oppose the motion.[4] Defendants Huntington Ingalls Incorporated and Albert L. Bossier, Jr. (collectively, "Avondale Interests") oppose the motion in part.[5] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part and denies the motion in part.

## I. Background

In this litigation, Plaintiffs allege that Decedent was employed by Avondale from 1962 to 1994.[6] During that time, Plaintiffs aver that Decedent was exposed to asbestos and asbestos-containing products in various locations and work sites, resulting in Decedent breathing in asbestos fibers and later developing asbestos-related cancer.[7] Plaintiffs assert strict liability and negligence claims against various Defendants.[8]

Decedent filed a "Petition for Damages" in the Civil District Court for the Parish of Orleans, State of Louisiana, on March 14, 2018.[9] Defendants Huntington Ingalls Incorporated, Albert Bossier, Jr., J. Melton Garret, and Lamorak Insurance Company (the "Removing Parties") removed the case to the United States District Court for the Eastern District of Louisiana for the first time on June 21, 2018.[10] On January 7, 2019, this Court remanded the case to the Civil

---

[3] Rec. Doc. 57.

[4] Rec. Doc. 145.

[5] Rec. Doc. 151.

[6] Rec. Doc. 1-2 at 5.

[7] *Id.*

[8] *Id.* at 7–8.

[9] *Id.* at 2–3

[10] Case No. 18-6158, Rec. Doc. 1 at 2.

District Court for the Parish of Orleans.[11]

Decedent passed away on November 24, 2018, and a First Supplemental and Amending Petition for Damages was filed in state court substituting Decedent's heirs as Plaintiffs on January 17, 2019.[12] Trial was scheduled to begin before the state trial court on January 13, 2020.[13] However, on January 9, 2020, Avondale removed the case to the United States District Court for the Eastern District of Louisiana for a second time.[14] On January 28, 2020, the Court denied the motion to remand, finding that this case was properly removed to this Court under the federal officer removal statute.[15]

On February 25, 2020, the Hopeman Interests filed the instant omnibus motion in limine.[16] Defendants Foster Wheeler, LLC and General Electric Company join the motion.[17] On March 17, 2020, Plaintiffs filed an opposition to the instant motion.[18] On March 17, 2020, the Avondale Interests filed a partial opposition to the instant motion.[19] On May 5, 2020, the Court continued the May 18, 2020 trial date due to COVID-19.[20]

---

[11] Case No. 18-6158, Rec. Doc. 89.

[12] Rec. Doc. 1-8.

[13] Rec. Doc. 1-12.

[14] Rec. Doc. 1.

[15] Rec. Doc. 17.

[16] Rec. Doc. 60.

[17] Rec. Doc. 57.

[18] Rec. Doc. 145.

[19] Rec. Doc. 151.

[20] Rec. Doc. 225.

## II. Parties' Arguments

### A.    *The Hopeman Interests' Arguments in Support of the Motion*

The Hopeman Interests move the Court to issue an order addressing the following seven issues: (1) excluding evidence regarding the amount of liability coverage; (2) requiring Plaintiffs to disclose all settlements; (3) excluding purchase orders and/or invoices as evidence of exposure; (4) excluding references to the Hopeman Interests as "Asbestos Companies," "Asbestos Defendants," or as part of the "Asbestos Industry"; (5) excluding any testimony or evidence of take home or secondary asbestos exposure to Decedent's family members not specifically pled in this case; (6) allowing all Section 524 asbestos settlement trusts to be considered virile shares; and (7) precluding any evidence or argument regarding fraud or conspiracy relating to the Hopeman Interests.[21]

First, the Hopeman Interests assert that evidence regarding the amount of liability coverage should be excluded as such evidence is irrelevant and immaterial.[22] The Hopeman Interests note that Rule 411 of the Federal Rules of Evidence states that "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully."[23] The Hopeman Interests anticipate that the existence of insurance policies and coverage may be improperly used to prove that Hopeman and/or Wayne had knowledge or foresight of future asbestos litigation.[24] Therefore, the Hopeman Interests seek "to limit any admission or reference of insurance policies or insurance issuance for improper

---

[21] Rec. Doc. 60 at 1–2; Rec. Doc. 60-1.

[22] Rec. Doc. 60-1 at 1.

[23] *Id*. at 2.

