UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CALLEN DEMPSTER et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-95** |
| **LAMORAK INSURANCE CO. et al.** | **SECTION: "G"(1)** |

### ORDER AND REASONS

In this litigation, Plaintiffs Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Dempster, Jr., Annette Dempster Glad, and Barnett Dempster's (collectively, "Plaintiffs") allege that Decedent Callen L. Dempster ("Decedent") was exposed to asbestos and asbestos-containing products that were designed, manufactured, sold, and/or supplied by a number of Defendant companies while Decedent was employed by Huntington Ingalls Incorporated ("Avondale").[1] Pending before the Court is Defendants Huntington Ingalls Incorporated ("Avondale"), Albert L. Bossier Jr. ("Bossier"), and Lamorak Insurance Company's ("Lamorak") (collectively, the "Avondale Interests") "Motion in Limine to Exclude from Evidence Plaintiffs' 'Day in the Life' Video."[2] Numerous Defendants join the

---

[1] *See* Rec. Doc. 1-2; Rec. Doc. 1-8. On August 6, 2020, Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Louis Dempster, Jr., Annette Ruth Dempster Glad, and Barnett Lynn Dempster were substituted as plaintiffs for Louise Ella Simon Dempster. Rec. Doc. 239. Plaintiffs bring claims against Lamorak Insurance Company, Huntington Ingalls Inc., Albert Bossier, Jr., J. Melton Garrett, Eagle, Inc., Bayer Cropscience, Inc., Foster-Wheeler LLC, General Electric Co., Hopeman Brothers, Inc., McCarty Corporation, Taylor-Seidenbach, Inc., CBS Corporation, Uniroyal, Inc., International Paper Company, Houston General Insurance Company, Berkshire Hathaway Specialty Insurance Company, Northwest Insurance Company, United Stated Fidelity and Guaranty Company, Fist State Insurance Company, The American Insurance Company, Louisiana Insurance Guaranty Association, and the Traveler's Indemnity Company. Rec Doc. 1-8 at 2–3.

[2] Rec. Doc. 73.

motion.³ Plaintiffs oppose the motion in limine.⁴ Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion.

## I. Background

In this litigation, Plaintiffs allege that Decedent was employed by Avondale from 1962 to 1994.⁵ During that time, Plaintiffs aver that Decedent was exposed to asbestos and asbestos-containing products in various locations and work sites, resulting in Decedent breathing in asbestos fibers and later developing asbestos-related cancer.⁶ Plaintiffs assert strict liability and negligence claims against various Defendants.⁷

Decedent filed a "Petition for Damages" in the Civil District Court for the Parish of Orleans, State of Louisiana, on March 14, 2018.⁸ Defendants Huntington Ingalls Incorporated, Albert Bossier, Jr., J. Melton Garret, and Lamorak Insurance Company (the "Removing Parties") removed the case to the United States District Court for the Eastern District of Louisiana for the first time on June 21, 2018.⁹ On January 7, 2019, this Court remanded the case to the Civil District Court for the Parish of Orleans.¹⁰

Decedent passed away on November 24, 2018, and a First Supplemental and Amending Petition for Damages was filed in state court substituting Decedent's heirs as Plaintiffs on January

---

³ Rec. Docs. 57, 78, 79, 83, 122, 175, 177.

⁴ Rec. Doc. 139.

⁵ Rec. Doc. 1-2 at 5.

⁶ *Id.*

⁷ *Id.* at 7–8.

⁸ *Id.* at 2–3.

⁹ Case No. 18-6158, Rec. Doc. 1 at 2.

¹⁰ Case No. 18-6158, Rec. Doc. 89.

17, 2019.[11] Trial was scheduled to begin before the state trial court on January 13, 2020.[12] However, on January 9, 2020, Avondale removed the case to the United States District Court for the Eastern District of Louisiana for a second time.[13] On January 28, 2020, the Court denied the motion to remand, finding that this case was properly removed to this Court under the federal officer removal statute.[14]

On February 26, 2020, the Avondale Interests filed the instant motion in limine.[15] Numerous Defendants join the motion.[16] On March 17, 2020, Plaintiffs filed an opposition to the instant motion.[17] On May 5, 2020, the Court continued the May 18, 2020 trial date due to COVID-19.[18]

## II. Parties' Arguments

### A. *The Avondale Interests' Arguments in Support of the Motion*

The Avondale Interests move the Court to exclude Plaintiffs' trial Exhibit 0.9, designated as a "Day-in-the-Life Video of Callen Dempster."[19] The Avondale Interests contend that the video should be excluded for four reasons: (1) it does not represent the facts with respect to the impact of the injuries on Decedent's day-to-day activities; (2) it is highly prejudicial; (3) Defendants

---

[11] Rec. Doc. 1-8.

