UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CALLEN DEMPSTER, et al.                          CIVIL ACTION

VERSUS                                           CASE NO. 20-95

LAMORAK INSURANCE CO., et al.                    SECTION: "G"(1)

<u>ORDER AND REASONS</u>

Before the Court is Defendant General Electric Company's ("General Electric") "Motion for Summary Judgment and for Reconsideration."[1] In this litigation, Plaintiffs Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Dempster Jr., Annette Dempster Glad, and Barnett Dempster (collectively, "Plaintiffs")[2] allege that Callen L. Dempster ("Mr. Dempster") was exposed to asbestos and asbestos-containing products that were designed, manufactured, sold, and/or supplied by a number of Defendant companies, including General Electric, while Mr. Dempster was employed by Defendant Huntington Ingalls Incorporated (f/k/a Northrop Grumman Shipbuilding, Inc., f/k/a Northrop Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc., and f/k/a Avondale Shipyards, Inc.) ("Avondale").[3] In the instant motion, General Electric argues that the Court should dismiss

---

[1] Rec. Doc. 228.

[2] On August 6, 2020, Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Louis Dempster, Jr., Annette Ruth Dempster Glad, and Barnett Lynn Dempster were substituted as plaintiffs for Louise Ella Simon Dempster. Rec. Doc. 239.

[3] *See* Rec. Doc. 1-2; Rec. Doc. 1-8. In particular, Plaintiffs bring claims against Lamorak Insurance Company, Huntington Ingalls Inc., Albert Bossier, Jr., J. Melton Garrett, Eagle, Inc., Bayer Cropscience, Inc., Foster-Wheeler LLC, General Electric Co., Hopeman Brothers, Inc., McCarty Corporation, Taylor-Seidenbach, Inc., CBS Corporation, Uniroyal, Inc., International Paper Company, Houston General Insurance Company, Berkshire Hathaway Specialty Insurance Company, Northwest Insurance Company, United Stated Fidelity and Guaranty Company, First State Insurance Company, The American Insurance Company, Louisiana Insurance Guaranty Association, and the Traveler's Indemnity Company. Rec Doc. 1-8 at 2–3.

Plaintiffs' survival claim and a wrongful death claim originally brought by Mr. Dempster's now-deceased wife, Louise Ella Dempster ("Mrs. Dempster"), on *res judicata* grounds.[4] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

### A.   *Factual Background*

In this litigation, Plaintiffs allege that Mr. Dempster was employed by Avondale from 1962 to 1994.[5] During that time, Plaintiffs aver that Mr. Dempster was exposed to asbestos and asbestos-containing products in various locations and work sites, resulting in Mr. Dempster breathing in asbestos fibers and later developing asbestos-related cancer.[6] Plaintiffs assert strict liability and negligence claims against various defendants.[7]

In 1991, Mr. and Mrs. Dempster, along with several thousand other plaintiffs, sued multiple defendants, including General Electric, for asbestos-related injuries in *In re Asbestos, Plaintiffs v. Borden, Inc., et al.*, Case No. 91-18397, in the Civil District Court for the Parish of Orleans (the "*Borden* litigation").[8] During the *Borden* litigation, Mr. Dempster was represented by the Wilson Law Firm.[9] That litigation resulted in a settlement between Mr. Dempster and General Electric; the parties agreed to settle all claims and executed a "Release of General Electric Company" (the

---

[4] Rec. Doc. 228-1.

[5] Rec. Doc. 1-2 at 5.

[6] *Id.*

[7] *Id.* at 7–8.

[8] Rec. Doc. 36-6.

[9] *Id.*

"Dempster Release").[10] When Mr. and Mrs. Dempster executed the Dempster Release, Mr. Dempster had been diagnosed with asbestosis but had not yet been diagnosed with lung cancer.[11] Mr. Dempster was thereafter diagnosed with lung cancer on December 18, 2017.[12]

## B.    *Procedural Background*

Mr. Dempster filed a "Petition for Damages" in the Civil District Court for the Parish of Orleans, State of Louisiana, on March 14, 2018.[13] Defendants Huntington Ingalls Incorporated, Albert Bossier, Jr., J. Melton Garret, and Lamorak Insurance Company removed the case to the United States District Court for the Eastern District of Louisiana for the first time on June 21, 2018.[14] On January 7, 2019, this Court remanded the case to the Civil District Court for the Parish of Orleans.[15]

Mr. Dempster passed away on November 24, 2018, and a First Supplemental and Amending Petition for Damages was filed in state court substituting Mr. Dempster's heirs as Plaintiffs on January 17, 2019.[16] On February 21, 2019, General Electric filed a Peremptory Exception of *Res Judicata* in state court.[17] On October 10, 2019, the state court denied General Electric's Peremptory Exception of *Res Judicata.*[18] Trial was scheduled to begin before the state

---

[10] Rec. Doc. 28-16.

[11] Rec. Doc. 36-6.

[12] Rec. Doc. 1-2 at 7.

[13] Rec. Doc. 1-2.

[14] Case No. 18-6158, Rec. Doc. 1 at 2.

[15] Case No. 18-6158, Rec. Doc. 89.

[16] Rec. Doc. 1-8.

