UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CALLEN DEMPSTER et al.                                         CIVIL ACTION


VERSUS                                                        NO. 20-95


LAMORAK INSURANCE CO. et al.                                  SECTION: "G"(1)


ORDER AND REASONS

In this litigation, Plaintiffs Tanna Faye Dempster, Steven Louis Dempster, Janet Dempster

Martinez, Marla Dempster Loupe, Callen Dempster Jr., Annette Dempster Glad, and Barnett

Dempster (collectively, "Plaintiffs") allege that Decedent Callen L. Dempster ("Decedent") was

exposed to asbestos and asbestos-containing products that were designed, manufactured, sold,

and/or supplied by a number of Defendant companies while Decedent was employed by

Huntington Ingalls Incorporated ("Avondale").[1] Pending before the Court is Defendants

Avondale, Albert L. Bossier Jr. ("Bossier"), and Lamorak Insurance Company's ("Lamorak")

(collectively, the "Avondale Interests") "Motion for Reconsideration of Order Excluding Robert

---

[1] *See* Rec. Doc. 1-2; Rec. Doc. 1-8. On August 6, 2020, Tanna Faye Dempster, Steven Louis Dempster,
Janet Dempster Martinez, Marla Dempster Loupe, Callen Louis Dempster Jr., Annette Ruth Dempster Glad, and
Barnett Lynn Dempster were substituted as plaintiffs for Louise Ella Simon Dempster. Rec. Doc. 239. Plaintiffs
bring claims against Lamorak Insurance Company, Huntington Ingalls Inc., Albert Bossier Jr., J. Melton Garrett,
Eagle, Inc., Bayer Cropscience, Inc., Foster-Wheeler LLC, General Electric Co., Hopeman Brothers, Inc., McCarty
Corporation, Taylor-Seidenbach, Inc., CBS Corporation, Uniroyal, Inc., International Paper Company, Houston
General Insurance Company, Berkshire Hathaway Specialty Insurance Company, Northwest Insurance Company,
United Stated Fidelity and Guaranty Company, Fist State Insurance Company, The American Insurance Company,
Louisiana Insurance Guaranty Association, and the Traveler's Indemnity Company. Rec Doc. 1-8 at 2–3.

1

J. Norrell, Ph.D."[2] Plaintiffs oppose the motion.[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

In this litigation, Plaintiffs allege that Decedent was employed by Avondale from 1962 to 1994.[4] Plaintiffs aver that during that time, Decedent was exposed to asbestos and asbestos-containing products in various locations and work sites, resulting in Decedent breathing in asbestos fibers and later developing asbestos-related cancer.[5] Plaintiffs assert strict liability and negligence claims against various Defendants.[6]

Decedent filed a "Petition for Damages" in the Civil District Court for the Parish of Orleans, State of Louisiana, on March 14, 2018.[7] Defendants Huntington Ingalls Incorporated, Albert Bossier Jr., J. Melton Garret, and Lamorak Insurance Company (the "Removing Parties") removed the case to the United States District Court for the Eastern District of Louisiana for the first time on June 21, 2018.[8] On January 7, 2019, this Court remanded the case to the Civil District Court for the Parish of Orleans.[9]

Decedent passed away on November 24, 2018, and a First Supplemental and Amending Petition for Damages was filed in state court substituting Decedent's heirs as Plaintiffs on January

---

[2] Rec. Doc. 275.

[3] Rec. Doc. 282.

[4] Rec. Doc. 1-2 at 5.

[5] Id.

[6] Id. at 7–8.

[7] Id. at 2–3.

[8] Case No. 18-6158, Rec. Doc. 1 at 2.

[9] Case No. 18-6158, Rec. Doc. 89.