[24] *Id*.

uses."[25] Accordingly, the Hopeman Interests request that this Court prohibit any communication to the jury of coverage under a Liberty Mutual Insurance Company insurance policy issued to Hopeman and/or Wayne.[26]

Second, the Hopeman Interests move the Court to require Plaintiffs to disclose all settlements, including settlements with parties, non-parties, or asbestos trusts, made prior to or during trial.[27] The Hopeman Interests recognize that some settlements have been disclosed, but they request that Plaintiffs be required to update the list of settled entities and to reveal the status of any settlements regardless of whether it has been finalized or reduced to writing.[28]

Third, the Hopeman Interests move the Court to enter an order requiring counsel to refrain from referencing, mentioning, or introducing purchase orders or invoices to Hopeman to prove specifically that asbestos dust from the products reflected on such documents was inhaled by Decedent when he worked at Avondale.[29] The Hopeman Interests contend that the invoices and purchase orders, without more information as to location and use aboard vessels, will be confusing and misleading to the jury.[30]

Fourth, the Hopeman Interests move the Court to exclude references to the Hopeman Interests as "Asbestos Companies," "Asbestos Defendants," or as part of the "Asbestos Industry."[31] The Hopeman Interests contend that such characterizations are inaccurate,

---

[25] *Id.*

[26] *Id.* at 2–3.

[27] *Id.* at 3.

[28] *Id.* at 3–4.

[29] *Id.* at 4.

[30] *Id.*

[31] *Id.* at 5.

misleading, and prejudicial.[32] The Hopeman Interests assert that reference to "the industry" and/or "the asbestos industry" will invite jury members to infer that the Hopeman Interests were involved in a "conspiracy" or other type of joint activity.[33] Additionally, the Hopeman Interests argue that the prejudicial effect of the term "asbestos company" is self-evident.[34]

Fifth, the Hopeman Interests contend that the Court should exclude any testimony or evidence of take home or secondary asbestos exposure to Decedent's family members not specifically pled in this case.[35] The Hopeman Interests argue that the introduction of any such evidence would expand the pleadings, thwart the purposes of discovery, and would be substantially and unfairly prejudicial to the Hopeman Interests in the preparation of their defense.[36]

Sixth, the Hopeman Interests argue that all Section 524 asbestos settlement trusts, including but not limited to the Johns-Manville Settlement Trust, should be considered virile shares.[37] In support, the Hopeman Interests cite the Louisiana Fifth Circuit Court of Appeals decision in *Abadie v. Metropolitan Life Insurance Company*, holding that the terms of the Johns-Manville Settlement Trust and Louisiana law required the judgments obtained in the case to be credited by the virile share liability of Johns-Manville.[38] Accordingly, if any bankrupt entity that established a trust for the payment of asbestos claims should be found liable, the Hopeman

---

[32] *Id.*

[33] *Id.* at 6.

[34] *Id.*

[35] *Id.*

[36] *Id.* at 6–7.

[37] *Id.* at 7.

[38] *Id.* at 11 (citing 00-344 (La. App. 5 Cir. 3/28/01), 784 So. 2d 46, 85).

Interests argue that the bankrupt entity should be assigned a virile share and the reduction of damages awarded by the jury should be reduced to reflect this virile share credit.[39]

Seventh, the Hopeman Interests contend that the Court should preclude any evidence or argument regarding fraud or conspiracy relating to the Hopeman Interests.[40] The Hopeman Interests assert that such terminology is irrelevant as no experts in this case have presented any opinions regarding fraudulent activity on the part of the Hopeman Interests, nor has any evidence been presented which would support fraud or conspiracy.[41]

**B.    Plaintiffs' Arguments in Opposition to the Motion**

In opposition, Plaintiffs assert that the motion is premature and overly broad.[42] First, Plaintiffs object to the Hopeman Interests request that the Court exclude evidence regarding the amount of liability coverage.[43] Plaintiffs concede that the amount of any liability coverage is inadmissible under Federal Rule of Evidence 411.[44] However, Plaintiffs argue that the evidence may be admissible for another purpose.[45] Plaintiffs note that they assert direct action claims under Louisiana Revised Statute § 22:1269 (the "Louisiana Direct Action Statute") against Liberty Mutual Insurance Company and other alleged insurers.[46] Therefore, Plaintiffs assert that an order prohibiting references to insurance coverage and/or ability to pay, would effectively prohibit

---

[39] *Id*. at 12.