[12] Rec. Doc. 1-12.

[13] Rec. Doc. 1.

[14] Rec. Doc. 17.

[15] Rec. Doc. 73.

[16] Rec. Docs. 57, 78, 79, 83, 122, 175, 177.

[17] Rec. Doc. 130.

[18] Rec. Doc. 225.

[19] Rec. Doc. 73-1 at 1.

were not given an opportunity to cross-examine Decedent on any of the photographs in the video presentation; and (4) it contains inadmissible hearsay.[20]

First, the Avondale Interests contend that the video should be excluded because it does not represent the facts with respect to the impact of the injuries on Decedent's day-to-day activities.[21] The Avondale Interests argue that the majority of the video shows approximately 10 photographs of Decedent in various situations over the normal course of his life, prior to being diagnosed with lung cancer.[22] Additionally, the Avondale Interests note that the final segment of the video merely shows two undated photographs of Decedent being helped to sit up on a couch and a bed, and a video clip of Decedent speaking with his wife while laying on a bed.[23]

Second, the Avondale Interests assert that the video is highly prejudicial because it was arranged specifically for purposes of litigation in a manner that serves little purpose other than to create sympathy for Decedent.[24] Additionally, the Avondale Interests argue that the video is cumulative of the testimony of family members, medical experts, treating physicians, and Decedent's own deposition testimony on the impact of his diagnosis on his day-to-day activities.[25]

Third, the Avondale Interests argue that Defendants were not given an opportunity to cross-examine Decedent on any of the photographs in the video presentation.[26] Even if the pictures were admissible for some purpose, the Avondale Interests contend would be unfair and

---

[20] *Id*.

[21] *Id*. at 3.

[22] *Id*.

[23] *Id*. at 4.

[24] *Id*.

[25] *Id*. at 5.

[26] *Id*. at 6.

4

unduly prejudicial to Defendants to admit those photographs when they were not given an opportunity to question Decedent about them.[27]

Fourth, the Avondale Interests contend that the video contains inadmissible hearsay.[28] Specifically, the Avondale Interests argue that the video contains inadmissible hearsay in the form of captions that precede each photograph.[29] Furthermore, the Avondale Interests assert that the video was arranged "to make a statement through 'nonverbal conduct.'"[30] For example, the Avondale Interests note that certain photographs were selected to show Decedent's expressions while with his wife, children, grandchildren, and other family members.[31] The Avondale Interests note that Decedent testified that he enjoyed spending time with his family, and the photos are cumulative of that testimony.[32] For these reasons, the Avondale Interests assert that the video should be excluded.[33]

### B.   *Plaintiffs' Arguments in Opposition to the Motion*

Plaintiffs assert that the motion should be denied.[34] First, Plaintiffs argue that the video fairly represents the facts with respect to the impact Decedent's suffering and death from asbestos-related lung cancer had on Decedent and on Plaintiffs.[35] Plaintiffs contend that the video

---

[27] *Id*.

[28] *Id*.

[29] *Id*.

[30] *Id*. at 7.

[31] *Id*.

[32] *Id*.

[33] *Id*.

[34] Rec. Doc. 139 at 1.

[35] *Id*. at 3.

5

begins with a series of photographs of Decedent from various times in his life, depicting the activities he enjoyed, including the activities he shared with Plaintiffs.[36] According to Plaintiffs, the video as a whole allows the jury to see the sort of life that Decedent was able to lead before he became ill, and the life Decedent had to endure once he became ill.[37] Furthermore, Plaintiffs assert that the video allows the jury to see the sort of relationship that Decedent had with Plaintiffs.[38]

Second, Plaintiffs argue there is no danger that the pictures or video were created in a self-serving manner because the pictures and video were not taken for purposes of litigation.[39] Plaintiffs contend that the video is being offered in order to illustrate the life Decedent was able to lead before and after he became ill with asbestos-related lung cancer, the relationship that Decedent had with Plaintiffs, and how Decedent's asbestos-related lung cancer ultimately impacted Decedent and Plaintiffs.[40] Plaintiffs assert that these are all highly consequential facts in this survival and wrongful death lawsuit.[41] Additionally, Plaintiffs argue that the fact that the video may cause a viewer to have sympathy for Decedent is simply a consequence of the facts in this matter, more specifically the fact that Decedent suffered and died from asbestos-related lung cancer.[42]

Third, Plaintiffs contend that the jury will not be overwhelmed by the video or give greater

---

[36] *Id*.