[17] Rec. Doc. 28-2 at 8.

[18] *Id.* at 1.

trial court on January 13, 2020.[19] However, on January 9, 2020, Avondale removed the case to the United States District Court for the Eastern District of Louisiana for a second time.[20] On January 28, 2020, this Court denied the motion to remand, finding that this case was properly removed under the federal officer removal statute.[21]

On February 18, 2020, General Electric filed a "Motion for Reconsideration," seeking reconsideration of the state court's denial of General Electric's Peremptory Exception of *Res Judicata*.[22] Also on February 18, 2020, Avondale, Albert L. Bossier, Jr., and Lamorak Insurance Company (collectively, the "Avondale Interests") filed a "Motion for Partial Summary Judgment to Establish the Settlements of Certain Non-Parties,"[23] and General Electric joined in the motion.[24] On May 6, 2020, the Court issued an order, granting General Electric's Motion for Reconsideration in part and denying the motion in part.[25] The Court granted the motion to the extent General Electric sought reconsideration of the state district court's judgment, but denied the motion because the Federal Rules of Civil Procedure did not permit the Court to consider a peremptory exception of res judicata.[26] The Court granted General Electric leave to file an appropriate motion under the Federal Rules of Civil Procedure.[27]

---

[19] Rec. Doc. 1-12.

[20] Rec. Doc. 1.

[21] Rec. Doc. 17.

[22] Rec. Doc. 28.

[23] Rec. Doc. 36.

[24] Rec. Doc. 101.

[25] Rec. Doc. 227.

[26] Rec. Doc. 227-1.

[27] *Id.*

4

On May 20, 2020, General Electric filed the instant "Motion for Summary Judgment and for Reconsideration."[28] On June 6, 2020, Plaintiffs filed an opposition.[29] On June 23, 2020, General Electric, with leave of Court, filed a reply in further support of the motion.[30]

On July 4, 2020, Mrs. Dempster passed away.[31] On August 6, 2020, the Court granted Plaintiffs' motion to substitute Tanna Fay Dempster, Steven Louis Dempster, Janet Dempster Martinez, Marla Dempster Loupe, Callen Louis Dempster, Jr., Annette Ruth Dempster Glad, and Barnett Lynn Dempster as plaintiffs for Mrs. Dempster.[32]

## II. Parties' Arguments

### A.   *General Electric's Arguments in Support of the Motion*

In the instant motion, General Electric argues that the Court should dismiss Plaintiffs' survival claim and Mrs. Dempster's wrongful death claim against General Electric in their entirety because the claims against General Electric are barred by *res judicata* under the terms of the Dempster Release.[33] General Electric makes three main arguments in support of their position.

First, General Electric argues that a motion for summary judgment is the proper vehicle for the Court to consider its *res judicata* argument.[34] General Electric also contends that consideration of parol evidence is impermissible unless "the Court first finds that the language of the Dempster

---

[28] Rec. Doc. 228.

[29] Rec. Doc. 229.

[30] Rec. Doc. 235.

[31] Rec. Doc. 238.

[32] Rec. Doc. 239.

[33] Rec. Doc. 228-1.

[34] *Id.* at 11.

release is ambiguous."[35] Because the Dempster Release is not ambiguous, General Electric claims, parol evidence should not be admitted.[36]

Second, General Electric claims that, under the doctrine of *res judicata*, the Dempster Release serves to bar Plaintiffs from bringing the instant suit.[37] Because the Dempster Release was in writing as required under state law, General Electric contends that it should be afforded preclusive effect.[38] General Electric asserts that the Dempster Release "clearly and unambiguously discharged General Electric, its subsidiaries, affiliates, predecessor and successor corporations from any and all actual and future claims associated with Mr. Dempster's alleged exposure" to asbestos.[39]

Third, General Electric contends that the Louisiana Supreme Court's opinion in *Gistarve Joseph, Sr., et al v. Huntington Ingalls Incorporated* is controlling in the instant case.[40] General Electric argues that the state district court previously denied General Electric's exception of *res judicata* based on the rationale that the Dempster Release "does not specify that Mr. or Mrs. Dempster was releasing any future claim for lung cancer."[41] General Electric argues that *Joseph* has since made clear that a release is not required to expressly refer to the specific disease at issue in order to apply.[42] Accordingly, in light of this new authority from the Louisiana Supreme Court,

---

[35] *Id.* at 14.

[36] *Id.*

[37] *Id.* at 15.

[38] *Id.* at 16.

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.* at 17.

General Electric argues that this Court should reconsider the state district court's judgment overruling General Electric's exception of *res judicata*.[43]

**B.     *Plaintiffs' Arguments in Opposition to the Motion***

In the opposition memorandum, Plaintiffs argue that *Joseph* does not support General Electric's argument.[44] Plaintiffs argue that the Louisiana Supreme Court's opinion in *Joseph* did not indicate that it was overruling the Fourth Circuit's decision in *Becnel*, wherein the Fourth Circuit considered this identical General Electric release, denied General Electric's writ application, and upheld the trial court's order overruling General Electric's exception of *res judicata*.[45]

Instead, Plaintiffs contend that *Joseph* supports their position that the Dempster Release does not bar the instant case.[46] Plaintiffs point to language from *Joseph* stating that a contract "must be construed as a whole and in light of attending events and circumstances."[47] Plaintiffs claim that *Joseph* is distinguishable from the instant case because "the attending events and circumstances regarding the Avondale release in *Joseph* are much different than those regarding the GE release" in the instant case.[48]

While there was only one plaintiff in *Joseph* and the release was therefore "narrowly tailored to that specific plaintiff," Plaintiffs note that the *Borden* litigation included almost 3,000

---

[43] *Id.*

[44] Rec. Doc. 229 at 1.