17, 2019.[10] Trial was scheduled to begin before the state trial court on January 13, 2020.[11] However, on January 9, 2020, Avondale removed the case to the United States District Court for the Eastern District of Louisiana for a second time.[12] On January 28, 2020, the Court denied the motion to remand, finding that this case was properly removed to this Court under the federal officer removal statute.[13]

On February 25, 2020, Plaintiffs filed a "*Daubert* Motion to Preclude the Testimony of Robert J. Norrell."[14] On September 11, 2020, this Court granted the *Daubert* Motion.[15] On October 9, 2020, the Avondale Interests filed the instant motion for reconsideration.[16] On October 27, 2020, Plaintiffs filed an opposition.[17] On November 6, 2020, with leave of Court, the Avondale Interests filed a reply in further support of the motion for reconsideration.[18]

## II. Parties' Arguments

### A.   *The Avondale Interests' Arguments in Support of the Motion*

The Avondale Interests urge this Court to reconsider the September 11, 2020 Order excluding Dr. Robert Norrell as an expert witness for three main reasons: (1) reconsideration is necessary to correct legal error and prevent manifest injustice, (2) reconsideration will not

---

[10] Rec. Doc. 1-8.

[11] Rec. Doc. 1-12.

[12] Rec. Doc. 1.

[13] Rec. Doc. 17.

[14] Rec. Doc. 52.

[15] Rec. Doc. 249.

[16] Rec. Doc. 275.

[17] Rec. Doc. 282.

[18] Rec. Doc. 295.

3

prejudice Plaintiffs, and (3) reconsideration is required because Plaintiffs made misstatements of law in the *Daubert* motion.[19]

First, the Avondale Interests argue that reconsideration is necessary in order to correct legal error and to prevent the manifest injustice that would result if Dr. Norrell is excluded from testifying.[20] The Avondale Interests argue that the Court committed an error of law in its September 11, 2020 Order because the Court "overlooked the purpose of Dr. Norrell's testimony"—to show that Mr. Dempster should have known that smoking came with health risks, not that Mr. Dempster actually knew of any such risks.[21] The Avondale Interests assert that Dr. Norrell's testimony on the type of information historically available to Louisiana residents on the risks of smoking is "directly relevant to determining whether Mr. Dempster was contributorily negligent," which the Avondale Interests allege, if true, would provide them with a "complete defense" to Mr. Dempster's claims.[22] Further, the Avondale Interests argue that excluding Dr. Norrell's testimony will lead to manifest injustice for the Avondale Interests because they have no alternative means of evidence to prove that Mr. Dempster knew the risks of smoking.[23]

The Avondale Interests next argue that Plaintiffs will not be prejudiced by reconsideration.[24] The Avondale Interests contend that, because trial is not for another year and because Plaintiffs "already have extensive information about Dr. Norrell's opinions and

---

[19] Rec. Doc. 275-1.

[20] *Id.* at 6.

[21] *Id.* at 7.

[22] *Id.* at 7–8.

[23] *Id.* at 9–10.

[24] *Id.* at 11.

methodology," permitting Dr. Norrell to testify will not prejudice Plaintiffs.[25] Furthermore, the Avondale Interests argue that "the fact that no report or deposition was provided by Dr. Norrell in this matter stems from Plaintiffs' own actions."[26] The Avondale Interests allege that Plaintiffs failed to depose Dr. Norrell, that Plaintiffs opposed submitting expert reports when this case was being litigated in state court, and that the state court orally denied Plaintiffs' state court motion to exclude Dr. Norrell.[27] The Avondale Interests assert that Plaintiffs "have—and have always had—ample information about Dr. Norrell's qualifications, opinions, and methodology" and that, "[i]n light of their prior actions, Plaintiffs cannot argue now that they would be substantially prejudiced by the limited reopening of discovery for Dr. Norrell . . . ."[28]

Finally, the Avondale Interests urge this Court to reconsider its September 11, 2020 Order because of legal errors in Plaintiffs' prior briefs.[29] The Avondale Interests argue that Plaintiffs incorrectly asserted that the state court's ruling on the admissibility of Dr. Norrell's testimony came after the case had already been removed to this Court when, in fact, the state court made a valid oral judgment prior to removal.[30] Further, the Avondale Interests contend that Plaintiffs incorrectly asserted that Dr. Norrell's testimony would be irrelevant when, instead, Dr. Norrell's testimony is relevant to the issue of contributory negligence.[31]

---

[25] *Id*. at 12.

[26] *Id*.

[27] *Id*. at 12–14.

[28] *Id*. at 14–15.

[29] *Id*. at 16.

[30] *Id*.

[31] *Id*. at 18.