[40] *Id*.

[41] *Id*.

[42] Rec. Doc. 145 at 1.

[43] *Id*. at 2.

[44] *Id*.

[45] *Id*. at 3.

[46] *Id*. at 4.

Plaintiffs from presenting their case.[47]

Second, Plaintiffs argue that the request for disclosure of all settlements is not a motion in limine.[48] Nevertheless, to the extent that the motion is seeking only the identity of those parties with whom Plaintiffs have settled since the inception of the instant action, Plaintiffs state that they have no objection to identifying those parties.[49] However, Plaintiffs argue that evidence regarding the settlements is inadmissible under Federal Rule of Evidence 408.[50] While Plaintiffs contend that evidence regarding settlements is inadmissible, Plaintiffs state that they have and will continue to disclose the identities of those parties with whom they have reached a settlement agreement in the case at bar.[51]

Third, Plaintiffs assert that evidence in the form of purchase orders or invoices showing that the Hopeman Interests were distributing, selling, and/or supplying asbestos-containing products during the time frame that Decedent was allegedly exposed to asbestos "makes it more probable that asbestos-containing products were distributed, sold, and or supplied by the Hopeman Interests, and that [Decedent] was exposed to said products."[52] Therefore, Plaintiffs argue that purchase orders and/or invoices are clearly relevant and admissible as circumstantial evidence that Decedent was exposed to asbestos by the Hopeman Interests.[53]

Fourth, Plaintiffs contend that Hopeman was a manufacturer of asbestos-containing

---

[47] *Id.*

[48] *Id.* at 5.

[49] *Id.*

[50] *Id.* at 6–9.

[51] *Id.* at 10.

[52] *Id.* at 11.

[53] *Id.* at 12.

products and is therefore part of the asbestos industry.[54] Plaintiffs assert that grouping the defendants together as "asbestos companies" or "asbestos defendants" is simply a time saving practice.[55] Furthermore, Plaintiffs contend that the Fifth Circuit has implicitly approved the use of such terms when referring to companies that manufacture asbestos-containing products.[56]

Fifth, Plaintiffs assert that they have specifically pled take home exposures in this case.[57] Plaintiffs also assert that the Hopeman Interests' motion to exclude evidence of secondary asbestos exposure is overly broad because it "could seek to preclude evidence of known hazards of plant conditions, early suits and workers' compensation claims for asbestosis, cancer, etc., and other information relating to health hazards of asbestos, simply because take home or secondary asbestos exposure is involved."[58]

Sixth, Plaintiffs assert that the Hopeman Interests' argument that every Section 524 trust be considered a virile share is contrary to Louisiana law.[59] Plaintiffs note that in *Romano v. Metropolitan Life Insurance Company* the Louisiana Fourth Circuit Court of Appeal found that in order to obtain a virile share credit for a bankruptcy trust a defendant must show: (1) the plaintiff released the bankruptcy settlement trust by settling its claims against the trust and (2) the released party's liability is established at trial.[60] Plaintiffs assert that they have not settled their

---

[54] *Id.*

[55] *Id.*

[56] *Id.* at 13 (citing *Jackson v. Johns-Manville Sales*, 750 F.2d 1314 (5th Cir. 1985); *Glasscock v. Armstrong Cork Co.*, 946 F.2d 1085 (5th Cir. 1991)).

[57] *Id.* at 14.

[58] *Id.*

[59] *Id.* at 15.

[60] *Id.* (citing 16-954 (La. App. 4 Cir. 5/24/17); 221 So. 3d 176).

claims relating to Decedent's contraction of asbestos-related lung cancer with Johns-Manville.[61] Plaintiffs assert that under virile share law, a plaintiff may sue only one joint tortfeasor for recovery of his entire award, and the burden is then on the defendants to bring in as a third party any solidary co-obligors.[62] Plaintiffs argue that Louisiana law prohibits a reduction in the award where the plaintiff did not settle with the non-defendant.[63] Instead, Plaintiffs contend that Defendants may seek contribution against these bankrupt entities if Plaintiffs obtain a judgment against them.[64] If this Court were to reduce Plaintiffs' recovery by the virile share of bankrupt entities with whom Plaintiffs have not settled, Plaintiffs assert that they would be prejudiced and Defendants would obtain a windfall.[65]