[37] *Id*.

[38] *Id*.

[39] *Id*. at 4.

[40] *Id*.

[41] *Id*.

[42] *Id*. at 4–5.

weight to it than to other evidence.[43] Plaintiffs assert that a plethora of evidence will be offered to illustrate the life Decedent was able to lead before and after he became ill with asbestos-related lung cancer, the relationship that Decedent had with Plaintiffs, and how Decedent's asbestos-related lung cancer ultimately impacted his life and Plaintiffs.[44] According to Plaintiffs, no single piece of evidence will overwhelm the jury or cause them to ignore the other evidence that will be presented in this matter.[45]

Fourth, Plaintiffs argue that the video will not distract the jury, because the benefit of effective cross-examination has not been lost in this matter.[46] Plaintiffs note that Decedent and Plaintiffs were deposed and offered testimony concerning their familial relationship and how lung cancer affected Decedent.[47] Additionally, Plaintiffs note that Defendants will have an opportunity to cross-examine Plaintiffs at trial.[48]

Finally, Plaintiffs assert that the video does not contain hearsay.[49] Plaintiffs argue that the captions are not being offered for the truth of the matter asserted.[50] Instead, Plaintiffs contend the captions are offered "to provide a context to the viewer as to who is in the photograph or video, and the approximate year the photo or video was taken."[51] Additionally while the video

---

[43] *Id*. at 5.

[44] *Id*.

[45] *Id*.

[46] *Id*.

[47] *Id*. at 5–6.

[48] *Id*. at 6.

[49] *Id*.

[50] *Id*.

[51] *Id*.

constitutes nonverbal conduct, Plaintiffs assert it is not intended as an assertion, but is merely a collection of evidence in the form of photographs and video.[52] Alternatively, Plaintiffs argue that the video within the exceptions to the hearsay rule found in Federal Rule of Evidence 803(1) regarding present sense impressions, and Rule 803(3) regarding then-existing mental, emotional, or physical conditions.[53] For these reasons, Plaintiffs argue that the motion in limine should be denied.[54]

### III. Legal Standard

*A.    Relevancy and Prejudice*

Federal Rule of Evidence 401 provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Under Federal Rule of Evidence 402, relevant evidence is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence or other rules prescribed by the Supreme Court provide otherwise. Pursuant to Federal Rule of Evidence 403, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Fifth Circuit instructs that "[t]he exclusion of evidence under Rule 403 should occur only sparingly[.]"[55] "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter

---

[52] *Id*.

[53] *Id*.

[54] *Id*. at 9.

[55] *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993), *cert. denied*, 511 U.S. 1149 (1994).

under Rule 403."[56]

**B.    *Hearsay***

Under the Federal Rules of Evidence, hearsay is defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."[57] Hearsay is not admissible unless a federal statute, the Federal Rules of Evidence, or "other rules prescribed by the Supreme Court" provide otherwise.[58] After a party properly objects to the admission of evidence as hearsay, the proponent of evidence bears the burden to show that statement is not offered as hearsay or falls within an exception to the hearsay rule.[59]

## IV. Analysis

The Avondale Interests move the Court to exclude Plaintiffs' trial Exhibit 0.9, designated as a "Day-in-the-Life Video of Callen Dempster."[60] Typical "day in the life" films

> purport to show how an injury has affected the daily routine of its victim. [Such] films show the victim in a variety of everyday situations, including getting around the home, eating meals, and interacting with family members. These films are prepared solely to be used as evidence in litigation concerning the injury. Such evidence is desired because films illustrate, better than words, the impact the injury

---

[56] *Id.* at 1115–16 (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.), *cert. denied*, 444 U.S. 862 (1979)).

[57] Fed. R. Evid. 801(c)(1)–(2). Federal Rule of Evidence 801(d) further provides that opposing party's statements and certain prior statements by declarant-witnesses used to impeach or rebut the witness are not hearsay.

[58] Fed. R. Evid. 802.

[59] *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration."); *Loomis v. Starkville Mississippi Pub. Sch. Dist.*, 150 F. Supp. 3d 730, 742–43 (N.D. Miss. 2015) ("Once a party has 'properly objected to [evidence] as inadmissible hearsay,' the burden shifts to the proponent of the evidence to show, 'by a preponderance of the evidence, that the evidence [falls] within an exclusion or exception to the hearsay rule and was therefore admissible.'" (citations omitted)); *see also Randle v. Tregre*, 147 F. Supp. 3d 581, 596 (E.D. La. 2015) (Africk, J.); *Broad. Music, Inc. v. Tex Border Mgmt., Inc.*, No. 10-2524, 2012 WL 4119111, at *4 (N.D. Tex. Sept. 18, 2012).