[45] *Id.* at 2.

[46] *Id.*

[47] *Id.* at 3.

[48] *Id.* at 3–4.

plaintiffs with various diagnoses.[49] Plaintiffs allege that the plaintiff in *Joseph* fully understood that he was releasing all future claims.[50] In contrast, Plaintiffs assert that the Dempster Release was not explained to Mr. Dempster, that Mr. Dempster was not told that he was releasing future cancer claims, and that Mr. Dempster's counsel sent the settlement documents through the mail without explaining them to Mr. Dempster.[51] Plaintiffs cite to the deposition testimony of Bradley Hiatt, a representative of Wilson Law Firm, who confirmed that the documents were sent through the mail.[52] Unlike the *Joseph* plaintiff who settled for $25,000, Plaintiffs claim that the Dempsters only received $1,000 to settle their claims.[53] Therefore, Plaintiffs contend that the circumstances and events surrounding the Dempster Release leave significant doubt as to whether the parties intended to release future lung cancer claims.[54]

Plaintiffs also argue that it is inappropriate for the Court to decide *res judicata* on a motion for summary judgment.[55] Plaintiffs contend that there is an issue of fact in dispute regarding whether Mr. and Mrs. Dempster intended to settle a future claim relating to cancer when they signed the Dempster Release.[56] Plaintiffs argue that an issue of intent is "not properly decided on a motion for summary judgment."[57] Further, Plaintiffs contend that extrinsic evidence is

---

[49] *Id.* at 5.

[50] *Id.* at 6.

[51] *Id.* at 5–7.

[52] *Id.* at 7.

[53] *Id.* at 22.

[54] *Id.* at 10.

[55] *Id.* at 11.

[56] *Id.* at 12.

[57] *Id.*

permissible to show the parties' intent since "there is clearly a dispute between the parties as to

. . . whether there was any intent to release future lung cancer claims and any wrongful death claim

from cancer."[58]

Finally, Plaintiffs provide several "additional reasons warranting a denial" of the instant

motion.[59] Plaintiffs argue that the purported release is unenforceable as *contra bona mores* because

Mr. Dempster was never advised of the workings of the master settlement agreement.[60] Plaintiffs

argue that there is no evidence that General Electric signed the purported release agreement nor

that the signature on the purported release is even the signature of Mr. Dempster.[61] Plaintiffs

contend that there was no intent to settle any lung cancer claims.[62] Plaintiffs also contend that such

a settlement would be against public policy under Louisiana law.[63]  Lastly, Plaintiffs argue that

"any attempted release of the lung cancer claim lacked a lawful cause and consideration."[64]

## C.    *General Electric's Arguments in Further Support of the Motion*

In reply, General Electric first argues that the Dempster Release is not against public

policy.[65] Responding to Plaintiffs' argument that a valid compromise does not exist because

General Electric did not sign the release, General Electric contends that the Louisiana Supreme

Court previously held that where two instruments read together outline the obligations each party

---

[58] *Id.* at 13.

[59] *Id.* at 15.

[60] *Id.*

[61] *Id.* at 17–18.

[62] *Id.* at 18–22.

[63] *Id.* at 22.

[64] *Id.* at 24.

[65] Rec. Doc. 235 at 1–2.

has to one another and evidence each party's acquiescence in the agreement, a valid compromise exists.[66]

General Electric argues that the language of the release is clear and unambiguous.[67] General Electric contends that it would be inappropriate for the Court to consider parol evidence to vary from the clear wording of the release.[68] Furthermore, General Electric argues that Plaintiffs incorrectly rely on cases that predate the Louisiana Supreme Court's decision in *Joseph* because *Joseph* changed the landscape with respect to the interpretation of releases.[69]

Responding to Plaintiff's argument that Mr. Dempster did not settle his lung cancer claim since he was not paid the scheduled amount for lung cancer, General Electric argues that Mr. Dempster did not have lung cancer at the time the release was signed.[70] Furthermore, General Electric contends that Plaintiffs are not entitled to a "comeback right" nor are Plaintiffs entitled to bring another lawsuit against General Electric.[71] General Electric argues that the amount of the settlement plays no role in the court's analysis of the intent of the parties.[72]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[66] *Id.* at 2–3 (citing *Felder v. Georgia Pacific Corp., et al.*, 405 So.2d 521, 524 (La. 1981)).

[67] *Id.* at 4.

[68] *Id.* at 5–6 (citing *Hymel v. Eagle, Inc.*, 2008-1287 (La. App. 4 Cir. 3/18/09), 7 So. 3d 1249, 1257-58).