B.      *Plaintiffs' Arguments in Opposition to the Motion*

Plaintiffs' counter by asserting that "[i]t is not plaintiffs' burden to establish the reliability of Dr. Norrell's opinions and methodology."[32] Plaintiffs argue that the Avondale Interests failed to provide any information about Dr. Norrell's methodology and that Plaintiffs' choice not to depose Dr. Norrell does not "relieve the Avondale Interests of their burden of establishing the reliability of Dr. Norrell's opinions and methodology."[33] Plaintiffs further allege that the Avondale Interests have failed to show that manifest injustice would occur with the exclusion of Dr. Norrell.[34] Plaintiffs contend that the Avondale Interests have not shown that Dr. Norrell's testimony is the only way to access information on whether or not Mr. Dempster knew about the risks of smoking and even if it is, "[t]hat [the Avondale Interests] may have failed to conduct discovery on this issue is not grounds to allow an expert to substitute opinions that have not been shown to meet *Daubert* standards."[35]

Plaintiffs next argue that reconsideration would prejudice Plaintiffs.[36] Plaintiffs contend that "it would not be fair to allow the Avondale Interests another bite at the apple" in permitting Dr. Norrell to testify.[37] Plaintiffs argue that giving the Avondale Interests this second chance would be unfair because a "motion for reconsideration cannot be used to raise arguments which could, and should, have been made before the judgment issued."[38]

---

[32] Rec. Doc. 282 at 2.

[33] *Id.* at 3.

[34] *Id.* at 6.

[35] *Id.*

[36] *Id.*

[37] *Id.* at 7.

[38] *Id.* at 8.

While the Court "does not even need to address" whether Dr. Norrell's testimony is relevant because the Avondale Interests failed to establish that his methodology was reliable, Plaintiffs nevertheless assert that the Avondale Interests have failed to show relevance.[39] Plaintiffs contend that the Avondale Interests failed to establish that "Dr. Norrell had even formulated an opinion regarding when or what Mr. Dempster should have known based upon information that may have been available to him specifically" about the risks of smoking and failed to provide any information on how Dr. Norrell established his opinion.[40] Plaintiffs contend that a "historian is not qualified to testify as to what anyone should have known."[41] Plaintiffs reiterate their arguments from the *Daubert* motion that Dr. Norrell is not qualified to testify because he does not have the "education, training, or experience" to testify on smoking and the risks known to the community.[42]

Lastly, Plaintiffs argue that it was proper for them to file a motion to exclude Dr. Norrell in federal court.[43] Plaintiffs contend that the Avondale Interests "decided to avail themselves of a federal forum" and therefore, Plaintiffs had no option but to file a motion to exclude Dr. Norrell in this Court.[44]

## C.    *The Avondale Interests' Arguments in Further Support of the Motion*

The Avondale Interests raise four arguments in reply to Plaintiffs' opposition.[45] First, the

---

[39] *Id.* at 9–10.

[40] *Id.* at 11.

[41] *Id.* at 12.

[42] *Id.* at 17–18.

[43] *Id.* at 22.

[44] *Id.*

[45] Rec. Doc. 295.

Avondale Interests argue that Dr. Norrell should be permitted to testify as an expert because the state court had already orally denied Plaintiffs' motion to exclude Dr. Norrell prior to removal.[46] The Avondale Interests assert that the state court decision was effective as of the date of the oral statement and that a writing was not required for the ruling to be in effect.[47] The Avondale Interests argue that Plaintiffs had "no basis to reassert their motion to exclude Dr. Norrell" in federal court because the *Daubert* standard applies equally in state and federal court and, therefore, the state court ruling was valid.[48]

Second, the Avondale Interests re-assert that reconsideration is required to "correct an error of law and prevent manifest injustice to the Avondale Interests."[49] The Avondale Interests argue that reconsideration is warranted "based on an error of law, regarding the applicability of Dr. Norrell's testimony to their contributory negligence defense" and is necessary "to prevent manifest injustice by impairing that defense."[50] Further, the Avondale Interests argue that Dr. Norrell's testimony in multiple prior cases provides information on his methodology and that, "if permitted by this Court, Dr. Norrell would provide a written report and/or deposition explaining his opinions with more specificity as they relate to Mr. Dempster."[51]

Third, the Avondale Interests argue that Dr. Norrell's testimony would be relevant to their contributory negligence defense.[52] The Avondale Interests claim that this Court already

---

[46] *Id.* at 1–2.

[47] *Id.* at 2–3.