Seventh, Plaintiffs argue that all of the defendants are alleged joint tortfeasors.[66] Plaintiffs assert that Louisiana Civil Code article 2324 creates liability for acts performed pursuant to a conspiracy which causes injury or damage to a plaintiff.[67] According to Plaintiffs, the evidence will show that insurance companies and their insureds were working together to discourage individuals who were exposed to asbestos from pursuing valid claims.[68] Plaintiffs state that there is no requirement that fraud be proven by expert testimony, and they intend to offer testimony demonstrating that during the relevant time period, the Hopeman Interests were aware of the

---

[61] *Id*.

[62] *Id*. at 21.

[63] *Id*.

[64] *Id*. at 22.

[65] *Id*.

[66] *Id.* at 23.

[67] *Id.*

[68] *Id.* at 24.

hazards relating to asbestos and the steps that should have been taken to protect workers, but instead chose to conceal these hazards.[69]

## C.     *The Avondale Interests' Arguments in Opposition to the Motion*

The Avondale Interests oppose the Hopeman Interests' third request that the Court exclude evidence regarding purchase orders and/or invoices as evidence of exposure.[70] The Avondale Interests argue that purchase orders and invoices are relevant because they have a tendency to make Decedent's exposure to asbestos by Hopeman's products more probable than it would be without the evidence.[71]

## III. Legal Standard

Federal Rule of Evidence 401 provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Under Federal Rule of Evidence 402, relevant evidence is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence or other rules prescribed by the Supreme Court provide otherwise. Pursuant to Federal Rule of Evidence 403, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Fifth Circuit instructs that "[t]he exclusion of evidence under Rule 403 should occur only sparingly[.]"[72] "Relevant evidence is inherently prejudicial; but it is only unfair

---

[69] *Id*. at 25.

[70] Rec. Doc. 151 at 1.

[71] *Id.* at 12.

[72] *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993), *cert. denied*, 511 U.S. 1149 (1994).

prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403."[73]

### IV. Analysis

The Hopeman Interests move the Court to issue an order addressing the following seven issues: (1) excluding evidence regarding the amount of liability coverage; (2) requiring Plaintiffs to disclose all settlements; (3) excluding purchase orders and/or invoices as evidence of exposure; (4) excluding references to the Hopeman Interests as "Asbestos Companies," "Asbestos Defendants," or as part of the "Asbestos Industry"; (5) excluding any testimony or evidence of take home or secondary asbestos exposure to Decedent's family members not specifically pled in this case; (6) allowing all Section 524 asbestos settlement trusts to be considered virile shares; and (7) precluding any evidence or argument regarding fraud or conspiracy relating to the Hopeman Interests.[74] The Court addresses each of these issues in turn.

### A.    *Evidence Regarding the Amount of Liability Coverage*

First, the Hopeman Interests assert that evidence regarding the amount of liability coverage should be excluded as such evidence is irrelevant and immaterial.[75] In response, Plaintiffs concede that the amount of any liability coverage is inadmissible under Federal Rule of Evidence 411.[76] However, Plaintiffs argue that the evidence may be admissible for another purpose.[77]

---

[73] *Id.* at 1115–16 (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.), *cert. denied*, 444 U.S. 862 (1979)).

[74] Rec. Doc. 60 at 1–2; Rec. Doc. 60-1.

[75] Rec. Doc. 60-1 at 1.

[76] Rec. Doc. 145 at 2.

[77] *Id*. at 3.

Federal Rule of Evidence 411 provides:

Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control.

In *Reed v. General Motors Corporation*, the Fifth Circuit considered Rule 411 in a case where an insurance company was named as a defendant.[78] The Fifth Circuit stated that the fact that each party was insured had "independent, substantive evidentiary relevance."[79] However, the Fifth Circuit determined that the limits of coverage should have been excluded pursuant to Rule 411 because it was not relevant to any issue in the case.[80]

In this litigation, Plaintiffs bring direct action claims under the Louisiana Direct Action Statute against Liberty Mutual Insurance Company and other alleged insurers.[81] The Louisiana "Direct Action Statute affords a victim the right to sue the insurer directly when the liability policy covers a certain risk."[82] Like in *Reed*, the fact that certain parties were insured has independent, substantive evidentiary relevance. However, Plaintiffs have not provided any reason why the limits of coverage should be admitted in this case. Accordingly, the Court excludes any references to the limits of coverage provided by the insurance policies at issue in this case.