[60] Rec. Doc. 73.

had on the plaintiff's life.[61]

Courts have considered four concerns in evaluating whether the probative value of a "Day in the Life" video is substantially outweighed by its prejudicial effect: (1) "whether the videotape fairly represented the facts with respect to the impact of the injuries on the plaintiff's day-to-day activities"; (2) whether the plaintiff was aware of being videotaped for the purpose of litigation and displays self-serving behavior consciously or unconsciously; (3) whether "a jury will better remember, and thus give greater weight to, evidence presented in a film as opposed to more conventionally elicited testimony"; and (4) whether the "film could distract the jury because the benefit of effective cross-examination is lost."[62]

Plaintiffs' Exhibit 0.9 is not a typical "day in the life" video. The 2:34 minute video begins with a slide titled "A Day in the Life of Callen L. Dempster," and is followed by a second slide stating, "Callen was born on March 9, 1932." A montage of approximately 10 photographs of Decedent and his family members from various times in Decedent's life follows. Each picture is preceded by a slide identifying the individuals in the photographs. After the last family photograph, a slide appears stating "Callen was diagnosed with lung cancer on December 18, 2017." The slide is followed by two photographs showing unidentified individuals helping Decedent as he sat up on a sofa and a bed. The final clip is a :28 second video depicting Decedent speaking to his wife while lying on a bed. Finally, the video ends with a slide that is not associated with any photograph or video, which states "Callen died on November 24, 2018."

The video does not show how lung cancer impacted Decedent's day-to-day activities.

---

[61] *Bannister v. Town of Noble, Okl.*, 812 F.2d 1265, 1269 (10th Cir. 1987).

[62] *Id*. (citing *Bolstridge v. Central Maine Power Co.*, 621 F.Supp. 1202, 1203–04 (D. Me. 1985)). *See also Gill v. Coastal Drilling Co.*, LLC, No. 13-589, 2015 WL 2341987, at *1 (W.D. La. May 13, 2015) (citing *Lafarge v. Kyker*, No. 08-185, 2011 WL 1742002 at *6 (N.D. Miss. May 5, 2011)).

Many of the photographs show Decedent pre-diagnosis and are of limited relevancy to the issues presented in this case. Moreover, the photographs and video of Decedent post-diagnosis do not show him performing any activities of daily life. Therefore, the video does not fairly represent the facts with respect to the impact of lung cancer on Decedent's day-to-day activities.

It does not appear that any of the individual photographs or the video clip were created for the purpose of litigation. However, the photographs and video clip were clearly compiled and arranged for litigation. The arrangement of the video illustrates that it was produced to create sympathy, while serving little probative value to any issue presented in this case.

The video is also cumulative of other evidence that will be presented in this matter regarding Decedent's relationships with his family members, and how those relationships changed after Decedent developed lung cancer. There is a danger that the jury could give undue weight to evidence presented in the film than to more conventionally elicited testimony. Additionally, Defendants will not have the opportunity to cross-examine Decedent about the events pictured in the video because he is deceased.

Based on the foregoing, the Court concludes that the video is of limited probative value because it does not show how lung cancer affected Decedent's daily routine or situations. Furthermore, the probative value of the video is substantially outweighed by a danger of unfair prejudice, confusing the issues, and needlessly presenting cumulative evidence. To the extent Plaintiffs wish to lay the appropriate foundation for the introduction of certain individual pictures depicted in the video, they may raise this issue again at trial, if necessary.

Accordingly,

**IT IS HEREBY ORDERED** that the Avondale Interests' "Motion in Limine to Exclude from Evidence Plaintiffs' 'Day in the Life' Video"[63] is **GRANTED.** Plaintiffs' trial Exhibit 0.9, designated as a "Day-in-the Life Video of Callen Dempster" is excluded. To the extent Plaintiffs wish to lay the appropriate foundation for the introduction of certain individual pictures depicted in the video, they may raise this issue again at trial, if necessary.

**NEW ORLEANS, LOUISIANA,** this 23rd day of September, 2020.

                                                              **NANNETTE JOLIVETTE BROWN**
                                                              **CHIEF JUDGE**
                                                              **UNITED STATES DISTRICT COURT**

---

[63] Rec. Doc. 73.