[69] *Id.* at 7–8.

[70] *Id.* at 8.

[71] *Id.* at 8–9.

[72] *Id.* at 9.

as a matter of law."[73] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[74] All reasonable inferences are drawn in favor of the nonmoving party but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[75] If the record as a whole "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[76] The nonmoving party may not rest upon the pleadings but, instead, must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[77]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[78] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[79] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[80] The

---

[73] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[74] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[75] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[76] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[77] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[78] *Celotex*, 477 U.S. at 323.

[79] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[80] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[81] Rather, a factual dispute precludes a grant of summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[82] Further, a court "resolve[s] factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[83] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[84] Ultimately, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[85]

## IV. Analysis

### A.    *Louisiana Law Regarding Res Judicata*

General Electric moves for summary judgment on Plaintiffs' survival claim and Mrs. Dempster's wrongful death claim because General Electric contends that these claims are barred under the doctrine of *res judicata*.[86] *Res judicata* bars "successive litigation of the very same claim,

---

242, 248–49 (1996)).

[81] *Little*, 37 F.3d at 1075.

[82] *Anderson*, 477 U.S. at 248.

[83] *Little*, 37 F.3d at 1075.

[84] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[85] *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993).

[86] Rec. Doc. 228.

whether or not relitigation of the claim raises the same issues as the earlier suit."[87] To determine the preclusive effect of an earlier state court judgment federal courts must "refer to the preclusion law of the State in which judgment was rendered."[88] The Fifth Circuit has likewise concluded that "[a] federal court asked to give res judicata effect to a state court judgment must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation."[89] Thus, in the instant case, Louisiana law determines what preclusive effects, if any, may arise from the state court's judgment.[90]

"While the doctrine of res judicata is ordinarily premised on a final judgment on the merits, it also applies where there is a transaction or settlement of a disputed or compromised matter that has been entered into by the parties."[91] Pursuant to Louisiana Civil Code article 3080, "[a] compromise precludes the parties from bringing a subsequent action based upon the matter that was compromised."[92] Therefore, under Louisiana law, a settlement agreement is treated as a final judgment on the merits for the purposes of res judicata.[93] In Louisiana, compromises are favored in the law and public policy favors the finality of settlements.[94]

---

[87] *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).

[88] *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (citing 28 U.S.C. § 1738); *see also Matter of Gober*, 100 F.3d 1195, 1201 (5th Cir. 1996) (holding that courts "must look to the state that rendered the judgment to determine whether the courts of that state would afford the judgment preclusive effect").

[89] *Prod. Supply Co. v. Fry Steel Inc.*, 74 F.3d 76, 78 (5th Cir. 1996) (internal citations omitted); *see also Hugel v. Se. Louisiana Flood Prot. Auth.-E.*, 429 F. App'x 364, 367 (5th Cir. 2011).

[90] *See In re Keaty*, 397 F.3d 264, 270 (5th Cir. 2005) (determining that, because the underlying judgment was from a Louisiana state court, Louisiana issue preclusion rules would apply); *Pinkozie v. Ricks*, No. 16-11621, 2017 WL 1056012, at *13 (E.D. La. Mar. 20, 2017) (Brown, J.).

[91] *Ortego v. Department of Transportation and Development*, 96-1322 (La. 2/25/97), 689 So. 2d 1358, 1363.

[92] La. Civ. Code art. 3080.

[93] *Ortego*, 689 So. 2d at 1363 (concluding that "compromises have the legal efficacy of the thing adjudged.").

[94] *Brown v. Drillers Inc.*, 93–1019 (La. 1/14/94), 630 So. 2d 741; *Ellison v. Michelli*, 513 So. 2d 336, 339

The Louisiana Supreme Court has determined that "[t]he doctrine of res judicata cannot be invoked unless all its essential elements are present . . . and each necessary element must be established beyond all question."[95] Louisiana courts have narrowly construed the doctrine's scope, and "any doubt concerning application of the principle of res judicata must be resolved against its application."[96] The party urging the application of *res judicata* has the burden of proving each essential element by a preponderance of the evidence.[97]

The Louisiana Supreme Court has established the following five elements that must be satisfied to preclude a second action under the theory of *res judicata*:

> (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.[98]

When interpreting a release to determine its preclusive effect, Louisiana law provides that "[a] compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship."[99] As a contract, a compromise must be interpreted according to "the common intent of the parties."[100] The general rules of construction applicable to contracts and, therefore, compromises, dictate that

---

(La. App. 4 Cir. 1987).

[95] *Hugel*, 429 F. App'x at 368 (quoting *Kelty v. Brumfield,* 633 So.2d 1210, 1215 (La. 1994)) (quotation marks omitted).

[96] *Id.*

[97] *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 437 (5th Cir. 2000) (citing *Greer v. Louisiana*, 616 So. 2d 811, 815 (La. App. 2 Cir. 1993)).

[98] *Burguieres v. Pollingue*, 2002-1385 (La. 2/25/03), 843 So. 2d 1049, 1053; *Bd. of Sup'rs of Louisiana State Univ. v. Dixie Brewing Co.*, 2014-0641 (La. App. 4 Cir. 11/19/14), 154 So. 3d 683, 689.