[48] *Id.* at 5.

[49] *Id.*

[50] *Id.*

[51] *Id.* at 7.

[52] *Id.* at 9.

determined in its September 11, 2020 Order that Dr. Norrell is qualified and that other courts have accepted Dr. Norrell's testimony, and testimony of similar historian experts, as "providing overwhelming' evidence of common knowledge" of health hazards."[53]

Fourth, the Avondale Interests argue that Plaintiffs' statements in the opposition regarding Dr. Norrell's qualifications should be disregarded.[54] The Avondale Interests claim that this Court has already denied Plaintiffs' challenges to Dr. Norrell's qualifications and Plaintiffs' arguments to the contrary are unresponsive to the instant motion.[55]

### III. Legal Standard

#### A.    *Legal Standard on a Motion for Reconsideration*

Although the Fifth Circuit has noted that the Federal Rules "do not recognize a 'motion for reconsideration' *in haec verba*,"[56] it has consistently recognized that such a motion may challenge a judgment or order under Federal Rules of Civil Procedure 54(b), 59(e), or 60(b).[57] Federal Rule of Civil Procedure 59(e) also allows courts to alter or amend judgments after entry. The Court has "considerable discretion" in deciding whether to grant a motion for reconsideration, but must "strike the proper balance between two competing imperatives: (1) finality and (2) the need to render just decisions on the basis of all the facts."[58] This Court's discretion is further bounded by the Fifth Circuit's instruction that reconsideration is "an

---

[53] *Id.* at 10–11 (citing *Waterhouse v. R.J. Reynolds Tobacco Co.*, 368 F.Supp.2d 432, 436 (D. Md. 2005), *aff'd*, 162 F. App'x 231 (4th Cir. 2006)) (internal quotation marks omitted).

[54] *Id.* at 14.

[55] *Id.*

[56] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990).

[57] *Id.* (Rules 59 and 60); *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *3–4 (E.D. La. Apr. 5, 2010) (Rule 54).

[58] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

extraordinary remedy that should be used sparingly,"[59] with relief being warranted only when the basis for relief is "clearly establish[ed]."[60] Courts in the Eastern District of Louisiana have generally considered four factors in deciding motions for reconsideration under the Rule 59(e) standard:

(1)     the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;

(2)     the movant presents newly discovered or previously unavailable evidence;

(3)     the motion is necessary in order to prevent manifest injustice; or

(4)     the motion is justified by an intervening change in controlling law.[61]

A motion for reconsideration, "'[is] not the proper vehicle for rehashing evidence, legal theories, or arguments . . . .'"[62] Instead, such motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[63] "It is well settled that motions for reconsideration should not be used . . . to re-urge matters that have already been advanced by a party."[64] When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted.[65]

---

[59] *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

[60] *Schiller v. Physicians Res. Grp, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003); *Castrillo*, 2010 WL 1424398, at *3.

[61] *See, e.g., Castrillo*, 2010 WL 1424398, at *4 (citations omitted).

[62] *Id.* (quoting *Templet*, 367 F.3d at 478-79).

[63] *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (citation and internal quotation marks omitted).

[64] *Helena Labs. Corp. v. Alpha Sci. Corp.*, 483 F. Supp. 2d 538, 539 (E.D. Tex. 2007) (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

[65] *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 481 (M.D. La. 2002). *See also Mata v. Schoch*, 337 B.R. 138, 145 (S.D. Tex. 2005) (refusing reconsideration where no new

**B.     Legal Standard on the Admissibility of Expert Testimony**

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[66] Rule 702, which governs the admissibility of expert witness testimony, provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education," may testify when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[67] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony [must be] based on sufficient facts or data,

(2) the testimony [must be] the product of reliable principles and methods, and

(3) the expert [must reliably apply] the principles and methods to the facts of the case.[68]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable."[69] The court's gatekeeping function thus involves a two-part inquiry into reliability and relevance. First, the court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[70] The reliability inquiry requires a

---

evidence was presented); *FDIC v. Cage*, 810 F. Supp. 745, 747 (S.D. Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

[66] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[67] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[68] Fed. R. Evid. 702.