## B.   *Disclosure of All Settlements*

The Hopeman Interests move the Court to require Plaintiffs to disclose all settlements,

---

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] Rec. Doc. 1-2 at 5.

[82] *Soileau v. Smith True Value & Rental*, 2012-1711 (La. 8/30/2013); 144 So. 3d 771, 780.

including settlements with parties, non-parties, or asbestos trusts, made prior to or during trial.[83] In response, Plaintiffs contend that evidence regarding settlements is inadmissible, but Plaintiffs state that they have and will continue to disclose the identities of those parties with whom they have reached a settlement agreement in the case at bar.[84]

The instant motion is not evidentiary in nature. Instead, the motion seeks an order compelling production of certain information and documents. Discovery in the above-captioned matter is closed,[85] and no party has moved to reopen discovery. Nevertheless, to the extent that this motion is seeking the identities of those parties with whom Plaintiffs have settled since the inception of the instant action, Plaintiffs state that they have no objection to identifying those parties with whom they have settled.[86] Accordingly, the motion is granted to the extent Plaintiffs will disclose the identities of those parties with whom Plaintiffs have settled since the inception of the instant action.

## C.   Evidence Regarding Purchase Orders or Invoices

The Hopeman Interests move the Court to enter an order requiring counsel to refrain from referencing, mentioning, or introducing purchase orders or invoices to Hopeman to prove specifically that asbestos dust from the products reflected on such documents was inhaled by Decedent when he worked at Avondale.[87] The Hopeman Interests contend that the invoices and purchase orders, without more information as to location and use aboard vessels, will be

---

[83] Rec. Doc. 60-1 at 3.

[84] Rec. Doc. 145 at 10.

[85] *See* Rec. Doc. 24. The parties agreed not to reopen discovery because this case was removed to federal court only a few days before the scheduled trial in state court.

[86] Rec. Doc. 145 at 10.

[87] Rec. Doc. 60-1 at 4.

14

confusing and misleading to the jury.[88] In opposition, Plaintiffs argue that purchase orders and/or invoices are clearly relevant and admissible as circumstantial evidence that Decedent was exposed to asbestos by the Hopeman Interests.[89] The Avondale Interests also oppose this request, arguing that the purchase orders and invoices are relevant because they have a tendency to make Decedent's exposure to asbestos by Hopeman's products more probable than it would be without the evidence.[90]

Purchase orders and invoices establishing that Hopeman or Wayne sold asbestos products to Avondale during Decedent's employment are clearly relevant to this case. While a purchase order or invoice alone does not definitively establish that Decedent was in fact exposed to the asbestos product, the evidence tends to make that fact more probably than it would be without the evidence. Furthermore, the Hopeman Interests have not shown that the probative value of this evidence is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. Accordingly, the Court denies the Hopeman Interests' request.

D.   **References to "Asbestos Companies," "Asbestos Defendants" or Being Part of the "Asbestos Industry"**

The Hopeman Interests move the Court to exclude references to the Hopeman Interests as "Asbestos Companies," "Asbestos Defendants," or as part of the "Asbestos Industry."[91] The Hopeman Interests contend that such characterizations are inaccurate, misleading, and prejudicial.[92] The Hopeman Interests assert that reference to "the industry" and/or "the asbestos

---

[88] *Id.*

[89] *Id.* at 12.

[90] Rec. Doc. 151 at 2.

[91] Rec. Doc. 60-1 at 5.

[92] *Id.*

industry" will invite jury members to infer that the Hopeman Interests were involved in a "conspiracy" or other type of joint activity.[93] Additionally, the Hopeman Interests argue that the prejudicial effect of the term "asbestos company" is self-evident.[94] In opposition, Plaintiffs contend that Hopeman was a manufacturer of asbestos-containing products and is therefore part of the asbestos industry.[95] Plaintiffs assert that grouping the defendants together as "asbestos companies" or "asbestos defendants" is simply a time saving practice.[96]

In this case, Plaintiffs allege that Decedent was exposed to asbestos-containing products manufactured by Hopeman and Wayne. Hopeman and Wayne do not appear to dispute that products they manufactured contained asbestos. Additionally, some exhibits the parties will introduce at trial refer to the "asbestos industry." Accordingly, the Court denies the motion to exclude references to "Asbestos Companies," "Asbestos Defendants," or the "Asbestos Industry" because it is overly broad. However, Plaintiffs are cautioned that the Court will not allow them to imply that certain defendants engaged in a conspiracy or other type of joint activity without laying the proper foundation for such arguments.