[99] La. Civ. Code art. 3071.

[100] La. Civ. Code art. 2045.

"[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[101] "[T]he meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the instrument."[102]

However, "Louisiana courts have crafted a jurisprudential exception to the extrinsic evidence rule for compromise agreements."[103] When a dispute arises as to the scope of a compromise agreement, "extrinsic evidence can be considered to determine exactly what differences the parties intended to settle."[104] "[A] general release will not necessarily bar recovery for those aspects of a claim not intended by the parties to be covered by the release."[105] Intent is determined by reading the compromise instrument "in light of the surrounding circumstances at the time of execution of the agreement."[106] When a party produces "substantiating evidence of mistaken intent," a court may look beyond the four corners of the instrument to ascertain intent.[107]

"The parties to a release instrument are therefore 'permitted to raise a factual issue as to whether unequivocal language in the instrument was intended to be unequivocal.'"[108] Absent such evidence, however, courts "have not hesitated to confine their analysis to the four corners of the

---

[101] La. Civ. Code. art. 2046.

[102] *Brown*, 630 So. 2d at 748.

[103] *Maggio v. Parker*, 2017-1112 (La. 6/27/18), 250 So. 3d 874, 879 (citing *Brown*, 630 So. 2d 749).

[104] *Brown*, 630 So. 2d at 749.

[105] *Id.*

[106] *Id.* at 748.

[107] *Id.* at 749.

[108] *Maggio*, 250 So. 3d at 879 (citing *Brown*, 630 So. 2d 749).

instrument."[109] Louisiana courts have limited the application of the extrinsic evidence exception to cases where evidence is presented establishing either "(1) that the releasor was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim."[110] "A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express."[111] In applying this rule of construction specific to compromises, "courts are guided by the general principle 'that the contract must be construed as a whole and in light of attending events and circumstances.'"[112]

## B.   *Louisiana Law Regarding the Release of Future Claims*

Under Louisiana law, parties to a compromise can settle any dispute they may have in the present or in the future, including claims that have not yet arisen.[113] The Louisiana Supreme Court held in *Daigle v. Clemco Indus.* that "a compromise or contractual clause is not null because it excludes or limits liability in advance except when a party to the contract relinquishes future rights of action arising from his or her physical injury or from the intentional or gross fault of another party."[114] While Louisiana law does not prohibit parties from settling potential future claims that may arise from a past breach of duty, "releases of future actions are narrowly construed to assure that the parties fully understand the rights released and the resulting consequences. As a result, if

---

[109] *Id.* (citing *Brown*, 630 So. 2d 749).

[110] *Id.* (citing *Brown*, 630 So. 2d 749).

[111] La. Civ. Code art. 3076.

[112] *Brown*, 630 So. 2d at 748 (quoting *Succession of Teddlie*, 385 So. 2d 902, 904 (La. App. 2 Cir. 1980)).

[113] *Joseph v. Huntington Ingalls Inc.*, 2020 WL 499939 (La. 1/29/20).

[114] 613 So. 2d 619, 622–23 (La. 1993).

the release instrument leaves any doubt as to whether a particular future action is covered by the compromise, it should be construed not to cover such future action."[115]

Here, as the party arguing for *res judicata*, General Electric bears the burden of establishing the requisites for a valid compromise, including the parties' intent to settle the differences in this action.[116] To meet that burden, General Electric relies on the language of the Dempster Release, arguing that it unambiguously includes claims for lung cancer and wrongful death.[117] General Electric analogizes to *Joseph*, where the Louisiana Supreme Court found that, given the unambiguous recitals in the release, the plaintiffs' survival claims based on Mr. Joseph's contraction of mesothelioma fell within the terms of the release.[118] In response, Plaintiffs argue that there are attending events and circumstances surrounding the Dempster Release that distinguish it from *Joseph* and indicate that the release is not effective as to future cancer claims.[119]

Several prior decisions by Louisiana state courts analyzing the preclusive effects of asbestos related releases provide useful guidance to the Court's analysis of the releases at issue in this case. In *Breaux v. Mine Safety Appliances Co.*, the plaintiff sued the defendant for allegedly causing his asbestosis.[120] The parties agreed to settle the case for $500, and the plaintiff executed a release instrument.[121] The plaintiff later developed mesothelioma and sued the same

---

[115] *Brown*, 630 So. 2d at 753.

[116] *Id.* at 747.

[117] Rec. Doc. 228-1 at 7.

[118] *Id.*

[119] Rec. Doc. 229 at 3–11; *Joseph*, 2020 WL 499939, at *10 ("For their part, plaintiffs also rely solely on the language of the Release, which they maintain does not expressly and unequivocally state that claims for cancer and mesothelioma were intended to be included therein. Thus, the resolution of the case turns strictly on an interpretation of the parties' intent as reflected in the four corners of the Release.").

[120] 98-133 (La. App. 5 Cir. 8/25/98), 717 So. 2d 1255.

[121] *Id.* at 1256.