[69] *Daubert*, 509 U.S. at 597; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[70] *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

court to assess whether the reasoning or methodology underlying the expert's testimony is valid.[71] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[72]

In *Daubert*, the Supreme Court identified a number of factors that are useful in analyzing reliability of an expert's testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community.[73] In *Kumho Tire Co. v. Carmichael*, the Supreme Court emphasized that the test of reliability is "flexible" and that *Daubert*'s list of specific factors does not necessarily nor exclusively apply to every expert in every case.[74] The overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[75] The court must also determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence—in other words, whether it is relevant.[76]

A court's role as a gatekeeper does not replace the traditional adversary system,[77] and "[a]

---

[71] *See Daubert*, 509 U.S. at 592–93.

[72] *See id.* at 590.

[73] *See id.* at 592–94.

[74] *Kumho Tire*, 526 U.S. at 142; *see also Seatrax*, 200 F.3d at 372 (explaining that reliability is a fact-specific inquiry and application of *Daubert* factors depends on "nature of the issue at hand, the witness's particular expertise and the subject of the testimony").

[75] *Kumho Tire*, 526 U.S. at 152.

[76] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[77] *See Daubert*, 509 U.S. at 596.

review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[78] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[79] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[80]

## IV. Analysis

Under the standard set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, a party seeking to admit expert testimony must prove that it is both relevant and reliable.[81] The burden of proving admissibility falls squarely on the party seeking to present the testimony—here, the Avondale Interests.[82] In its September 11, 2020 Order, this Court held that, while Dr. Norrell was qualified to testify to historical information and public awareness of the risks associated with smoking, the Avondale Interests failed to provide information proving the reliability of Dr. Norrell's methodology, thereby failing to satisfy the *Daubert* standard.[83] The Court further held that Dr. Norrell's proposed testimony was of limited probative value and that any relevance was substantially outweighed by the danger of confusing the issue, misleading the jury, and wasting

---

[78] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[79] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[80] *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (internal citations and quotation marks omitted).

[81] 509 U.S. at 579.

[82] *See Moore*, 151 F.3d at 276 (citing *In re Paoli*, 35 F.3d at 717).

[83] Rec. Doc. 249.

time pursuant to Federal Rule of Evidence 403.[84]

 This Court declines to reconsider its September 11, 2020 Order. In the instant motion, the Avondale Interests again fail to offer any evidence to demonstrate the reliability of Dr. Norrell's methodology. While the Avondale Interests spend much of their briefings arguing that Dr. Norrell's testimony is relevant, they fail to address the main reason this Court excluded Dr. Norrell's testimony—the Avondale Interests did not, and have not, provided this Court with any information on Dr. Norrell's methodology. The Avondale Interests themselves "concede that no expert report, affidavit, or deposition was provided for Dr. Norrell in this matter . . . ."[85] Reliability of an expert's testimony is a key prong of the *Daubert* analysis. It was the Avondale Interests' burden to provide sufficient evidence of Dr. Norrell's methodology; the fact that Plaintiffs' chose not to depose Dr. Norrell has no bearing on this Court's analysis. Without evidence supporting Dr. Norrell's methodology, the Avondale Interests leave this Court with no choice but to exclude Dr. Norrell's proposed testimony.[86]

 Accordingly,

---

[84] *Id.* at 16.

[85] *Id.* at 14.

[86] The Avondale Interests argue for the first time in the reply brief that the Plaintiffs should have sought to exclude Dr. Norrell in this Court through a motion for reconsideration, given the state court's oral judgment that Dr. Norrell could testify. Rec. Doc. 295 at 2–3. The Avondale Interests did not raise this issue regarding reconsideration in the opposition to Plaintiffs' *Daubert* motion, or in the original briefing for the instant motion for reconsideration. Regardless, even considering the issue of Dr. Norrell's testimony under a reconsideration standard, this Court finds that exclusion is appropriate. Allowing Dr. Norrell to testify without any information on his methodology would be clearly erroneous. Additionally, when the case was removed for the second time, all parties agreed that evidentiary motions would be re-filed in this Court. *See* Rec. Doc. 24. The Avondale Interests filed numerous evidentiary motions that this Court considered on the merits.

**IT IS HEREBY ORDERED** that Defendants' "Motion for Reconsideration of Order Excluding Robert J. Norrell, Ph.D."[87] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this _____ day of March, 2021.
4th

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[87] Rec. Doc. 275.