**E.    *Evidence of Take Home or Secondary Asbestos Exposure***

The Hopeman Interests contend that the Court should exclude any testimony or evidence of take home or secondary asbestos exposure to Decedent's family members not specifically pled in this case.[97] The Hopeman Interests argue that the introduction of any such evidence would

---

[93] *Id*. at 6.

[94] *Id*.

[95] Rec. Doc. 145 at 12.

[96] *Id*.

[97] Rec. Doc. 60-1 at 6.

expand the pleadings, thwart the purposes of discovery, and would be substantially and unfairly prejudicial to the Hopeman Interests in the preparation of their defense.[98] In opposition, Plaintiffs assert that they have specifically pled take home exposures in this case.[99] Plaintiffs also assert that the Hopeman Interests' request is overly broad.[100]

In the Petition for Damages, Plaintiffs allege that Decedent "was exposed to asbestos while riding to and from work with other Avondale employees whose person, clothing, and other items were contaminated with asbestos."[101] Plaintiffs do not bring a claim based on any alleged asbestos exposure experienced by other family members. Plaintiffs do not argue that evidence regarding exposure of Decedent's family members is relevant to this case. Accordingly, any testimony or evidence of take home or secondary asbestos exposure to Decedent's family members is excluded because it is not relevant to any issue presented in this case.

**F.     *Virile Shares Attributable to Asbestos Settlement Trusts***

The Hopeman Interests argue that all Section 524 asbestos settlement trusts, including but not limited to the Johns-Manville Settlement Trust, to should be considered virile shares.[102] The Hopeman Interests assert that the terms of the Johns-Manville Settlement Trust and Louisiana law require that Defendants be credited by the virile share liability of Johns-Manville.[103] In opposition, Plaintiffs argue that the Hopeman Interests' argument is contrary to Louisiana law.[104]

---

[98] *Id*. at 6–7.

[99] Rec. Doc. 145 at 14.

[100] *Id.*

[101] Rec. Doc. 1-2 at 5.

[102] Rec. Doc. 60-1 at 7.

[103] *Id*. at 11.

[104] Rec. Doc. 145 at 15.

Plaintiffs assert that they have not settled their claims relating to Decedent's contraction of asbestos-related lung cancer with Johns-Manville.[105] Plaintiffs argue that Louisiana law prohibits a reduction in the award where the plaintiff did not settle with the non-defendant.[106] Instead, Plaintiffs contend that Defendants may seek contribution against these bankrupt entities if Plaintiffs obtain a judgment against them.[107]

Under Louisiana's pre-comparative fault law, which governs Plaintiffs' survival action, joint tortfeasors are solidarily liable for a tort victim's injury.[108]  Under solidary liability, "the obligee, at his choice, [could] demand the whole performance from any of the joint and indivisible obligors."[109] "The only remedy available to a solidary obligor from whom the whole performance is sought [is] to seek 'contribution' from the joint tortfeasor in the amount of the joint tortfeasor's 'virile share.'"[110] However, "when a plaintiff settles with and releases a joint tortfeasor and thereby deprives the remaining tortfeasor of his right to contribution against the one who has been released," the plaintiff's recovery is reduced by the released tortfeasor's virile share.[111] Before the remaining defendant can receive a "credit" for the settling parties' virile share, the defendant must show: (1) the plaintiff released a party, and (2) the released party is liable as a joint tortfeasor.[112]

---

[105] *Id.*

[106] *Id.* at 21.

[107] *Id.* at 22.

[108] *Romano*, 221 So. 3d at 180.

[109] *Id.* at 180–81 (quoting *Berlier v. A.P. Green Indus., Inc.*, 2001-1530 (La. 4/3/02); 815 So. 2d 39, 47).