17

defendant.[122] The Louisiana Fifth Circuit Court of Appeal held that the release did not bar the

plaintiff's mesothelioma claim because the $500 settlement was a mere nuisance settlement.[123]

The Louisiana Fifth Circuit Court of Appeal reasoned that:

> Although the agreement refers to "disabilities of any nature", "past, present or
> future," "arising out of or in any manner whatsoever connected with or resulting
> from, either directly or indirectly, injury sustained or occupational diseases
> contracted while employed at or by [the defendant]," it is not logical to expect that
> plaintiff intended to release defendant for the future manifestation of this type of
> cancer for $500. This is a terrible disease. If the agreement intended to include
> mesothelioma, defendant would surely have included it in the listed diseases. As
> plaintiff argues, this settlement was a nuisance settlement. Thus, we find that the
> language of the agreement does not include the contraction of this type of cancer
> which would not manifest for many years, nor did plaintiff intend to include it in
> the settlement. Plaintiff signed the agreement expressly because he did not have
> any of the asbestos related diseases at that time.[124]

In *Hymel v. Eagle, Inc.*, the plaintiff was diagnosed with asbestosis and later, executed a

release in exchange for $15,000, in which the plaintiff agreed to "release and forever discharge the

released parties from any and all liability on account of or in any way growing out of occupational

diseases or conditions attributable to exposure to asbestos . . . including but not limited to death,

mesothelioma, cancer, shortness of breath, fear of cancer or increased risk of cancer. . . ."[125] The

plaintiff later developed mesothelioma and sued the same defendant.[126] The Louisiana Fourth

Circuit Court of Appeal determined that the prior release "clearly and unambiguously

compromised any prospective claims that the plaintiff might have for mesothelioma or cancer."[127]

---

[122] *Id.*

[123] *Id.* at 1257.

[124] *Id.*

[125] 7 So. 3d at 1252.

[126] *Id.*

[127] *Id.* at 1258.

18

The court distinguished the holding of *Breaux* by noting the following differences between the two cases:

> (1) the settlement specifically covered both mesothelioma and cancer by name, (2) the plaintiff had an asbestos related disease at the time he signed the settlement (asbestosis); (3) it was for a sum thirty time[s] greater than the settlement in *Breaux* and, therefore, cannot be characterized as a "nuisance settlement"; and (4) there is no indication in *Breaux* that the plaintiff had the potential to recover additional sums from other defendants as there is in the instant case. [128]

The court further noted that:

> Where a settlement and release refer expressly to the claim sought to be released by the party seeking to enforce the settlement, that alone is sufficient to shift the burden to the party seeking to oppose the enforcement of the settlement and release to prove that there was no meeting of the minds or that there was fraud or ill practices. It is not sufficient to raise the issue to merely make the self-serving allegation that there was no meeting of the minds. A party represented by counsel may not defeat a written settlement and release that is unambiguous on its face by merely alleging that he did not understand it. Otherwise, no settlement would be enforceable without more litigation which defeats the whole public policy favoring settlements. Signatures on documents are not mere ornaments. . . . There is little incentive to settle if a party to the settlement agreement may later seek to void it based merely on his self-serving statements, without more, and in the absence of any evidence of fraud or ill practices, that he misunderstood what he signed or that he did not intend to sign what he signed. [129]

In *Joseph v. Huntington Ingalls Incorporated*, the plaintiff Gistarve Joseph ("Mr. Joseph") filed suit against Avondale Industries, its executive officers, and their insurers for occupational exposure to toxic substances, including asbestos. [130] In 1985, Mr. Joseph settled his claims against Avondale and its executive officers by executing a release which released Avondale, its executive officers, and their insurers "from any and all liability . . . directly or indirectly sustained or suffered by Claimant on account of, or in any way growing out of occupational lung diseases of any and

---

[128] *Id.* at 1254.

[129] *Id.* at 1257–58 (internal citations omitted).

[130] *Joseph*, 2020 WL 499939, at *1.

every kind and description. . . ."[131] In 2016, Mr. Joseph filed a lawsuit against Huntington Ingalls Inc. (formerly Avondale and referred to herein as "Avondale") and its executive officers, alleging that he contracted mesothelioma.[132] Avondale filed an exception of *res judicata*, arguing that the release barred the plaintiffs' survival action, and the state district court denied the exception.[133]

On appeal, the Louisiana Supreme Court reversed the state district court and sustained the exception of *res judicata*.[134] The Louisiana Supreme Court determined "that the intent of the parties thereto is clear, unambiguous, and unequivocal" and that "[t]he plain language of the Release reflects that [Mr. Joseph] intended to release his present and future claims for 'occupational lung disease of any and every kind and description' and 'any and all other personal injury claims arising out of [his] employment at Avondale.'"[135] The court found that mesothelioma is a disease of the lungs which qualifies as an "occupational lung disease," due to how commonly the disease develops due to exposure to asbestos in the workplace.[136] The court noted that while Mr. Joseph had not been diagnosed with mesothelioma when he executed the release, the language of the release reflected his understanding that his future was uncertain.[137]

---

[131] *Id.* at *2.

[132] *Id.*

[133] *Id.*

[134] *Id.* at *10.

[135] *Id.* at *7–8.

[136] *Id.* at *8.