[110] *Id.* at 181 (citing *Daniels v. Conn*, 382 So. 2d 945, 953 (La. 1980)).

[111] *Wall v. Am. Emp.  Ins. Co.*, 386 So. 2d 79, 82 (La. 1980).

[112] *Romano*, 221 So. 3d at 181.

The Hopeman Interests cite *Abadie v. Metropolitan Life Insurance Company*, a Louisiana Fifth Circuit case. There, the plaintiffs sued Johns-Manville, and the jury found Johns-Manville liable to the plaintiffs.[113] Therefore, the Louisiana Fifth Circuit held that Johns-Manville should have been assigned a virile share, and the trust's solvency should not have been considered when assigning virile shares.[114] Conversely, in *Romano v. Metropolitan Life Insurance Company*, the Louisiana Fourth Circuit Court of Appeal concluded that because the plaintiffs had not settled with Johns-Manville, the defendant was not entitled to a virile share credit under Louisiana's solidary liability regime.[115]

Contrary to the Hopeman Interests' assertion, they are not entitled to a virile share credit for every asbestos settlement trust against whom Plaintiffs may potentially have a claim. Instead, the Hopeman Interests are entitled to a virile share credit if they show: (1) the plaintiff released a party, and (2) the released party is liable as a joint tortfeasor.[116] The Hopeman Interests have not shown that Plaintiffs settled with Johns-Manville. Accordingly, the Hopeman Interests' motion in limine is denied to the extent it seeks an order that all Section 524 asbestos settlement trusts will be considered virile shares.

## G.   *Evidence Regarding Fraud or Conspiracy*

The Hopeman Interests contend that the Court should preclude any evidence or argument regarding fraud or conspiracy relating to the Hopeman Interests.[117] The Hopeman Interests assert

---

[113] *Abadie*, 784 So. 2d at 85.

[114] *Id.*

[115] *Romano*, 221 So. 3d at 181.

[116] *Romano*, 221 So. 3d at 181.

[117] Rec. Doc. 60-1 at 12.

that such terminology is irrelevant as no experts in this case have presented any opinions regarding fraudulent activity on the part of the Hopeman Interests, nor has any evidence been presented which would support fraud or conspiracy.[118] In opposition, Plaintiffs assert that Louisiana Civil Code article 2324 creates liability for acts performed pursuant to a conspiracy which causes injury or damage to a plaintiff.[119] According to Plaintiffs, the evidence will show that insurance companies and their insureds were working together to discourage individuals who were exposed to asbestos from pursuing valid claims.[120] Plaintiffs state that there is no requirement that fraud be proven by expert testimony, and they intend to offer testimony demonstrating that during the relevant time period, the Hopeman Interests were aware of the hazards relating to asbestos and the steps that should have been taken to protect workers, but instead chose to conceal these hazards.[121]

Pursuant to Louisiana Civil Code article 2325, an individual "who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." In the Petition, Plaintiffs allege that Defendants "suppressed and prevented the dissemination of information relating to the hazards of asbestos and silica exposure, thus constituting fraud under Louisiana law."[122] Plaintiffs also allege that "insurance companies and their insureds were working together to discourage plaintiffs from pursuing valid claims.

---

[118] *Id.*

[119] *Id.* at 23.

[120] *Id.* at 24.

[121] *Id.* at 25.

[122] Rec. Doc. 1-2 at 24.

. . ."[123] The Hopeman Interests have not moved to dismiss these claims. Furthermore, the Hopeman Interests cite no authority to support their assertion that expert testimony is required to prove fraud. Therefore, the Court denies the Hopeman Interests' motion to exclude any evidence or argument regarding fraud or conspiracy relating to the Hopeman Interests.

Accordingly,

**IT IS HEREBY ORDERED** that the Hopeman Interests' Omnibus Motion in Limine[124] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent that: (1) any references to the limits of coverage provided by the insurance policies at issue in this case are excluded; (2) Plaintiffs will disclose the identities of those parties with whom Plaintiffs have settled since the inception of the instant action; and (3) any testimony or evidence of take home or secondary asbestos exposure to Decedent's family members is excluded. The motion is **DENIED** in all other respects.

**NEW ORLEANS, LOUISIANA,** this   22nd  day of September, 2020.

Nannette Jolivette Brown

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[123] *Id.* at 26.

[124] Rec. Doc. 60.