[137] *Id.* (Specifically, the court found the following language from the release pertinent: "Claimant specifically warrants that he has discussed his physical and mental condition with several physicians of his own choice and that he is fully aware of his medical condition and understands that the alleged injuries, illnesses, and/or diseases, and their results and consequences, and the damages allegedly sustained by him, whether mental or physical, may be permanent and progressive and that recovery therefrom may be uncertain and indefinite; and Claimant understands and agrees that in executing this Settlement Agreement and in giving this receipt and final complete discharge and release, he has had the benefit of advice and counsel of his own attorney and is relying wholly upon his own judgment, belief and knowledge as to the nature, extent and duration of said alleged injuries and damages, information obtained from physicians, and the advice of his own attorney, and he acknowledges that he has not been influenced in any manner

The court found that "[g]iven the clear and unambiguous recitals in the Release . . . considered in light of the attending events and circumstances (including but not limited to the fact that the amount of the settlement was not a nominal sum, Mr. Joseph had the advice and counsel of his own physicians and of experienced attorneys, and he expressly reserved his rights against seven other defendants, permitting him additional avenues of recovery)" plaintiffs' survival claims based on Mr. Joseph's contraction of mesothelioma fell squarely within the terms of the release.[138] Because the other necessary elements of *res judicata* were deemed satisfied, the court held that the release was entitled to preclusive effect.[139]

With this background in mind, the Court turns to General Electric's argument that Mr. and Mrs. Dempster released the lung cancer and wrongful death claims against General Electric in the Dempster Release.

**C.   *Whether the Dempster Release Released Claims for Lung Cancer and Wrongful Death***

**1.     Whether the Dempster Release Released the Claim for Lung Cancer**

In 1991, Mr. and Mrs. Dempster, along with several thousand other plaintiffs, sued multiple defendants for their asbestos-related injuries in the *Borden* litigation.[140] During the *Borden* litigation, Mr. and Mrs. Dempster were represented by the Wilson Law Firm.[141] That litigation resulted in a settlement between Mr. and Mrs. Dempster and General Electric; the parties agreed

---

in executing this Settlement Agreement and giving this release and indemnity agreement by any representations or statements whosoever made by the persons or parties hereby released, or by anyone representing them or any of them.").

[138] *Id.* at *9.

[139] *Id.* at *10.

[140] Rec. Doc. 36-6.

[141] *Id.*

to settle all claims and executed the Dempster Release.[142] When Mr. and Mrs. Dempster executed the Dempster Release, Mr. Dempster had been diagnosed with asbestosis but had not yet been diagnosed with lung cancer.[143] The core issue presented in the instant motion is whether Mr. and Mrs. Dempster released a future claim for lung cancer and wrongful death when they executed the Dempster Release.

The Dempster Release provides that Mr. and Mrs. Dempster agreed to release "all rights, past, present, and future that they possess against General Electric . . . including the right to sue for future injuries, including, but not limited to, malignancies and death; that they may never again proceed against such parties in the future. . . ."[144] While *Joseph* makes clear that a release of a future action need not explicitly mention a specific injury for such injury to come within the terms of the release, the intent of the parties to release the injury must still be clear.[145] The release at issue in *Joseph* provided that the plaintiff released his present and future claims for "occupational lung disease of any and every kind and description" and "any and all other personal injury claims arising out of [his] employment at Avondale."[146] Because mesothelioma is a disease of the lungs commonly associated with exposure to asbestos in the workplace, the Louisiana Supreme Court found that a claim for mesothelioma was within the scope of "occupational lung disease."[147] In

---

[142] Rec. Doc. 28-16.

[143] Rec. Doc. 36-6.

[144] Rec. Doc. 28-16 at 1.

[145] *Joseph*, 2020 WL 499939, at *7 ("there is no necessity for direct reference to a particular injury, as long as the intent of the parties is clear.") (citing *Brown*, 630 So.2d at 757 ("[O]ur holding here, together with our holding in *Daigle*, permits defendants to conclusively compromise potential wrongful death claims, provided the intent to do so is unequivocally reflected, *while not necessarily by express mention of such claims*, in the language employed in the release instrument.") (emphasis added.)

[146] *Id*. at *8.

[147] *Id*.

*Joseph*, the Louisiana Supreme Court found that the "intent of the parties [was] clear, unambiguous, and unequivocal " because "that intent is expressly set forth in the Release."[148]

Unlike *Joseph*, the Court cannot conclude that the intent of the parties "is clear, unambiguous, and unequivocal" in the instant case.[149] The Dempster Release states that it applies to future actions for malignancies generally. The lack of specificity leaves doubt as to whether the parties intended to release a claim for lung cancer. Accordingly, the Court cannot conclude that the plain language of the Dempster Release reflects Mr. Dempster's intent to release a future claim for lung cancer.[150]

### 2.    Whether the Dempster Release Released the Claim for Wrongful Death

The second issue presented is whether the language utilized in the Dempster Release reflects that the parties clearly intended, in light of the surrounding circumstances, to release a future wrongful death claim. General Electric argues that "[b]y its use of the term 'wrongful death' the Dempster Release clearly releases any 'wrongful death' claim that might inure to Mrs. Dempster as a result of Mr. Dempster's death."[151] Plaintiffs argue that Mrs. Dempster did not intend to settle any wrongful death claim related to her husband's lung cancer.[152]

---

[148] *Id.* at *7.

[149] *Id.*

[150] *See* Rec. Doc. 245 at 36. Additionally, for the reasons that follow, the attending events and circumstances leave doubt as to whether Mr. Dempster intended to release a future claim for lung cancer.

[151] Rec. Doc. 228-1 at 7. General Electric does not argue that Mr. Dempster's children, Marla Dempster Loupe, Tanna Faye Dempster, Steven Louis Dempster, Mary Janet Lynne Dempster Martinez, Callen Dempster, Jr., Annette Ruth Dempster Glad, and Barnett Lynn Dempster signed any release regarding their rights to seek damages for a wrongful death claim. A tort victim may not compromise his beneficiaries' potential wrongful death action. Brown, 630 So. 2d at 751–52. Therefore, Mr. Dempster lacked the power to compromise his children's wrongful death action. Accordingly, the Court finds that the Dempster Release does not release the wrongful death claim of Plaintiffs Marla Dempster Loupe, Tanna Faye Dempster, Steven Louis Dempster, Mary Janet Lynne Dempster Martinez, Callen Dempster, Jr., Annette Ruth Dempster Glad, and Barnett Lynn Dempster.

[152] Rec. Doc. 229 at 11.

23

In *Daigle v. Clemco Industries*, the Louisiana Supreme Court held that "the compromise of a prospective wrongful death claim has res judicata effect if there is no error, fraud, duress or undue influence which vitiates the consent of the potential wrongful death beneficiary."[153] In *Brown v. Drillers, Inc.*, the Louisiana Supreme Court "add[ed] a requirement that the release instrument unequivocally reflect, while not necessarily by express reference, that the parties clearly contemplated a compromise of future wrongful death claims."[154]

The Dempster Release contains an express release of a claim for "wrongful death."[155] In the release, Mrs. Dempster agreed to "release, remise, and forever discharge General Electric Company . . . from liability for any and all claims, damages, and injuries . . . arising from Plaintiff's alleged exposure to products or services allegedly manufactured, sold, distributed and/or provided by General Electric, including, but not limited to, malignancies and death."[156] Because the Dempster Release was signed by Mrs. Dempster and refers expressly to wrongful death claims, the burden shifts to Plaintiffs to prove that there was no meeting of the minds or that there was fraud or ill practices" such that the release does not bar the instant action.[157]

When a dispute arises as to the scope of a compromise agreement, "extrinsic evidence can be considered to determine exactly what differences the parties intended to settle."[158] "[A] general release will not necessarily bar recovery for those aspects of a claim not intended by the parties to

---

[153] *Daigle*, 613 So. 2d at 620–21.

[154] 630 So. 2d at 744.

[155] Rec. Doc. 28-16 at 1.

[156] *Id.*

[157] *Hymel*, 7 So. 3d at 1257.

[158] *Brown*, 630 So. 2d at 749.

24

be covered by the release."[159] Intent is determined by reading the compromise instrument "in light of the surrounding circumstances at the time of execution of the agreement."[160] When a party produces "substantiating evidence of mistaken intent," a court may look beyond the four corners of the instrument to ascertain intent.[161]

The Dempster Release was entered while Mr. Dempster was being represented by the Wilson Law Firm for non-malignant asbestosis.[162] During their depositions, Mr. Dempster and Mrs. Dempster both testified that the Wilson Law Firm never represented them for cancer.[163] Bradley Haitt, the corporate representative for the Wilson Law Firm, confirmed that the firm never represented the Dempsters for lung cancer.[164] Mr. Dempster stated that the law firm handled everything through the mail, and nothing was explained to him.[165] Mr. Dempster testified that he did not even know that a lawsuit had been filed on his behalf by the Wilson Law Firm.[166] General Electric's corporate representative has previously testified that plaintiffs in the case of *Borden* litigation were to receive payments in the amount of $7,500 for mesothelioma, $3,500 for lung cancer, and $1,000 for asbestosis or other cancers.[167] However, all of the plaintiffs completed the

---

[159] *Id.*

[160] *Id.* at 748.

[161] *Id.* at 749.

[162] Rec. Doc. 229 at 17.

[163] Rec. Doc. 229-9 at 4–5; Rec. Doc. 229-11 at 2.

[164] Rec. Doc. 229-19 at 2–3.

[165] Rec. Doc. 229-9 at 6–7.

[166] *Id.* at 6.

[167] Rec. Doc. 229-21 at 3; Rec. Doc. 229-22.

same "all disease release."[168]

Considering this evidence, there is a disputed issue of material fact as to whether the parties intended to release future lung cancer and wrongful death claims. Accordingly, the Court finds that summary judgment is not appropriate.

## V. Conclusion

For the reasons discussed above, there are genuine issues of material fact in dispute precluding summary judgment. Accordingly,

**IT IS HEREBY ORDERED** that for Defendant General Electric Company's "Motion for Summary Judgment and for Reconsideration"[169] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this ___29th___ day of January, 2021.


_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[168] Rec. Doc. 229-22.

[169] Rec. Doc. 228.